# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TIMOTHY BOND, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>CLOVER HEALTH INVESTMENTS, CORP., CHAMATH PALIHAPITIYA, VIVEK GARIPALLI, and ANDREW TOY,<br><br>        Defendants. | Case No. 3:21-cv-00096<br>District Judge Aleta A. Trauger<br><br><br><u>CLASS ACTION</u><br><br>JURY DEMAND |
| BRINAL KAUL, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI, JOSEPH WAGNER, CHAMATH PALIHAPITIYA, STEVEN TRIEU, IAN OSBORNE, JACQUELINE D. RESES, and JAMES RYANS,<br><br>        Defendants. | Case No. 3:21-cv-00101<br>District Judge Aleta A. Trauger<br><br><u>CLASS ACTION</u><br><br>JURY DEMAND |

| | |
|---|---|
| MATTHEW YANIV, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:21-cv-00109 |
| | District Judge Aleta A. Trauger |
| Plaintiff, | |
| | CLASS ACTION |
| v. | |
| | JURY DEMAND |
| CLOVER HEALTH INVESTMENTS, CORP. VIVEK GARIPALLI, ANDREW TOY, and JOSEPH WAGNER, | |
| Defendants. | |
| JEAN-NICOLAS TREMBLAY, Individually and On Behalf of All Others Similarly Situated, | Case No. 3:21-cv-00138 |
| | District Judge Aleta A. Trauger |
| Plaintiff, | |
| | CLASS ACTION |
| v. | |
| | JURY DEMAND |
| CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI, ANDREW TOY, CHAMATH PALIHAPITIYA, STEVEN TRIEU, IAN OSBORNE, JACQUELINE D. RESES, and JAMES RYANS, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRISTOPHER BUNTON FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

## I.     PRELIMINARY STATEMENT

Before this Court are four related securities class actions brought on behalf of purchasers of Clover Health Investments, Corp. ("Clover Health" or the "Company") securities between October 6, 2020 and February 4, 2021, inclusive (the "Class Period"), which allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended

by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§ 78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Christopher Bunton hereby moves this Court for an order: (i) consolidating the four above-captioned securities fraud class actions against Clover Health filed in this district under the lowest-numbered *Bond* docket; (ii) appointing Mr. Bunton as Lead Plaintiff; and (iii) approving of his selection of Block & Leviton LLP to serve as Lead Counsel and Branstetter, Stranch & Jennings, PLLC to serve as Liaison Counsel.

This motion is made on the grounds that Mr. Bunton is the most adequate plaintiff as defined by the PSLRA because he believes he possesses the largest financial interest in the relief sought by the class, having lost approximately $526,924.97 on his purchases of Clover Health securities. Mr. Bunton's claims are also typical of the claims of the putative class, and he will fairly and adequately represent the interests of the class. Mr. Bunton is, therefore, the presumptive Lead Plaintiff.

Accordingly, the Court should consolidate the four related lawsuits, appoint Mr. Bunton as Lead Plaintiff, and approve of his selection of Block & Leviton as Lead Counsel and Branstetter, Stranch & Jennings as Liaison Counsel.

## FACTUAL BACKGROUND[1]

Clover Health purports to be "a next-generation Medicare Advantage insurer" that seeks to "leverage [its] flagship software program, the Clover Assistant, to provide America's seniors

---

[1] The facts are taken from the Complaint for Violations of the Federal Securities Laws that was filed in the *Bond* action, No. 3:21-cv-00096 (ECF No. 1). References to "¶" refer to paragraphs of that Complaint.

3

with PPO and HMO plans that are the obvious choice for Medicare-eligible customers." ¶ 2. Clover is headquartered in Franklin, Tennessee. *Id.*

On October 6, 2020, the start of the Class Period, Clover issued a press release announcing plans to become a publicly traded company via a merger with Social Capital Hedosophia Corp. III ("SCH"), whose shares traded on the New York Stock Exchange under the ticker symbol "IPOC." ¶ 3. SCH was setup as a special purpose acquisition company (also known as a SPAC). *Id.* The October 6, 2020 press release provided that the transaction valued Clover at an enterprise value of approximately $3.7 billion, and the transaction was expected to deliver up to $1.2 billion in gross proceeds. *Id.*

