## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| TIMOTHY BOND, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>CLOVER HEALTH INVESTMENTS, CORP., CHAMATH PALIHAPITIYA, VIVEK GARIPALLI, and ANDREW TOY,<br><br>                    Defendants. | Case No. 3:21-cv-00096 |
| BRINAL KAUL, Individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI, JOSEPH WAGNER, CHAMATH PALIHAPITIYA, STEVEN TRIEU, IAN OSBORNE, JACQUELINE D. RESES, and JAMES RYANS,<br><br>                    Defendants. | Case No. 3:21-cv-00101 |

**[captions continue on next page]**

| | |
|---|---|
| MATTHEW YANIV, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    vs.<br><br>CLOVER HEALTH INVESTMENTS, CORP., VIVEK GARIPALLI, ANDREW TOY and JOSEPH WAGNER,<br><br>               Defendants. | Case No. 3:21-cv-00109 |
| JEAN-NICOLAS TREMBLAY, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI, ANDREW TOY, CHAMATH PALIHAPITIYA, STEVEN TRIEU, IAN OSBORNE, JACQUELINE D. RESES, and JAMES RYANS,<br><br>               Defendants. | Case No. 3:21-cv-00138 |

**THE INVESTOR GROUP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD COUNSEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 2

FACTUAL BACKGROUND ........................................................................................ 4

ARGUMENT ................................................................................................................. 8

I. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..................... 8

II. THE INVESTOR GROUP IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ........................................................................................................ 9

    A. The PSLRA Standard For Appointing Lead Plaintiff ............................................... 9

    B. Under the PSLRA, the Investor Group Should be Appointed Lead Plaintiff .......... 10

        1. The Investor Group Filed a Timely Motion ............................................. 11

        2. The Investor Group Has the Largest Financial Interest in the Relief Sought by the Class ...................................................................................... 11

        3. The Investor Group Meets Rule 23's Typicality and Adequacy Requirements .............................................................................................. 12

III. INVESTOR GROUP'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED ............................................................................ 15

CONCLUSION ............................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Baughman v. Pall Corp.*,
 250 F.R.D. 121 (E.D.N.Y. 2008) ........................................................................................12

*Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc.*,
 252 F.R.D. 188 (S.D.N.Y. 2008) ...................................................................................13, 14

*Blitz v. AgFeed Indus.*,
 No. 3:11-0992, 2012 WL 1192814 (M.D. Tenn. Apr. 10, 2012) .....................................10, 12

*Burgraff v. Green Bankshares, Inc.*,
 No. 2:10-cv-00253-CLC, 2011 WL 613281 (E.D. Tenn. Feb. 11, 2011)....................12, 13, 14

*Cantrell v. GAF Corp.*,
 999 F.2d 1007 (6th Cir. 1993) ...........................................................................................8

*In re CMS Energy Sec. Litig.*,
 236 F.R.D. 338 (E.D. Mich. 2006) ......................................................................................2

*Craft v. Vanderbilt Univ.*,
 174 F.R.D. 396 (M.D. Tenn. 1996) ...................................................................................13

*In re the Drexel Burnham Lambert Grp., Inc.*,
 960 F.2d 285 (2d Cir. 1992)..............................................................................................13

*Faris v. Longtop Fin. Techs. Ltd.*,
 No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ...................................11

*Foley v. Transocean Ltd.*,
 272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................................................9

*In re Fuwei Films Sec. Litig.*,
 247 F.R.D. 432 (S.D.N.Y. 2008) ...................................................................................12, 13

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*,
 No. 3:09-cv-00882, 2010 WL 1790763 (M.D. Tenn. Apr. 30, 2010) ..........................9, 10, 12

*In re GE Sec. Litig.*,
 No. 09 Civ. 1951(DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ........................8, 12, 14

*In re Gentiva Sec. Litig.*,
 281 F.R.D. 108 (E.D.N.Y. 2012) .........................................................................................2

*Kaplan v. Gelfond*,
 240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................................8, 9

*Kokkinis v. Aegean Marine Petroleum Network Inc.*,
No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011)..........................14

*Lewis v. ACB Bus. Servs.*,
135 F.3d 389 (6th Cir. 1998) .................................................................................................8

*Norfolk Cty. Ret. Sys. v. Cmty. Health Sys.*,
No. 3:11-cv-0433, 2011 WL 6202585 (M.D. Tenn. Nov. 28, 2011)......................................12

