UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| TIMOTHY BOND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CLOVER HEALTH INVESTMENTS, CORP., et al.,<br><br>Defendants. | Civil Action No. 3:21-cv-00096<br><br>Judge Aleta A. Trauger<br><br><u>CLASS ACTION</u> |

**RESPONSE OF MOVANT KENNETH RYAN MEADOWS AND MIT DESAI, M.D., TO COMPETING LEAD PLAINTIFF MOTIONS AND IN FURTHER SUPPORT OF THEIR MOTION FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT...........................................................................................................3

        A.      Mr. Meadows and Dr. Desai Satisfy the PSLRA's Requirements for Lead
                Plaintiff Appointment ................................................................................3

        B.      Both Jabri and Bunton Are Aliases; Who Are They?................................4

        C.      Bunton's Erroneous Loss Calculation Undermines His Adequacy .........6

        D.      None of the Other Movants Suffered Meaningfully Greater Losses Than
                Mr. Meadows and Dr. Desai, and Thus the Presumption in Favor of the
                Plaintiff with the Largest Financial Interest Does Not Apply ................9

        E.      Mr. Meadows and Dr. Desai's Knowledge, Experience, and Expertise
                Render Them a Superior Lead Plaintiff.................................................10

                1.      Mr. Meadows and Dr. Desai's Extensive Professional Experience
                        in Clover's Industry Will Benefit the Class................................11

                2.      The Proximity of Meadows and His Counsel to the Courthouse and
                        the Locus of The Litigation Will Benefit the Class ..................13

        F.      If Any Questions Remain, the Court Should Hold An Evidentiary Hearing.........14

III.    CONCLUSION.....................................................................................................14

4819-2555-2100.v1

Case 3:21-cv-00096    Document 56    Filed 04/20/21    Page 2 of 23 PageID #: 1175

# TABLE OF AUTHORITIES

**Case**     <u>Page(s)</u>

*Acticon AG v. China North East Petroleum Holdings Ltd.*,
692 F.3d 34 (2d Cir. 2012)...................................................................................... 7, 8

*Bhojwani v. Pistiolis*,
2007 WL 9228588 (S.D.N.Y. July 31, 2007) ............................................... 2, 6, 7, 9

*Camp v. Qualcomm Inc.*,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019)............................................................ 6, 9

*Cosby v. KPMG, LLP*,
2020 WL 3548379  (E.D. Tenn. June 29, 2020) ......................................................... 7

*Gordon v. Sonar Capital Mgmt. LLC*,
2012 WL 1193844 (S.D.N.Y. Apr. 9, 2012)............................................................. 10

*Hedick v. Kraft Heinz Co.*,
2019 WL 4958238 (N.D. Ill. Oct. 8, 2019)................................................................. 1

*Hirtenstein v. Cempra, Inc.*,
2017 WL 2874588 (M.D.N.C. Jul. 5, 2017).............................................................. 9

*In re Bard Assocs., Inc.*,
2009 WL 4350780 (10th Cir. Dec. 2, 2009) ............................................................. 5

*In re Boeing Co. Aircraft Sec. Litig.*,
2020 WL 476658 (N.D. Ill. Jan. 28, 2020) ........................................................... 5, 6

*In re Enzymotec Ltd. Sec. Litig.*,
2015 WL 918535 (D.N.J. Mar. 3, 2015).................................................................... 4

*In re HEXO Corp. Sec. Litig.*,
2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020)........................................................... 4

*In re Mego Financial Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .................................................................................... 8

*In re Millennial Media, Inc. Sec. Litig.*,
87 F. Supp. 3d 563 (S.D.N.Y. 2015)........................................................................ 10

*In re Razorfish, Inc. Sec. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001)........................................................................ 3

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015)........................................................ 2, 9

4819-2555-2100.v1

*Juliar v. Sunopta, Inc.*,
   2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) .......................................................................... 10

*Karp v. Diebold Nixdorf, Inc.*,
   2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration*, 2019 WL
   6619351 (S.D.N.Y. Dec. 5, 2019)............................................................................................ 6

*Micholle v. Ophthotech Corp.*,
   2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .......................................................................... 6

*Perez v. HEXO Corp.*,
   2020 WL 905753 (S.D.N.Y. Feb. 25, 2020)............................................................................. 4

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................................ 11

