**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

TIMOTHY BOND,

Lead Plaintiff

and

JEAN-NICOLAS TREMBLAY,

Named Plaintiff,

Individually and on Behalf of All Others Similarly Situated,

v.

CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI, ANDREW TOY, JOE WAGNER, and CHAMATH PALIHAPITIYA,

Defendants.

Case No. 3:21-cv-00096

Judge Aleta A. Trauger

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. NO ACTIONABLE MISSTATEMENT OR OMISSION HAS BEEN ADEQUATELY PLED ..... 2

A. The Court Should Not Credit the Hindenburg Report's Anonymous Sources ..... 2

B. The Decision Not to Specifically Disclose the DOJ Inquiry Was Not a Material Omission and Did Not Render any Statements Misleading ..... 5

1. Clover's statements about the existence of legal proceedings and investigations were entirely accurate ..... 5

2. Clover's statements that it receives subpoenas and other government inquiries from time to time are entirely accurate ..... 8

3. Statements unrelated to the subject of the DOJ Inquiry were not rendered misleading by the DOJ Inquiry's existence ..... 9

C. Plaintiffs Allege No Facts Showing That Clover's Legal Compliance Statements Were False or Misleading ..... 9

1. Plaintiffs fail to allege particularized facts showing that any violation of the FCA, AKS, and MCMG actually happened ..... 10

2. Plaintiffs fail to allege that Defendants *knew* the legal compliance statements were untrue ..... 11

3. Plaintiffs fail to allege facts establishing that any alleged violation of the FCA, AKS, or MCMG would have been *material* ..... 12

D. The Alleged Misstatements Based on Allegations Related to Hiram Bermudez and B&H Assurance Are Not Actionable ..... 13

E. The Alleged Misstatements About the Clover Assistant Are Not Actionable ..... 16

II. THE COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER ..... 17

A. The Failure to Plead the *Helwig* Factors Undermines any Inference of Scienter ..... 17

B. There Are No Facts Supporting an Inference That Defendants Were Acting With "Knowing and Deliberate Intent to Manipulate, Deceive, or Defraud, [or] Recklessness" When They Determined That the DOJ Inquiry Did Not Need to Be Specifically Disclosed ..... 17

C. The Complaint Contains No Facts Showing That Defendants Acted with Scienter Regarding the Statements About Clover's Legal Compliance ..... 18

D. Plaintiffs Have Not Alleged Scienter for Statements Regarding Clover's Growth or GAAP Compliance ........ 21

E. Plaintiffs' Theory of Scienter Regarding the Use of the Clover Assistant Fails. ........ 23

F. Motive and Opportunity Are Not Enough ........ 25

CONCLUSION ........ 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)....................11

*Behrendsen v. Yangtze River Port & Logistics Ltd.*,
2021 WL 2646353 (E.D.N.Y. June 28, 2021)....................3

*Benzon v. Morgan Stanley Distributors, Inc.*,
420 F.3d 598 (6th Cir. 2005)....................8

*Bondali v. YumA Brands, Inc.*,
620 F. App'x 483 (6th Cir. 2015)....................21, 22, 24

*Brown v. China Integrated Energy, Inc.*,
875 F. Supp. 2d 1096 (C.D. Cal. 2012)....................3

*Cheung v. Keyuan Petrochemicals Inc.*,
2012 WL 5834894 (C.D. Cal. Nov. 1, 2012)....................15

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
963 F. Supp. 2d 1092 (E.D. Wash. 2013).................... 13

*Doshi v. Gen. Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016).................... *passim*

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)....................20, 25

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008)....................7

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001)....................17, 18, 23

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012)....................3

*Hutchison v. Deutsche Bank Sec. Inc.*,
647 F.3d 479 (2d Cir. 2011)....................6

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*,
783 F.3d 383 (2d Cir. 2015)....................6

*In re Almost Fam., Inc. Sec. Litig.*,
2012 WL 443461 (W.D. Ky. Feb. 10, 2012) ....................14

*In re Aphria, Inc. Sec. Litig.*,
2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020)....................3

*In re AT&T/DirecTV Now Sec. Litig*.,
480 F. Supp. 3d 507 (S.D.N.Y. 2020)....................13, 21

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015)....................6, 8, 9

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)....................15

*In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*,
2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) ....................3

*In re China Valves Tech. Sec. Litig.*,
979 F. Supp. 2d 395 (S.D.N.Y.2013)....................6

*In re Comshare Inc. Sec. Litig.*,
183 F.3d 542 (6th Cir. 1999) ....................22, 25

*In re Envision Healthcare Corp. Securities Litigation*,
2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019) ....................14

*In re Equifax Inc. Sec. Litig.*,
357 F. Supp. 3d 1189 (N.D. Ga. 2019) ....................4

*In re Eros Int'l PLC Sec. Litig.*,
2021 WL 1560728 (D.N.J. Apr. 20, 2021) ....................3

*In re FirstEnergy Corp. Sec. Litig.*,
316 F. Supp. 2d 581 (N.D. Ohio 2004)....................22

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
2021 WL 4341500 (S.D.N.Y. Sept. 22, 2021)....................23

*In re Lions Gate Ent. Corp. Sec. Litig*.,
165 F. Supp. 3d 1 (S.D.N.Y. 2016)....................7

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ....................3

*In re Omnicare, Inc. Sec. Litig.*,
2013 WL 1248243 (E.D. Ky. Mar. 27, 2013) .................... 19

*In re Sofamor Danek Grp., Inc.*,
123 F.3d 394 (6th Cir. 1997) ....................14, 16, 19

*In re Yum! Brands, Inc. Sec. Litig.*,
73 F. Supp. 3d 846 (W.D. Ky. 2014)....................6, 24

*Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare Inc.*,
583 F.3d 935 (6th Cir. 2009) ....................19

*Jaroslawicz v. M&T Bank Corp.*,
2017 WL 1197716 (D. Del. Mar. 30, 2017) ....................7

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)....................24

*Lubbers v. Flagstar Bancorp. Inc.*,
162 F. Supp. 3d 571 (E.D. Mich. 2016)....................8

*McIntire v. China MediaExpress Holdings, Inc.*,
927 F. Supp. 2d 105 (S.D.N.Y. 2013)....................3

*Miller v. Champion Enters. Inc.*,
346 F.3d 660 (6th Cir. 2003) ....................25

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
164 F. Supp. 3d 568 (S.D.N.Y. 2016)....................9, 10

*N. Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*,
929 F. Supp. 2d 740 (M.D. Tenn. 2013)....................19

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)....................11, 12

*Richman v. Goldman Sachs Grp., Inc.*,
868 F. Supp. 2d 261 (S.D.N.Y. 2012)....................7

*Ricker v. Zoo Ent., Inc.*,
534 F. App'x 495 (6th Cir. 2013) ....................25

*Snellink v. Gulf Res., Inc.*,
870 F. Supp. 2d 930 (C.D. Cal. 2012) ....................3

*Tellabs v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................20

*U.S. ex rel. Parikh v. Citizens Med. Ctr.*,
977 F. Supp. 2d 654 (S.D. Tex. 2013) ....................11

*United States ex rel. Dennis v. Health Mgmt. Assocs., Inc.*,
2013 WL 146048 (M.D. Tenn. Jan. 14, 2013)....................................................................11

*United States ex rel. Emerson Park v. Legacy Heart Care, LLC*,
2019 WL 4450371 (N.D. Tex. Sept. 17, 2019)..................................................................11

*Yannes v. SCWorx Corp.*,
2021 WL 2555437 (S.D.N.Y. June 21, 2021) ......................................................................3

## PRELIMINARY STATEMENT[1]

The PSLRA was enacted to prevent securities claims based on lawyer speculation, creative pleading, or questionable sources from proceeding past the motion to dismiss stage. Instead, the PSLRA requires plaintiffs to plead hard facts establishing that a defendant has made a materially false or misleading statement with actual knowledge of falsity or, in some cases, with recklessness.

