# Exhibit C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

TIMOTHY BOND,                      )
                                   )
          Lead Plaintiff,          )
                                   )
              vs.                  )
                                   )
JEAN-NICOLAS TREMBLAY,             ) CASE NO. 3:21-CV-00096
                                   )
          Named Plaintiff.         )
                                   )
INDIVIDUALLY AND ON BEHALF         )
OF ALL OTHERS SIMILARLY            )
SITUATED,                          )
                                   )
                                   )
              vs.                  )
                                   )
CLOVER HEALTH INVESTMENTS,         )
CORP. F/K/A SOCIAL CAPITAL         )
HEDOSOPHIA HOLDINGS CORP.          )
III, VIVEK GARIPALLI,              )
ANDREW TOY, JOE WAGNER,            )
AND CHAMATH PALIHAPITIYA,          )
                                   )
          Defendants.              )


VIDEOTAPED DEPOSITION OF FIRAS JABRI

SAN FRANCISCO, CALIFORNIA

SATURDAY, SEPTEMBER 10, 2022


(Reported Remotely)


REPORTED BY:  TANYA L. VERHOVEN-PAGE,
              CCR-B-1790

JOB NO.  215953

Case 3:21-cv-00096  Document 109-3  Filed 09/30/22  Page 2 of 16 PageID #: 2546

pretty certain -- I may have reviewed it for Clover, but I'm not certain.

Q    Do you have any record of the prospectus or registration statement?

A    No, I don't.  No.

Q    For example, you didn't print it out or something like that?

A    No.  I mean, if it's -- if it's pulled up in a Google search I would read it, but I would not print or keep any records like that.

MR. SCHWARTZ:  We can take that document down.  Let's -- Isabel, can we bring up Tab 8.

(Jabri Deposition Exhibit No. 14 was marked for the record.)

BY MR. SCHWARTZ:

Q    Mr. Jabri, we've marked as Exhibit 14 a document that says Certification Pursuant to Federal Securities Laws, and it has a footer at the bottom indicating it was filed in the case 21-CV-96, and it's document 41-3.

Have you seen this document before?

A    I'm trying to move -- for some reason I can't move the page.  I don't know.  Or now I can. Okay.

Yes, I -- yes, I have seen this document.

Q    And there's a third page, as well.  I just want to make sure you see that, too.

A    I do.

Q    And so you've seen this document before?

A    Yes.

Q    What is this?

A    This is just my request to become the Lead Plaintiff and just disclosing my transactions -- my purchase transactions with Clover.

Q    And did you prepare this document?

A    I gave all -- I gave a large portion of the information in it.  I gave my broker statements and -- but I did not write this document.  So I don't know what that means, by prepare.

Q    Did you review it for accuracy before you signed it?

A    I did.

Q    And that includes the final page listing your purchases and sales?

A    Correct.

Q    Paragraph 2 says:  I have reviewed a complaint against Clover Health Investments Corp.

And it goes on?  Do you see that?

A    On which paragraph?

Q    Paragraph 2.

A    Yeah.

Q    Which complaint did you review?

A    Their failure to disclose the DOJ investigation.

Q    Do you remember if the complaint you reviewed was something that had been filed with the Court already?

A    I believe so.

Q    And do you remember who was the plaintiff listed on that complaint?

A    I believe it -- hold on.  I remember the plaintiff that is on -- hold on.  I believe it was Tim, Timothy.  Timothy -- Timothy -- Timothy Bond, I think is what it was.  Timothy Bond, he was the first person to file a complaint.

Q    Now, Paragraph 5 references the attached third page, correct?

A    Correct.

Q    And I take it from your prior answer you did not actually type up page three, but you reviewed it for accuracy, correct?

A    Correct.

Q    And this reflects all of your purchases and sales of Clover Health Investment stock up to the

point of April 5th, 2021?

A   Yes.

MR. CALANDRA:  Objection to form.

But go ahead.

THE WITNESS:  Sorry.  Yes.

BY MR. SCHWARTZ:

Q   So it looks like you first purchased Clover stock on December 28th, 2020; is that correct?

A   I purchased the SPAC, which merged with the stock.  So I don't know -- I don't understand your question.

Q   Well, is it correct that you first purchased the securities at issue here on December 28th, 2020?

