# <u>EXHIBIT 1</u>

TIMOTHY BOND,

          Lead Plaintiff

and

JEAN-NICOLAS TREMBLAY

          Named Plaintiff,

individually and on behalf of all others similarly situated,

          v.

CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI, ANDREW TOY, JOE WAGNER and CHAMATH PALIHAPITIYA,

          Defendants.

Case No. 3:21-cv-00096

Judge Aleta A. Trauger

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS TO DEFENDANTS CLOVER HEALTH INVESTMENTS CORP.
F/K/A SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI,
ANDREW TOY, JOE WAGNER, AND CHAMATH PALIHAPITIYA**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Lead Plaintiff Firas

Jabri and Named Plaintiff Jean-Nicolas Tremblay (collectively, "Plaintiffs"), by and through their

undersigned counsel, hereby request that Defendants Clover Health Investments Corp. f/k/a Social

Capital Hedosophia Holdings Corp. III ("Clover" or the "Company"), Vivek Garipalli

("Garipalli"), CTO, Andrew Toy ("Toy"), CFO, Joe Wagner ("Wagner"), and Chamath

Palihapitiya ("Palihapitiya"), produce for inspection all Documents described below in accordance

with the following definitions and instructions at the offices of Pomerantz LLP, 600 Third Avenue, 20th Floor, New York, New York 10016 within thirty (30) days of the date of service or at such other location or on such other date as the parties may agree or the Court may order.

## DEFINITIONS

1. Except as set forth below, all capitalized terms have the same meaning as set forth in the Complaint.

2. "Action" refers to the above-captioned action.

3. "All," "any," and "each" shall be each construed as encompassing all, any, and each.

4. "Alleged Misstatements" mean, without limitation, misstatements regarding: (i) that Clover had met and complied with all applicable laws since January 1, 2018 and was not presently involved in any legal proceeding that could have a material adverse effect on the Company's business; (ii) Clover's growth and positive performance was the result of the quality of its healthcare plans and Clover Assistant, its proprietary patient management application, when it was actually the result of illicit gifts or payments and related-party transactions, (iii) the vast majority of physicians under contract with Clover were not using the Clover Assistant tool during patient visits or at all, (iv) Clover's financial statements were not prepared in accordance with GAAP because they failed to disclose material related-party transactions, and (v) Clover's SEC filings in connection with the Business Combination failed to comply with Items 303 and 503 of Regulation S-K.

5. "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Document Requests all responses that might otherwise be construed to be outside their scope.

2

6. "Blueshirt" means Blueshirt Capital Advisors or any other parent entity, subsidiary, or affiliate of Blueshirt Capital Advisors that worked on the Business Combination.

7. "Business Combination" refers to the January 2021 merger or "de SPAC transaction" in which Clover formally merged with Social Capital Hedosophia Holdings Corp. III as described in the Complaint. References to "Business Combination" refer to all conduct Concerning the Business Combination prior to the announcement of the Business Combination in October 2020 and all conduct Concerning the Business Combination in the period after the announcement of the Business Combination and the closing of the Business Combination in January 2021.

8. "Class Period" means the time period from October 6, 2020 to February 3, 2021, both dates inclusive, as described in the Complaint.

9. "Clover" or the "Company" means Clover Health Investments Corp., f/k/a Social Capital Hedosophia Holdings Corp. III, and all of its present and former officers, directors, committees, Employees, partners, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting, or purporting to act, on behalf of any of the foregoing.

10. "Clover Assistant" refers to the software described in ¶¶66–68 of the Complaint.

11. "Communication" and "Communications" are used in a comprehensive sense, and mean and include every conceivable manner or means of disclosure, transfer, transmittal, or exchange of oral, written, electronic, or other information, in the form of facts, ideas, inquiries, or otherwise, between or among one or more Persons or entities, and include, without limitation, all Documents, writings, correspondence, memoranda, messages, meetings, conversations, discussions, conferences, agreements, e-mails, or other transmittal of information, whether face-

3

to-face, by telephone, by mail, by facsimile, by computer, or otherwise, and further include, without limitation, all forms of electronic Communications and messages.

12. "Complaint" refers to the First Amended Complaint For Violation Of The Federal Securities Laws, filed on June 28, 2021 (ECF No. 70) in the Action.

13. "¶ __" refers to paragraphs in the Complaint.

