# EXHIBIT 4



**Brian Calandra**
Partner

January 11, 2023

**VIA EMAIL**

Jed Schwartz, Esq.
Millbank LLP
55 Hudson Yards
New York, NY 10001-2163

      **Re:** *Bond et al. v. Clover Health Investments Corp. et al.*, **3:21-cv-00096 (M.D. Tenn.)**

Dear Jed:

I write on behalf of Plaintiffs with regard to the status of discovery in the above-referenced action (the "Action").[1] This letter serves to follow up on the open issues related to discovery in this Action and arising out of the parties' telephonic meet-and-confer on August 18, 2022 ("Meet-and-Confer").

## I.    Draft Protective Order, Document Production Protocol, and Deposition Protocol

Plaintiffs provided a draft protective order, document production protocol and deposition protocol to Defendants via email on August 3, 2022. To date, Defendants have provided comments on the document production protocol, and an updated protocol is enclosed with this letter. Defendants have not provided comments on the protective order or deposition protocol. Please provide comments or indicate that the contents of the order and protocols are acceptable and Plaintiffs will circulate signature copies.

## II.    Plaintiffs' Responses to Defendants' Objections to Plaintiffs' First Set of Requests for Production of Documents

As discussed during the Meet-and-Confer, Plaintiffs are not willing to accept the following general and specific objections set forth by Defendants in their Objections to Plaintiffs' First Set of Requests for Production of Documents:

---

[1] No aspect of this letter serves as Plaintiffs' acceptance of any of Defendants' objections lodged in their discovery responses and does not serve as a waiver of any of Plaintiffs' challenges to said objections. Plaintiffs reserve all rights to revisit all Requests for Production if, after review of any production documents, the production is insufficient.

600 Third Avenue, New York, New York 10016  tel: 212.661.1100  www.pomerantzlaw.com

NEW YORK    CHICAGO    LOS ANGELES    PARIS

1) Defendants state that they will interpret the definition of "Business Combination" in Plaintiffs' First Set of Requests for Production of Documents (the "Requests") to mean "the series of transactions consummated on January 7, 2021, and contemplated by the Agreement and Plan of Merger, dated October 5, 2020 (as amended), through which the private company, Clover Health Investments, Corp., merged with and into the special purpose acquisition company named Social Capital Hedosophia Holdings Corp. III ("SCH") to become the current public company, Clover."

Plaintiffs cannot accept Defendants' unreasonably narrow interpretation of "Business Combination." As alleged in the Complaint,[2] Defendants' conduct relevant to Plaintiffs' claims includes, but is not limited to, due diligence (¶¶111, 119-20, 122, 145, 250, 318, 341, 351 (collectively "Diligence Allegations")), public appearances (*e.g.*, ¶¶13, 119-20), presentations (¶¶193, 195, 275, 295), conferences (¶¶191, 297, 299-300), videos (¶¶67, 193, 195), information filed or furnished with the SEC (*e.g.*, ¶36), shelf registrations for Individual Defendants to sell Clover shares (*e.g.*, ¶¶224-26), the Hindenburg Report (*e.g.*, ¶¶79-83), the response to the Hindenburg Report (*e.g.*, ¶¶332-36), and the March 2021 8-K offering new information regarding money received by Hiram Bermudez (¶¶337-39). These events—as well as other events alleged in the Complaint—are directly relevant to Plaintiffs' claims, concern the series of transactions effecting the merger of Clover and SCH, and thus are the proper subject of discovery. Indeed, Defendants' Answer,[3] among other things *denies* the Complaint's allegations concerning Defendants' diligence. Answer at 46, 49-50, 58, 94-95, 117, 126, 129. The Answer also raises affirmative defenses of (i) "Defendants did not have the level of scienter required to impose liability for the conduct alleged in the Complaint," (ii) "Defendants relied, in good faith, and were entitled to rely, on advice and information provided by professional advisors," and (iii) "Defendants had no reasonable ground to believe and did not believe, at the time such statements were made and at all relevant times, that the statements were untrue, or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading." *Id.* at 141-42. Plaintiffs' Definition of "Business Combination" thus seeks information relevant to Plaintiffs' claims *and* Defendants' defenses and is proportional to the needs of the case.

Please confirm whether Defendants intend to stand on this objection.