On January 7, 2021, Clover and SCH announced that their anticipated business combination had been completed, and shares of Clover would begin trading on the NASDAQ stock exchange under the symbol "CLOV" the next day. ¶ 4. During the Class Period, shares of IPOC/CLOV traded as high as $17.45 each. *Id.*

On February 4, 2021, analyst Hindenburg Research published a report entitled "Clover Health: How the 'King of SPACs' Lured Retail Investors Into a Broken Business Facing an Active, Undisclosed DOJ Investigation." ¶ 5. In this report, Hindenburg "reveal[ed] how Clover Health and its Wall Street celebrity promoter, [Defendant] Chamath Palihapitiya, misled investors about critical aspects of Clover's business in the run-up to the company's SPAC go-public transaction last month." *Id.* Hindenburg stated that its investigation "spanned almost 4 months and has included more than a dozen interviews with former employees, competitors, and industry experts," as well as "dozens of calls to doctor's offices, and a review of thousands of pages of government reports, insurance filings, regulatory filings, and company marketing materials." *Id.*

Hindenburg continued that "[c]ritically, Clover has not disclosed that its business model and its software offering, called the Clover Assistant, are under active investigation by the Department of Justice (DOJ), which is investigating at least 12 issues ranging from kickbacks to marketing practices to undisclosed third-party deals, according to a Civil Investigative Demand . . . we obtained." ¶ 6. Hindenburg wrote that the DOJ's "Civil Investigative Demand and the corresponding investigation present a potential existential risk for a company that derives almost all of its revenue from Medicare, a government payor. Our research indicates that the investigation has merit." *Id.* The Company had received the DOJ's Civil Investigative Demand prior to the merger with SCH. *See* Case No. 3:21-cv-00109, ECF No. 1 at ¶ 7.

On this news, shares of Clover common stock plummeted form their February 3, 2021 closing price of $13.95 per share to just $12.23 on February 4, 2021, representing a one day drop of approximately 12.3% and a loss of approximately $700 million in market capitalization. ¶ 7.

Then on February 5, 2021, before the market opened, Clover filed a Form 8-K disclosing that the SEC was indeed conducting an "investigation and requesting document and data preservation for the period from January 1, 2020, to the present, relating to certain matters that are referenced in the" Hindenburg report. ¶ 47. The Company further reported that Palihapitiya and Clover "were fully aware of the DOJ inquiry," but made the affirmative decision to not publicly disclose this information. *Id.* Shares of Clover common stock fell again on February 5, 2021 on this news. *See* Case No. 3:21-cv-00101, ECF No. 1 at ¶ 41.

## ARGUMENT

### I.     The Court Should Consolidate These Actions.

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall

not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

There are currently four related securities class actions against Clover Health pending in this District: *Bond v. Clover Health Investments, Corp., et al.*, No. 3:21-cv-00096 (M.D. Tenn.), *Kaul v. Clover Health Investments, Corp., f/k/a Social Capital Hedosophia Holdings Corp. III, et al.*, No. 3:21-cv-00101 (M.D. Tenn.), *Yaniv v. Clover Health Investments, Corp., et al.*, No. 3:21-cv-00109, and *Tremblay v. Clover Health Investments, Corp., f/k/a Social Capital Hedosophia Holdings Corp. III, et al.*, No. 3:21-cv-00138 (M.D. Tenn.). Consolidation is appropriate where, as here, the actions are pending in the same court and involve common questions of fact or law. *See* Fed. R. Civ. P. 42(a); *see also Franchi v. SmileDirectClub, Inc.*, No. 3:19-cv-00962, 2020 WL 6479561, at *2-3 (M.D. Tenn. Jan. 27, 2020). Moreover, cases should be consolidated where there is "more than one action on behalf of a class asserting substantially the same claim or claims." 15 U.S.C. § 78u-(b)(ii).