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) ............................................................................................14

*Quan v. Advanced Battery Techs., Inc.*,
No. 11 Civ. 2279(CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ..................................13

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
No. 07-cv-2830, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) .........................................12

*Reitan v. China Mobile Games & Entm't Grp.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014).....................................................................................15

*United States ex rel. Tenn. Valley Auth. v. Easement & Right-of-Way over 1.8
Acres of Land*,
682 F. Supp. 353 (M.D. Tenn. 1988)......................................................................................8

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015)................................................................................12, 13

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ...............................................................................................16

**Statutes**

15 U.S.C. § 77z-1(a) ................................................................................. *passim*

15 U.S.C. § 78u-4(a) ................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 42(a) ................................................................................................................8

Federal Rules of Civil Procedure Rule 42(a)(2) ........................................................................2

Rule 23(a)(4)..........................................................................................................................14

Mohamed Multhazim Akbar Ali and Lynn Kenneth Fuhriman (together, the "Investor Group") respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), and Section 27(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77z-1(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of its motion for the entry of an order: (1) consolidating the above-captioned actions ("Actions");[1] (2)

---

[1]    The following four Actions are pending before this Court: (1) *Bond v. Clover Health Investments, Corp., et al.*, No. 3:21-cv-00096 ("*Bond*"), which was filed on February 5, 2021; (2) *Kaul v. Clover Health Investments, Corp., et al.*, No. 3:21-cv-00101 ("*Kaul*"), which was filed on February 5, 2021; (3) *Yaniv v. Clover Health Investments, Corp., et al.*, No. 3:21-cv-00109 ("*Yaniv*"), which was filed on February 10, 2021; and (4) *Tremblay v. Clover Health Investments, Corp., et al.*, No. 3:21-cv-00138 ("*Tremblay*"), which was filed on February 22, 2021. The *Bond* Action is brought "on behalf of all investors who purchased or otherwise acquired Clover Health Investments, Corp. ('Clover' or the "Company") (formerly known as Social Capital Hedosophia Holdings Corp. III ('SCH') common stock between October 6, 2020 and February 3, 2021, inclusive . . . . for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5." *Bond*, Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Bond* Compl."). The *Kaul* Action is brought on behalf of investors who "(1) purchased or otherwise acquired publicly traded Clover securities between October 6, 2020 and February 4, 2021, inclusive . . . seeking to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934, and/or (2) [investors who] purchased or otherwise acquired Clover securities pursuant or traceable to the Company's registration statement and prospectus issued in connection with the December 2020 Merger, seeking to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 . . . ." *Kaul*, Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Kaul* Compl."). The *Yaniv* Action is brought "on behalf of all purchasers of Clover (formerly known as Social Capital Hedosophia Holdings Corp. III) Class A common stock and warrants to purchase Class A common stock (collectively, the 'Securities') between October 6, 2020 and February 3, 2021, inclusive . . . seeking to pursue remedies under the Securities Exchange Act of 1934 . . . ." *Yaniv*, Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Yaniv* Compl."). The *Tremblay* Action is brought "on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Clover securities between October 6, 2020 and February 3, 2021, both dates inclusive . . . seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 . . . and Rule 10b-5 . . . ." *Tremblay*, Class Action Complaint ¶ 1, ECF No. 1 ("*Tremblay* Compl.").

1

appointing Investor Group as Lead Plaintiff; and (3) approving Investor Group's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[2]

## PRELIMINARY STATEMENT

The Actions presently pending before this Court are brought on behalf of those who purchased or otherwise acquired Clover Health Investments, Corp. ("Clover") f/k/a Social Capital Hedosophia Holdings Corp. III ("SCH") securities between October 6, 2020 and February 4, 2021, both dates inclusive (the "Class Period"), which seeks to recover damages caused by defendants' violations of the Exchange Act and the Securities Act.[3]

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii) and 15 U.S.C. § 77z-1(a)(3)(B)(ii). Pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, the Court may consolidate the actions before it that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2). The Actions may be consolidated as they allege violations of §§ 10(b) and 20(a) of the Exchange Act, Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder, and §§ 11 and 15 of the Securities Act. The Actions also allege claims involving substantially similar facts. As the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated.

---

[2] Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of Charles F. Barrett filed herewith.