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 06 Civ. 5797(PAC),
   2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007)......................................................................... 10

*Randall v. Fifth St. Fin. Corp.*,
   2016 WL 462479 (S.D.N.Y. Feb. 1, 2016)...................................................................... 3, 9, 10

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) .................................................................................................. 14

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008)..................................................................................................... 5

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
   2021 WL 533518 (S.D. Cal. Feb. 12, 2021)............................................................................ 5

Statutes

15 U.S.C. §78u-4(a)(3)(B)(ii) ......................................................................................................... 1
15 U.S.C. §78u-4(a)(3)(B)(v) ......................................................................................................... 4
15 U.S.C. § 78u–4(e)(1).............................................................................................................. 7, 8
15 U.S.C. § 78u–4(e)(3).............................................................................................................. 7, 8

Rules

Fed. R. Civ. P. 23(a)(3).................................................................................................................. 4
Fed. R. Civ. P. 23(a)(4).................................................................................................................. 4
Fed. R. Civ. P. 23(A)(4)............................................................................................................... 14

Other Authorities

S.Rep. No. 104–98 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 699....................................... 7, 8

4819-2555-2100.v1

## I. INTRODUCTION

On April 6, 2021, pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4(a)(3)(B)(ii) (the "PSLRA"), Kenneth Ryan Meadows and Mit Desai, M.D. ("Mr. Meadows and Dr. Desai") timely filed their Motion seeking to represent a class of investors who purchased the securities of Clover Health Investments, Corp. ("Clover" or the "Company") during the period of October 6, 2020 through and including February 4, 2021 (the "Class Period"). *See* ECF No. 37. While eight other motions were also timely filed, none presents a superior basis for lead plaintiff appointment. Indeed, six of the eight other movants claim to have lost less than Mr. Meadows and Dr. Desai; accordingly, their motions should be denied.[1] While two other movants, Firas Jabri[2] and Christopher Bunton, claim to have incurred larger losses, each suffers from disqualifying defects or has other attributes which warrant denial of their motions.[3]

As a threshold issue, both Jabri and Bunton appear to use different legal names than those identified in their sworn certifications and declarations before this Court. According to publicly available information, Mr. Jabri's legal name appears to be Mohamad Faher Jabri, and Mr. Bunton also appears to use the name Christopher ***Burton***. This calls into question their very identities and thus their credibility. *See Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *11 (N.D. Ill. Oct. 8, 2019) (recognizing that "'honesty and trustworthiness are relevant factors in assessing a

---

[1] These motions were filed by: (1) Prabhjot Ahluwalia (ECF No. 15); (2) Dwight G. Metcalf (ECF No. 19); (3) Lori Brennan (ECF No. 22); (4) Andrew Trefonas, Birgitta Edberg, Jeon Yeon Rhee, Nish Patel, and Rolf Edberg (ECF No. 25); (5) Aaron Farzan and Alejandro Handal (ECF No. 27); and (6) Lynn Kenneth Fuhriman and Mohamed Multhazim Akbar Ali (ECF No. 34). As of this filing, movants Ahluwalia and Trefonas/Edberg/Rhee/Patel/Edberg have filed notices of non-opposition to the other motions. *See* ECF Nos. 48, 49.

[2] ECF No. 40.

[3] ECF No. 28.

candidate's ability to serve as an adequate fiduciary for a class'" and denying motion by movant with facially larger financial interest) (citation omitted).

These are not harmless oversights. If at the earliest stages of a case a motion fails to correctly identify the movant, that does not bode well for the Class. More fundamentally, how is the Court (and the Class) to be assured of who is actually being appointed to lead this case if it is not apparent from the moving papers?  Further compounding those basic errors, Bunton submitted an erroneous loss calculation for his Clover investments, casting further doubt on his adequacy and ability to serve in a fiduciary capacity here. Correctly identifying the movant and performing the required statutory mathematical computations are the most basic requirements for a lead plaintiff that, with its counsel, is asking the Court to be entrusted with the difficult task of competently preparing and prosecuting a complex class action through trial and post-trial appeals against eminently qualified defense counsel.  *See, e.g.*, *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (finding that the "Court is unable to verify [movant's] claimed losses which 'undermines [its] adequacy' as lead plaintiff" and denying motion by movant with larger financial interest); *Bhojwani v. Pistiolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007)) ("[T]he fact that the data still do not quite add up indicates a certain carelessness about detail that undermines the adequacy of Mr. Cole (and his associated group) as lead plaintiff.").