The Opposition establishes that Plaintiffs cannot meet that standard. The centerpiece of Plaintiffs' Complaint is allegations that the decision not to separately disclose the DOJ Inquiry was misleading because that inquiry was material to Clover. That is based on nothing more than speculation. Indeed, while alleging that the DOJ Inquiry has been pending for nearly three years, Plaintiffs do not allege a single fact showing that the inquiry has had, or will have, any adverse effect whatsoever on Clover or its future.

In support of their other theories, Plaintiffs rely heavily on the Hindenburg Report, a short-seller's compilation of anonymous sources that expressly disclaims any "representation" as to the "accuracy, timeliness, or completeness of any" of its contents. But the case law, including Sixth Circuit authority, does not permit Plaintiffs to base their claim on those anonymous sources.[2] And Plaintiffs have little else to offer. Their four identified CWs do not individually or collectively offer the type of information necessary to support a fraud claim under the PSLRA. By way of example, Plaintiffs throw around allegations that Clover was engaged in material violations of law,

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Opening Brief (ECF No. 75). "Br. __" refers to the Opening Brief, "Opp. __" refers to Plaintiffs' Opposition to Defendants' Motion to Dismiss (ECF No. 80), "¶ __" refers to paragraphs in the Complaint (ECF No. 70), and "Ex. __" refers to exhibits to the Crosby Declaration (ECF No. 76). Page numbers for docket entries reflect the ECF pagination. Unless noted, all emphasis is added, and internal citations and quotation marks are omitted.

[2] As noted in the Opening Brief (Br. 11 n.2), courts regularly dismiss claims based on short-seller reports.

but when the CW statements are examined, the CWs identify only one supposed instance when a low-level employee distributed $250 worth of gift cards for some unspecified purpose. None of the CW allegations come close to pleading a material violation of any law.

In short, Plaintiffs fail to allege any actionable misstatement. And even if they had met that requirement, the Complaint would still fail because Plaintiffs have failed to plead facts showing that any misstatement was made with scienter.

Accordingly, the Complaint should be dismissed with prejudice.

## ARGUMENT

### I. NO ACTIONABLE MISSTATEMENT OR OMISSION HAS BEEN ADEQUATELY PLED

#### A. The Court Should Not Credit the Hindenburg Report's Anonymous Sources

The law in the Sixth Circuit is clear: in securities cases, statements from anonymous sources will only be credited where plaintiffs "plead facts with sufficient particularity to support the probability that a person in the [source's] position would possess the information alleged." *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1037 n.2 (6th Cir. 2016). Here, Plaintiffs rely on statements purportedly made by Hindenburg's anonymous sources. Plaintiffs cannot dispute, however, that neither the Hindenburg Report nor the Complaint say anything about those sources' positions with Clover to support the probability that they would possess the information alleged. Indeed, Plaintiffs say nothing about the sources at all, other than that they were "former employees" of Clover. (¶ 20.) Put plainly, Plaintiffs have no idea who Hindenburg's anonymous sources are, or even if they exist. Accordingly, those sources provide no support for Plaintiffs' claims.

Unable to address the Sixth Circuit's rule in *Doshi*, Plaintiffs cite out-of-Circuit cases discussing the reliability of short-seller reports, generally, and a few cases that cite reports that

quote anonymous sources in passing. But none of those cases support Plaintiffs' effort to premise their claim on the Hindenburg Report. Defendants are not arguing that no ***portion*** of a short-seller or media report may ever be considered by a court as support for a claim under the PSLRA. Defendants' point is that ***statements from anonymous sources contained within such reports*** must be discounted unless there are particularized facts provided in the reports or pleading "to support the probability that a person in the [source's] position would possess the information alleged." *Doshi*, 823 F.3d at 1037 n.2.

Plaintiffs offer no cases that credit statements by anonymous sources cited in a third-party report when the report disclaims its own reliability and fails to provide context on the anonymous source's "position."[3] For example, in *Brown v. China Integrated Energy, Inc.*, the court credited statements from short-seller reports (though not any anonymous statements regarding issues at dispute) where (i) the reports and complaint included sufficient details about the reports' sources to meet the PSLRA's heightened pleading requirement; and (ii) plaintiffs' counsel "independently verified the findings" of the reports. 875 F. Supp. 2d 1096, 1109-13, 1113 n.65 (C.D. Cal. 2012)

[3] *See, e.g.*, *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 123-24 (S.D.N.Y. 2013) (discussing short-seller reports, generally, not statements from anonymous sources contained within such reports); *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012) (similar); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 564 (S.D.N.Y. 2012) (similar); *In re Eros Int'l PLC Sec. Litig.*, 2021 WL 1560728, at *9, *13 (D.N.J. Apr. 20, 2021) (similar—and dismissing certain claims for failing to establish scienter and discounting short-seller report's allegations that did not address the individual defendants' knowledge); *In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*, 2016 WL 922711, at *4 (S.D.N.Y. Mar. 7, 2016) (similar—and finding that report did not support allegation of material falsity); *Behrendsen v. Yangtze River Port & Logistics Ltd.*, 2021 WL 2646353, at *15 (E.D.N.Y. June 28, 2021) (not discussing reliability of anonymous sources at all); *Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *2, 4-6 (S.D.N.Y. June 21, 2021) (same); *In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *9-10 (S.D.N.Y. Sept. 30, 2020) (similar—and not relying on short-seller report's allegations in ruling on motion to dismiss); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *3 (S.D.N.Y. Jan. 27, 2014) (crediting anonymous statements regarding fuel shipments "coming and going from [defendant's] facilities" based on context that sources lived near the facilities (as well as "consistent with pictures and surveillance footage")).

("The plausibility of claims made by a source who is unknown to both plaintiffs and defendant is difficult to evaluate."). Plaintiffs have not done that.[4]

Plaintiffs also argue that the Court should credit the Hindenburg Report because its findings are corroborated by Plaintiffs' CWs and Defendants' admissions. Opp. 26. But the Court may only consider well-pleaded allegations from sources that satisfy *Doshi* in evaluating the adequacy of the Complaint. Tellingly, even after Plaintiffs conducted their own investigation, the majority of the Hindenburg Report (including vast portions that Plaintiffs rely on) is entirely uncorroborated. For example, Plaintiffs continue to rely on the Hindenburg Report's statement that "Clover distributed gift cards all over the freaking map," contending that the statement was corroborated by CWs. *Id*. But the only allegation about gift cards that Plaintiffs muster after their investigation—that CW3 once purchased $250 worth of gift cards and delivered them to one physician's office (¶ 128)—falls well short of the "all over the freaking map" allegation.

Plaintiffs contend that Clover's response to the Hindenburg Report corroborated this allegation. Not so. In extensive detail, Clover's Hindenburg Response debunked the Hindenburg Report's allegations and explained why there was no basis to the Hindenburg Report's fraud claim. *See, e.g.*, Br. 17; Ex. I, ECF No. 76-9 at 2-30. Plaintiffs are less than candid with the Court when they argue otherwise. For example, Plaintiffs contend that the Court should infer wrongdoing from the fact that the Hindenburg Response denied gift cards or payments to doctors or nurses, but not to "staff." Opp. 26. But the Hindenburg Report asked the following question: "A former

[4] Plaintiffs rely on *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1235-36 (N.D. Ga. 2019). But that out-of-Circuit case credited a statement in a *Bloomberg* article sourced by two anonymous sources "with direct knowledge of the matter" at issue. *Id*. at 1236. Defendants do not believe that this statement would be credited by the Sixth Circuit under *Doshi*, but the Court need not confront that question as the Hindenburg Report does not even say that any of its sources had "direct knowledge" of anything attributed to them, and unlike the *Bloomberg* article, told its audience not to rely on it.

employee explained that Clover handed out gift cards to ***doctors and nurses*** to generate patient leads . . . . How do you respond?" Ex. I, ECF No. 76-9 at 28. Clover responded: "Clover does not provide gift cards to ***doctors and nurses*** to generate patient leads." *Id*. at 29. From that response, Plaintiffs ask the Court to speculate that Clover admitted to the alleged distribution of gift cards to staff. But the context makes clear that Clover admitted no such thing.