MR. CALANDRA:  Objection to form.

But go ahead.

THE WITNESS:  I purchased the SPAC.

BY MR. SCHWARTZ:

Q   Okay.  And do you understand there to be a difference between what you're saying and what I just asked?

A   Yeah, they're two separate things.

Q   What is your understanding of that?  What do you mean by that?

A   I purchased the SPAC, that was one

oath and you're representing to the Court, and you understand the Court is going to be looking at this video and assessing your candor, and you're telling me that you've lost money on the investments that are represented on this page that we're looking at?

A    For purposes of the law --

MR. CALANDRA:  Objection to form.

But go ahead.

THE WITNESS:  For the purposes of the law, the answer is yes.

BY MR. SCHWARTZ:

Q    And how about for tax purposes?  What have you told the Federal government about whether you've lost money or made money on the purchases that are listed on Exhibit 15?

A    I reported my transactions as they occurred to the IRS.

Q    And what did you tell the IRS?

A    I imported my transactions, I reported it to the IRS and I paid my taxes.

Q    Do you know how much money you made on your investment that are represented on Exhibit 15?

A    I -- I don't understand the question because I lost money on the transactions.  Had the lies not -- or the -- the -- had the -- had the price

not been inflated because of the lies, the situation would have been very different.

Q    Do you know what it means to be candid?

A    I think so, yeah.

Q    What's your definition of candid?  What's your understanding of what it means to be candid?

A    Honest, truthful.

Q    Forthright?

A    Sure.

Q    Not evasive?

A    Okay.

Q    Do you -- would you agree that being candid means you're not being evasive in answering a question?

A    Sure, yes.

Q    So using all of those words -- all right -- and understanding that you have a duty of candor -- you understand you do have a duty of candor, right?

A    I do.

Q    Now, understanding that, will you admit that you made money on the investments that are listed here on Exhibit 15?

A    When I filed this lawsuit, I was very much at a loss.  These -- yeah.

Q So you, in doing your best to satisfy your duty of candor, that was the answer that you gave to my question? Do you want me to repeat the question?

A No, I'm clear.

Q Do you know how much profit you made on the investments on Exhibit 15?

A I lost money. When I filed this case, I was very much at a loss. When I became Lead Plaintiff, I was very much at a loss. I lost more than half a million dollars.

Q That's not what I asked. I'm going to -- I'm going to read my question back.

Do you know how much profit you made on the investments on Exhibit 15?

A Do I know how much profit I made -- I -- again, when I filed this case, I was at a loss. What happened later is me getting lucky.

Q I'm going to -- I'm going to ask the question again because you're not answering it.

Do you know how much profit you made on the investments listed on Exhibit 15?

MR. CALANDRA: Objection to form.

But go ahead.

THE WITNESS: I think the question

is invalid.

BY MR. SCHWARTZ:

Q    Well, unless you're unable to answer the question, I'm going to ask that you answer the question.

A    I -- I -- I don't know how to answer that question.  I -- I bought the stock at X.  The price was highly inflated.  I sold -- when I -- when the allegations and the complaints were filed, I had lost a lot of money.  It was a real loss.  I had a lot of sleepless nights.  And we filed the case based on that.

Q    Now, I'm going to ask for -- I don't know -- fourth time, fifth time, because I still haven't gotten an answer.

And again, keeping your duty of candor in mind, do you know how much profit you made on the investments listed on Exhibit 15?

MR. CALANDRA:  Objection to form.

But go ahead.

THE WITNESS:  I had lost half a million dollars, over half a million dollars on these transactions.

BY MR. SCHWARTZ:

Q    Is there a reason that you're refusing to

answer my question?

A    I'm answering your question.  I'm saying I lost over half a million dollars on the transaction.

Q    And when you reported to the IRS your transactions, are you telling me that you told the IRS you lost over half a million dollars?

A    I filed the transactions as they occurred and if there was a gain, I paid -- you know, I -- if there was a gain, I paid taxes on that gain.

Q    Okay.  And what did you tell the IRS when you filed your taxes?

A    I told them I sold the stock for the price that I sold it for, $17 and something.

Q    So you do remember what you sold it for?

A    Roughly speaking, yeah.

Q    And it was higher than you bought it for?