14. "Concerning" means relating to, referring to, in connection with, pertaining to, describing, reflecting, discussing, analyzing, regarding, summarizing, evidencing, embodying, or constituting.

15. "Connaught" means Connaught (UK) Limited or any other parent entity, subsidiary, or affiliate of Connaught (UK) Limited that worked on the Business Combination.

16. "Credit Suisse" means Credit Suisse Group AG  or any other parent entity, subsidiary, or affiliate of Credit Suisse Group AG that worked on the Business Combination.

17. "Date" means the exact day, month and year if ascertainable, or if not, the best approximation (Including relationship to other events).

18. "Defendants" or "Defendant" means Clover and the Individual Defendants.

19. "Derivative Actions" means *In re Clover Health Investments, Corp. Derivative Litigation*, No. 1:21-cv-00191-LPS (D. Del.); *Davies v. Garipalli*, No. 2021-1016-SG (Del. Ch.); *Sun v. Garipalli*, No. 3:21-Cv-00311 (M.D. Tenn.); *Luthra v. Garipalli*, 3:21-cv-0320 (M.D. Tenn.), and/or any other action filed derivatively on behalf of Clover arising out of, related to, or asserting substantively similar allegations as those in the Complaint.

20. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), Including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this

4

term.  The term "Document" further includes, but is not limited to, any and all forms of recorded information, whether handwritten, printed, typed, or otherwise visually reproduced, electronically recorded or orally recorded, Including all originals, revisions, and markups of drafts, and all files, Documents, databases, e-mails, and other data maintained in computer-readable form.  The term "Document" specifically includes, but is not limited to: working papers, Communications, Including intra-company Communications; minutes and records of meetings; letters; facsimile transmissions; telegrams; telephone bills and records; cables; records; books; summaries or records of personal conversations or interviews; legal pleadings; affidavits; deposition transcripts; trial transcripts; forecasts; statistical statements; accountants' work papers; brochures; pamphlets; circulars; press releases; agreements; contracts; telephone messages, slips and logs; diary entries; electronic mail and messages of every kind; calendars; reports; evaluations; assessments; analyses; test results; correspondence; memoranda; notes; video recordings of every kind; audio recordings of every kind; electronic recordings of every kind; drawings; graphics; graphs; maps; diagrams; charts; photographs; tables; indices; recordings; tapes; microfilms; reports of investigations; opinions or reports of consultants; data processing and computer printouts, tapes, disks, and data and information stored in computers or data processing equipment, together with programs and program documentation necessary to utilize or retrieve such data or information; all other mechanical or electronic means of storing or recording data or information; and any other data compilation from which information can be obtained and translated through detection devices into reasonably usable form.

21.    "DOJ" means the United States Department of Justice.

22.    "DOJ Investigation" means the inquiry by the U.S. Attorney's Office for the Eastern District of Pennsylvania relating to, among other things, certain of Clover's arrangements with

providers participating in its network and programs, and the Clover Assistant, and which was the subject of Clover's Current Report on Form 8-K filed with the SEC on February 5, 2021.

23. "Employee" means any Person who at any time during the Relevant Period acted or purported to act on behalf of an entity, You, or another Person or Persons, Including all present and former officers, directors, executives, partners, principals, managers, staff personnel, accountants, agents, representatives, in-house attorneys, independent contractors, advisors, and consultants of such entity, Person or Persons. For the avoidance of doubt, "Employee" includes Palihapitiya.

24. Financial Advisors means, individually or collectively, Blueshirt, Connaught, Credit Suisse, Jefferies and/or J.P. Morgan.

25. "Hindenburg Report" means the report entitled "Clover Health: How the 'King of SPACs' Lured Retail Investors Into a Broken Business Facing an Active, Undisclosed DOJ Investigation" that was published by Hindenburg Research LLC (defined herein) on February 4, 2021, and its subsequent reply on February 5, 2021, to Clover's Hindenburg Response (defined herein).

26. "Hindenburg Research LLC" or "Hindenburg Research" refer to the research firm as described in the Complaint that published the Hindenburg Report.

27. "Hindenburg Response" refers to Clover's response to the Hindenburg Report that was posted to Medium.com on February 5, 2021 and annexed as Exhibit 99.1 of Clover's Form 8-K filed on February 5, 2021, with the United States Securities and Exchange Commission ("SEC").