2) Defendants state that they will interpret references to "Clover" or the "Company" in the Requests "to mean Clover Health Investments, Corp. (formerly known as Social Capital Hedosophia Holdings Corp. III)" and will interpret "You" and "Your," and "Yours" to mean Clover Health Investments, Corp.

Plaintiffs cannot accept Defendants' unreasonably narrow interpretation of "Clover," "You," "Your," and "Yours." The Complaint's allegations refer to conduct relevant to Plaintiffs' claims by direct employees and agents of Legacy Clover, SCH, and the Clover that survived the Business

---

[2] "Complaint" refers to the Amended Complaint filed June 28, 2021 in the Action. ECF No. 70. References to "¶__" are to Complaint paragraphs. Capitalized terms not defined herein shall have the meaning assigned to them in the Complaint or the Requests.

[3] "Answer" refers to the Answer to the Complaint filed April 11, 2022 in this Action. ECF No. 94.

Combination. For example, Chamath Palihapitiya, SCH's Chairman and CEO, is a named Defendant and, as described in the Diligence Allegations, repeatedly cited diligence performed by employees, representatives, and board members of SCH. Further, the forms S-4, prospectuses and proxy statements filed with the SEC in connection with the Business Combination specifically attested to the diligence conducted by SCH's board. Clover's response to the Hindenburg Report also indicated that Chamath, and thus SCH, were "fully aware of" the DOJ investigation in the run-up to the closing of the Business Combination and discussed it with professional advisors. Indeed, as set forth above, Defendants' Answer, among other things, *denies* the Complaint's allegations concerning Defendant Palihapitiya and SCH's diligence and raises affirmative defenses based on Defendants' lack of scienter, reliance on professional advisors, and lack of knowledge of the facts contradicting their public statements. Plaintiffs' Definitions of "Clover," "You" "Your," and "Yours" thus seek information relevant to Plaintiffs' claims *and* Defendants' defenses and is proportional to the needs of the case.

Please confirm whether Defendants intend to stand on this objection or will interpret "Clover" as it is defined in the Complaint.

3) Defendants object to the definition of Employee in the Requests on the grounds that it is "vague, ambiguous, overbroad, and unduly burdensome in that it refers to 'the Relevant Period,' which is not a defined term."

The reference to "Relevant Period" in the definition of "Employee" in the Requests is to the "Relevant Time Period," which is a defined term in the Requests.

4) Defendants further object to the definition of Employee in the Requests on the grounds that it is "vague, ambiguous, overbroad, and unduly burdensome in that . . . it purports to include individuals who "acted or purported to act on behalf of an entity . . . or another Person or Persons."

Plaintiffs cannot accept Defendants' unreasonably narrow interpretation of "Employee." As stated during the Meet-and-Confer, Plaintiffs seek documents concerning Persons who worked directly for Clover or SCH and/or who worked for or as an agent of Clover or SCH. Defendants' Answer raised as an affirmative defense that "Defendants relied, in good faith, and were entitled to rely, on advice and information provided by professional advisors." These professional advisors performed work for Clover, SCH, and/or Palihapitiya and thus were their agents. In addition, as alleged in the Complaint, the Response Article stated that Defendants had not disclosed the existence of the DOJ Investigation on the advice of counsel, *i.e.*, their *agents*. ¶333. Specifically, the Response Article stated that "[c]onsistent with the views of Clover's outside counsel, Social Capital's outside counsel, and independently retained outside counsel of third parties, including IPO underwriters' counsel, we concluded that the fact of DOJ's request for information was not material and was not required to be specifically disclosed in our SEC filings." The entities that provided this advice to Clover and SCH were agents of Clover, as "Clover" is defined in the Requests. Plaintiffs' Definition of "Employee" thus seeks information relevant to Plaintiffs' claims *and* Defendants' defenses and is proportional to the needs of the case.

3

Please confirm whether Defendants intend to stand on this objection or will interpret "Employee" as it is defined in the Requests.

5) Defendants purport to define the "Relevant Time Period" as "April 24, 2020, through February 4, 2021, both dates inclusive."