These three actions assert the same claims based on the same or similar legal and factual allegations and allege a nearly identical Class Period.[2] Additionally, the interests of judicial economy weigh heavily in favor of consolidation given the substantial overlap of common questions of law and fact. *See Franchi*, 2020 WL 6479561, at *2, citing *French v. CBL & Assocs. Props., Inc.*, No. 1:16-cv-165, 2016 WL 7668501, at *1 (E.D. Tenn. Sep. 26, 2016). Moreover,

---

[2] All four cases commence the Class Period on October 6, 2020. The *Bond, Yaniv*, and *Tremblay* lawsuits allege a class period ending on February 3, 2021. The *Kaul* lawsuit ends the Class Period one day later, on February 4, 2021. For purposes of determining which movant has the largest financial interests at this lead plaintiff selection stage, courts generally use the longest class period on file. *See, e.g.*, *Hom v. Vale, S.A.*, No. 15-cv-9539, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (noting that the general practice in conducting lead plaintiff motion practice is to use the "longer, most inclusive" class period available on the theory that it "encompasses more potential class members and damages").

6

the claims and parties need not be completely identical for consolidation to be appropriate. *Franchi*, 2020 WL 6479561, at \*2, citing *Guild Assocs., Inc. v. Bio-Energy (Wash.), LLC*, 309 F.R.D. 436, 440 (S.D. Ohio 2015). The Court should therefore consolidate the above-captioned actions and any other subsequently filed or transferred shareholder actions that relate to the claims in this matter.

**II.      The Court Should Appoint Mr. Bunton as Lead Plaintiff.**

      **A.      The Procedure Required by the PSLRA**

The PSLRA established a procedure governing the appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) & (a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice (*i.e.*, today, April 6, 2021), any person who is a member of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) & (B).

*Second*, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the members of the class the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that (aa) has either filed the complaint or made a motion in response to a notice . . . (bb) in the determination of the court, has

the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

**B.      Mr. Bunton Has Timely Moved for Lead Plaintiff Appointment.**

Pursuant to the provisions of the PSLRA and within the required time frame after publication of the notice, Mr. Bunton timely moves this Court to be appointed as Lead Plaintiff on behalf of all members of the class. Mr. Bunton has signed a certification pursuant to the PSLRA. *See* Block Decl.,[3] Ex. B. He has selected and retained qualified counsel to represent him and the proposed class. *See* Block Decl. Exs. E, F.

**C.      Mr. Bunton Has the Largest Financial Interest in the Relief Sought by the Class.**

During the Class Period, as evidenced by, among other things, Mr. Bunton's accompanying signed certification and loss chart, Mr. Bunton incurred a substantial loss of approximately $526,924.97 on his class period transactions in Clover Health securities ($304,973.97 in LIFO losses on his common stock purchases and $221,951 in losses on his options investments). *See* Block Decl. Exs. B, C. While the Sixth Circuit has not adopted a specific approach to calculating the largest financial interest, courts have typically appointed lead plaintiffs on the basis of having the largest loss. *See Farrah v. Provectus Biopharms., Inc.*, 68 F. Supp. 3d 800, 804 (E.D. Tenn. 2014); *In re Delphi Corp. Secs., Deriv. & "ERISA" Litig.*, 458 F. Supp. 2d 455, 461 (E.D. Mich. 2006).

At the time of this filing, Mr. Bunton believes that he possesses the largest financial interest of any movant seeking lead plaintiff status. The movant with the largest financial interest in these

---

[3] References to the "Block Decl." are to the Declaration of Jeffrey C. Block, filed contemporaneously herewith.

Actions, and who otherwise meets Rule 23's adequacy and typicality requirements, is presumptively the lead plaintiff. *St. Clair Cty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, No. 3:18-cv-00988, 2019 WL 494219, at *2 (M.D. Tenn. Jan. 9, 2019).

### D.      Mr. Bunton Otherwise Satisfies Rule 23.

In addition to having the largest financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u4(a)(3)(B)(iii)(I)(cc). Of these prerequisites, only typicality and adequacy address the personal characteristics of the lead plaintiff movant, and are therefore the only two considered at this stage. *See, e.g.*, *St. Clair Cty. Emps. Ret. Sys.*, 2019 WL 494129, at *2 (citing *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-cv-2830, 2010 WL 5173851, at *5 (W.D. Tenn. Dec. 15, 2010) (explaining that, although the text of the PSLRA implies that the rebuttable presumption is only triggered if there is full compliance with Rule 23, at the appointment of lead plaintiff sage, only adequacy and typicality are relevant). Furthermore, in making its determination that a movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Rather, a *prima facie* showing that a movant satisfies the requirements of Rule 23 is sufficient. *See, e.g.*, *In re Regions Keegan Closed-End Fund Litig.*, No. 07-cv-2830, 2010 WL 5173851, at *5 (W.D. Tenn. Dec. 15, 2010).