[3] For the purposes of "determining a lead plaintiff . . . the longer, most inclusive class period . . . is proper[.]" *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see In re CMS Energy Sec. Litig.*, 236 F.R.D. 338, 342 (E.D. Mich. 2006) (noting the court should err on the side of a longer class period in order to protect plaintiffs). Accordingly, the class period in the *Kaul* complaint governs the appointment of a Lead Plaintiff for determining which movant possesses the largest financial interest.

2

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i) and 15 U.S.C. § 77z-1(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

With losses of $400,418.24, the Investor Group, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. The Investor Group also satisfies Rule 23's typicality and adequacy requirements. The Investor Group's claims are typical of the Class's claims because they suffered losses on their Clover investment as a result of the defendants' false and misleading statements. Further, the Investor Group has no conflict with the Class and will adequately protect the Class's interests given its significant stake in the litigation and its conduct to date in prosecuting the litigation, including its submission of the requisite certifications and selection of experienced class counsel. Accordingly, the Investor Group is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, the Investor Group is entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v). The Investor Group has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, the Investor Group's motion should be granted in its entirety.

3

## FACTUAL BACKGROUND[4]

Defendant Clover was founded in 2013 by defendant Vivek Garipalli. The company sells Medicare insurance and offers software to physicians that help aggregate data on patients who are part of the Clover network. Shares of IPOC went public in April 2020, when SCH sold 72 million units $10.00 each. SCH detailed that it was a "newly incorporated blank check company, incorporated as a Cayman Islands exempted company for the purpose of effecting a merger, share exchange, asset acquisition, share purchase, reorganization or similar business combination with one or more businesses."

On October 6, 2020, Clover and SCH announced their plan to enter into a merger through which Clover would become a publicly-traded company. Clover described itself in this release as "a next-generation Medicare Advantage insurance company offering best-in-class plans that combine wide access to healthcare and rich supplemental benefits with low out-of-pocket expenses. A unique model in health insurance, Clover partners with primary care physicians using its software platform, the Clover Assistant, to deliver data-driven, personalized insights at the point of care." The proposed merger valued Clover at $3.7 billion, and noted that Clover was expected to receive up to $728 million of transaction proceeds and that up to $500 million of cash proceeds were expected to be allocated to existing Clover shareholders.

Additionally, SCH and Clover filed the Agreement and Plan of Merger as an Exhibit to a Form 425 Prospectus with the SEC. Section 4.30(a) ("Healthcare Compliance") of this Agreement and Plan of Merger provided, in relevant part, that "[e]ach of [Clover] and its Subsidiaries (i) in all material respects meets and complies with, and since January 1, 2018, has met and complied with, all applicable Laws, including all Health Care Laws, and other

---

[4]    This information comes from the *Bond* complaint, but the *Kaul*, *Yaniv* and *Tremblay* complaints all contain substantially similar information.

requirements for participation in, and receipt of payment from, the Medicare Advantage Program . . . ." Elsewhere in the Agreement and Plan of Merger, "Health Care Laws" is defined to include, inter alia, the Federal False Claims Act, the Federal Anti-Kickback Law, and many other related laws.

Also on October 6, 2020, defendant Chamath Palihapitiya ("Defendant Palihapitiya") appeared on CNBC in an interview announcing the Clover-SCH transaction. Defendant Palihapitiya stated that Clover was not engaged in the practice of "upcoding," or inputting inaccurate medical information to increase reimbursement from government payors such as Medicare. He said of Clover, in relevant part: "They create transparency. They don't play games. They don't motivate doctors to upcode or do all kinds of things in order to get paid." Defendant Palihapitiya also said during this interview that SCH was "really excited after months of diligence and work to announce [the] merger between IPOC and Clover Health to take Clover Health public."

On October 20, 2020, SCH filed a Form S-4 Registration Statement with the SEC. In this document, SCH and Clover represented that they had discussed "typical due diligence," and that "[f]rom August 25, 2020 to August 28, 2020," SCH, Clover, and their legal representatives "held a meeting via video teleconference to discuss certain preliminary healthcare regulatory and compliance due diligence matters, given the regulated nature of Clover's business." This document further provided that on August 27, 2020, SCH's legal counsel was "provided with access to a virtual data room of Clover and began conducting a preliminary legal due diligence review of Clover." The document further provided that representatives of SCH and Clover met several other times to discuss, inter alia, due diligence review and matters associated therewith.