By contrast, Mr. Meadows and Dr. Desai possess a wealth of directly relevant professional expertise and experience that renders them particularly well-qualified to serve as Lead Plaintiff in this action. Their respective careers and experience in healthcare have afforded them extensive exposure not only to healthcare administration, but to healthcare fraud detection and analysis – ***the very issues at the heart of these claims***. There could be no better stewards of this class action than Mr. Meadows and Dr. Desai.

Moreover, both Mr. Meadows and his counsel Robbins Geller are located not only in the Middle District, but in the Nashville area. Robbins Geller routinely appears before this Court and is thoroughly familiar with its practices and procedures. Likewise, the fact that Mr. Meadows resides in Brentwood means that he has familiarity with Clover, its business, and the media reports covering this alleged fraud. Moreover, he will be readily available to appear at hearings and to meet frequently with counsel. Such enhanced knowledge and oversight and physical proximity are guaranteed to provide the class significant cost and efficiency benefits that will enhance the prosecution of these claims.

Taken together, the foregoing factors overwhelmingly militate in favor of the conclusion that Mr. Meadows and Dr. Desai are ideally suited to lead this case, and that their appointment as Lead Plaintiff will promote[] consistency with the PSLRA's aim of ensuring a lead plaintiff can "***act like a 'real' client***, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation [i]s delivered at a reasonable price." *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001) (emphasis added).

## II.     ARGUMENT

### A.     Mr. Meadows and Dr. Desai Satisfy the PSLRA's Requirements for Lead Plaintiff Appointment

As set forth in the memorandum of law submitted in support of their opening Motion, Movant Mr. Meadows and Dr. Desai amply satisfy the PSLRA's criteria for serving as Lead Plaintiff.

***First***, Mr. Meadows and Dr. Desai timely filed their Motion.

***Second***, with losses of $409,161.71 in their Clover investments, Mr. Meadows and Dr. Desai have a substantial interest in the outcome of the litigation. None of the other movants – including Jabri and Bunton – claims to have suffered a meaningfully greater loss. *See Randall v.*

*Fifth St. Fin. Corp.*, 2016 WL 462479, at \*3 (S.D.N.Y Feb. 1, 2016) (competing movants' losses of $115,195, $90,550, and $70,738 were deemed "approximately equal").

**Third**, Mr. Meadows and Dr. Desai otherwise satisfy Federal Rule of Civil Procedure 23 in that their "claims or defenses . . . are typical of the claims or defenses of the class" and they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3), (4). No other movant has, or could, present evidence to the contrary.

In addition, Mr. Meadows and Dr. Desai have selected as their counsel Robbins Geller, Levi & Korsinsky, and Berger Montague. The counsel they have selected each possesses extensive experience and have achieved substantial success litigating securities class actions from inception through trial, including in this District. Moreover, these firms have served together as co-lead counsel in prior class actions (as well as currently) and are adept at litigating in a manner that maximizes the benefit to the class while avoiding duplication of effort. Mr. Meadows and Dr. Desai have thus satisfied the PSLRA's mandate to "select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v).

Mr. Meadows and Dr. Desai amply meet all the criteria for lead plaintiff appointment enumerated in the PSLRA. And for the reasons set forth below, they should be selected over all the other movants, including Jabri and Bunton.

### B. Both Jabri and Bunton Are Aliases; Who Are They?

Among the most basic requirements for service as lead plaintiff is informing the Court (and competing movants) who the actual movant is. *See Perez v. HEXO Corp.*, 2020 WL 905753, at \*2 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.*, 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) ("an investor seeking to be appointed lead plaintiff – though he need only make a preliminary showing that he satisfies the requirements of Rule 23 – nonetheless need[s] to provide enough information to make [that] preliminary showing") (cleaned

up); *In re Enzymotec Ltd. Sec. Litig.*, 2015 WL 918535, at *3 (D.N.J. Mar. 3, 2015) (denying motion by movant with largest financial interest that failed to provide signing authority on certification as "[i]t seems plain to this Court . . . that any proper certification would include such basic information").