### B. The Decision Not to Specifically Disclose the DOJ Inquiry Was Not a Material Omission and Did Not Render Any Statements Misleading

Plaintiffs do not and cannot claim that Defendants had a general duty to disclose the DOJ Inquiry. Rather, they claim that disclosure was required because the existence of the DOJ Inquiry rendered some of Defendants' other statements false. Plaintiffs challenge three separate categories of statements. But as explained below, each of Plaintiffs' arguments fails.

#### 1. Clover's statements about the existence of legal proceedings and investigations were entirely accurate

Plaintiffs first assert that Defendants "categorically denied the existence of any material investigation," and that the DOJ Inquiry's existence rendered that denial false. Opp. 32. Plaintiffs' framing of Defendants' statements as a "categorical denial" is simply not accurate. *See* Br. 34 (statements about legal compliance were opinions). In any event, Plaintiffs' argument fails because they have not alleged facts sufficient to support the inference that the DOJ Inquiry was "material." Plaintiffs claim they alleged materiality by asserting that the DOJ Inquiry "threatened 'substantially all' Clover's revenues." Opp. 33 (citing ¶¶ 33-35, 58, 107-09). But these paragraphs in the Complaint offer no support for the argument that the DOJ Inquiry was material or threatened all of Clover's revenues. Paragraphs 33-35 contain allegations about Garipalli's actions at a separate company, paragraph 58 alleges that Clover derives its revenue from CMS, and paragraphs 107-109 allege that, in 2016, Clover was fined $100,000 (a tiny fraction of its 2020 revenues). Indeed, the Complaint pleads ***no facts*** suggesting that the DOJ Inquiry will have any impact

whatsoever on Clover, let alone that the inquiry is "material."  Br. 23-26.

Nor can Plaintiffs plausibly allege that the DOJ Inquiry was material.  In most of the cases that Plaintiffs cite, the investigations alleged to be material had resulted in a settlement with the government or actual findings of misconduct by the time the complaint was filed.  *See, e.g.*, *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 722 (S.D.N.Y. 2015) (defendant had entered $15 million settlement agreement with DOJ); *In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 409 (S.D.N.Y.2013) (SEC had found "multiple FCPA violations" against parent company of entity acquired by defendant).  Here—eleven months after the filing of the Company's Form S-1, and nearly three years since the DOJ Inquiry allegedly began—nothing of the sort is alleged to have happened to Clover.

Plaintiffs try to remedy their insufficient pleading by contending that the "materiality" of the DOJ Inquiry is an issue of fact that may not be determined on a motion to dismiss.  Opp. 33. Not so.  While the question of whether a misrepresentation is "material" may sometimes involve factual questions not resolvable on the pleadings, the "materiality" discussed above goes to the different and more foundational question of whether there was even a misrepresentation in the first place.[5]  As explained above, and as Plaintiffs concede, the challenged statements here refer to "material" investigations and, so, can only be false if the DOJ Inquiry is material.[6]

---

[5] Of course, courts routinely grant motions to dismiss on the materiality element anyway.  *See, e.g., In re Yum! Brands, Inc. Sec. Litig.*, 73 F. Supp. 3d 846, 861-66 (W.D. Ky. 2014) (dismissing claims where certain misstatements were not material), *aff'd sub nom. Bondali v. YumA Brands, Inc.*, 620 F. App'x 483 (6th Cir. 2015); *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 390-94 (2d Cir. 2015) (affirming dismissal where certain alleged misstatements were immaterial); *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 485-91 (2d Cir. 2011) (same).

[6] As explained in the Opening Brief, the alleged misstatement contained in Section 4.30(a) of the Merger Agreement is not actionable for the additional reason that no reasonable investor would have relied on it given the accompanying disclaimer that "no person should rely on the representations and warranties in the Merger Agreement . . . as characterizations of the actual state

Next, Plaintiffs' argument that Defendants' statement in the Proxy that "[w]e are not presently involved in any legal proceeding the outcome of which, we believe, if determined adversely to us, would individually or taken together have a material adverse effect on our business" (¶ 237) fails for two additional reasons. *First*, under settled federal securities case law, the DOJ Inquiry is not a "legal proceeding" as that term is used in the Proxy. Br. 26. Plaintiffs argue that the phrase "legal proceedings" in the Proxy should nonetheless be construed to include "investigations" because the defined, capitalized term "Legal Proceedings" in the Merger Agreement, a separate document, includes investigations. Opp. 34 n.14. But Plaintiffs' claim is about the use of the uncapitalized, undefined term "legal proceeding" in the Proxy, not about the capitalized, defined term "Legal Proceeding" in the Merger Agreement. The decision not to use a defined term "Legal Proceedings" in the Proxy underscores that the phrase should be given its ordinary meaning, which does not include government investigations or inquiries. Br. 26.[7]

*Second*, Plaintiffs concede that the statement is an opinion, and thus, only actionable if the Complaint alleges facts showing that the Defendants did not genuinely believe that opinion. *Id.* Plaintiffs recognize that they have not pled any such facts. So instead, they resort to their contention that Defendants could not have believed this opinion because the DOJ Inquiry

---

of facts about" Legacy Clover. Br. 25 n.10. Plaintiffs argue that *Jaroslawicz v. M&T Bank Corp.*, 2017 WL 1197716, at *5 (D. Del. Mar. 30, 2017), which Defendants cited, is distinguishable because the disclaimer there stated that the representations "were made solely for the benefit of the parties to the merger agreement." But the Merger Agreement here contained a disclaimer that "no person should rely" on a representation in the Merger Agreement. Thus, Plaintiffs have no basis to distinguish *Jaroslawicz*. Plaintiffs' cited case, *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 741 (9th Cir. 2008), lends no support to their position because nothing in *Glazer* suggests that the filing there included a disclaimer like the one here.

[7] Plaintiffs try to distinguish *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 19 (S.D.N.Y. 2016) and *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 272 (S.D.N.Y. 2012), by arguing that both cases "only considered duties to disclose 'legal proceedings' pursuant to Item 103 of Regulation S-K." Opp. 34 n.14. But Plaintiffs offer no reason why the ordinary meaning of "legal proceedings," which applies to Item 103, should not also apply here.

threatened "substantially all" of Clover's revenues. Opp. 24. But as discussed above, that assertion is totally unsupported by the Complaint.[8]

**2. Clover's statements that it receives subpoenas and other government inquiries from time to time are entirely accurate**

Plaintiffs next argue that the challenged statements—"from time to time we receive subpoenas and other requests for information from[] federal and state supervisory and enforcement agencies," (¶ 241) and "from time to time, we are and may be subject" to governmental investigations and "we receive and may receive subpoenas and other requests for information" (¶ 243)—were misleading because they gave the impression that no such investigations were pending. Opp. 35.

This same argument has been rejected by the Sixth Circuit. *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 612 (6th Cir. 2005) (characterizing as a "semantic quibble" an allegation that the statement that "[s]ales personnel *may* receive different compensation for selling each Class of share" was misleading because those "brokers *do* earn more for the sale of" certain shares). Plaintiffs ignore *Benzon*'s core holding, arguing only that it "did not concern an investigation threatening a company's existence." Opp. 25. For starters, the Complaint offers no support for its claim that the DOJ Inquiry threatened any impact on Clover, much less a threat to Clover's existence. But Plaintiffs' argument is irrelevant to the Sixth Circuit's reasoning that a "semantic quibble" is not capable of misleading a reasonable investor. *Benzon*, 420 F.3d at 612;

---

[8] *BioScrip*, which Plaintiffs cite in support of this argument, is readily distinguishable. There, the DOJ filed a complaint against the company after issuing it a CID, the company entered into a settlement with the government agreeing to pay $15 million, and the active investigation there turned out to be material to the business. 95 F. Supp. 3d at 721-30. Against that backdrop, the court found that the plaintiffs had alleged facts showing a "***common belief amongst those most directly involved in the conduct at issue that BioScrip was skirting regulatory requirements***." *Id.* at 729. Nothing like that is alleged here.