A    That was just me getting lucky.

Q    I'm not asking about luck.  I'm just asking about two numbers.

Did you sell all of the stock listed on Exhibit 15 for more money than you paid for it?

A    That was me getting lucky.  Yes, I did, but that was me getting lucky.

Q    And you'd agree that that's called

profit, right?

A    I think that had the lies not existed, I would have -- it would have been a much different -- I would not have counted on luck or I would not have had those sleepless nights.

Q    When you sell something for more than you pay for it, you would agree with me that that's called profit or sometimes called short-term capital gains, right?

MR. CALANDRA:  Objection to form.

But, Jed, I think you have the answer you need.

MR. SCHWARTZ:  No, I don't.  I don't.  He's being incredibly evasive and I don't understand why he won't just admit the facts that we all know.

MR. CALANDRA:  Jed, I think you asked him did you sell them for a price higher than you bought them and he said yes.

MR. SCHWARTZ:  And I'm asking a different question.

MR. CALANDRA:  I didn't instruct him not to answer anything, but I -- let me finish -- but I think we're starting

TSG Reporting - Worldwide   877-702-9580

THE WITNESS:  I don't remember the details.  I rely on counsel to advise me as to what my legal loss is.

MR. SCHWARTZ:  Isabel, can we go to Page 25 of the document.

MS. PITARO:  Yes.  He should now be able to navigate.

THE WITNESS:  I can, yeah.

BY MR. SCHWARTZ:

Q    If you look at Paragraph 57, are you there?

A    I see it.

Q    And do you see Dr. Cain says:  Following this news, Clover stock price closed on February 4 at $12.23 per share, down $1.72 or 13.16 percent from the prior closing price of $13.95 per share.  My event study revealed an abnormal stock return of negative 13.74 percent.

And it goes on.  Do you see that?

A    I do.

MR. CALANDRA:  Objection to form.

But go ahead.

BY MR. SCHWARTZ:

Q    I'll represent to you that a negative 13.74 decline in the stock price equates to about

$1.92.

Have you been informed that the maximum inflation recoverable in this case is $1.92 per share?

MR. CALANDRA:  I note my objection to -- to the representation, but -- and to the question.

But go ahead, Mr. Jabri.

THE WITNESS:  I rely on counsel to advise me what my legal loss is.

BY MR. SCHWARTZ:

Q    And you understand that, in the best case scenario, $1.92 times 80,000 shares is nowhere near $550,000, right?

MR. CALANDRA:  Note my objection.

But go ahead.

THE WITNESS:  I rely on counsel to advise me what my legal loss is.

BY MR. SCHWARTZ:

Q    You understand that, best case scenario, assuming you are able to prove everything, that your recovery would be $150,000, not $550,000?

MR. CALANDRA:  Note my objection, both to form and that it's been asked and answered.

TSG Reporting - Worldwide   877-702-9580

But go ahead, Mr. Jabri.

THE WITNESS:  I rely on my counsel to advise me what my legal loss is.

BY MR. SCHWARTZ:

Q    And so you're not aware of that?

MR. CALANDRA:  Note my objection, misstates testimony, to form and asked and answered.

Go ahead, Mr. Jabri.

THE WITNESS:  I rely on counsel to advise me what my legal loss is.

MR. SCHWARTZ:  Isabel, we can take that document down and let's put up the one that we were going to bring up before and mark it as Exhibit 20.

(Jabri Deposition Exhibit No. 20 was marked for the record.)

BY MR. SCHWARTZ:

Q    Can you see Exhibit 20?

A    I do.

Q    And is the name @FJabri650 your Twitter user name or handle?

A    It is.

Q    And do you see that, on the first page, it looks like you have responded to a tweet by

C E R T I F I C A T E

STATE OF GEORGIA:

FULTON COUNTY:

I hereby certify that the foregoing deposition was reported, as stated in the caption, and the questions and answers thereto were reduced to written page under my direction, that the preceding pages represent a true and correct transcript of the evidence given by said witness.

I further certify that I am not of kin or counsel to the parties in the case, am not in the regular employ of counsel for any of said parties, nor am I in any way financially interested in the result of said case.

Dated this 16th day of September, 2022.

_____
Tanya L. Verhoven-Page,
Certified Court Reporter,
B-1790.