28. "Identify," when referring to a Person, means to give, to the extent known, the Person's full name, present or last known address, and email address, and when referring to a natural Person, additionally, the present or last known place of employment.

6

29. "Identify," with respect to Communications, means to give, to the extent known, (a) a description of the substance of the Communication; (b) the form of the Communication (e.g., telephone, facsimile, email, etc.); (c) the identity of all parties to and/or present at the time of the Communication, as well as the full name, present or last known address, and the current or last known place of employment of each Person; (d) the identity of the Person who you contend initiated the Communication; and (e) the time, date and place of the Communication.

30. "Identify," when referring to Documents, means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) Date of the Document; and (iv) author(s), addressee(s) and recipient(s).

31. "Including" means including without limitation.

32. "Individual Defendants" means Garipalli, Andrew Toy, Wagner, and Palihapitiya.

33. "Jefferies" means Jefferies LLC means or any other parent entity, subsidiary, or affiliate of Jefferies LLC that worked on the Business Combination.

34. "J.P. Morgan" means J.P. Morgan Chase & Co. or any other parent entity, subsidiary, or affiliate of J.P. Morgan Chase & Co. that worked on the Business Combination.

35. "MA" refers to Medicare Advantage or "Medicare Part C."

36. "Plaintiffs" mean Lead Plaintiff Firas Jabri and Named Plaintiff Jean-Nicolas Tremblay.

37. "Person" refers to any natural person or any legal entity, Including, without limitation, any business or governmental entity or association.

38. "Policy" or "Policies" means policies, procedures, practices, guidelines, protocols, programs, or systems.

39. "SEC" means the U.S. Securities and Exchange Commission.

7

40. "SEC Investigation" means the investigation by the SEC related to certain disclosures and aspects of Clover's business as well as certain matters described in the Hindenburg Report and/or the Hindenburg Response, Including subpoenas issued by the SEC in connection with its investigation.

41. "Social Capital Hedosophia Holdings Corp. III" or "SCH" refer to the special purpose acquisition company that (i) was incorporated as a Cayman Islands exempted company on October 18, 2019; (ii) completed its initial public offering on April 24, 2020; and (iii) became a Delaware corporation and the surviving entity in connection with the Business Combination, changing its name to Clover.

42. "You" or "Your" refers to the party responding to this demand for production and any present and former officers, directors, committees, Employees, partners, corporate parents, predecessors, successors, assigns, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting, or purporting to act, on behalf of any of the foregoing.

43. The following rules of construction apply to all discovery requests:

a. The use of the singular form of any word includes the plural and vice versa.

b. The term "Including" shall be construed as "including but not limited to."

c. The specificity of any Request or part of a Request shall not limit the generality of any other Request or part of a Request.

d. Whenever necessary to bring within the scope of these Requests Documents that might otherwise be construed to be outside its scope, the use of a verb in any tense shall be construed as the use of that verb in all other tenses, and the use of the feminine, masculine or neutral genders shall include all genders.

8

**INSTRUCTIONS**

1.      In producing Documents and other materials, You are requested to furnish all Documents or other materials in Your possession, custody or control or in the possession, custody or control of any of Your agents, representatives, Employees, accountants or attorneys, wherever those Documents might be located.

2.      These Requests are continuing in nature.  Under Rule 26(e) of the Federal Rules of Civil Procedure, You are required to supplement Your responses and produce additional Documents if You obtain further or different information, and Plaintiffs specifically reserve the right to seek supplementary production of Documents before trial.

3.      All Documents that exist in electronic format are to be produced in their native format, or in another mutually agreeable format that provides Plaintiffs with all metadata associated with such electronic Documents and allows Plaintiffs to search and organize such electronic Documents in a manner that is as effective and efficient as that enjoyed by the producing party.

4.      Provide all electronically stored information ("ESI") in the form and manner agreed upon by the parties to this Action for producing ESI in the ESI protocol that the parties are scheduled to prepare under the Case Management Plan in this Action.

5.      All Documents are to be produced as they are kept in the ordinary course of business or be organized and labeled to correspond to the categories in these Requests.

6.      If any Document was, but is no longer, in Your possession or subject to Your control, state whether it (a) is missing or lost, (b) has been destroyed, (c) has been transferred, voluntarily or involuntarily, to others, or (d) has been otherwise disposed of, and in each instance explain the circumstances of such disposition, and state the approximate Date thereof.