Plaintiffs cannot accept Defendants' objection to the Relevant Time Period, which was defined in the requests as January 1, 2018 to March 29, 2021, inclusive. The Complaint alleges that Defendants made false statements in the Response Article regarding Hiram Bermudez that were corrected in the Form 8-K filed with the SEC on March 29, 2021. ¶¶337-338. The allegedly false statements in Response Article, and Defendants belated correction of those statements, are evidence of Defendants' intent to deceive investors or reckless disregard of deceiving investors, as it is well-established that post-class period events are relevant to securities fraud claims, including, but not limited to, a defendant's scienter. *E.g., Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir.2009), Further, the Answer denies the allegations in paragraphs 337 and 338 of the Complaint, and raises the above referenced affirmative defenses of a lack of scienter and had "no reasonable ground to believe" that their statements were false. Plaintiffs' Definition of "Relevant Time Period" thus seeks information relevant to Plaintiffs' claims *and* Defendants' defenses and is proportional to the needs of the case.

Please confirm whether Defendants intend to stand on their objection to the "Relevant Time Period" as defined in the Requests.

6) Request 1

Defendants counsel represented during the Meet-and-Confer that Defendants were willing to produce documents produced in any Derivative Action up to the date of the Requests. Reserving all rights, Plaintiffs ask that Defendants immediately produce documents produced in any Derivative Action arising out of the same facts alleged in the Complaint immediately.

Further, as to documents produced in a Derivative Action after the date of the Requests, as Plaintiffs' counsel stated during the Meet-and-Confer, Defendants' arbitrary cutoff of the date of the date of the Requests is not an appropriate limitation on discovery. The Requests create an ongoing obligation for Defendants to produce responsive documents. To the extent that documents are produced in Derivative Actions arising out of the same facts alleged in the Complaint, those documents must be produced regardless of whether the are produced in a Derivative Action after the date of the Requests.

Please confirm whether Defendants intend to stand on their objection to producing documents produced in any Derivative Action after the date of the Requests.

7) Request 2

During the Meet-and-Confer, Defendants counsel represented that Defendants would propose parameters for producing documents previously produced to the DOJ relevant to Plaintiffs' claims. To date, Defendants have not proposed any parameters. Plaintiffs request that Defendants

4

immediately produce all documents previously produced to the DOJ as part of the DOJ Investigation. The Complaint alleges both that Defendants concealed the DOJ Investigation from investors and that the misconduct under investigation by the DOJ, as set forth in the Civil Investigative Demand described in paragraph 143 of the Complaint, made Defendants' representations about the source of Clover's growth misleading. ¶¶ 230-73. Accordingly, Request 2 seeks information relevant to the claims and defenses in the action and is proportional to the needs of the case.

Please confirm that Defendants will produce all documents produced to the DOJ.

8) Requests 3, 4, 5, 7, 10, 11, 13, 14, 16, 17, 19, 20, 21, 22, 23, 27, 28, 31

During the Meet-and-Confer, Plaintiffs agreed to propose custodians for all ESI searches and search terms for Requests 3, 4, 5, 7, 10, 11, 13, 16, 17, 19, 20, 21, 22, 23, 27, 28, 31. Plaintiffs list of proposed custodians appears in Section III, *infra*. Plaintiffs' proposed search terms for specific requests appear in Section IV, *infra*.

9) Request 6

Request 6 seeks documents sufficient to identify all Employees, as defined in the Requests, "who have been contacted by or communicated with the DOJ regarding the DOJ investigation." The Individual Defendants have refused to produce documents in response to this Request. As stated during the Meet-and-Confer, individuals contacted by the DOJ likely have information concerning the timeframe and scope of the DOJ Investigation, which is relevant to Plaintiffs' claims that Defendants concealed the DOJ Investigation from investors and the reasons for the growth of Clover's business. Accordingly, Request 6 seeks information from Clover *and* the Individual Defendants relevant to the claims and defenses in the action and is proportional to the needs of the case.

Plaintiffs request that Defendants immediately produce documents responsive to Request 6.

10) Request 8

As stated during the Meet-and-Confer, Request 8 seeks the information provided to Financial Advisors engaged by "Clover" (as defined in the Requests) for the Business Combination, including access to all documents in any "data room" for the Business Combinations, as well as the communications between any Financial Advisor and Clover (as defined in the Requests) concerning the data room documents, *i.e.*, questions and information requests from Financial Advisors and the communications and information provided in response to those requests.