### 1.   Mr. Bunton Satisfies the Typicality Requirement.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if his or her "claims arise from the same event or practice or course of conduct that gives rise to the claims of the other class members and involve the same legal theory." *St. Clair Cty. Emps.' Ret. Sys.*, 2019 WL 494129, at

9

*5 (internal quotations omitted) (citing *Garden City Emps.' Ret. Sys.*, 2012 WL 1071281, at *37 (M.D. Tenn. Apr. 30, 2010)).

Here, Mr. Bunton's claims are typical because, like all members of the class, he purchased or otherwise acquired Clover Health securities during the Class Period at prices artificially inflated by Defendants' wrongful conduct and suffered damages as a result thereof. Mr. Bunton's claims therefore arise from the same course of events as all class members and will require similar (if not identical) legal arguments to prove Defendants' liability.

### 2. Mr. Bunton Satisfies the Adequacy Requirement.

Under Rule 23(a)(4), representative parties must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding adequacy to whether the presumptive lead plaintiff has "common interests with unnamed members of the class" and will "vigorously prosecute the interests of the class through qualified counsel." *St. Clair Cty. Emps.' Ret. Sys.*, 2019 WL 494129, at *5 (quoting *Garden City Emps.' Ret. Sys.*, 2012 WL 1071281, at *37).

Mr. Bunton is also an adequate representative for the proposed class. His substantial financial interest in the outcome of the action demonstrates that his interests are aligned with those of the class. Mr. Bunton has submitted a sworn declaration detailing his education, employment, and investment experience, and attesting to his understanding and willingness to fulfill the obligations of a lead plaintiff. Block Decl., Ex. D. Furthermore, Mr. Bunton has selected highly experienced counsel committed to zealously and efficiently prosecuting these actions to a successful conclusion. *See* Block Decl. Exs. E, F. Thus, Mr. Bunton satisfies the adequacy requirements of Rule 23(a)(4).

10

Because Mr. Bunton is the presumptive "most adequate plaintiff" under the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), and no competing movant can rebut that presumption, the Court should appoint him Lead Plaintiff.

**III.     The Court Should Approve of Mr. Bunton's Selection of Counsel.**

Under the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with the lead plaintiff's selection of counsel when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also St. Clair Cty. Emps.' Ret. Sys.*, 2019 WL 494129, at *2 (the lead plaintiff's "choice of counsel will be honored unless the Court finds that counsel to be unqualified, inexperienced, or otherwise incapable of adequately conducting the litigation.").

Mr. Bunton has selected Block & Leviton, a firm with substantial experience in the prosecution of shareholder and securities class actions to serve as lead counsel. Block Decl. Ex. E. As recently noted by one district court:

> While I recognize that each counsel is well qualified, I am particularly persuaded by [Block & Leviton's] experience in large securities class actions, such as its representation of plaintiffs in *In re BP Securities Litigation*, (S.D. Tex.), *In re Google Inc. Class C Shareholder Litig.* (Del. Ch. Ct.), and *In re Volkswagen "Clean Diesel" Marketing, Sales and Products Liability Litigation (N.D. Cal.). I find the experience garnered from such representations will benefit the shareholder in this suit.*

*Thieffry v. Synchronoss Tech., Inc.*, No. 3:17-cv-07173-FLW-LHG (D.N.J. 2018) (ECF No. 21).