5

On November 19, 2020, SPH filed a presentation with the SEC entitled "Clover Health: A Deeper Dive."  This presentation lauded Clover's "Virtuous Growth Cycle."  The presentation further asserted that "Physicians Value the Clover Assistant," and that "[i]n ~2 years since product launch, we've built a broad base of engaged physicians.  Given our software-driven approach, we believe we can scale these results rapidly within existing and new markets."  In this presentation, Clover further stated that physicians were "[i]ncentivized to use [Clover's] highly delightful tech platform . . . that suggests personalized care recommendations at the point of care" and that the platform was "[d]esigned to work with any PCP and remove financial concerns from clinical decision-making."

On January 6, 2021, SCH announced that its shareholders voted to approve of the proposed business combination with Clover, and that the transaction was expected to close the next day.  On January 7, 2021, Clover and SCH announced the completion of the business combination.

On February 4, 2021, analyst Hindenburg Research published a report entitled "Clover Health: How the 'King of SPACs' Lured Retail Investors Into a Broken Business Facing an Active, Undisclosed DOJ Investigation."  In this report, Hindenburg "reveal[ed] how Clover Health and its Wall Street celebrity promoted, Chamath Palihapitiya, misled investors about critical aspects of Clover's business in the run-up to the company's SPAC go-public transaction last month."  Hindenburg wrote that: "[c]ritically, Clover has not disclosed that its business model and its software offering, called the Clover Assistant, are under active investigation by the Department of Justice (DOJ), which is investigating at least 12 issues ranging from kickbacks to marketing practices to undisclosed third-party deals, according to a Civil Investigative Demand . . . we obtained."  Hindenburg wrote that the DOJ's "Civil Investigative Demand and the

6

corresponding investigation present a potential existential risk for a company that derives almost all of its revenue from Medicare, a government payor. Our research indicates that the investigation has merit."

In its report, Hindenburg provided a link to a partially-redacted version of the Civil Investigative Demand that Hindenburg had obtained.  The Civil Investigative Demand provided that the DOJ was engaged in "a False Claims Act investigation" that "generally concerns whether Clover Health Investment Corporation and/or related entities improperly induced patient referrals for services paid for by Federal agencies."  Among the 12 specific topics that the DOJ sought information from Clover on were: (a) Clover's payments to healthcare providers to induce those providers to recruit patients to Clover's Medicare Advantage plans; (b) Clover's activities intended to encourage providers to refuse to accept patients with non-Clover coverage; (c) Clover's payments to providers' staff and employees for conveying any information relating to Clover plans to patients in providers' offices; (d) payments related to Clover Assistant; (e) Clover's patient recruitment efforts; (f) Clover's activities relating to matching patients with Medicare Advantage plans; and (g) the "Seek Medicare" online platform.

Hindenburg also noted that (1) "[w]e found that much of Clover's sales are driven by a major undisclosed related party deal and misleading marketing targeting the elderly[,]" (2) Clover's "Seek Insurance" "makes no mention of its relationship with Clover on its website yet misleading advertises to seniors that it offers 'independent' and 'unbiased' advice on selecting Medicare plans[,]" (3) "[m]ultiple former employees explained that much of Clover's sales are fueled by a major undisclosed relationship between Clover and an outside brokerage firm controlled by Clover's Head of Sales, Hiram Bermudez[,]" and (4) "according to doctors and former employees we interviewed," physicians use Clover's software "because Clover pays them

7

extra to use it. Physicians are paid $200 per visit to use the software, twice the normal reimbursement rate for a Medicare visit." Rather than being "delight[ed]" by Clover's technology, "[d]octors at key Clover providers described the software as 'embarrassingly rudimentary', 'a waste of my time' and as just another administrative hassle to deal with.

Through the Actions, the Investor Group seeks to recover for itself and absent class members the substantial losses that were suffered as a result of the defendants' fraud.

## ARGUMENT

## I. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) and 15 U.S.C. § 77z-1(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "[a]s soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a); *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 412 (6th Cir. 1998); *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1010-11 (6th Cir. 1993); *United States ex rel. Tenn. Valley Auth. v. Easement & Right-of-Way over 1.8 Acres of Land*, 682 F. Supp. 353, 355 (M.D. Tenn. 1988). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact or law, and the differences do not outweigh the interest of judicial economy served by consolidation. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *see In re GE Sec. Litig.*, No. 09 Civ. 1951(DC), 2009 WL 2259502, at *2-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

8

The Actions at issue here clearly involve common questions of fact and law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by the defendants. The Actions allege substantially the same wrongdoing, namely that the defendants issued materially false and misleading statements that artificially inflated the price of Clover securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Additionally, the *Kaul* Action asserts claims under the Securities Act on behalf of investors who were defrauded by the defendants concerning the same wrongdoing. Consolidation of the Actions is therefore appropriate. *See Kaplan*, 240 F.R.D. at 91-92 (finding consolidation appropriate despite differing class periods where the actions are all "securities fraud claims that arise from a common course of conduct.").

## II. THE INVESTOR GROUP IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A. The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l) and 15 U.S.C. § 77z-1(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-cv-00882, 2010 WL 1790763, at *1 (M.D. Tenn. Apr. 30, 2010); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

9

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i) and 15 U.S.C. § 77z-1(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *see also Garden City Emps.' Ret. Sys.*, 2010 WL 1790763, at *2 (describing the PSLRA's two-step competitive process for determining the "most adequate plaintiff"); *Blitz v. AgFeed Indus.*, No. 3:11-0992, 2012 WL 1192814, at *1-2 (M.D. Tenn. Apr. 10, 2012) (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); *see also Garden City Emps.' Ret. Sys.*, 2010 WL 1790763, at *2; *Blitz*, 2012 WL 1192814, at *1-2.

**B.      Under the PSLRA, the Investor Group Should be Appointed Lead Plaintiff**

As discussed below, the Investor Group should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, the Investor Group holds the largest financial interest of any movant, and the Investor Group otherwise satisfies Rule 23's typicality and adequacy requirements.

### 1. The Investor Group Filed a Timely Motion

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing. 15 U.S.C. § 78u-4(a)(3)(A)(i) and 15 U.S.C. § 77z-1(a)(3)(A)(i). Counsel for plaintiff Brinal Kaul published notice of the lead plaintiff deadline via *Businesswire* on February 5, 2021. *See* Ex. A; *see Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *3 (S.D.N.Y. Oct. 4, 2011) (finding publication in *Business Wire* sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before April 6, 2021. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i) and 15 U.S.C. § 77z-1(a)(3)(A)(i). Thus, the Investor Group's motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act and Section 27(a)(3)(B) of the Securities Act, the Investor Group timely signed and submitted the requisite certifications, identifying all of their relevant Clover trades during the Class Period, and detailing the Investor Group's suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met**.**

### 2. The Investor Group Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of

shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Garden City Emps.' Ret. Sys.*, 2010 WL 1790763, at *3; *Blitz*, 2012 WL 1192814, at *3; *Burgraff v. Green Bankshares, Inc.*, No. 2:10-cv-00253-CLC, 2011 WL 613281, at *2 (E.D. Tenn. Feb. 11, 2011). Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Norfolk Cty. Ret. Sys. v. Cmty. Health Sys.*, No. 3:11-cv-0433, 2011 WL 6202585, at *7 (M.D. Tenn. Nov. 28, 2011); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008); *In re GE*, 2009 WL 2259502, at *4; *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008); *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015).

Overall, during the Class Period, Investor Group purchased 64,670 net and 73,020 total Clover shares and suffered losses of $400,418.24 attributable to the fraud. *See* Ex. B. The Investor Group is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3. The Investor Group Meets Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Burgraff*, 2011 WL 613281, at *3; *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-cv-2830, 2010 WL 5173851, at *5 (W.D. Tenn. Dec. 15, 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001)) (same);

12

*Fuwei*, 247 F.R.D. at 436; *see also Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re the Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Burgraff*, 2011 WL 613281, at *3 ("A claim is typical under Rule 23 if it arises from the same event or practice or course that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."). "However, a lead plaintiff's claims need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality." *Topping*, 95 F. Supp. 3d at 623. *See Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 404 (M.D. Tenn. 1996) (holding that typicality "may be satisfied even if there are factual distinctions between the named plaintiffs and those of other class members").

The Investor Group's claims are clearly typical of the Class's claims. The Investor Group purchased Clover securities during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against Clover and certain of its officers under the federal securities laws. Because the factual and legal bases of the Investor Group's claims are similar to those of the Class's claims, the Investor Group necessarily satisfies the typicality requirement. *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279(CM), 2011 WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and [] he is

alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties.").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole.  *See Burgraff*, 2011 WL 613281, at *3 (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007)); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE*, 2009 WL 2259502, at *5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel").

As evidenced by the representations in its certifications, *see* Ex. B, Investor Group's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Kokkinis v. Aegean Marine Petroleum Network Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at *2 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *see also Blackmoss*, 252 F.R.D. at 191 (same).

The Investor Group as a whole has already demonstrated its commitment to protecting the interests of the class. As shown by the Joint Declaration filed with this motion as Exhibit C to the Declaration of Charles F. Barrett, the Investor Group is well-organized, well-qualified and

has affirmed its commitment to furthering the best interests of the class and fulfilling its fiduciary duties if appointed Lead Plaintiff.

The Investor Group has also selected and retained highly competent counsel to litigate the claims on behalf of itself and the Class. As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Ex. D. Consequently, The Investor Group is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, the Investor Group respectfully submits that it is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## III. INVESTOR GROUP'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v), Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. The Investor Group has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. D; *see also Reitan v. China Mobile Games & Entm't Grp.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases."). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., Sterrett v. Sonim Techs., Inc.*, No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm obtained final approval

15

of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action, obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtained a recovery of more than $930 million for the benefit of the Company and negotiated important corporate governance reforms designed to make the nominal defendant corporation a model of

16

responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel, recovered a $5.5 million settlement); *In re Olsten Corp. Sec. Litig.*, No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002) (where the Faruqi Firm, as co-lead counsel, recovered $3 million for the class); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.); *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (appointed sole lead counsel for the class); *Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (appointed as sole lead counsel for the class); *In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (appointed as sole lead counsel for the class); *Liu v. Intercept Pharms. Inc.,* No. 1:17-cv-07371-LAK (S.D.N.Y.) (appointed as sole lead counsel for the class); *Lehmann v. Ohr Pharm. Inc.*, No. 1:18-cv-01284-LAP (S.D.N.Y.) (appointed as sole lead counsel for the class); *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (appointed as co-lead counsel for the class); *In re CV Scis., Inc. Sec. Litig.*, No. 2:18-cv-01602-JAD-BNM (D. Nev.) (appointed as sole lead counsel for the class); *In re Amarin Corp. PLC Sec. Litig.*, No. 3:19-cv-06601-BRM-TJB (D.N.J.) (appointed as co-lead counsel for the class); *Rudani v. Ideanomics, Inc.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (appointed as sole lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[5] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[6] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com/our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

Further, the Investor Group requests that the Neal Harwell Firm be appointed Liaison Counsel. The Neal Harwell Firm has extensive experience litigating and serving as liaison counsel in all manner of civil cases in state and federal courts throughout Tennessee. *See* Barrett Decl., Ex. F. Charles F. Barrett, who will serve as local liaison counsel to the Faruqi Firm, is a member in the Neal Harwell Firm and has worked as a civil litigator in state and federal courts

---

[5]   *See* Ex. E (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business).

[6]   *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

across the country. The Neal Harwell Firm maintains its office in Nashville and offers state-of-the-art resources for communication, document control, research and litigation support to allow for efficient local assistance to the Lead Counsel. *See id.*

## CONCLUSION

For the foregoing reasons, Investor Group respectfully requests that the Court (1) consolidate the above-captioned Actions; (2) appoint it as Lead Plaintiff; (3) approve its selection of the Faruqi Firm as Lead Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: April 6, 2021 Respectfully submitted,

By: */s/ Charles F. Barrett*
Charles F. Barrett
**NEAL & HARWELL, PLC**
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: (615) 238-3647
Facsimile: (615) 726-0573
Email: cbarrett@nealharwell.com

James M. Wilson, Jr. (*pro hac vice* forthcoming)
Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com
rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff and [Proposed] Lead Counsel for the putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on April 6, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

Respectfully submitted,

*/s/ Charles F. Barrett*
Charles F. Barrett

20

**3:21-cv-00096** Bond v. Clover Health Investments, Corp. et al
Aleta A. Trauger, presiding
**Date filed:** 02/05/2021
**Date of last filing:** 03/30/2021

# Parties

**Timothy Bond**
individually and on behalf of all other similarly situated

*Added: 02/05/2021*
*(Plaintiff)*

represented by

**Jeffrey C. Block**
Block & Leviton LLP
260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
(617) 507-6020 (fax)
jeff@blockleviton.com
*Assigned: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin A. Gastel**
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801
(615) 255-5419 (fax)
beng@bsjfirm.com
*Assigned: 02/05/2021*
*ATTORNEY TO BE NOTICED*

**James Gerard Stranch, IV**
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801
(615) 255-5419 (fax)
gerards@bsjfirm.com
*Assigned: 02/05/2021*
*ATTORNEY TO BE NOTICED*

**Stephen J. Teti**
Block & Leviton LLP
260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
(617) 507-6020 (fax)

steti@blockleviton.com
*Assigned: 02/05/2021*
*ATTORNEY TO BE NOTICED*

**Jacob A. Walker**
Block & Leviton LLP
260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
(617) 507-6020 (fax)
jake@blockleviton.com
*Assigned: 02/05/2021*
*ATTORNEY TO BE NOTICED*

**Clover Health Investments, Corp.**
*Added: 02/05/2021*
*(Defendant)*

**Vivek Garipalli**
*Added: 02/05/2021*
*(Defendant)*

**Chamath Palihapitiya**
*Added: 02/05/2021*
*(Defendant)*

**Andrew Toy**
*Added: 02/05/2021*
*(Defendant)*

Case 3:21-cv-00096    Document 35    Filed 04/06/21    Page 27 of 34 PageID #: 775

**3:21-cv-00101** Kaul v. Clover Health Investments, Corp. et al
Aleta A. Trauger, presiding
**Date filed:** 02/05/2021
**Date of last filing:** 03/03/2021

# Parties

**Clover Health Investments, Corp.**
*Added: 02/05/2021*
*(Defendant)*

**Vivek Garipalli**
*Added: 02/05/2021*
*(Defendant)*

**Brinal Kaul**
*Added: 02/05/2021*
*(Plaintiff)*

represented by

**Paul Kent Bramlett**
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
(615) 254-4116 (fax)
pknashlaw@aol.com
*Assigned: 02/05/2021*
*ATTORNEY TO BE NOTICED*

**Robert P. Bramlett**
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
(615) 254-4116 (fax)
robert@bramlettlawoffices.com
*Assigned: 02/05/2021*
*ATTORNEY TO BE NOTICED*

**Phillip Kim**
The Rosen Law Firm, P.A.
275 Madison Avenue
34th Floor
New York, NY 10016
(212) 686-1060
pkim@rosenlegal.com
*Assigned: 02/08/2021*
*ATTORNEY TO BE NOTICED*

Case 3:21-cv-00096    Document 35    Filed 04/06/21    Page 28 of 34 PageID #: 776

**Laurence M. Rosen**
The Rosen Law Firm, P.A.
275 Madison Avenue
34th Floor
New York, NY 10016
(212) 686-1060
lrosen@rosenlegal.com
*Assigned: 02/08/2021*
*ATTORNEY TO BE NOTICED*

**Ian Osborne**
*Added: 02/05/2021*
*(Defendant)*

**Chamath Palihapitiya**
*Added: 02/05/2021*
*(Defendant)*

**Jacqueline D. Reses**
*Added: 02/05/2021*
*(Defendant)*

**James Ryans**
*Added: 02/05/2021*
*(Defendant)*

**Steven Trieu**
*Added: 02/05/2021*
*(Defendant)*

**Joseph Wagner**
*Added: 02/05/2021*
*(Defendant)*

**3:21-cv-00109** Yaniv v. Clover Health Investments, Corp. et al
Aleta A. Trauger, presiding
**Date filed:** 02/10/2021
**Date of last filing:** 03/10/2021

# Parties

**Clover Health Investments, Corp.**
*Added: 02/10/2021*
*(Defendant)*

**Vivek Garipalli**
*Added: 02/10/2021*
*(Defendant)*

**Andrew Toy**
*Added: 02/10/2021*
*(Defendant)*

**Joseph Wagner**
*Added: 02/10/2021*
*(Defendant)*

**Matthew Yaniv**
Individually and on Behalf of All Others
Similarly Situated

*Added: 02/10/2021*
*(Plaintiff)*

represented
by

**Mary K. Blasy**
Robbins Geller Rudman & Dowd LLP
(New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
(631) 367-1173 (fax)
mblasy@rgrdlaw.com
*Assigned: 02/10/2021*
*ATTORNEY TO BE NOTICED*

**Jerry E. Martin**
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
(615) 252-3798 (fax)
jmartin@barrettjohnston.com
*Assigned: 02/10/2021*
*ATTORNEY TO BE NOTICED*

**Mark S. Reich**

Case 3:21-cv-00096    Document 35    Filed 04/06/21    Page 30 of 34 PageID #: 778

Robbins Geller Rudman & Dowd LLP
(New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
(631) 367-1173 (fax)
mreich@rgrdlaw.com
*Assigned: 02/10/2021*
*ATTORNEY TO BE NOTICED*

**Samuel H. Rudman**
Robbins Geller Rudman & Dowd LLP
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
(631) 367-1173 (fax)
srudman@rgrdlaw.com
*Assigned: 02/10/2021*
*ATTORNEY TO BE NOTICED*

**Christopher M. Wood**
Robbins Geller Rudman & Dowd LLP
(Nashville Office)
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2203
(615) 252-3798 (fax)
cwood@rgrdlaw.com
*Assigned: 02/10/2021*
*ATTORNEY TO BE NOTICED*

# **3:21-cv-00138** Tremblay v. Clover Health Investments, Corp. et al
### Aleta A. Trauger, presiding
### **Date filed:** 02/22/2021
### **Date of last filing:** 03/28/2021

# **Parties**

**Clover Health Investments, Corp.**
*Added: 02/22/2021*
*(Defendant)*

**Vivek Garipalli**
*Added: 02/22/2021*
*(Defendant)*

**Ian Osborne**
*Added: 02/22/2021*
*(Defendant)*

**Chamath Palihapitiya**
*Added: 02/22/2021*
*(Defendant)*

**Jacqueline D. Reses**
*Added: 02/22/2021*
*(Defendant)*

**James Ryans**
*Added: 02/22/2021*
*(Defendant)*

**Andrew Toy**
*Added: 02/22/2021*
*(Defendant)*

| | | |
|---|---|---|
| **Jean-Nicolas Tremblay**<br>Individually and On Behalf of All Others Similarly Situated<br><br>*Added: 02/22/2021*<br>*(Plaintiff)* | represented<br>by | **Paul Kent Bramlett**<br>Bramlett Law Offices<br>40 Burton Hills Blvd.<br>Suite 200<br>P O Box 150734<br>Nashville, TN 37215<br>(615) 248-2828<br>(615) 254-4116 (fax)<br>pknashlaw@aol.com<br>*Assigned: 02/22/2021*<br>*ATTORNEY TO BE NOTICED* |

Case 3:21-cv-00096   Document 35   Filed 04/06/21   Page 32 of 34 PageID #: 780

**Robert P. Bramlett**
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
(615) 254-4116 (fax)
robert@bramlettlawoffices.com
*Assigned: 02/22/2021*
*ATTORNEY TO BE NOTICED*

**Patrick V. Dahlstrom**
Pomerantz LLP (Chicago
Office)
10 S LaSalle Street
Suite 3505
Chicago, IL 60603
(312) 377-1181
(312) 377-1184 (fax)
pdahlstrom@pomlaw.com
*Assigned: 02/22/2021*
*ATTORNEY TO BE NOTICED*

**Corey D. Holzer**
Holzer & Holzer, LLC
1200 Ashwood Parkway
Suite 410
Atlanta, GA 30338
(770) 392-0090
(770) 392-0029 (fax)
cholzer@holzerlaw.com
*Assigned: 02/22/2021*
*ATTORNEY TO BE NOTICED*

**J. Alexander Hood, II**
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
(212) 661-1100
(212) 661-8665 (fax)
ahood@pomlaw.com
*Assigned: 02/22/2021*
*ATTORNEY TO BE NOTICED*

**Jeremy A. Lieberman**
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor

New York, NY 10016
(212) 661-1100
(212) 661-8665 (fax)
jalieberman@pomlaw.com
*Assigned: 02/22/2021*
*ATTORNEY TO BE NOTICED*

**James M. LoPiano**
Pomerantz LLP
600 Third Avenue
New York, NY 10016
(212) 661-1100
(212) 661-8665 (fax)
jlopiano@pomlaw.com
*Assigned: 02/22/2021*
*TERMINATED: 03/12/2021*

**Steven Trieu**
*Added: 02/22/2021*
*(Defendant)*