Here, both Jabri's and Bunton's names as presented to the Court in sworn certifications and declarations do not match their legal names. This is no small matter, given that a movant's proper legal standing is fundamental to his ability to assert claims not only on his own behalf, but on behalf of the putative class. As such, the moving papers filed by Jabri and Bunton deprive the Court and the other movants of the ability to test their standing to be appointed, which, in turn, creates the unnecessary and altogether avoidable risk that disabling conflicts will surface during the discovery phase. And, where standing challenges exist (as here), the movant cannot be said to be an adequate representative. *See generally In re Bard Assocs., Inc.*, 2009 WL 4350780 (10th Cir. Dec. 2, 2009) (denying petition for writ of mandamus by movant claiming to have suffered largest financial interest that failed to evidence proper legal standing by PSLRA statutory deadline).

Details matter in litigation, especially in representative litigation where absent putative class members are relying on the typicality and adequacy of the lead plaintiff to dutifully prosecute their claims against defendants. Because the names that Jabri and Bunton have used in the judicial record appear to conflict with their aliases, they have failed to inform the Court and the other movants who they really are, and their motions should be denied. *See Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at *4 (S.D. Cal. Feb. 12, 2021) (finding that "[w]hether the error [in omitting the identity of additional counsel from motion] was indeed inadvertent, this omission and [movant's] lack of attention to detail calls into question the ability of Li to adequately serve as Lead Plaintiff in a class action"); *In re Boeing Co. Aircraft Sec. Litig.*,

- 5 -

2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020) ("Under either scenario, their failure to discover these obvious errors independently warrants a determination that the Wangs will not be adequate representatives of the class.").

### C. Bunton's Erroneous Loss Calculation Undermines His Adequacy

Bunton's inability to follow the clear language of the PSLRA and his submission of a loss calculation that overstates his losses by $46,628, or nearly 9%, also renders him inadequate. *See Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration*, 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) (finding that "the exaggerated loss totals originally submitted by the Aroras represented no slight error; it was an error of some 34%" which "struck at the core of the PSLRA's lead plaintiff inquiry"; and finding that where it "took the Aroras nearly two weeks to supply corrected figures," "[t]aken together, these issues indicate to the Court a 'certain carelessness about detail that undermines the adequacy' of the Aroras as a lead plaintiff in a complex securities class action" and denying motion); *Camp v. Qualcomm Inc.*, 2019 WL 277360, at *1-4 (S.D. Cal. Jan. 22, 2019) (despite having the largest financial interest, movant was deemed not adequate due to errors in his motion, including an erroneous loss calculation); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *8 (S.D.N.Y. Mar. 13, 2018) (denying motion by movant with "overstated" financial loss where the "accuracy of his data [was called] into question"); *Bhojwani*, 2007 WL 9228588, at *3-4 (discrepancies in data and claimed losses undermined movant's adequacy to serve as lead plaintiff).

According to Bunton's submission, he purchased three options contracts during the Class Period that are "outstanding" – that is, not exercised or sold as of the end of the Class Period. The three options consist of: (1) 8/20/2021 $12.50 Call; (2) 8/20/21 $17.50 Call; and (3) 12/17/21 $25.00 Call. Bunton Motion, Ex. C, at 2.

Fatal to his application for appointment, Bunton valued these options using the closing price on April 5, 2021, the day prior to the filing of his lead plaintiff motion. *Id*. Doing so does not comport with the PSLRA, which requires securities held as of the end of the Class Period to be valued ***using the 90-day moving average*** – the "bounce-back" or "look-back" price. The 90-day look-back period in this case begins on February 5, 2021 (the first trading day after the corrective disclosure impacted the price of Clover securities) and continues through April 5, 2021 (the last trading day before the lead plaintiff deadline of April 6, 2021). 15 U.S.C. § 78u–4(e)(1)-(3). Because Bunton valued these positions using the closing price on April 5, 2021, instead of the moving average during the 90-day look-back period, he artificially inflated his loss by a combined figure of $46,628.05.

This is not a benign technicality. Congress deliberately included 15 U.S.C. § 78u–4(e)(3) in the PSLRA in order to cap the amount of damages available to a prospective plaintiff in a securities fraud action – in other words, ***to prevent the very overstatement of losses that Bunton has submitted here***. S.Rep. No. 104–98, at 20 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 699. Specifically, the statute provides that

> in any private action…in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price…by the plaintiff for the subject security and ***the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market***.

15 U.S.C. § 78u–4(e)(1) (emphasis added). *See Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 38-40 (2d Cir. 2012); *Cosby v. KPMG, LLP*, 2020 WL 3548379, at *27-28 (E.D. Tenn. June 29, 2020). The PSLRA clearly defines "mean trading price" as "an average of the daily trading price of that security, determined as of the close of the market each day during the 90-day period." 15 U.S.C. § 78u–4(e)(3). "The PSLRA's legislative history

- 7 -

indicates that Congress imposed this limitation because it believed that '[c]alculating damages based on the date corrective information is disclosed may substantially overestimate plaintiff's actual damages.'" *Acticon*, 692 F.3d at 39 (quoting S.Rep. No. 104–98, at 20 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 699). "It intended the 'bounce back' provision to have the effect of 'limiting damages to those losses caused by the fraud and not by other market conditions.'" *Id*.; *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000).

Bunton's miscalculations for each of his three outstanding options are readily identifiable. All told, Bunton overstated his losses on the 8/20/21 $12.50 Calls,[4] 8/20/21 $17.50 Call,[5] and 12/17/21 $25.00 Call[6] by a ***combined total of $46,628.05*** ($16,580 + $1,454.05 + $28,594). Bunton's failure to comply with the loss calculation provisions of the PSLRA resulted in clear and

---

[4] When running the moving average from February 5, 2021 through April 5, 2021 for the 8/20/2021 $12.50 Call, the result is $1.9580, which is then multiplied by the "quantity" of contracts purchased (100) x 100 (option). The result is $19,580, which is the value of the 8/20/2021 $12.50 Call position pursuant to the 90-day moving average. Therefore, the loss should be 100 contracts x $5.90 (price paid) x 100 = $59,000 - $19,580 (price of option during the 90-day bounce back or look-back period) = $39,420. Bunton's stated loss on this position was $56,000 – ***an overstatement of $16,580***.

[5] As to the 8/20/21 $17.50 Call, Bunton used the closing price on April 5, 2021, which was $0.16. Valuing this position pursuant to the PSLRA look-back period from February 5, 2021 through April 5, 2021, the result is a PSLRA moving average of $1.2915. $1.2915 is then multiplied by the "quantity" of contracts purchased (47 contracts) x 100 (option). The result is a value for this call under the 90-day moving average of $6,070.05. Accordingly, the loss should be 47 contracts x $3.80 (price paid) x 100 = $17,860 - $6,070.05 (price of option during the 90-day bounce back or look-back period) = $11,789.95. Bunton's stated loss on this position was $13,244.00 which is ***overstated by $1,454.05***.

[6] As to the 12/17/21 $25.00 Call, Bunton used the close for the day on April 5, 2021, which was $0.26. Again, if the position is valued pursuant to the PSLRA during the bounce back or look-back period from February 2, 2021 through April 5, 2021, the result is $1.2460 as the PSLRA moving average. $1.2460 is then multiplied by the "quantity" of contracts purchased (290) x 100 (option) and the result is $36,134, which is the value of 12/17/21 $25.0 Call position pursuant to the PSLRA and the 90-day moving average. The loss should be 290 contracts x $3.45 (price paid) x 100 = $100,050 - $36,134 (price of option during the 90-day bounce back or look-back period) = $63,916. Bunton's stated loss on this position was $92,510, ***an overstatement of $28,594***.

- 8 -

material inaccuracies in his lead plaintiff motion, rendering him inadequate. Accordingly, Bunton should be disqualified. *See Camp*, 2019 WL 277360, at \*1-4 (although the court determined that movant Singh had the "largest financial interest," he was not an adequate lead plaintiff because there were several errors in his submission, including his certification and the loss calculations accompanying his motion); *Bhojwani*, 2007 WL 9228588, at \*3-4 (denying a movant's lead plaintiff motion because the group's adequacy was undermined by discrepancies in the trading data and loss calculations). *See also Hirtenstein v. Cempra, Inc.*, 2017 WL 2874588, at \*3 n.5 (M.D.N.C. Jul. 5, 2017) (warning that errors in exhibits to sworn declarations, including loss calculations, have detrimental effects on securities litigation, and the submission of erroneous loss calculations demonstrates carelessness and undermines the adequacy of a proposed lead plaintiff); *Irving Firemen's Relief and Ret. Fund*, 2015 WL 1345931, at \*3 (noting that the inability to provide accurate data in certification renders the Court "unable to verify its claimed losses which 'undermines . . . adequacy' as lead plaintiff").

**D.** **<u>None of the Other Movants Suffered Meaningfully Greater Losses Than Mr. Meadows and Dr. Desai, and Thus the Presumption in Favor of the Plaintiff with the Largest Financial Interest Does Not Apply</u>**

As noted above, only two movants claim to have suffered greater economic harm than Mr. Meadows and Dr. Desai's losses of $409,161: Jabri claims losses of $542,646 and Bunton claims overstated losses of $526,644. As courts have held, the difference between these figures is not significant enough to suggest a stronger motivation to litigate. To the contrary, all three movants' losses are "approximately equal." *See Randall*, 2016 WL 462479, at \*3.

In *Randall*, at issue were three movants with respective losses of $115,195, $90,550, and $70,738. Judge Kaplan of the Southern District of New York did not find the difference between these losses meaningful:

4819-2555-2100.v1

This presumption is premised in part on the idea that the plaintiff with the largest financial stake in the litigation is most likely to manage the litigation actively. But this concept has its limits. ***As the difference among competing plaintiffs' alleged losses shrinks, so too does the persuasiveness of the presumption***. Indeed, some courts have declined to afford this presumption to movants—particularly individual investors—when the difference between their alleged losses and those of competing movants—particularly institutional investors—was "minimal."

*Id.* (citations omitted) (emphasis added).

Because the difference between the movants' losses were "approximately equal," the court concluded that "each movant has much the ***same economic incentive*** to monitor and control the litigation and economic interest in the possible recovery." *Id.* (emphasis added). So too here do Mr. Meadows and Dr. Desai have the same economic incentive as Jabri and Bunton. In fact, the difference between the movants in *Randall* (64%) is ***double*** the difference between the movants here (32%). *See Juliar v. Sunopta, Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (finding $30,000 difference between movants' losses to be "minimal"); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 06 Civ. 5797(PAC), 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) ($40,000 difference in losses is a "very slight difference" that "cannot dictate such an important result").

> E. **Mr. Meadows and Dr. Desai's Knowledge, Experience, and Expertise Render Them a Superior Lead Plaintiff**

Certain key facts present in this case overwhelmingly establish Mr. Meadows and Dr. Desai's superiority to lead these particular claims, including their expertise in healthcare administration and evaluating healthcare fraud, as well as their local presence that will aid in the management and oversight of this case. *See In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015) ("A co-lead plaintiff structure best protects the interests of the class . . . and gives the class the advantages of the combined knowledge, experience, and judgment of both lead plaintiffs); *Gordon v. Sonar Capital Mgmt. LLC*, 2012 WL 1193844, at *2 (S.D.N.Y.

- 10 -

Apr. 9, 2012) (appointing co-lead plaintiffs to "combine [their] expertise giv[ing] them a decided advantage in ... litigating the case").

### 1. Mr. Meadows and Dr. Desai's Extensive Professional Experience in Clover's Industry Will Benefit the Class

Clover is a Franklin, Tennessee-based health insurance service company that provides Medicare Advantage health plans to 57,000 members. ¶ 15.[7] The Company is accused of deceiving investors about the fact that its sales were driven by related-party deals and misleading marketing practices (for which Clover had been fined in 2016) and that Clover was under investigation by the U.S. Department of Justice ("DOJ") for fraudulent billing, kickbacks, and improper marketing practices, among other things. ¶¶ 35, 37-46. As set forth in the Joint Declaration submitted in support of the Motion (ECF No. 39-4) (the "Joint Declaration"), both Mr. Meadows and Dr. Desai have expertise in this professional arena. *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004) (holding that the "experience of a candidate" is "relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class").

Mr. Meadows, who has nearly two decades' worth of investing experience, holds a master's degree in healthcare administration from Washington University School of Medicine in St. Louis. Joint Decl. at ¶2. He previously served as Assistant Chief Executive Officer of a healthcare company.

Critically for purposes of this case, Mr. Meadows has served as a Practice Leader and a Director for accounting and healthcare consulting firms where his work entailed ***investigating and exposing medical and healthcare fraud*** – which is central to the claims against Clover. Indeed,

---

[7] All paragraph citations refer to the complaint filed in the lead case, *Bond v. Clover Health Investments, Corp.*, No. 3:21-cv-00096.

4819-2555-2100.v1

through his work as a consultant, Meadows has been engaged to examine several civil healthcare fraud cases in all stages of litigation.[8]

In sum, Mr. Meadows is a former hospital operator with an advanced degree in healthcare administration and personal experience in the investigation of medical fraud. *Id.* No movant can claim a greater appreciation for or have a more acute understanding of the allegations against Clover and its officers and directors.

Likewise, Dr. Desai, who has approximately forty years of investment experience, is a medical doctor who graduated from Wayne State University School of Medicine and completed his residency at the University of Illinois (Chicago) – Metropolitan Group Hospitals where he was awarded "Surgical Resident Teacher of the Year." Dr. Desai launched a general surgery practice specializing in acute care surgery in Tampa, Florida, then founded the Surgicalist Group, which focuses on emergent and urgent surgery services. Since its founding, the Surgicalist Group has expanded across the country and increased its surgical offerings to include trauma, advanced wound care, surgical advisory and surgical management. Dr. Desai currently serves as the Chief Executive Officer of the Surgicalist Group and is active in the Bandaid Foundation, which is a non-profit organization that provides surgical services to patients in India.[9]

The allegations against Clover bear directly on an industry in which Mr. Meadows and Dr. Desai, individually and collectively, have vast experience and knowledge. Both Mr. Meadows and Dr. Desai have a tangible understanding of the impact of healthcare fraud and violations of the False Claims Act and federal anti-kickback laws – the very same laws that Clover is accused of

---

[8]   https://www.linkedin.com/in/ryan-meadows-4640922/; https://www.chs.net/company-overview/; https://www.chs.net/home-2/; https://www.lbmc.com/about-us/; https://www.alixpartners.com/aboutalixpartners/.

[9]   Joint Decl. at ¶ 3; https://www.linkedin.com/in/drmitdesai/; https://www.thesurgicalist.com/meet-our-team-founder-ceo-mit-desai-md-facs/; https://www.thesurgicalist.com/ceo-and-founder-interview/.

- 12 -

violating. ¶¶ 39-40. They possess a level of knowledge, expertise, and experience regarding the core of this case that will undoubtedly inform their judgment to the great benefit of the class. No other movant can claim to bring such perspective and expertise to their fiduciary obligation as a Lead Plaintiff and to likewise assist counsel to efficiently and effectively prosecute this action. There is no reason why the Court should hesitate to allow the Class to benefit from Mr. Meadows and Dr. Desai's extensive and apt experience.

### 2. The Proximity of Meadows and His Counsel to the Courthouse and the Locus of The Litigation Will Benefit the Class

Mr. Meadows and Dr. Desai are also in a superior position to offer the Class a heightened level of oversight by virtue of geographic location. As a resident of Brentwood, Tennessee, Meadows resides and works close to Clover's corporate headquarters, his counsel, and this Court. Thus, not only does he already have great familiarity with the Company, its business, and the Hindenburg Research report of February 4, 2021 that exposed the alleged fraud, but he also has ready access to his attorneys and to the forum where these claims will be litigated. He will thus be able to meet and consult with counsel on a frequent basis, and to appear at Court hearings with minimal expense to the Class. The proximity of Meadows – an expert in Clover's industry and in healthcare fraud – to the Company, to his counsel, and to this Court would unquestionably benefit the Class and the prosecution of the claims.

Moreover, Robbins Geller's extensive experience in litigating healthcare securities fraud cases in this District will ensure that the Class will have the highest caliber of representation. *See, e.g., Schuch v. HCA Holdings, Inc.*, No. 3:11-cv-01033, ECF No. 567 at 12-13 (M.D. Tenn. Apr. 11, 2016) (granting final approval for a $215 million recovery – the largest securities class action recovery ever in Tennessee).

**F.     If Any Questions Remain, the Court Should Hold An Evidentiary Hearing**

If there is any remaining doubt that Mr. Meadows and Dr. Desai should be appointed lead plaintiff, the Court should hold an evidentiary hearing where it can assess the competing movants for itself.  Judge Crenshaw utilized just such an evidentiary hearing just months ago in *Strougo v. Tivity Health, Inc.*, No. 20-CV-00165 (M.D. Tenn.), when disputes about the adequacy of a lead plaintiff were raised by the parties.  *Id.* at ECF No.  68.  Because each movant had "substantial financial interests in the litigation," the question "really turns on which would be the most adequate lead plaintiff to fairly and adequately protect the interests of the class, in conformity with Federal Rule of Civil Procedure 23(A)(4)."  ECF No.  92 at 102-03.

Faced with concerns about a movant's disclosures to the Court, as well as a movant's inability to attend "in-person meetings with lawyers and courts and others as this litigation proceeds," (*id.* at 107) the Court ultimately found that the class "would be better served," by appointing a movant who ***did not possess the largest loss, but was more accessible to its attorneys and the Court***.  *Id.* at 105-108 (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)). Likewise, an evidentiary hearing on the pending motions would allow the Court to ensure that the proposed class is receiving the most adequate representation possible.

**III.     CONCLUSION**

Ultimately, there is no meaningful difference between the losses suffered by Mr. Meadows, Dr. Desai, Jabri, and Bunton. There are, however, considerable and important differences between the movants.  While certain movants have been unable to satisfy the PSLRA's most basic requirements, Mr. Meadows and Dr. Desai possess relevant experience, expertise, and an ability to manage and oversee this case for the substantial benefit of Clover investors. None of the other movants come close to offering the Class the relevant knowledge and skill that Mr. Meadows and Dr. Desai possess.

- 14 -

The Court should therefore appoint Mr. Meadows and Dr. Desai to serve as Lead Plaintiff and approve their selection of Robbins Geller, Levi & Korsinsky, and Berger Montague as Lead Counsel.

DATED:  April 20, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
JENNIFER N. CARINGAL
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
jcaringal@rgrdlaw.com

LEVI & KORSINSKY, LLP
GREGORY M. NESPOLE
DANIEL TEPPER
MELISSA G. MULLER
55 Broadway, 10th Fl.
New York, NY 10006
Telephone: 212/363-7500
212/363-7171 (fax)
gnespole@zlk.com
dtepper@zlk.com
mmuller@zlk.com

- 15 -

BERGER MONTAGUE PC
Sherrie R. Savett
Michael Dell'Angelo
Andrew D. Abramowitz
Donnell Much
1818 Market Street, Suite 3600
Philadelphia, Pa 19103
Telephone: 215/875-3000
ssavett@bm.net
mdellangelo@bm.net
aabramowitz@bm.net
dmuch@bm.net

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff


BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

Local Counsel for [Proposed] Lead Plaintiff

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on April 20, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com

# Mailing Information for a Case 3:21-cv-00096 Bond v. Clover Health Investments, Corp. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Charles F. Barrett**
  cbarrett@nealharwell.com,pdozier@nealharwell.com

- **Larry Russell Belk , Jr**
  russell@sbinjurylaw.com,faith@sbinjurylaw.com

- **Saul C. Belz**
  sbelz@glankler.com,apospisil@glankler.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Jeffrey C. Block**
  jeff@blockleviton.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Benjamin A. Gastel**
  beng@bsjfirm.com,nicolev@bsjfirm.com,mariahy@bsjfirm.com,ecf-processor@bsjfirm.com,nicolev@ecf.courtdrive.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **Corey D. Holzer**
  cholzer@holzerlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Firas Jabri**
  PKNASHLAW@aol.com

- **Phillip Kim**
  pkim@rosenlegal.com

- **Britt K. Latham**
  blatham@bassberry.com,lbilbrey@bassberry.com,bmccaskill@bassberry.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,adonovan@barrettjohnston.com,eseaborn@barrettjohnston.com,jmartin@rgrdlaw.com

Case 3:21-cv-00096 Document 56 Filed 04/20/21 Page 22 of 23 PageID #: 1195

- **Mark S. Reich**
  mreich@rgrdlaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **John Tate Spragens**
  john@spragenslaw.com,stacia@spragenslaw.com,spragenslaw@ecf.courtdrive.com

- **James Gerard Stranch , IV**
  gerards@bsjfirm.com,ecf-processor@bsjfirm.com,jennifers@bsjfirm.com

- **Tara L. Swafford**
  tara@swaffordlawfirm.com

- **Stephen J. Teti**
  steti@blockleviton.com

- **Jacob A. Walker**
  jake@blockleviton.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,CWood@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)