*see also Lubbers v. Flagstar Bancorp. Inc*., 162 F. Supp. 3d 571, 579-80 (E.D. Mich. 2016) (taking issue with the "phrase 'from time to time' [was] nothing more than a non-actionable, semantic quibbling").[9]

**3. Statements unrelated to the subject of the DOJ Inquiry were not rendered misleading by the DOJ Inquiry's existence**

Plaintiffs also argue that Clover's statements about its future intentions (¶ 239) gave "the misleading impression that Defendants had an unobstructed path to expanding into new markets when the DOJ was investigating Defendants' illegal expansion tactics." Opp. 35. But the challenged statements relate to Clover's goals to seek opportunities, create differentiated plans across the United States, and increase spending for new market development. Br. 28-29. These statements have nothing to do with the DOJ Inquiry, and there is no basis in the Complaint for a finding that any of these statements were materially false when they were made. *Id*. at 28. Moreover, these statements are forward-looking statements that are not actionable unless Defendants had actual knowledge that the statements were false. *Id.* at 28-29. Plaintiffs do not even try to allege that any speaker had actual knowledge that Clover did not intend to seek opportunities or increase spending when the statements were made, as would be required to state an actionable claim based on these statements. *Id.* at 29.

**C. Plaintiffs Allege No Facts Showing That Clover's Legal Compliance Statements Were False or Misleading**

The Complaint alleges that Clover's statements about complying with applicable laws are

---

[9] Plaintiffs' cited cases (Opp. 35) are distinguishable. In *BioScrip*, the DOJ had issued a CID, filed a complaint against the company, and entered into a settlement with the company. *See* 95 F. Supp. 3d at 721-30. In *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 574, 584 (S.D.N.Y. 2016), the plaintiff plausibly alleged that a statement that it "may from time to time be involved in litigation," was misleading because it later acknowledged that an investigation pending at the time "could have a material impact" on its business, and so its early statement was incomplete. Here, Plaintiffs do not allege that Clover has ever made similar statements regarding the DOJ Inquiry.

false and misleading because of alleged illegal kickbacks and gifts provided to physicians and their staff in violation of the FCA, AKS, and MCMG. (¶ 236.) But, as established in the Opening Brief, the Complaint does not adequately allege with the required particularity (1) a violation of any law; (2) knowledge of a violation of any law; or (3) that any such violation was material. Br. 30.

**1. Plaintiffs fail to allege particularized facts showing that any violation of the FCA, AKS, and MCMG actually happened**

When a complaint alleges that statements were rendered false or misleading because of "the non-disclosure of illegal activity, the facts of the underlying illegal acts must also be pleaded with particularity, in accordance with the heightened pleading requirement of Rule 9(b) and the PSLRA." Br. 30 (quoting *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 465 (2d Cir. 2019)).[10] Plaintiffs needed to plead the "who, what, when, where, and how of the alleged fraud," here, violations of the FCA, AKS, and MCMG. *Id*. (quoting *Sanderson v. HCA-The Healthcare Co*., 447 F.3d 873, 877 (6th Cir. 2006)).

Distribution of gift cards—whether $250 on one occasion, or something more—is not, in and of itself, a violation of federal law. For Plaintiffs' AKS theory to succeed, Plaintiffs needed to plead ***with particularity***, among other things, that Clover personnel knowingly and willfully made or offered a payment or offer of payment ***as an inducement to the payee to refer an individual to another for the furnishing of a service or item***. Br. 31. Here, Plaintiffs' effort to plead a claim based on an actual violation of law fails because the Complaint contains no facts—let alone particularized facts—showing that Clover made payments to physicians or their staff for patient referrals or for marketing or enrollment activities. *Id*.[11] Instead of responding to this

[10] Plaintiffs' cited case (Opp. 48) supports Defendants' position. *See Menaldi*, 164 F. Supp. 3d at 578-79 (finding that plaintiffs failed to allege with particularity that underlying illegal conduct occurred).

[11] Plaintiffs' alleged MCMG violation focuses on Guideline 60.2, which prohibits providers from accepting "compensation from the plan for any marketing or enrollment activities." Opp. 38.

argument, Plaintiffs repeat the allegation that one person gave $250 in gift cards to one physician's office, one time (¶ 130), without providing any facts that indicate this alleged single incident was intended to induce referrals or enrollments. Opp. 26. The Complaint alleges nothing about the purpose for the alleged gift card distribution. Indeed, Plaintiffs concede that the Complaint does not allege actual patient referrals, Opp. 37 n.15,[12] further undermining any inference that the gift cards were intended to induce referrals.[13]

**2. Plaintiffs fail to allege that Defendants *knew* the legal compliance statements were untrue**

Although the Court need not reach the issue, as explained in the Opening Brief, all of Clover's legal compliance statements were opinions under the *Omnicare* standard. Br. 35 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015)). Plaintiffs respond that "Defendants' *categorical* assertion of compliance since January 1, 2018, is not an opinion." Opp. 38 (citing *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 176 (2d Cir. 2020)). But *Abramson* had nothing to do with statements about legal compliance. And that decision certainly did not hold that a statement such as, we "*believe* that our . . . relationships with providers . . . comply with applicable laws . . . [but] the federal government might conclude"

[12] The failure to allege any actual inducement of any patient to do anything because of the gift cards is a further ground for dismissing this claim because, contrary to Plaintiffs' assertion, courts regularly hold that actual inducement is an AKS element. *See, e.g.*, *United States ex rel. Emerson Park v. Legacy Heart Care, LLC*, 2019 WL 4450371, at *12 (N.D. Tex. Sept. 17, 2019). But the Court need not decide that issue because, as even Plaintiffs' cited case recognizes, a plaintiff asserting an AKS claim still must plead particular facts showing that someone paid a kickback with the intent to induce a referral, and nothing like that is alleged here. *See U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 664 (S.D. Tex. 2013).

[13] Plaintiffs' theory that Clover violated the FCA is derivative of their theory that Clover violated the AKS. Because Plaintiffs have not adequately pled an AKS violation, their FCA theory fails. *See United States ex rel. Dennis v. Health Mgmt. Assocs., Inc.*, 2013 WL 146048, at *13-14 (M.D. Tenn. Jan. 14, 2013).

otherwise, is not an opinion. Br. 34.[14] As demonstrated in the Opening Brief, Plaintiffs have failed to show that they have satisfied either prong of *Omnicare*. *See id.* at 34-35.[15]

**3. Plaintiffs fail to allege facts establishing that any alleged violation of the FCA, AKS, or MCMG would have been *material***

Finally, Plaintiffs' claim also fails because the Complaint contains no facts supporting an inference that any alleged violation of the FCA, AKS, or MCMG was material. Br. 35. Plaintiffs cannot open the floodgates of discovery in a securities fraud action merely by alleging a single, isolated incident of wrongdoing by one lower-level employee. *See id.* Indeed, the allegations about one instance of $250 in gift cards used by a lower-level employee, even if true, would not be sufficient to support a securities fraud claim. *Id.* (citing *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 527 (S.D.N.Y. 2020)); *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1127 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017)). Plaintiffs again try to save their inadequate pleading by claiming that the "materiality" of an alleged single violation should not be resolved on a motion to dismiss. Opp. 28. But, as explained above, "materiality" can be adjudicated at the motion to dismiss stage, and should be here, where it is necessary to determine whether the alleged statement is a plausibly alleged ***mis***statement.

Plaintiffs respond that these authorities are distinguishable because "they do not concern federal violations by a repeat offender that present an existential threat to its business." Opp. 38 n.16. Rhetorical flourishes like "repeat offender" and "existential threat" are no substitute for

[14] Although the "we believe" qualifier, without more, does not automatically make opinion statements non-actionable (Opp. 38), Clover did not simply append "we believe" to a statement of objective fact, but explained the basis for its opinion and why the government might disagree. *See Omnicare*, 575 U.S. at 187-93 ("A reasonable person understands, and takes into account, the difference . . . between a statement of fact and one of opinion" and "recognizes the import of words like 'I think' or 'I believe.'").

[15] Plaintiffs' alternative argument—"even if the Court construes these statements as opinions . . . they are actionable because the [Complaint] alleges Defendants did not believe them" (Opp. 38)—is unavailing. The Complaint pleads no facts supporting that assertion.

particularized allegations, which are lacking from the Complaint. Both of Defendants' cases involved violations of law that were demonstrably material to the companies there. Br. 35. In *AT&T/DirecTV*, the alleged facts showed illegal sales practices over a number of years relating to a core aspect of the company's business. 480 F. Supp. 3d 507, 519-20, 531 n.23. *City of Roseville* involved a situation in which the defendant's chairman, who was also CEO and president, gave up his positions with the company, followed the next day with the defendant stipulating to a cease-and-desist order with federal and state agencies that imposed a number of restrictions on it. 963 F. Supp. 2d at 1103. Accordingly, a company's failure to disclose instances of alleged illegal practices or isolated employee misconduct, even if true, is not material. Br. 35.

### D. The Alleged Misstatements Based on Allegations Related to Hiram Bermudez and B&H Assurance Are Not Actionable

Plaintiffs allege that statements regarding Clover's growth were "misleading for failing to disclose that related-party transactions drove Clover's growth." Opp. 39. According to Plaintiffs, Clover committed securities fraud because it failed to disclose that its growth was driven by Bermudez's undisclosed relationship with B&H, and instead attributed its growth to other factors. As support for its contention, the Opposition notes that Bermudez was heavily involved in many of Clover's sales. But this fact is hardly surprising. Bermudez was the head of sales during the entire period, and holds that title through the date of this filing. All that has changed is that Bermudez has agreed to divest himself of any interest in B&H.

To state an actionable claim on the basis of this divestiture, the Complaint would have to allege that Bermudez's agreement to divest has resulted in a decrease in sales. But Plaintiffs have not made any such allegation because it would be entirely without basis. Rather, Plaintiffs argue that they have satisfied their burden because they alleged that:

> (i) Bermudez was hired as one of Clover's first employees specifically so that Clover could exploit Bermudez's insurance brokers, (ii) Bermudez owned multiple

> brokers and had a 'strong hold' on the insurance market across the Northeast, (iii) 97.6% of Clover's members are in New Jersey, where Bermudez operates, (iv) up to 68% of Clover's members came from Bermudez's brokers, (v) Bermudez managed his independent brokers while at Clover, and (vi) Defendants admit that Bermudez's broker B&H was responsible for 14% of Clover's members and that Bermudez received at least $500,000 through B&H.

Opp. 39-40. All of these allegations suggest that Bermudez was a good choice as head of sales, not that his effectiveness would change because of his agreement to divest any interests in B&H. As argued in the Opening Brief, "there are no allegations to suggest that B&H would have placed any fewer insureds with Clover in the absence of Bermudez's ownership interest." Br. 36. Plaintiffs have no response to that point.

As explained in the Opening Brief, Clover disclosed a number of drivers of its growth, and Plaintiffs' claim fails because none of those drivers are alleged to be false. Br. 36-37 (citing *In re Almost Fam., Inc. Sec. Litig.*, 2012 WL 443461, at *7 (W.D. Ky. Feb. 10, 2012) ("Absent specifically alleging that the statements [about growth] made by [the CEO] were false, Plaintiffs cannot successfully assert them to be material misrepresentations.")). Plaintiffs weakly attempt to distinguish *Almost Family* by arguing that the claims there were based on "off-the-cuff," rather than scripted comments. Opp. 40 n.17. But neither this case nor the securities laws suggest that the case's holding would have been different had the statements been scripted. Further, the Sixth Circuit has held that courts must take as true a company's growth statements where plaintiffs fail to point to any affirmative misstatements in the company's explanations of its growth. *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401 (6th Cir. 1997). Here, Plaintiffs fail to specifically allege that statements made about the reasons for Clover's growth, for example, "lowering [Clover's] members' out-of-pocket costs while improving their benefits" (Br. 37), were false; thus, Plaintiffs cannot successfully assert them to be material misrepresentations.

Next, Plaintiffs rely on *In re Envision Healthcare Corp. Securities Litigation*, 2019 WL

6168254, at *10-12 (M.D. Tenn. Nov. 19, 2019), where the court found that statements about the company's drivers of success could be "misleading for omitting information" when the plaintiffs alleged that the defendants "failed to disclose that out-of-network billing was a significant factor contributing to the company's revenue and growth." That case is distinguishable because Plaintiffs do not allege any facts to suggest that Bermudez's undisclosed interest in B&H—as opposed to his employment with Clover, generally, or any one of many other factors—was a significant factor contributing to Clover's revenue and growth. Nor do they allege that his agreement to divest has had any effect on Clover's pace of sales.[16]

Plaintiffs cannot avoid the deficiencies in their claim based on the relationship between Bermudez and B&H by recharacterizing it as a GAAP violation.[17] Opp. 41. Plaintiffs must show that any GAAP violation was material, just as they must show that any other false statement was material. Br. 37 (citing *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 576 (6th Cir. 2008)). The Complaint fails to show how Clover's GAAP financials were materially misstated, quantitatively or qualitatively, based on the alleged existence of a related-party transaction and the percentage of sales attributable to B&H. *See id*. at 37-38. None of the numbers in Clover's

---

[16] The Complaint quotes Clover's March 29, 2021 Form 8-K announcing that "Bermudez has agreed to divest himself from all interest in" B&H. (¶ 338.) Notably, the Complaint was filed nearly three months after the March 29, 2021 Form 8-K, and does not include a single allegation regarding a decline in Clover's sales following the announcement of Bermudez's agreement to divest as would be necessary to plead loss causation relating to that issue.

[17] Plaintiffs' cited cases do not support their argument. For example, in *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 239 (S.D.N.Y. 2018), the court did not let a claim proceed simply because the defendant did not disclose a related-party transaction, but because the plaintiffs "adequately alleged that CannaVest misrepresented that 100% of its revenues during the first three quarters of 2013 came from third parties, and did not disclose that the entities that were the source of the revenue were affiliated with Medical Marijuana, Inc., a CannaVest stockholder." And *Cheung v. Keyuan Petrochemicals Inc.*, 2012 WL 5834894, at *8 (C.D. Cal. Nov. 1, 2012) involved ***undisclosed sales*** of more than $121 million over two years. In contrast, Plaintiffs do not argue that any sales with B&H were undisclosed.

financial statements are alleged to have been wrong, there has been no restatement of Clover's financials, and Plaintiffs offer no authority supporting the assertion that materiality for purposes of GAAP is measured by the percent of sales that one person touched. *Sofamor Danek Grp.*, 123 F.3d at 401 (affirming dismissal where plaintiffs did not challenge the accuracy of the company's reported sales and earnings data). All Plaintiffs allege is that GAAP required disclosure of the relationship between Bermudez and B&H, which is no different than their non-GAAP allegation to the same effect.

**E. The Alleged Misstatements About the Clover Assistant Are Not Actionable**

Plaintiffs' final attempt to plead a misstatement relates to whether Clover's product, the Clover Assistant, was used during patient visits. Plaintiffs' attempt fails because it is premised on cobbling together various disparate statements—***none of which are alleged to be false***—and claiming that those statements somehow misled investors ***as to a topic they did not address***. Specifically, Plaintiffs argue that statements—e.g., that 92% of "onboarded" physicians were using the Clover Assistant, that physician use "had grown by more than 500%," and that more than 2,000 physicians had "signed up" to use it—when "[r]ead together . . . communicated to investors that the overwhelming majority of [physicians] were using Clover Assistant during patient visits." Opp. 42. But there is no basis for that illogical leap. These statements had nothing to do with whether physicians were using the Clover Assistant during an exam.

The only statement that even touches on the use of the Clover Assistant during a patient visit is Clover's generic statement that "[w]e broadly disseminate the Clover Assistant free-of-charge to primary care physicians . . . who use it at the point of care while treating our members." (¶ 277.) But that says nothing about how often physicians were using the Clover Assistant at the point of care, and certainly did not give the impression "that the overwhelming majority of [physicians]"

always use the "Clover Assistant during patient visits." Opp. 42.[18]

## II.     THE COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER

As noted above, Plaintiffs have failed to allege actionable misrepresentations. The Complaint's deficiencies become starker when looking at Plaintiffs' failure to come forward with allegations that create the PSLRA's required "strong inference" that any such false statement was made with scienter. Indeed, the Complaint fails to come close to meeting the PSLRA's standard.

### A.     The Failure to Plead the *Helwig* Factors Undermines Any Inference of Scienter

In *Doshi*, the Sixth Circuit held that a plaintiff had not adequately pled scienter when only two *Helwig* factors were sufficiently pled—(1) divergence between internal reports and external statements on the same subject; and (2) disregard of the most current factual information before making public statements. *Doshi*, 823 F.3d at 1041-42. Here, Plaintiffs concede that they are relying only on the same two *Helwig* factors that were deemed insufficient in *Doshi*. *See* Opp. 47-50.[19] Thus, the lack of *Helwig* factors provides a strong basis for dismissal of the Complaint. But the arguments for dismissal become much stronger because (as explained below) Plaintiffs fail to establish even the two *Helwig* factors on which they purport to rely.

### B.     There Are No Facts Supporting an Inference That Defendants Were Acting With "Knowing and Deliberate Intent to Manipulate, Deceive, or Defraud, [or] Recklessness" When They Determined That the DOJ Inquiry Did Not Need to Be Specifically Disclosed

Scienter is "a knowing and deliberate intent to manipulate, deceive, or defraud," or recklessness. *Doshi*, 823 F.3d at 1039. As discussed, whether the decision not to disclose the DOJ

---

[18] Plaintiffs' efforts to characterize their claims as violations of Item 105 or 303 of Regulation S-K also fail. Opp. 44. For the same reasons that Plaintiffs' claims are not actionable, they are likewise not actionable when repackaged as violations of Item 105 or 303. Br. 40-41.

[19] Plaintiffs fail to provide any facts or law for their passing reference to the possible application of the fourth *Helwig* factor. *See* Opp. 48.

Inquiry rendered other statements false turns on whether it was a "material investigation." The scienter analysis similarly turns on whether the Defendants ***knew*** that the DOJ Inquiry was material.

The only fair inference from the Complaint is that the DOJ Inquiry was not material at all. There are no allegations that it has resulted, or will result, in any adverse consequence to Clover or any change in Clover's business practices. Liberally sprinkling the Opposition with the unsupported statement that the DOJ Inquiry "threatened 'substantially all' Clover's revenue" does not change that because that is pure speculation. The portion of the Complaint to which Plaintiffs cite to support that claim contains no facts at all that would establish that the DOJ Inquiry will result in any adverse consequences to Clover. (*See, e.g.*, ¶¶ 107-09.)

Plaintiffs argue that the Defendants' awareness of the DOJ Inquiry "constitutes a divergence between internal reports and external statements and a disregard of current information," to argue that they have pled the second and sixth *Helwig* factors. Opp. 47. But to adequately plead a divergence between internal reports and public statements or disregard of current information, Plaintiffs would have had to plead facts showing that specific "internal reports" or "current factual information" informed Defendants that the DOJ Inquiry was ***material***. *Doshi*, 823 F.3d at 1041. Again, there is nothing in the Complaint supporting such an inference.

This failure is unsurprising given that it has been nearly three years since the DOJ Inquiry allegedly began in early 2019, and ***there has been no finding of wrongdoing or other adverse consequence to Clover***. The only compelling inference here is that the Defendants did not believe that the DOJ Inquiry was material to Clover and so there was no reason to separately disclose it.

### C. The Complaint Contains No Facts Showing That Defendants Acted with Scienter Regarding the Statements About Clover's Legal Compliance

Plaintiffs challenge several statements regarding Clover's material compliance with

applicable laws, such as the statement in the Merger Agreement that Clover "in all material respects meets and complies with, and since January 1, 2018, has met and complied with, all applicable Laws." (¶ 124.) These statements are "soft information" that are only actionable if the Defendants "knew the statements were untruthful." *In re Omnicare, Inc. Sec. Litig.*, 2013 WL 1248243, at *1, *7 n.4 (E.D. Ky. Mar. 27, 2013) ("*Omnicare II*"), *aff'd*, 769 F.3d 455 (6th Cir. 2014) ("The Sixth Circuit has explicitly held that statements about 'legal compliance' are 'soft information' that are not actionable unless the defendants knew the statements were untruthful.").

Plaintiffs argue that these challenged statements were not "soft information" because the Merger Agreement "categorically stated that Clover had not materially violated any applicable law since January 1, 2018." Opp. 49 (citing *N. Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740, 780 (M.D. Tenn. 2013)). But *Fushi* simply stated the general rule that "hard information" is information that is "typically historical information or other factual information that is objectively verifiable," while "soft information" includes "predictions and matters of opinion." 929 F. Supp. 2d at 780. *Fushi* did not consider whether statements of "legal compliance" are hard or soft information. *See id.*

The Sixth Circuit, on the other hand, has squarely addressed this issue, explicitly holding that statements of legal compliance are soft information, requiring a plaintiff to plead facts showing that a defendant believed they were false when made. *E.g.*, *Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare Inc.,* 583 F.3d 935, 945 (6th Cir. 2009) ("Defendants argue that its statements regarding 'legal compliance' are not actionable because companies have no duty to opine about the legality of their own actions. As a general matter, that is true. Such information is considered 'soft' and, therefore, disclosure is not required."); *Sofamor Danek Grp.*, 123 F.3d at 402 ("The legality of [defendant's] support for the non-profit foundation,

for example was a matter of opinion—'soft information.' And our cases firmly establish the rule that soft information . . . must be disclosed only if . . . virtually as certain as hard facts.").

Plaintiffs point to allegations about incidents in which a Clover employee, Ethan Lipkind, allegedly instructed other employees to provide gift cards to healthcare providers. (*E.g.*, ¶¶ 130-34.) Plaintiffs do not allege that any Defendant was aware of this conduct, but rather that Defendant Garipalli must have known about the conduct. That is not enough to show "actual knowledge" that Defendants' statements were false. *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 590–91 (S.D.N.Y. 2011) ("[M]ere allegations that defendants 'would have' or 'should have' had such knowledge is insufficient.").[20]

But even if Defendants were aware of Lipkind's alleged conduct, or were "reckless" in not knowing about it, there is no basis to infer that they knew it was illegal. Indeed, the most compelling inference to draw from the Complaint is that they believed otherwise because the Complaint alleges that the conduct was reported to Clover's compliance department (¶ 15), and that Clover's "compliance group and in-house attorneys" conducted an investigation in response. (¶ 341.c.) The Complaint further alleges that Lipkind was later promoted. (¶ 15.) Under the Supreme Court's standard in *Tellabs v. Makor Issues & Rights*, *Ltd*., 551 U.S. 308, 314 (2007), the most logical and reasonable inference to be drawn from these facts (if they were true) is that these alleged internal inquiries concluded that there was no wrongdoing, and certainly no material non-compliance. Plaintiffs offer no particularized facts in the Complaint that would support any other conclusion. For the same reason, Plaintiffs cannot establish scienter based on Lipkind's own knowledge. Br. 47. But even if Plaintiffs could do so, Lipkind's knowledge would not constitute

[20] Plaintiffs argue that the Hindenburg Response was "evasive" in that it denied making payments to doctors and nurses, but did not deny making payments to healthcare staff. Opp. 38. As discussed above, it is Plaintiffs, not Clover, who are not being forthright.

scienter on the part of Clover or the Individual Defendants.[21] *See* Opp. 52 (quoting *Omnicare III*, 769 F.3d at 476); *see also Bondali v. YumA Brands, Inc*., 620 F. App'x 483, 493 (6th Cir. 2015) (Although some employees knew of the misrepresented matters, "***the amended complaint alleges no facts to suggest it was those employees who prepared or were otherwise involved in making the allegedly false or misleading statements at issue***. As such, the plaintiffs have not plausibly alleged scienter on the part of Yum the corporate entity . . . .").

Even setting all of this aside, the Complaint does not allege facts showing that Clover was engaged in conduct that materially violated applicable law, which is fatal to Plaintiffs' claims. At most, Plaintiffs' allegations amount to one-off, isolated conduct, which is immaterial. *See AT&T/DirecTV*, 480 F. Supp. 3d at 527 (explaining that "failure to disclose anecdotal incidents of improper sales tactics or other isolated employee misconduct is not material" because "the alleged improper activity must be widespread or otherwise of a sufficient magnitude as to be capable of affecting a reasonable investor's decision to buy or sell the company's stock").

**D. Plaintiffs Have Not Alleged Scienter for Statements Regarding Clover's Growth or GAAP Compliance**

Plaintiffs allege that certain statements about Clover's growth were misleading because Clover's growth was allegedly due to an undisclosed relationship between Bermudez and B&H. (*E.g.*, ¶¶ 245, 269.) In the Opening Brief, Defendants argued that the Complaint contained no facts showing "that any Individual Defendant was aware of the relationship between Bermudez and B&H." Br. 48. Plaintiffs concede this, arguing instead that Defendants "recklessly failed to disclose that Clover's growth stemmed from related-party transactions." Opp. 39. Plaintiffs' recklessness theory fails as a matter of law.

[21] Even if Plaintiffs had pled facts showing that Defendants were aware of this alleged conduct, that would not be enough because Plaintiffs have not alleged facts supporting an inference that any Defendant knew the conduct rendered Clover in material non-compliance with the law.

According to Plaintiffs, "Defendants were plainly reckless because they merely needed to review their records or ask Bermudez to learn the truth" about Bermudez and B&H. Opp. 40. But merely having access to information that allegedly contradicts a public statement is insufficient to plead recklessness. There needs to be more, such as facts showing that there was reason for Defendants to review that allegedly contradictory information, i.e., some type of "red flag." *See Doshi*, 823 F.3d at 1037 ("Before drawing an inference of recklessness, courts typically require multiple obvious red flags demonstrating an egregious refusal to see the obvious, or to investigate the doubtful[.]"). Nothing like that is alleged here to suggest that Clover or any Individual Defendant had a reason to question Bermudez's relationships.[22] Even setting all of that aside, there is no allegation that any Defendant was aware that the relationship between Bermudez and B&H had to be disclosed, or that the financials had a GAAP error (none of which is conceded).

Finally, with respect to Defendant Palihapitiya, who never had an operational role at Clover, Plaintiffs allege nothing more than general statements about his diligence of Clover, which is plainly insufficient to show recklessness, i.e., that his behavior was "an extreme departure from the standards of ordinary care." *Doshi*, 823 F.3d at 1039.[23] Nor do Plaintiffs have any answer for

[22] Plaintiffs also fail to allege that Defendants acted with scienter when certain documents, such as the Proxy, stated that Clover's financial statements were prepared in accordance with GAAP. Plaintiffs "allege no facts to show that Defendants knew or could have known of the errors, or that their regular procedures should have alerted them to the errors sooner than they actually did." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) (plaintiffs did not plead scienter regarding GAAP errors). Plaintiffs' cited case (Opp. 50) does not support their argument that the alleged GAAP error itself supports a strong inference of scienter because, unlike here, the plaintiffs in that case alleged facts showing "a multitude of red flags," including that the defendants knew that the company there "was using improper accounting practices," and that those alleged practices led to an overstatement of net income of more than $550 million in three years. *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 598 (N.D. Ohio 2004).

[23] Plaintiffs' argument that they have pled scienter because Bermudez had knowledge of the related-party transactions (Opp. 53) fails not just because there are "no facts to suggest it was [Bermudez] who prepared or [was] otherwise involved in making the allegedly false or misleading statements at issue," but also because Plaintiffs had not alleged facts showing that Bermudez was

the fundamental fact that the Complaint alleges that SCH received representations and warranties from Legacy Clover in the Merger Agreement that there were no legal or regulatory proceedings that could have a material impact on the business. *See* Br. 44.

**E. Plaintiffs' Theory of Scienter Regarding the Use of the Clover Assistant Fails.**

According to Plaintiffs, the Complaint adequately alleges "that Defendants intentionally, or at the very least recklessly, misrepresented the use of the Clover Assistant during patient visits" because certain CWs alleged that internal records diverged from Defendants' statements. Opp. 50. That is not the case. There is not a single statement that Plaintiffs can point to regarding how often the Clover Assistant was used during patient visits. Consequently, the alleged "internal database showing how and when the Clover Assistant was used," and similar alleged data are irrelevant to the scienter analysis because they do not reflect a "divergence between internal reports and external statements on the same subject," *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001), as Plaintiffs suggest.

And even if the internal records that Plaintiffs' CWs allege existed did relate to the "same subject" as Defendants' statements, they still would not be enough to plead scienter because, as Defendants explained in the Opening Brief, that information is stale given that all of the CWs left Clover by August 2019, or earlier. Br. 39. For example, Plaintiffs rely on Clover's statement that "[w]e broadly disseminate the Clover Assistant free-of-charge to primary care physicians . . . ***who use it at the point of care while treating our members***." (¶ 277 (emphasis in original).) But that statement was first made in Clover's Form S-4, ***filed on October 20, 2020—more than a year after the last of the CWs left Clover***. "Courts have disregarded the statements of CWs when the CWs left the company before the Class Period," *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2021 WL

a "high managerial agent," akin to a director, who has some responsibility for directing the affairs of Clover. *Bondali*, 620 F. App'x at 493.

4341500, at *18 (S.D.N.Y. Sept. 22, 2021), as this Court should do here. At most, these CWs were at Clover for the first year of a rapidly evolving technology—the Clover Assistant was continuously changing and improving throughout the fourteen-month period after the last of the CWs left Clover. *See* Br. 39; *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 800 (S.D.N.Y. 2020) (uncorroborated assertions from outside the relevant period fail to support a claim).

Showing the weakness of their argument, Plaintiffs state that "Defendants clearly data [sic] showing that only a fraction of [physicians] were using the Clover Assistant in 2020 at all, let alone in patient visits, because Garipalli touted how the Company tracked the data." Opp. 41. But the support Plaintiffs cite for that assertion (¶ 341) relates to a figure from 2019, which addressed how often "onboarded" physicians used the Clover Assistant, and did not make any claim about how often the Clover Assistant was used during patient visits overall. Schwartz Reply Decl. (filed herewith), Ex. A at 5.[24]

Plaintiffs argue that Garipalli and Toy must have known that Clover's statements were untrue because it took them "under 24 hours to disclose data in response to the Hindenburg Report." Opp. 41. But Plaintiffs cannot show that any of the disclosed data was inconsistent with the challenged statements. Therefore, the allegation provides no basis for inferring scienter.

Finally, Plaintiffs make no argument at all as to how the Court could infer scienter on the part of Palihapitiya or Wagner, and there is no basis to do so.[25]

---

[24] In any event, "fraudulent intent or recklessness cannot be presumed merely from [the Individual Defendants'] high-level positions and alleged access to information." *In re Yum! Brands, Inc. Sec. Litig.*, 73 F. Supp. 3d at 868.

[25] Plaintiffs again try to argue that they have pled corporate scienter for Clover by pointing to allegations that in the ***first or second quarter of 2019***, Chief Medical Officer Spektor told CW2 that half of the providers who actually used the Clover Assistant did not use it during patient visits. Opp. 53. That argument fails for the reasons just discussed as well as the fact that there are no allegations linking Spektor to the statements. *Bondali*, 620 F. App'x at 493.

### F. Motive and Opportunity Are Not Enough

Plaintiffs' ultimate fallback position is that they have pled scienter because many of the Individual Defendants stood to make significant profits as part of the Business Combination. *See* Opp. 51-52. But "claims of motive and opportunity do not, without more, suffice to give rise to a 'strong inference' of scienter," *In re Comshare Inc. Sec. Litig.*, 183 F. 3d at 553, and they do not give rise to such an inference here.[26] That is particularly so because the Individual Defendants did not gain from a temporary rise in Clover's shares given that their profits from the transaction were (i) almost entirely in Clover stock, (ii) they agreed not to sell their stock for a substantial period after the Business Combination, and (iii) there are no allegations of the sale of a single share of Clover stock during the Class Period. *See* Br. 44-45.[27]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice, and deny Plaintiffs' perfunctory request for leave to amend the Complaint, which does not provide a factual basis for curing the Complaint's deficiencies, as required under Sixth Circuit law.[28]

---

[26] Plaintiffs' "core operations" theory does not save their claims. "[T]hat an allegedly fraudulent statement concerned 'core operations,' standing alone, is insufficient to support strong circumstantial evidence of scienter. Rather, the 'core operations' doctrine bolsters the strength of the inference of scienter when plaintiffs have ***already adequately alleged facts indicating that defendants might have known their statements were false.***" *Glaser*, 772 F. Supp. 2d at 595. Plaintiffs have failed to plead this requisite.

[27] For the reasons discussed, Plaintiffs have not pled scienter regarding the alleged violations of Regulation S-K, which are entirely derivative of the claims discussed above. Furthermore, Defendants rely on their arguments and authorities (none of which have been effectively rebutted) in the Opening Brief on the issue of loss causation.

[28] The PSLRA restricts "the ability of plaintiffs to amend their complaint, and thus . . . limit[s] the scope of Rule 15(a) of the Federal Rules of Civil Procedure." *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 692 (6th Cir. 2003) ("[A]llowing repeated filing of amended complaints would frustrate the purpose of the PSLRA."); *accord Ricker v. Zoo Ent., Inc.*, 534 F. App'x 495, 501 (6th Cir. 2013) (A plaintiff is "not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.").

Dated: December 17, 2021

Respectfully submitted,

BASS BERRY & SIMS PLC

By: */s/ Britt K. Latham*

Britt K. Latham (BPR #023149)
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel.: (615) 742-6200
blatham@bassberry.com

MILBANK LLP

Scott A. Edelman (admitted *pro hac vice*)
Jed M. Schwartz (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Tel.: 212-530-5000
sedelman@milbank.com
jschwartz@milbank.com

*Counsel for Defendants Clover Health Investments, Corp. f/k/a Social Capital Hedosophia Holdings Corp. III, Vivek Garipalli, Andrew Toy, Joe Wagner, and Chamath Palihapitiya*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically on December 17, 2021. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. The names of the attorneys for other parties who are registered to receive notices of filings through the Court's system are:

Benjamin A. Gastel
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801
Fax: (615) 255-5419
Email: beng@bsjfirm.com

Jacob A. Walker
Block & Leviton LLP
260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
Fax: (617) 507-6020
Email: jake@blockleviton.com

James Gerard Stranch, IV
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801
Fax: (615) 255-5419
Email: gerards@bsjfirm.com

Jeffrey C. Block
Block & Leviton LLP
260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
Fax: (617) 507-6020
Email: jeff@blockleviton.com

Stephen J. Teti
Block & Leviton LLP
260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
Fax: (617) 507-6020
Email: steti@blockleviton.com

Larry Russell Belk, Jr.
Sutherland & Belk, PLC
2505 21st Avenue South
Suite 400
Nashville, TN 37212
(615) 846-6200
Fax: (615) 208-2255
Email: russell@sbinjurylaw.com

James A. Holifield, Jr.
Holifield Janich Rachal & Associates, PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
(865) 566-0115
Fax: (865) 566-0119
Email: aholifield@holifieldlaw.com

Brian Peter Calandra
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
(646) 581-9958
Email: bcalandra@pomlaw.com

Brian Schall
Rina Restaino
Schall Law Firm
2049 Century Park East
Suite 2460
Los Angeles, CA 90067
(310) 301-3335
Email: brian@schallfirm.com
Email: rina@schallfirm.com
Ftrans
Paul Kent Bramlett
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
Fax: (615) 254-4116
Email: pknashlaw@aol.com

Laurence M. Rosen
The Rosen Law Firm, P.A.
275 Madison Avenue
34th Floor
New York, NY 10016
(212) 686-1060
Email: lrosen@rosenlegal.com

Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue
34th Floor
New York, NY 10016
(212) 686-1060
Email: pkim@rosenlegal.com

Robert P. Bramlett
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
Fax: (615) 254-4116
Email: robert@bramlettlawoffices.com

Christopher M. Wood
Robbins Geller Rudman & Dowd LLP
(Nashville Office)
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2203
Fax: (615) 252-3798
Email: cwood@rgrdlaw.com

Jerry E. Martin
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Fax: (615) 252-3798
Email: jmartin@barrettjohnston.com

Mark S. Reich
Robbins Geller Rudman & Dowd LLP (New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
Fax: (631) 367-1173
Email: mreich@rgrdlaw.com

Mary K. Blasy
Robbins Geller Rudman & Dowd LLP (New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
Fax: (631) 367-1173
Email: mblasy@rgrdlaw.com

Samuel H. Rudman
Robbins Geller Rudman & Dowd LLP (New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
Fax: (631) 367-1173
Email: srudman@rgrdlaw.com

Corey D. Holzer
Holzer & Holzer, LLC
1200 Ashwood Parkway
Suite 410
Atlanta, GA 30338
(770) 392-0090
Fax: (770) 392-0029
Email: cholzer@holzerlaw.com

J. Alexander Hood , II
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
(212) 661-1100
Fax: (212) 661-8665
Email: ahood@pomlaw.com

Jeremy A. Lieberman
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
(212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com

Patrick V. Dahlstrom
Pomerantz LLP (Chicago Office)
10 S LaSalle Street
Suite 3505
Chicago, IL 60603
(312) 377-1181
Fax: (312) 377-1184
Email: pdahlstrom@pomlaw.com

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
(615) 983-8900
Fax: (615) 682-8533
Email: john@spragenslaw.com

Saul C. Belz
Glankler Brown, PLLC
6000 Poplar Avenue
Suite 400
Memphis, TN 38119
(901) 576-1741
Fax: (901) 576-2389
Email: sbelz@glankler.com

Tara L. Swafford
The Swafford Law Firm, PLLC
321 Billingsly Court
Suite 19
(615) 599-8406
Fax: (615) 807-2355
Email: tara@swaffordlawfirm.com

Charles F. Barrett
Neal & Harwell, PLC
1201 Demonbreun Street
Suite 1000
Nashville, TN 37203
(615) 244-1713
Fax: (615) 726-0573
Email: cbarrett@nealharwell.com

Parties may access this filing through the Court's system.

*/s/ Britt K. Latham*
Britt K. Latham

*Counsel for Defendants*