7. Wherever You are asked to produce a Document which was formerly in Your possession, custody or control but has been lost or destroyed, You shall designate the type of document, (i.e., letter, report book, brochure, email, etc.) and state:

a) information sufficient to enable Plaintiffs to Identify the Document, Including the title or subject heading Date, name(s) and address(es) of the author or signer(s) and Person(s) copied;

b) the substance or content of the Document;

c) the last known location of the Document;

d) the Date on which the Document was lost or destroyed; and

e) if destroyed, the circumstances of or reason for such destruction and the Persons requesting and performing such destruction.

8. In the event You withhold any Document called for by these Requests on the basis of a claim of privilege or other right of nondisclosure, You shall comply with the procedure to be agreed upon by the parties to this Action in a protective order ("Protective Order") for handling claims of privilege or other right of nondisclosure when the parties meet and confer at a time to be agreed upon by the parties. If a portion of any Document or Communication responsive to these Requests is withheld under claim of privilege, any non-privileged portion of such Document or Communication must be provided.

9. Notwithstanding the assertion of any privilege or other right of nondisclosure, any requested Document that You object to producing, but that nevertheless contains non-privileged information that is responsive to these Requests, must be produced, but that portion of the Document as to which the privilege or right of nondisclosure is asserted may be redacted in conformance with the Protective Order provided that such portion of the Document is marked

10

"redacted." Where any Document is produced in redacted form on the basis of such assertion, You shall Identify (i) the nature of the objection (Including work product protection) that is being claimed and (ii) otherwise follow the procedure in the Protective Order.

10. Wherever You assert that a Document is properly withheld from production for inspection or copying on the grounds of evidentiary privilege or immunity from discovery, You shall designate the type of Document (i.e., letter, report book, brochure, email, etc.) and state:

    a) information sufficient to enable Plaintiffs to Identify the Document, Including: (i) the title or subject heading, (ii) Date, (iii) name(s) and address(es) of the author or signer(s), (iv) recipients, and (v) Person(s) copied;

    b) the general subject matter dealt with in the Document with reasonable specificity; and

    c) an explanation of the privilege asserted.

11. If an objection is made to any of these Requests, the response shall state whether Documents are being withheld from inspection and production on the basis of such objection, or whether inspection and production of the responsive Documents will occur notwithstanding such objection.

12. These Requests shall not be deemed to call for identical copies of Documents. "Identical" means precisely the same in all respects; for example, a document with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks. However, You shall not de-duplicate across custodians; if the same email, memo, letter or other document was received or maintained by more than one individual, You shall produce the same document for each and every individual from whom it was gathered.

11

13. In producing Documents in connection with these Requests, each document to be produced should include all attachments and all enclosures referred to in the Documents or originally attached or enclosed with the document requested or to be produced.

14. If any portion of a Document is considered responsive to any Request, the Request shall be construed as requesting production of the entire document, Including all attachments and enclosures, and in their original folder, binder, or other cover or container unless it is not possible to do so. Whenever a Document or group of Documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document.

15. If You cannot respond to these Requests in full after exercising due diligence to secure the Documents requested, You shall so state and respond to the extent possible, specifying the nature of Your inability to respond to the remainder.

16. If no Documents exist which are responsive to a particular Request, state this assertion in writing.

17. In the case of any Document relating in any way to any meeting or conversation, all participants in the meeting or conversation are to be identified.

18. Wherever You object that a request is overly broad, burdensome or oppressive, You shall state all facts demonstrating the nature of the burden.

19. The singular shall be construed to include the plural, and the plural shall be construed to include the singular, as necessary, to bring within the scope of this demand for production any Documents that might otherwise be construed to be outside their scope.

20. The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense, as necessary, to bring within the scope of this

demand for production any Documents that might otherwise be construed as outside their scope.

21.     These requests apply to materials written in any language. Materials that are responsive to these requests shall be produced regardless of what language the materials are written in.

## RELEVANT TIME PERIOD

Unless otherwise indicated, the time period covered by these Requests is from January 1, 2018 through March 29, 2021 (the "Relevant Time Period"). If, however, information generated prior to or after the Relevant Time Period is necessary for a correct or complete understanding of these Document Requests, the Documents shall be disclosed.  To the extent any Request uses the phrase "at any time," "without regard to the Relevant Time Period" or otherwise indicates that this time period does not apply, the Request is not limited by this time period.  If any Document is undated and the Date of its preparation cannot be determined, the Document shall be disclosed if otherwise responsive to these Document Requests.

## DOCUMENT REQUESTS

1.      All Documents and Communications produced, whether formally or informally, in the any Derivative Action.

2.      All Documents and Communications produced, without regard to the Relevant Time Period, whether formally or informally, to the DOJ, in response to, in connection with, or related to the DOJ Investigation.

3.      All Documents and Communications, without regard to the Relevant Time Period, Concerning the DOJ Investigation.

4.      All Communications to or from the Individual Defendants Concerning the DOJ Investigation.

13

5. All Communications to or from the Financial Advisors Concerning the DOJ Investigation.

6. Documents sufficient to identify all Employees who have been contacted by or communicated with the DOJ regarding the DOJ Investigation.

7. All Documents and Communications created for, Concerning, prepared for or considered as part of the "diligence" for the Business Combination referenced in ¶¶119–20, 122, 145, 250, 318 of the Complaint.

8. All Documents and Communications created for, Concerning, prepared for or considered by the Financial Advisors for the Business Combination, Including any Documents and Communications in a "data room" for the Business Combination.

9. All Documents and Communications produced, without regard to the Relevant Time Period, whether formally or informally, to the SEC in response to, in connection with, or related to the SEC Investigation.

10. All Documents and Communications, without regard to the Relevant Time Period, Concerning the SEC Investigation.

11. All Communications to or from the Individual Defendants Concerning the SEC Investigation.

12. Documents sufficient to identify all Employees who have been contacted by or communicated with the SEC regarding the SEC Investigation.

13. All Communications to or from the Individual Defendants, and all Documents and Communications where the Individual Defendants were cc'd or bcc'd, Concerning the allegations in the Complaint, Including the Alleged Misstatements.

14

14. All Documents and Communications Concerning the Alleged Misstatements, or any other similar public statements, Including (i) that Clover had met and complied with all applicable laws since January 1, 2018 and was not presently involved in any legal proceeding that could have a material adverse effect on the Company's business; (ii) Clover's payments or provision of gift cards to physicians or office staff for any reason; (iii) Clover's transactions with Hiram Bermudez or transactions with entities owned or controlled by Hiram Bermudez; and (iv) use of Clover Assistant by physicians under contract with Clover, Including during patient visit.

15. Documents sufficient to show all direct or indirect transactions between Clover and entities owned or controlled by Hiram Bermudez.

16. All Documents and Communications concerning related transactions reported in Clover's SEC filings.

17. All Documents and Communications Concerning the Hindenburg Response, Including All Documents and Communications created for, Concerning, prepared for or considered as part of the Hindenburg Response.

18. All Documents and Communications Concerning the current report on Form 8-K filed on behalf of Clover on March 29, 2021, Including All Documents and Communications created for, Concerning, prepared for or considered as part of the March 29, 2021 8-K.

19. All Documents and Communications Concerning payments or gifts of any kind by Employees to physicians.

20. All Documents and Communications Concerning any internal investigation at Clover into the provision of gift cards by Employees to physicians, Including the complaint and ensuing interviews referenced in ¶131 of the Complaint.

21. All Documents and Communications Concerning use of Clover Assistant.

22. All Documents and Communications Concerning physicians' failure to use Clover Assistant during patient visits or Concerning entry of data into Clover Assistant by Persons other than physicians.

23. All Documents and Communications concerning complaints about inducements for physicians to offer Clover MA plans or use Clover Assistant.

24. All Documents and Communications Concerning Clover's Board of Directors' meetings, Including all board minutes, summaries, presentations, minutes, audio and video recordings, agendas, notes, and any Documents circulated in connection with such meetings.

25. All Documents and Communications Concerning SCH's Board of Directors' meetings, Including all board minutes, summaries, presentations, minutes, audio and video recordings, agendas, notes, and any Documents circulated in connection with such meetings.

26. All Documents and Communications Concerning Plaintiffs. This Request is not limited to the Relevant Time Period.

27. All Documents and Communications Concerning the Hindenburg Report.

28. All Documents and Communications Concerning the allegations, facts, and descriptions contained in the Hindenburg Report.

29. All Communications with former Employees Concerning this Action. This Request is not limited to the Relevant Time Period.

30. All Communications with any Financial Advisor Concerning any of the allegations in the Complaint, Including any of the Alleged Misstatements.

31. All Documents and Communications concerning the ability of Clover Assistant to

32. All Documents and Communications Concerning any investigation, examination, audit, review or inquiry, whether formal or informal, of Clover, other than the DOJ Investigation

16

and the SEC Investigation, by any federal or state agency or stock exchange, Including the SEC, DOJ, U.S. Attorney, State Attorneys General, or by any Medicare-related government agency, Concerning any of the facts alleged in the Complaint. This request covers all Documents and Communications between Clover and the investigating agencies and stock exchanges.

33. All Documents and Communications Concerning Your document destruction and retention policies or procedures during the Relevant Time Period, any document retention or destruction policy with respect to ESI (Including e-mail, text messages, instant messages, computer records, disk files or other electronic records) as well as handheld devices (smartphones, Blackberries, PDAs, etc.), and any actual, suggested or contemplated policy, program, procedure, instruction, direction or request Concerning the destruction, alteration, removal, concealment, non-disclosure, secrecy or confidentiality of any of the Documents requested herein.

34. Documents sufficient to Identify or describe Clover's efforts to preserve and collect Documents relevant to this Action. This Request is not limited to the Relevant Time Period.

35. All Documents and Communications Concerning Defendants' efforts to preserve and collect Documents in the Derivative Actions. This Request is not limited to the Relevant Time Period.

36. All Documents and Communications Concerning Defendants' efforts to preserve and collect Documents in the DOJ Investigation. This Request is not limited to the Relevant Time Period.

37. All Documents and Communications Concerning Defendants' efforts to preserve and collect Documents in the SEC Investigation. This Request is not limited to the Relevant Time Period.

17

38.     All Documents Concerning insurance contracts, Policies, or agreements that may provide coverage for any Defendant in connection with this Action, Including a possible judgment in this Action or indemnification or reimbursement for payments made to satisfy any such judgment, Including any payments made or amounts incurred on those contracts, Policies or agreements.

39.     Documents sufficient to Identify Clover's organizational structure and management hierarchy.

40.     All Documents Defendants intend to use to oppose or advance any claim or defense in the Action, Including:

a.  all Documents that support any affirmative defense that Defendants include or plan to include in their Answer to the Complaint;

b.  all Documents Defendants intend to introduce as evidence in the Action;

c.  all Documents Defendants intend to use at any deposition or examination in the Action;

d.  all Documents Defendants intend to attach to any filing in the Action; and

e.  all Documents Defendants intend to use to oppose Plaintiffs' motion for class certification.

Dated: May 9, 2022                          **POMERANTZ LLP**

                                            By: */s/ Brian Calandra*
                                            Brian Calandra
                                            Jeremy A. Lieberman
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (917) 463-1044
                                            Email: jalieberman@pomlaw.com
                                                    bcalandra@pomlaw.com

18

*Counsel for Lead Plaintiffs Altimeo Asset Management and ODS Capital LLC*

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Lead Counsel and Attorneys for Plaintiffs*

**BRAMLETT LAW OFFICES**
Paul Kent Bramlett TN #7387/MS #4291
Robert Preston Bramlett TN #25895
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
Telephone: (615) 248-2828
Facsimile: (866) 816-4116
Email:       PKNASHLAW@aol.com
             Robert@BramlettLawOffices.com

*Liaison Counsel*

**THE SCHALL LAW FIRM**

Brian Schall (pro hac vice)
Rina Restaino (pro hac vice)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
Facsimile: (877) 590-0482
brian@schallfirm.com
rina@schallfirm.com

*Additional Counsel for Plaintiff Firas Jabri*

**HOLZER & HOLZER, LLC**
Corey D. Holzer
Marshall P. Dees
1200 Ashwood Parkway
Suite 410
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

19

Email: cholzer@holzerlaw.com
mdees@holzerlaw.com

***Additional Counsel for Named Plaintiff Jean-Nicolas Tremblay***

# CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of May, 2022, I served the attached document, Plaintiffs' First Set Of Requests For Production Of Documents To Defendants Clover Health Investments Corp. F/K/A Social Capital Hedosophia Holdings Corp. III, Vivek Garipalli, Andrew Toy, Joe Wagner, and Chamath Palihapitiya, via electronic mail to counsel of record.

*/s/ Brian Calandra*
Brian Calandra