Clover's responses to the Requests indicated that the Company would produce all non-privileged documents in the data room. Plaintiffs request that Defendants immediately produce all non-privileged data room documents responsive to Request 8.

Plaintiffs further request that Defendants produce all communications with advisors described above, or state whether Defendants intend to stand on this objection.

5

11) Requests 9, 10, and 11

Request 9 seeks all Documents and Communications produced to the SEC in connection with the SEC's investigation, Request 10 seeks all Documents and Communications concerning the SEC investigation, and Request 11 seeks all Communications to or from the Individual Defendants concerning the SEC Investigation. While Defendants' objected that this request was for "cloned discovery," this objection is meritless. Clover has disclosed that the SEC is investigating the allegations contained in the Hindenburg Report. The Hindenburg Report's allegations underly a substantial portion of the Plaintiffs' claims and the Complaint's allegations. Accordingly, the SEC investigation into Clover and Plaintiffs' claims against Defendants substantially overlap and thus documents and communications provided to the SEC, and concerning the SEC investigation, are directly relevant to Plaintiffs' claims.

Plaintiffs request that Defendants produce all documents responsive to Request 9. In addition, Plaintiffs have proposed search terms to identify documents responsive to Requests 10 and 11 in Section IV *infra*.

Plaintiffs request that Defendants produce documents and apply the search terms to custodians or state whether Defendants intend to stand on their objections to each of these Requests.

12) Request 12

Request 12 seeks documents sufficient to identify all Employees, as defined in the Requests, "who have been contacted by or communicated with the SEC regarding the SEC investigation." The Individual Defendants have refused to produce documents in response to this Request. As stated during the Meet-and-Confer, individuals contacted by the SEC likely have information concerning the scope of the SEC Investigation, which is relevant to Plaintiffs' claims because the SEC investigation into Clover and Plaintiffs' claims against Defendants substantially overlap. Accordingly, Request 12 seeks information from Clover relevant to the claims and defenses in the action and is proportional to the needs of the case.

Plaintiffs request that Defendants immediately produce documents responsive to Request 12, or indicate that they intend to stand on their objection and refuse to produce any responsive documents.

13) Request 15

Request 15 seeks Documents "sufficient to show all direct or indirect transactions between Clover and entities owned or controlled by Hiram Bermudez." Defendants responded that they would produce responsive non-privileged documents sufficient to show payments to B&H Assurance, LLC. As discussed during the Meet-and-Confer, this limitation is not acceptable to Plaintiffs. The Complaint alleges, which corroborating statements from multiple confidential witnesses, that Bermudez owned or controlled multiple insurance referral entities. Payments to these entities are directly relevant to Plaintiffs' claims concerning the failure to disclose or properly account for transactions with Bermudez himself or entities that he owned or controlled. Accordingly, Request

6

15 seeks information from Clover relevant to the claims and defenses in the action and is proportional to the needs of the case.

Plaintiffs request that Defendants immediately produce documents sufficient to show payments made by Clover to B&H Assurance, LLC. Plaintiffs further request that Defendants immediately produce documents responsive to Request 15, or indicate whether they intend to stand on their objection.

14) Request 18

Request 18 seeks all Documents and Communications Concerning the current report on Form 8-K filed on behalf of Clover on March 29, 2021. Defendants respond that they will not produce Documents in response to this Request. As described above, the Complaint alleges that Defendants made false statements in the Response Article regarding Hiram Bermudez that were corrected in the Form 8-K filed with the SEC on March 29, 2021. ¶¶337-338. The allegedly false statements in Response Article, and Defendants belated correction of those statements, are evidence of Defendants' intent to deceive investors or reckless disregard of deceiving investors. Further, the Answer denies the allegations in paragraphs 337 and 338 of the Complaint, and raises affirmative defenses of a lack of scienter and had "no reasonable ground to believe" that their statements were false. Request 18, which seeks documents relevant to Defendants' knowledge or reckless disregard of information leading to their belated correction of inaccurate information in the Response Article, thus seeks information relevant to Plaintiffs' claims *and* Defendants' defenses and is proportional to the needs of the case.

Plaintiffs request that Defendants immediately produce documents responsive to Request 18, or state that they intend to stand on their objection and refuse to produce any responsive documents.

15) Request 21

Request 21 seeks all Documents and Communications Concerning use of Clover Assistant. As stated during the Meet-and-Confer, Plaintiffs seek the data concerning physician use of Clover Assistant, including, but not limited to, the number of physicians accepting Clover's plans, the number of physicians enrolled or contracted to use Clover Assistant, the number of physicians using Clover Assistant, the number of physicians enrolled or contracted to use Clover Assistant but who have not used it, and dates and times when data was entered into Clover Assistant on a monthly basis during the Relevant Time Period. *See* ¶199. Since information is stored in Clover's data warehouse, it is straightforward to produce. For the avoidance of doubt, Plaintiffs do NOT seek any private medical information from any Clover members.

Plaintiffs request that Defendants immediately produce the above-described data or state that they intend to stand on their objection and refuse to produce this information.

Request 21 further seeks internal communications concerning the above described data regarding physician use of Clover Assistant. We have proposed search terms for these communications in Section IV *infra*.

16) Requests 24 and 25

Requests 24 and 25 seek Documents and Communications from meetings of the respective boards of directors of Clover and SCH. Defendants' responses to the Requests indicated that Defendants would produce responsive non-privilege Documents in response to each of Request 24 and 25. Plaintiffs request that Defendants promptly produce these responsive Documents.

17) Request 26

Request 26 seeks all Documents and Communications Concerning Plaintiffs without regard to the Relevant Time Period. Defendants responded that they would produce responsive documents following a reasonable search. Plaintiffs request that Defendants promptly produce these responsive Documents.

18) Request 29

Request 29 seeks all Communications with former Employees Concerning the Action without regard to the Relevant Time Period. Defendants respond that they will not produce Documents responsive to this Request. In the interest of compromise, Plaintiffs are willing to narrow the scope of Request 29 to seek (i) all Communications to or from a former employee or former employees referencing any duty of confidentiality the former employee or employees have in connection with the Action, (ii) all Communications to or from a former employee or employees concerning Plaintiffs, their counsel and/or their investigators' investigation into the allegations underlying the Complaint.

19) Request 30

Request 30 seeks all Communications with any Financial Advisor Concerning any of the allegations in the Complaint, Including any of the Alleged Misstatements. Defendants respond that they will produce a copy of the Documents in the virtual data room established in connection with the Business Combination. Plaintiffs request that Defendants produce these Documents immediately.

Request 30 further seeks all Communications to or from any Financial Advisor Concerning any allegations in the Complaint. These communications could include, but are not limited to, requests for "backup" from Financial Advisors regarding physician use of Clover Assistant, and responses to those requests, or questions regarding the DOJ Investigation, and responses to those questions. Plaintiffs request that Defendants promptly produce Documents responsive to Request 30, or state that Defendants will stand on their objection and not produce any documents responsive to this Request.

20) Request 32

Request 32 seeks all "Documents and Communications Concerning any investigation, examination, audit, review or inquiry, whether formal or informal, of Clover, other than the DOJ Investigation and the SEC Investigation, by any federal or state agency or stock exchange . . .

8

Concerning any of the facts alleged in the Complaint." Defendants' respond that they will not produce any Documents in response to this Request. As a compromise, Plaintiffs are willing to narrow this request to inquiries specifically into gifts or payments, including gift cards, from Clover to physicians or staff; Clover Ambassadors; referrals of potential members to Clover from physicians or staff; payments to Hiram Bermudez or entities owned or controlled by him; and/or physician use of Clover Assistant.

Please confirm whether Defendants will produce documents in response to Request 32 as narrowed or if they will stand on their objection and not produce any documents responsive to this Request.

21) Request 33

Request 33 seeks All Documents and Communications Concerning Clover's document destruction and retention policies or procedures during the Relevant Time Period, any document retention or destruction policy with respect to ESI (Including e-mail, text messages, instant messages, computer records, disk files or other electronic records) as well as handheld devices (smartphones, Blackberries, PDAs, etc.). Defendants responds that they will not produce documents in response to this Request. In the interest of Compromise, Plaintiffs propose to narrow Request 33 to copies of all document destruction and retention policies in place during the Relevant Time Period.

Please confirm whether Defendants will produce documents in response to Request 33 as narrowed or if they will stand on their objection and not produce any documents responsive to this Request.

22) Request 34

Request 34 seeks Documents sufficient to Identify or describe Clover's efforts to preserve and collect Documents relevant to this Action, without regard to the Relevant Time Period. Defendants respond that they will not produce documents in response to this Request. In the interest of Compromise, Plaintiffs propose to narrow Request 34 to Documents sufficient to show the document retention notices sent to current or former Employees, as defined in the Requests, in response to this Action, and Documents sufficient to show any reports of Documents that were deleted or destroyed concerning the allegations in the Complaint after the commencement of the Action.

Please confirm whether Defendants will produce documents in response to Request 34 as narrowed or if they will stand on their objection and not produce any documents responsive to this Request.

23) Request 35

Request 35 seeks all Documents and Communications Concerning Defendants' efforts to preserve and collect Documents in the Derivative Actions, without regard to the Relevant Time Period. Defendants respond that they will not produce documents in response to this Request. In the interest of Compromise, Plaintiffs propose to narrow Request 35 to Documents sufficient to

9

show the document retention notices sent to current or former Employees, as defined in the Requests, in response to any Derivative Action concerning substantially similar allegations as the Complaint, and Documents sufficient to show any reports of Documents that were deleted or destroyed concerning the allegations in any Derivative Action after the commencement of any Derivative Action concerning substantially similar allegations as the Complaint.

Please confirm whether Defendants will produce documents in response to Request 35 as narrowed or if they will stand on their objection and not produce any documents responsive to this Request.

24) Request 36

Request 36 seeks all Documents and Communications Concerning Defendants' efforts to preserve and collect Documents in response to the DOJ Investigation, without regard to the Relevant Time Period. Defendants respond that they will not produce documents in response to this Request. In the interest of Compromise, Plaintiffs propose to narrow Request 36 to Documents sufficient to show the document retention notices sent to current or former Employees, as defined in the Requests, in response to the DOJ Investigation, and Documents sufficient to show any reports of Documents that were deleted or destroyed concerning the subject matter of the DOJ Investigation after the commencement of the DOJ Investigation.

Please confirm whether Defendants will produce documents in response to Request 36 as narrowed or if they will stand on their objection and not produce any documents responsive to this Request.

25) Request 37

Request 37 seeks all Documents and Communications Concerning Defendants' efforts to preserve and collect Documents in response to the SEC Investigation, without regard to the Relevant Time Period. Defendants respond that they will not produce documents in response to this Request. In the interest of Compromise, Plaintiffs propose to narrow Request 37 to Documents sufficient to show the document retention notices sent to current or former Employees, as defined in the Requests, in response to the SEC Investigation, and Documents sufficient to show any reports of Documents that were deleted or destroyed concerning the subject matter of the SEC Investigation after the commencement of the SEC Investigation.

Please confirm whether Defendants will produce documents in response to Request 37 as narrowed or if they will stand on their objection and not produce any documents responsive to this Request.

## III.  Plaintiffs' Proposed Custodians

During the Meet-and-Confer, Plaintiffs agreed to propose custodians whose electronic files should be searched for documents responsive to Plaintiffs' First Set of Requests for Production of Documents. Plaintiffs propose the following custodians:

1. Chamath Palihapitiya, SCH Chairman and CEO

2. Vivek Garipalli, Clover Chief Executive Officer
3. Andrew Toy, Clover Chief Technology Officer
4. Joe Wagner, Clover Chief Financial Officer
5. Hiram Bermudez, Clover, Vice President, Sales
6. Andrew Robinson, Clover, VP of Communications
7. Joyce Mattson, Clover, Director, Provider Data Management
8. David Weathington, Clover, Senior Vice President, Plan Operations
9. Brian Field Senior Manager, Network Engagement
10. Michael Waters, Clover, Senior Manager of Partnerships and Development
11. Ethan Lipkind, Clover, Chief Development Officer
12. Ankit Patel, Vice President of Provider Alignment and Network Engagement
13. Zoe Farrell, Clover, Director of Network Engagement
14. Livia Istrate, Clover, Senior Manager, Network Development and Management
15. Mark Spektor, Clover, Chief Medical Officer
16. Carl Rathjen, Clover, Vice President of Network Management and Operations
17. Wendy Richey, Clover, Chief Medicare Compliance Officer
18. Jon-Michael Troche, Clover, Provider Engagement Manager
19. Rachel Jones Clover, Director, Provider Solutions Development
20. Joany Delgado, Clover, Sales Oversight, Senior Associate
21. Gabe Perez, Clover, Senior Director, Customer Success and Network Development,
22. Jackie Garrett Clover, Manager, Network Engagement Development, New Jersey
23. Ana Carolina Geiger, Clover, Manager, Strategic Initiatives

Please confirm that these custodians are acceptable to Defendants and provide a timeframe for when their ESI can be searched.

## IV. Plaintiffs' Search Term Proposal

Plaintiffs propose the following search terms, organized by request. These terms should be run across the custodians proposed above, their company electronic devices, and the Company's "Slack" messaging system.

| Request #s | Proposed Search Terms |
|---|---|
| 3, 4, 5 | (DOJ or Department /s Justice or government) and (investigat! or inquir! or "CID" or testi! or subpoena or proceeding or call! or email! or upcode or disclos! or regulat! or medicare or rules or risk /2 assessment or vet! or counsel or "CMS" or fixed or flat or capitat! or concern! or protest! or object! or grievance or kick /2 back or AKS)<br><br>(civil or investigat!) /s demand!<br><br>Viveca and Parker<br><br>Eastern /2 District /2 Pennsylvania<br><br>("E.D. Pa." or "EDPA" or "E.D.Pa.") |

| | |
|---|---|
| | Pennsylvania /s (prosecut! or investigat! or inquir! or subpoena or "CID")<br><br>(investigat! or inquir! or subpoena or demand) and (ambassador or gift or cards or prepaid or receptionist or staff or doctor or physician or upcode or disclos! or Chamath or SPAC or SCH or clover /2 assistant or "CA" or Hindenburg or short /2 report or short /2 sell! or regulat! or medicare or rules or risk /2 assessment or vet! or counsel or "CMS" or kick /2 back or AKS) |
| 7 | (data /s room or diligence) and (clover or Orrick or skadden or skad or KPMG or wilson or WSGR or radford or woodruff or CS or credit /2 suisse or shearman or "S&S" or "JPM" or "J.P.Morgan" or "J.P." or counsel or underwrit! or "uw" Chamath or Palihapitiya or SCH or merger or "de-spac" or combination or pipe or healthcare or regulatory or compliance or HCR or audit! or comfort! or letter /3 intent or LOI or pipe or sponsor or supplement! or citi! or BCA or support or stockholders or ESPP or MIP or RRA or registration or "reg rights")<br><br>(side /2 letter or 10b5 or 10b-5 or opinion) and (clover or Orrick or Skadden or SCH or KPMG or woodruff) |
| 10, 11 | (SEC or commission) /p (investigat! or inquir! or CID or testi! or subpoena or call! or email! or upcode or disclos! or ambassador or gift or cards or prepaid or receptionist or staff or doctor or physician or or clover /2 assistant or "CA" or Hindenburg or short /2 report or short /2 sell! or regulat! or rules or Ritter or "RIM" or fixed or flat or capitat! or kick /2 back or AKS) |
| 13 | Same as 14 *infra*, but specifically run on custodians Palihapitiya, Garipalli, Toy, and Wagner. |
| 14 | compliance /p (medicare or violat! or regulat! or rules or report or payment or gift or clinic! or motivate! or bonus or capitat!)<br><br>(card! or prepaid or gift or bonus or reward or payment or motivate!) and (ethan or lipkind or physician or doctor or healthcare /2 practitioner or hcp or FCA or false /2 claims /2 act or refer! or clinic! or fixed or flat or capitat! or morale or friendship or recruit! or kick /2 back or AKS)<br><br>Related /s party /s transact!<br><br>Related /s party and (disclos! or agreement or Bermudez or hiram or B&H or assurance or broker! or Ritter or "RIM" or conflict)<br><br>(Hiram or Bermudez or HB or B&H or assurance) and (payment or refer! or compensat! or broker! or Ritter or "RIM" or Yesenia or Rivera or conflict or VP or vice /s president or manager or senior or New Jersey or Pennsylvania or NJ or PA or agent! or savannah or Georgia or FMO or field /s marketing or refer! /s member!) |

| | |
|---|---|
| | (Clover /2 assistant or "CA" or software or tool or application or "app") and (onboard! or enroll! or contract! or agreement or live or time /s entr! or after /s hours or outside or nurse or staff or admin! or during /s visit or see! /s patient or updat! or point /s car or clinic!) |
| 16 | Related /s party /s transact!<br><br>Related /s party and (disclos! or agreement or Bermudez or hiram or HB or B&H or assurance or broker! or Ritter or "RIM" or conflict)<br><br>Conflict /s interest /s polic! |
| 17 | Hindenburg or "short report" or short /s sell! or Nikola or (Nate or Nathan) /s Anderson<br><br>(Palihapitiya or Chamath) and (Andrew or Baxter or ASB) |
| 19 | (ethan or Lipkind) /p (zoe or farrell or livia or istrate) and (compliance or complaint or investigat! or violat! or report)<br><br>(ethan or Lipkind) /p ambassador<br><br>(ethan or lipkind or zoe or farrell or compliance or livia or istrate) and (card! or prepaid or gift or bonus or reward or capitat!))<br><br>(doctor or physician or HCP or clinic! or staff! or administrat! or front /2 desk or nurse or aid or onboard! or enroll! or contract! or agreement or live) /p (incentiv! or motivat! or upcod! or increas! or rais! or capitat! or affect! or effect! or impact! or induc! or morale or friendship or recruit!) |
| 20 | (investigat! or report) and (Ethan or Lipkind or compliance or zoe or Farrell or Istrate or livia or card! or prepaid or gift or bonus or reward or ambassador)<br><br>(doctor or physician or HCP or clinic! or staff! or administrat! or front /2 desk or nurse or aid or onboard! or enroll! or contract! or agreement or live) /p (incentiv! or motivat! or upcod! or increas! or rais! or capitat! or affect! or effect! or impact! or induc!) |
| 21, 22 | (Clover /2 assistant or "CA" or software or tool or application or "app") and (onboard! or enroll! or contract! or agreement or live or time /s entr! or after /s hours or outside or nurse or staff or admin! or during /s visit or see! /s patient or updat! or clinic! or update! point /s care or ambassador) |
| 23 | (complain! or report! or notice or angry or resist! or appropriat! or inappropriat! or violat! or concern! or protest! or object! or grievance) and (incentiv! or motivat! or upcod! or increas! or rais! or capitat! or affect! or effect! or impact! or induc! or NPS or net /s score) and (doctor or physician or HCP or clinic! or staff! or administrat! or front /2 desk or nurse or aid or ambassador) |

| | (onboard! or enroll! or contract! or agreement or live) /p (incentiv! or motivat! or upcod! or increas! or rais! or capitat! or affect! or effect! or impact! or induc! or ambassador) |
|---|---|
| 27, 28 | Hindenburg or "short report" or short /s sell! or Nikola or (Nate or Nathan) /s Anderson |
| 31 | (risk /2 assess! or risk /2 adjust! or risk /s score or clinic! /s data) /p (incentiv! or motivat! or upcod! or increas! or rais! or capitat! or affect! or effect! or impact! or induc! or high! or NPS or net /s score) <br><br> (investigat! or inquir! or CID or testi! or subpoena or call! or email! or upcode or disclos! or regulat! or medicare or rules) <br><br> (investigat! or inquir! or subpoena or demand) and (ambassador or gift or cards or prepaid or receptionist or staff or doctor or physician or upcode or disclos! or Chamath or SPAC or SCH or clover /2 assistant or "CA" or Hindenburg or short /2 report or regulat! or medicare or rules or NPS or net /s score) |

Best Regards,

*/s/ Brian Calandra*
Brian Calandra

POMERANTZ LLP

CC:
**BASS, BERRY & SIMS PLC**
Britt K. Latham (BPR #23149)
Joseph B. Crace, Jr. (BPR # 27753)
150 Third Ave., South, Suite 2800
Nashville, TN 37201
Tel. (615) 742-7762
Facsimile: (615) 742-2847
blatham@bassberry.com
jcrace@bassberry.com

**BRAMLETT LAW OFFICES**
Paul Kent Bramlett
Robert Preston Bramlett
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
Telephone: 615.248.2828
Facsimile: 866.816.4116
pknashlaw@aol.com
robert@bramlettlawoffices.com

Enc.