Moreover, Mr. Bunton has selected Branstetter, Stranch & Jennings, PLLC ("BSJ") to serve as Liaison Counsel. BSJ has been appointed to serve as lead counsel and in other leadership roles in numerous complex securities, consumer fraud, and other class actions throughout the

11

country and in Tennessee including: *In re Volkswagen "Clean Diesel"* MDL No. 2672 (nationwide class settlements totaling over $15 billion, which is the largest ever consumer class settlement); *Weiner v. Tivity Health Inc., et al.,* Case No. 3:17-cv-01469 (M.D. Tenn.) (Crenshaw, J.) (liaison counsel in securities class action pending in this District and set for trial in May 2021); *In re: Skelaxin (Metaxalone) Antitrust Litigation, No*. 1:12-cv-00194 (E.D. Tenn.) (Collier, J.) (co-lead counsel on behalf of end-pay purchasers; $9 million settlement). As set forth in its firm resume (Block Decl., Ex. F), BSJ's successes have resulted in substantial monetary recoveries and injunctive benefits on behalf of class members across the United States.

Accordingly, the Court should approve of Mr. Bunton's selection of Block & Leviton as Lead Counsel and Branstetter, Stranch & Jennings as Liaison Counsel.

### CONCLUSION

For the foregoing reasons, Mr. Bunton respectfully requests that the Court: (i) consolidate the other securities fraud class actions against Clover Health filed in this district under the lowest-numbered *Bond* docket; (ii) appoint Mr. Bunton as Lead Plaintiff; (iii) approve of Mr. Bunton's selection of Block & Leviton LLP as Lead Counsel and Branstetter, Stranch & Jennings, PLLC as Liaison Counsel; and (iv) grant such other relief as the Court may deem just and proper.

Dated: April 6, 2021                    Respectfully submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV, Esq. (BPR #23045)
Benjamin A. Gastel, Esq. (BPR #28699)
**BRANTSTETTER, STRANCH**
   **& JENNINGS, PLLC**
223 Rosa L. Parks Avenue Suite 200
Nashville, Tennessee 37203
(615) 254-8801 (phone)
(615) 255-5419 (fax)
gerards@bsjfirm.com
beng@bsjfirm.com

12

*Counsel for Mr. Bunton and Proposed Liaison Counsel for the Class*

Jeffrey C. Block (admitted *pro hac vice*)
Jacob A. Walker (admitted *pro hac vice*)
Stephen J. Teti (admitted *pro hac vice*)
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
(617) 398-5600 (phone)
(617) 507-6020 (fax)
jeff@blockleviton.com
jake@blockleviton.com
steti@blockleviton.com

*Counsel for Mr. Bunton and Proposed Lead Counsel for the Class*

13

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on April 6, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record listed below.

Laurence M. Rosen
Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue
34th Floor
New York, NY 10016
(212) 686-1060
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

*Counsel for Brinal Kaul*

Paul Kent Bramlett
Robert P. Bramlett
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
Fax: (615) 254-4116
Email: pknashlaw@aol.com
Email:robert@bramlettlawoffices.com

*Counsel for Plaintiff Brinal Kaul and Jean-Nicolas Tremblay*

Christopher M. Wood
Robbins Geller Rudman & Dowd LLP (Nashville Office)
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2203
Fax: (615) 252-3798
Email: cwood@rgrdlaw.com

Mark S. Reich
Mary K. Blasy

14

Samuel H. Rudman
Robbins Geller Rudman & Dowd LLP (New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
Fax: (631) 367-1173
Email: mreich@rgrdlaw.com
Email: mblasy@rgrdlaw.com
Email: srudman@rgrdlaw.com

Jerry E. Martin
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Fax: (615) 252-3798
Email: jmartin@barrettjohnston.com

*Counsel for Plaintiff Matthew Yaniv*

Corey D. Holzer
Holzer & Holzer, LLC
1200 Ashwood Parkway
Suite 410
Atlanta, GA 30338
(770) 392-0090
Fax: (770) 392-0029
Email: cholzer@holzerlaw.com

J. Alexander Hood, II
Jeremy A. Lieberman
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor New York, NY 10016
(212) 661-1100
Fax: (212) 661-8665
Email: ahood@pomlaw.com
Email: jalieberman@pomlaw.com

Patrick V. Dahlstrom
Pomerantz LLP (Chicago Office)
10 S LaSalle Street

15

Suite 3505
Chicago, IL 60603
(312) 377-1181
Fax: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Plaintiff Jean-Nicolas Tremblay*

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV
