# EXHIBIT 5



# Milbank

**JED SCHWARTZ**

*Partner*
55 Hudson Yards  |  New York, NY  10001-2163
T: 212.530.5283
jschwartz@milbank.com|  milbank.com

January 30, 2023

**VIA EMAIL**

Brian Calandra, Esq.
Pomerantz LLP
600 Third Avenue, 20th Floor
New York, New York 10016
E-mail: bcalandra@pomlaw.com

   Re: *Bond, et al. v. Clover Health Investments, Corp., et al.*,
     No. 3:21-cv-00096 (M.D. Tenn.) (the "Action")

Dear Brian:

  We write in response to your letter dated January 11, 2023 ("January 11 Letter"), regarding the parties' discussions during the meet-and-confer sessions on August 16, 2022, and August 18, 2022. We also write to memorialize those discussions concerning: (i) Plaintiffs' Responses and Objections to Defendants' First Requests for Production to Plaintiffs, dated June 7, 2022 ("Plaintiffs' R&Os"); (ii) Clover Health Investments, Corp.'s ("Clover") Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents to Defendants, dated June 22, 2022 ("Clover's R&Os"); (iii) Individual Defendants' Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents to Defendants, dated June 22, 2022 ("Individual Defendants' R&Os," and with Clover's R&Os, collectively, "Defendants' R&Os"); (iv) our letter to you of August 1, 2022 ("August 1 Letter"); and (v) proposed custodians for electronic discovery.[1]

---

[1] Defendants served their First Requests for Production of Documents to Plaintiffs on May 2, 2022 (together "Defendants' Requests" and each "Defendants' Request"). Plaintiffs served their First Requests for Production of Documents to Defendants on May 9, 2022 (together "Plaintiffs' Requests" and each "Plaintiffs' Request"). After the parties exchanged their respective responses and objections, Defendants responded with the August 1 Letter. Thereafter, the parties engaged in telephonic meet-and-confer sessions on August 16, 2022, and August 18, 2022. On August 16, 2022, the parties discussed the issues and information pursuant to *In re: Default Standard for*

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

Case 3:21-cv-00096   Document 115-5   Filed 03/07/23   Page 2 of 23 PageID #: 2845

We have considered the parties' discussions during the meet-and-confer sessions and set forth below certain proposals and compromises that Defendants are willing to make to resolve certain of the parties' disputes. Nothing herein waives any rights or objections of Defendants.[2] Defendants remain willing to discuss any open issues with Plaintiffs as needed.

With respect to the Relevant Time Period, the date ranges that Defendants are willing to search with respect to certain of Plaintiffs' Requests are described below. As discussed during the meet-and-confer sessions, not all date ranges are relevant to all issues, and using search terms oriented towards only certain date-limited issues over a broader-than-necessary time period would impose an unnecessary and disproportionate burden on Defendants.

## I. Draft Protective Order, Document Production Protocol, and Deposition Protocol

With respect to the document production protocol, the updated protocol enclosed with your January 11 Letter is acceptable to Defendants. Please circulate signature copies.

As to the Protective Order, we have reviewed the draft that you circulated, and we are providing comments to you contemporaneously with this letter.

With respect to the deposition protocol, as expressed during our August 16 call, Defendants do not believe a deposition protocol is necessary and would prefer to reach agreements in good faith between the parties as necessary over the course of the depositions. We note that the parties have already conducted depositions without the need for a deposition protocol.

## II. Plaintiffs' First Set of Requests for Production of Documents

### A. Plaintiffs' Definitions of Business Combination, You, Your, Yours, Clover, Employee, and Relevant Period

1. Business Combination

Regarding Plaintiffs' proposed definition of "Business Combination," Defendants intend to stand on their objection as expressed in Defendants' R&Os, and to construe "Business

---

*Discovery of Electronically Stored Information*, Administrative Order No. 174-1 (M.D. Tenn. Sept. 12, 2018). Unless otherwise specified, all undefined capitalized terms used in this letter shall have the meanings assigned to them in Defendants' Requests and R&Os.

[2] References herein to Documents that Defendants are willing to produce are to the extent any such Documents are in their custody, control, or possession, can be located through a reasonable search, and are *not* privileged. That Defendants are willing to conduct a reasonable search for certain Documents does not suggest that any such Documents exist, and nothing herein waives any objection of Defendants unless expressly stated.

Combination" to mean "the series of transactions consummated on January 7, 2021, and contemplated by the Agreement and Plan of Merger, dated October 5, 2020 (as amended), through which the private company, Clover Health Investments, Corp., merged with and into the special purpose acquisition company named Social Capital Hedosophia Holdings Corp. III to become the current public company, Clover."

Plaintiffs' proposed definition of "Business Combination," on the other hand, is overbroad and nonsensical in light of the two requests in which Plaintiffs actually use the phrase "Business Combination" (Plaintiffs' Request Nos. 7 and 8). Specifically, Request No. 7 seeks all "Documents and Communications created for, Concerning, prepared for or considered as part of the 'diligence' for the Business Combination referenced in ¶¶ 119-20, 122, 145, 250, 318 of the Complaint." Request No. 8 seeks all "Documents and Communications created for, Concerning, prepared for or considered by the Financial Advisors for the Business Combination, Including any Documents and Communications in a 'data room' for the Business Combination." Within the context of those Requests, it does not make sense to define "Business Combination" as Plaintiffs have done, which includes "all conduct Concerning the Business Combination in the period after the announcement of the Business Combination and the closing of the Business Combination in January 2021." For example, it would mean that Request No. 7 seeks, among other things, all "Documents and Communications created for, Concerning, prepared for or considered as part of the 'diligence' for all conduct Concerning the Business Combination in the period after the announcement of the Business Combination and the closing of the Business Combination in January 2021."

### 2. You, Your, Yours, and Clover

With respect to Plaintiffs' proposed definition of "You, Your, Yours, and Clover," Defendants reiterate that Plaintiffs' definition is vague, ambiguous, overbroad, and unduly burdensome in that it purports to include "all of" Clover Health Investments, Corp.'s "present and former … agents, representatives, and all other Persons acting, or purporting to act, on behalf of any of the foregoing." Defendants agree to interpret "You, Your, Yours, and Clover" to include Clover Health Investments, Corp. (formerly known as Social Capital Hedosophia Holdings Corp. III ("SCH")) and Legacy Clover and all officers, directors, and Employees thereof.

The terms "agents" and "representatives," and the phrase "all other Persons acting, or purporting to act, on behalf of," however, are subject to interpretation, might require a legal analysis in each case, and are potentially unknowable. Defendants cannot undertake to collect Documents from agents, representatives, or "all other persons acting, or purporting to act on behalf of" the Company if Defendants cannot ascertain who those people might be.

If there are particular individuals or entities that Plaintiffs intended to be captured within this definition, Defendants are willing to consider including those persons within that definition.

3.  Employee

Regarding the definition of "Employee," Defendants reiterate that Plaintiffs' definition is vague, ambiguous, overbroad, and unduly burdensome in that it purports to include "agents, representatives … advisors, and consultants." Defendants will interpret "Employee" to include all direct employees of Clover (as defined above).

If there are particular individuals that Plaintiffs intended to be captured within this definition, Defendants are willing to consider including those persons within that definition.

4.  Relevant Period or Relevant Time Period

In your letter, you insist that the Relevant Time Period for each and every Request should begin on January 1, 2018, and end on March 29, 2021. We have previously explained to you that April 24, 2020, which is the date of SCH's IPO, is a logical starting point. It is nearly six months before any alleged misstatement. Your January 11 Letter offers no justification for an earlier period. Accordingly, we will take that as a concession that you agree with our proposed start date of April 24, 2020.

Regarding the end date, your proposed date of March 29, 2021, imposes substantial burdens beyond what is proportional for the needs of the case. As you know, the initial complaint in this case was filed on February 5, 2021. It is standard for the parties in litigation to use the date a complaint was filed as the cut-off date for discovery, and with good reason. Following the filing of a complaint, it is highly likely that any documents related to the particular allegations in the complaint will be privileged and/or subject to work product protections, thus increasing the burden of reviewing any such documents, while providing negligible benefits, *i.e.*, the burdens are disproportional to the benefits and needs of the case.

The justification you provide in your January 11 Letter for why discovery should proceed past February 4, 2021 underscores this point. You claim that "Defendants made false statements in the" February 5, 2021 response to the Hindenburg Report, and that "Defendants [sic] belated correction of those statements, are evidence of Defendants' intent to deceive investors or reckless disregard of deceiving investors." But the Hindenburg Response was clearly done in anticipation of litigation—and, indeed, counsel for Clover were involved in its preparation. Therefore, the benefit Plaintiffs would gain from this extended time period is minimal as the majority of the Documents that Plaintiffs seek will be withheld on the basis of privilege or attorney work product. To the extent that Plaintiffs intend to argue that Defendants' "belated correction of those statements[] are evidence of Defendants' intent to deceive investors or reckless disregard of

deceiving investors"—although Defendants disagree—Plaintiffs will be able to introduce the very correction to which you point.[3]

Defendants will define the Relevant Time Period as April 24, 2020 through February 4, 2021, both dates inclusive.

### B. Certain Other Definitions

During our August 2022 meet-and-confer sessions, we discussed Defendants' objections to Plaintiffs' definitions of "Communication," "Document," and "DOJ Investigation." The January 11 Letter does not address these definitions. Accordingly, we understand that Plaintiffs have accepted the definitions of those terms in the Defendants' R&Os and the positions we expressed during those meet-and-confer sessions. We set out those positions below for the sake of good order.

### 1. Communication(s)

As to Plaintiffs' definition of "Communication" or "Communications" in Plaintiffs' Requests, Defendants objected to it on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome. (Clover's R&Os at 7; Individual Defs.' R&Os at 7.) Defendants further stated that they would interpret "Communication" or "Communications" to mean any transmission or exchange of information, opinion, or thoughts, whether orally, in writing or otherwise, including, but not limited to, conversations, meetings, letters, notes, and telegraphic, facsimile, telex, or computer-assisted electronic messages." (Clover's R&Os at 7; Individual Defs.' R&Os at 7.)

During the August 18 call, Plaintiffs requested that the definition of "Communication" or "Communications" include Slack messages, text messages, voicemails, and instant messages. Defendants confirmed that those types of messages are considered a transmission or exchange of information. Defendants are willing to agree that the definition of "Communication" or "Communications" includes Slack messages, text messages, voicemails, and instant messages. But Defendants made clear they would have to make a custodian-by-custodian decision as to what methods of Communications each custodian used and whether those Communications were readily available. Defendants made clear that the issue of whether Defendants will agree to collect such messages, including whether such collection or review would impose an undue burden or if such Communications are not readily available, is separate and apart from whether such messages would be considered "Communications." We understand that Plaintiffs have agreed with our position with respect to that separate issue.

---

[3] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009), which you cite, was a decision on a motion to dismiss, and did not address the burden of reviewing post-litigation documents.

2. <u>Document(s)</u>

With respect to the definition of "Document" in Plaintiffs' Requests, Defendants objected to it on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome. (Clover's R&Os at 7; Individual Defs.' R&Os at 8.) Defendants further stated that they would interpret "Document" to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). (Clover's R&Os at 7; Individual Defs.' R&Os at 8.) Defendants also stated that the term "Document" shall include any and all writings, drawings, graphs, charts, photographs, and electronically stored information. (Clover's R&Os at 7; Individual Defs.' R&Os at 8.)

During the August 18 call, Plaintiffs acknowledged that the definition of "Document" includes ESI as stated in Defendants' R&Os. Plaintiffs requested that the definition include text messages, instant messages, and Slack messages. Defendants stated that the definitions of "Communications" and "Documents" include Slack messages, text messages, and instant messages. Accordingly, Defendants are willing to agree that the definition of "Document" includes Slack messages, text messages, voicemails, and instant messages. Again, whether Defendants will collect and review such messages is a separate issue.

3. <u>DOJ Investigation</u>

Defendants objected to the definition of "DOJ Investigation" in Plaintiffs' Requests on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome in that it purports to include "other things" not identified in the definition. (Clover's R&Os at 8; Individual Defs.' R&Os at 8.) Clover further objected to that definition on the ground that it mischaracterizes the relevant DOJ Inquiry. (Clover's R&Os at 8; Individual Defs.' R&Os at 8.) Defendants further stated that they would interpret "DOJ Investigation" as synonymous with "DOJ Inquiry" as defined in Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 75. (Clover's R&Os at 8; Individual Defs.' R&Os at 8.)

During the August 18 call, Plaintiffs asked Defendants to explain the difference between Plaintiffs' definition of "DOJ Investigation" and Defendants' definition of "DOJ Inquiry." Defendants explained that they did not want to concede Plaintiffs' characterization of the inquiry, and that Plaintiffs' definition mischaracterizes the DOJ Inquiry because, among other things, it assumed that the DOJ issued a civil investigative demand to the Company. Defendants, however, confirmed they will construe the term "DOJ Investigation" to be consistent with the subject matter at issue in the Complaint without adopting Plaintiffs' characterization of the term.

### C. Undisputed Requests

Based on your January 11 Letter and the parties' discussions during the meet-and-confer sessions, Defendants believe that Plaintiffs' Request Nos. 26, 38, 39, and 40 are undisputed.

As to Plaintiffs' Request 26, Defendants agreed to produce non-privileged, responsive Documents that are within their possession, if any, and that can be located following a reasonable search and agreed-upon custodians. (*See* Clover's R&Os at 25; *see also* Individual Defs.' R&Os at 27.)

During the August 18 call, Plaintiffs agreed that Defendants have already produced the Documents responsive to Plaintiffs' Request No. 38. (*See* CLOV_CLASS_00000001 - CLOV_CLASS_00000476.)

Clover agreed to produce non-privileged Documents responsive to Plaintiffs' Request Nos. 39 and 40, as indicated in Clover's R&Os. (*See* Clover's R&Os at 32-33.) On September 16, 2022, Clover produced non-privileged Documents responsive to Plaintiffs' Request No. 39. (*See* CLOV_CLASS_00000477 - CLOV_CLASS_00001237.) As to Plaintiffs' Request No. 40, Defendants will produce responsive, non-privileged Documents that Defendants intends to use to oppose or advance any claim or defense in the Action in advance of trial.

Accordingly, it is our understanding that there are no current disputes with respect to the production of Documents in response to Plaintiffs' Request Nos. 26, 38, 39, and 40.

### D. Plaintiffs' Request No. 1

Plaintiffs' Request No. 1 seeks "[a]ll Documents and Communications produced, whether formally or informally, in the any [sic] Derivative Action." During the August 18 meet-and-confer between the parties, Defendants reiterated their position that this Request is objectionable because, among other things, it is a request for improper "cloned discovery." Courts routinely reject such requests seeking to "clone discovery" produced to other parties on the grounds that they are facially overbroad and seek irrelevant material. *See, e.g.*, *Pictsweet Co. v. R.D. Offutt Co.*, 2020 WL 12968432, at *5 (M.D. Tenn. Apr. 23, 2020) (deeming plaintiff's "cloned" discovery request a "fishing expedition" and refusing to grant plaintiff a "discovery windfall" because "[a]sking for all documents produced in another matter is not generally proper. The propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for.") (cleaned up); *Austin v. Nestle USA*, *Inc.*, 2010 WL 4318815, at *4 (D.S.C. Oct. 26, 2010) (agreeing that plaintiff should not have "unfettered access" to all of the discovery produced in a purportedly similar case, "as there [was] no indication that such discovery [was] relevant to th[e] case" before it); *Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014) (denying request for "cloned discovery" as "overbroad and of speculative relevance").

In the interest of compromise, Clover is willing to produce non-privileged Documents responsive to this Request that have already been produced in the Derivative Actions (as defined in Plaintiffs' Requests) as of the date of this letter. Clover will not agree to an ongoing obligation to produce Documents that have been produced in any Derivative Action following the date of this letter as such Documents may have no relevance to Plaintiffs' case.

If Plaintiffs are concerned that the forty (40) Requests they already have issued do not sufficiently seek all the Documents they may need, then Plaintiffs can request additional Documents from Defendants.

### E. Plaintiffs' Request No. 2

Plaintiffs' Request No. 2 seeks "[a]ll Documents and Communications produced, without regard to the Relevant Time Period, whether formally or informally, to the DOJ, in response to, in connection with, or related to the DOJ Investigation." During the parties' August 18 meet-and-confer, Defendants maintained their objection to this Request, including their position that Plaintiffs' Request No. 2 seeks improper "cloned discovery." Defendants also took issue with Plaintiffs' demand that Defendants produce all responsive Documents and Communications concerning the "DOJ Investigation" without restriction or temporal limitation.

Plaintiffs clarified that they only seek Documents and Communications concerning the DOJ Inquiry, as they related to the allegations in the Complaint with respect to, for example, the alleged Clover Ambassador program, and the alleged provision of gift cards to physicians or office staff.

During the meet-and-confer, the parties agreed that rather than produce wholesale all Documents produced to the DOJ, the parties would adjust the request through discussions about proper custodians and search terms, which you have now provided in Sections III and IV of your January 11 Letter. Clover has considered Plaintiffs' proposed search terms and custodians and have made counterproposals later in this letter.

### F. Plaintiffs' Request Nos. 3, 4, 5, 13, 17, 19, 20, 27, and 28

As discussed during the meet-and-confer sessions, Defendants believe that the issues with many of these Requests, including any undue burden, could be addressed by an agreed-upon custodian list, targeted search terms, and other parameters. For Clover's responses to Plaintiffs' proposed custodians and search terms for all ESI searches for Request Nos. 3, 4, 5, 13, 17, 19, 20, 27, and 28, please refer to Sections IV and V, *infra*.

### G. Plaintiffs' Request No. 6

With respect to Plaintiffs' Request No. 6, which seeks "Documents sufficient to identify all Employees who have been contacted by or communicated with the DOJ regarding the DOJ

Investigation," Clover is willing to produce responsive, non-privileged Documents sufficient to identify any Clover Employee, other than counsel, who, to Clover's knowledge, has communicated with the DOJ regarding the DOJ Inquiry during the Relevant Time Period, to the extent such Documents are in Clover's possession, custody, and control and can be found after a reasonable search.[4]

### A. Plaintiffs' Request Nos. 7 and 8

Plaintiffs' Request No. 7 seeks "[a]ll Documents and Communications created for, Concerning, prepared for or considered as part of the 'diligence' for the Business Combination referenced in ¶¶ 119-20, 122, 145, 250, 318 of the Complaint." Plaintiffs' Request No. 8 seeks "[a]ll Documents and Communications created for, Concerning, prepared for or considered by the Financial Advisors for the Business Combination, Including any Documents and Communications in a 'data room' for the Business Combination." During the August 18 call, Defendants agreed to produce copies of various non-privileged Documents in the virtual data room established in connection with the Business Combination. Defendants will produce such documents in short order. During the August 18 call, Plaintiffs also requested any non-privileged Documents and Communications reflecting any follow-up questions from Financial Advisers.

In the interest of compromise, Clover is willing to produce the following categories of non-privileged Documents: (i) closing binders from the Business Combination; (ii) financial projections included in the data room for the Business Combination; (iii) relevant public filings; and (iv) final investor presentations.

### B. Plaintiffs' Request Nos. 9, 10, and 11

Plaintiffs' Request No. 9 seeks "[a]ll Documents and Communications produced, without regard to the Relevant Time Period, whether formally or informally, to the SEC in response to, in connection with, or related to the SEC Investigation." Plaintiffs' Request No. 10 seeks "[a]ll Documents and Communications, without regard to the Relevant Time Period, concerning the SEC Investigation." Plaintiffs' Request No. 11 seeks "[a]ll Communications to or from the Individual Defendants Concerning the SEC Investigation."

Clover will not produce Documents in response to these Requests as they are requests for improper "cloned discovery." Indeed, we do not understand how Plaintiffs can even have a good-faith basis for making this type of request when Plaintiffs do not know the scope of the SEC Investigation. *See, e.g.*, *Pictsweet Co.*, 2020 WL 12968432, at *5 (deeming plaintiff's "cloned" discovery request a "fishing expedition" and refusing to grant plaintiff a "discovery windfall" because "[a]sking for all documents produced in another matter is not generally proper. The

---

[4] As discussed during the August 18 call, the Individual Defendants have stated that they will not produce Documents in response to certain of Plaintiffs' Requests where Clover stated that it would produce them. We understand that Plaintiffs took no issue with this approach.

propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for.") (cleaned up); *Austin*, 2010 WL 4318815, at *4 (agreeing that plaintiff should not have "unfettered access" to all of the discovery produced in a purportedly similar case, "as there [was] no indication that such discovery [was] relevant to th[e] case" before it); *Cap. Ventures Int'l*, 2014 WL 1431124, at *2 (denying request for "cloned discovery" as "overbroad and of speculative relevance"); *In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788687, at *1-2 (S.D.N.Y. Oct. 28, 2013) ("the appropriate scope of document discovery here is more limited than . . . plaintiff's request" for any documents "'concerning or produced in connection with the SEC and DOJ investigations'"); *Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 596 (N.D. Fla. 2010) (declining to order production of all documents produced to SEC because, "without a more particularized request," requiring production of all such documents "could potentially allow plaintiff to bypass the limitations on the scope of discovery established by the [Federal Rules of Civil Procedure]").

Moreover, Documents responsive to Request Nos. 10 and 11, by their nature, are highly likely to be privileged. Thus, the burden of reviewing them is substantially greater than any limited benefit that Plaintiffs might obtain from any non-privileged Documents.

### C. Plaintiffs' Request No. 12

Plaintiffs' Request No. 12 seeks "Documents sufficient to identify all Employees who have been contacted by or communicated with the SEC regarding the SEC Investigation." We believe this is similar to Plaintiffs' Request Nos. 9 through 11 above. Plaintiffs have not asserted claims based on the SEC Investigation. Rather, Plaintiffs have asserted claims based on alleged conduct that Plaintiffs claim occurred before the SEC Investigation even existed. We do not agree to produce Documents in response to this Request.

### D. Plaintiffs' Request No. 14

Plaintiffs' Request No. 14 seeks "[a]ll Documents and Communications Concerning the Alleged Misstatements, or any other similar public statements, Including (i) that Clover had met and complied with all applicable laws since January 1, 2018 and was not presently involved in any legal proceeding that could have a material adverse effect on the Company's business; (ii) Clover's payments or provision of gift cards to physicians or office staff for any reason; (iii) Clover's transactions with Hiram Bermudez or transactions with entities owned or controlled by Hiram Bermudez; and (iv) use of Clover Assistant by physicians under contract with Clover, Including during patient visit."

Subject to an agreement on appropriate search terms and custodians, Clover will produce non-privileged Documents and Communications related to: (i) Clover's knowledge of the DOJ Inquiry, analysis of the DOJ Inquiry, and any public statements about the DOJ Inquiry; and (ii) the alleged Clover Ambassador program and the alleged provision of gift cards to physicians or office

staff.  Clover will agree to also produce in response to Plaintiffs' Request No. 14 the non-privileged Documents that Clover has agreed to produce in response to Plaintiffs' Request Nos. 15, 16, 21, 22, 23, and 31, as discussed below.

### E.  Plaintiffs' Request Nos. 15 and 16

Plaintiffs' Request No. 15 seeks "Documents sufficient to show all direct or indirect transactions between Clover and entities owned or controlled by Hiram Bermudez."  Plaintiffs' Request No. 16 seeks "[a]ll Documents and Communications concerning related transactions reported in Clover's SEC filings."  Defendants have agreed to produce responsive, non-privileged Documents in their possession, if any, sufficient to show payments made by Clover to B & H Assurance, LLC that can be located after a reasonable search.

During the August 18 call, Plaintiffs requested that Defendants not limit their production to only payments made by Clover to B & H Assurance, LLC because the Complaint alleges that Mr. Bermudez owned and operated multiple insurance brokerage companies.  (*See, e.g.*, Am. Compl. ¶¶ 153-60.)  We are not presently aware that Mr. Bermudez held an ownership in any operating insurance brokerage companies aside from B & H Assurance, LLC during the Relevant Time Period.  If Plaintiffs are aware of other relevant entities owned by Mr. Bermudez, please identify those entities for Defendants and we will take them under consideration.

### F.  Plaintiffs' Request No. 18

Plaintiffs' Request No. 18 seeks "[a]ll Documents and Communications Concerning the current report on Form 8-K filed on behalf of Clover on March 29, 2021, Including All Documents and Communications created for, Concerning, prepared for or considered as part of the March 29, 2021 8-K."

Defendants will not produce Documents in response to this Request.  For the reasons stated during the parties' meet-and-confer discussions and earlier in this letter, these Documents are neither relevant, nor would their collection, review, and production be proportional to the needs of the case.

### G.  Plaintiffs' Request Nos. 21, 22, 23, and 31

Plaintiffs' Request No. 21 seeks "[a]ll Documents and Communications Concerning use of Clover Assistant."  During the August 18 call, Plaintiffs stated that they are not seeking Documents about instructions for using the Clover Assistant, proposals on how to work on the back end with the Clover Assistant, or data entry into the Clover Assistant with patient contact information.  Instead, Plaintiffs explained that they are interested in Documents regarding whether or not physicians are using the Clover Assistant during patient visits, discussions regarding the same, and the entry of medical information (*e.g.*, diagnoses, recommended treatment plans, and prescriptions) into the Clover Assistant by individuals other than physicians that may result in an

upward risk adjustment.  Plaintiffs' Request No. 22 seeks "[a]ll Documents and Communications Concerning physicians' failure to use Clover Assistant during patient visits or Concerning entry of data into Clover Assistant by Persons other than physicians."  Plaintiffs' Request No. 23 seeks "[a]ll Documents and Communications concerning complaints about inducements for physicians to offer Clover MA plans or use Clover Assistant."  Plaintiffs' Request No. 31 seeks "[a]ll Documents and Communications concerning the ability of Clover Assistant to." [sic]  During the August 18 call, Plaintiffs clarified that they are seeking Documents and Communications concerning the ability of the Clover Assistant to generate higher risk assessment levels, increase coding reimbursements, or facilitate upcoding.

Clover is willing to produce non-privileged Documents sufficient to show the factual bases and support for Clover's public statements in the Complaint regarding healthcare provider use of the Clover Assistant that are alleged to be misstatements.

### H.  Plaintiffs' Request Nos. 24 and 25

Plaintiffs' Request No. 24 seeks "[a]ll Documents and Communications Concerning Clover's Board of Directors' meetings, Including all board minutes, summaries, presentations, minutes, audio and video recordings, agendas, notes, and any Documents circulated in connection with such meetings."  Plaintiffs' Request No. 25 seeks "[a]ll Documents and Communications Concerning SCH's Board of Directors' meetings, Including all board minutes, summaries, presentations, minutes, audio and video recordings, agendas, notes, and any Documents circulated in connection with such meetings."

Clover will produce responsive, non-privileged final minutes for Clover's Board of Directors meetings and any attachments thereto, for the period from April 24, 2020, through February 4, 2021.  Clover will also produce responsive, non-privileged final minutes for SCH's Board of Directors meetings and any attachments thereto, for the September 6, 2020, September 24, 2020, and October 5, 2020, meetings in which SCH's Board of Directors discussed the relevant merger.

### I.  Plaintiffs' Request No. 29

Plaintiffs' Request No. 29 seeks "[a]ll Communications with former Employees Concerning this Action.  This Request is not limited to the Relevant Time Period."  Defendants took issue with Plaintiffs' demand that Defendants produce all responsive Communications with former Employees concerning this litigation, without limitation.  During the August 18 call, we explained that those Communications are not relevant.  You clarified that Plaintiffs are interested in Communications with former Employees where the Company was instructing former Employees not to talk to investigators.  You also stated that Plaintiffs are interested in

Communications where the Company reached out to former Employees to say they have information relevant to this litigation in order for Plaintiffs to identify potential custodians.

Your clarification makes clear that you are not seeking relevant information. Who, if anyone, was contacted by Clover in connection with this litigation, has no bearing on the claims or defenses in this Action. Moreover, even if there was some minimal relevance to understanding who, among all former Clover employees, Clover or its counsel chose to contact, is an invasion of work product.

### J. Plaintiffs' Request No. 30

Plaintiffs' Request No. 30 seeks "[a]ll Communications with any Financial Advisor Concerning any of the allegations in the Complaint, Including any of the Alleged Misstatements." In your January 11 Letter, Plaintiffs further seek "all Communications to and from any Financial Advisor Concerning any allegations in the Complaint," including, but not limited to, "requests for 'backup' from Financial Advisors regarding physician use of Clover Assistant, and responses to those requests, or questions regarding the DOJ Investigation, and responses to those questions." (January 11 Ltr. at 8.)

As Defendants explained to you during our August 2022 meet-and-confer sessions, Requests that seek information "Concerning any of the allegations in the Complaint" are unworkable given that the Complaint runs 138 pages long and is comprised of 382 separate paragraphs of allegations, and addresses, in some way, virtually every aspect of Clover's business.

As a compromise, Clover will agree to produce in response to Plaintiffs' Request No. 30 the non-privileged Documents that Clover has agreed to produce in response to Plaintiffs' Request Nos. 7 and 8, as discussed above.

### K. Plaintiffs' Request No. 32

Plaintiffs' Request No. 32 seeks "[a]ll Documents and Communications Concerning any investigation, examination, audit, review or inquiry, whether formal or informal, of Clover, other than the DOJ Investigation and the SEC Investigation, by any federal or state agency or stock exchange, Including the SEC, DOJ, U.S. Attorney, State Attorneys General, or by any Medicare-related government agency, Concerning any of the facts alleged in the Complaint. This request covers all Documents and Communications between Clover and the investigating agencies and stock exchanges."

During the August 18 call, you clarified that Plaintiffs are interested in Documents and Communications regarding the existence of another investigation or inquiry into the same allegations and issues in the Complaint. We understand that you are not seeking Documents and Communications regarding new investigations or inquiries that are unrelated to the allegations in the Complaint, such as routine inquiries regarding Medicare unrelated to this litigation. And your

January 11 Letter states: "Plaintiffs are willing to narrow this request to inquiries specifically into gifts or payments, including gift cards, from Clover to physicians or staff; Clover Ambassadors; referrals of potential members to Clover from physicians or staff; payments to Hiram Bermudez or entities owned or controlled by him; and/or physician use of Clover Assistant." (January 11 Ltr. at 9.)

Clover will produce non-privileged Documents sufficient to identify any investigation of Clover other than the DOJ Inquiry and the SEC Investigation by any federal or state agency or stock exchange Concerning the facts alleged in the Complaint.

### L. Plaintiffs' Request No. 33

Plaintiffs' Request No. 33 seeks "[a]ll Documents and Communications Concerning Your document destruction and retention policies or procedures during the Relevant Time period, any document retention or destruction policy with respect to ESI (Including e-mail, text messages, instant messages, computer records, disk files or other electronic records) as well as handheld devices (smartphones, Blackberries, PDAs, etc.), and any actual, suggested or contemplated policy, program, procedure, instruction, direction or request Concerning the destruction, alteration, removal, concealment, non-disclosure, secrecy or confidentiality of any of the Documents requested herein." Defendants objected to this Request on the grounds that it is unduly burdensome, overly broad, and not proportional to the needs of this Action. Defendants further objected on the grounds that it seeks Documents that are neither relevant to the subject matter involved in this Action, nor relevant to a claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further objected to this Request to the extent it seeks information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Relying on well-established case law, Defendants further objected to this Request on the ground that it is a request for improper discovery-on-discovery.

During the August 18 call, you acknowledged Defendants' objections. As to Defendants' discovery-on-discovery objection, your January 11 Letter fails to challenge Defendants' cited cases or cite any authority to the contrary. (*See* January 11 Ltr. at 9.) Instead, you narrowed this Request by seeking "copies of all document destruction and retention policies in place during the Relevant Time Period." (*Id.*)

In the interest of compromise, Clover is willing to produce non-privileged Documents sufficient to show Clover's document retention policies in force during the Relevant Time Period that can be found after a reasonable search.

### M. Plaintiffs' Request Nos. 34 and 35

Plaintiffs' Request No. 34 seeks "Documents sufficient to Identify or describe Clover's efforts to preserve and collect Documents relevant to this Action. This Request is not limited to

the Relevant Time Period." Plaintiffs' Request No. 35 seeks "[a]ll Documents and Communications Concerning Defendants' efforts to preserve and collect Documents in the Derivative Actions. This Request is not limited to the Relevant Time Period." In your January 11 Letter, you narrowed Request No. 34 to: "Documents sufficient to show the document retention notices sent to current or former Employees, as defined in the Requests, in response to this Action, and Documents sufficient to show any reports of Documents that were deleted or destroyed concerning allegations in the Complaint after the commencement of the Action." (January 11 Ltr. at 9.) You also narrowed Request No. 35 to: "Documents sufficient to show the document retention notices sent to current or former Employees, as defined in the Requests, in response to any Derivative Action concerning substantially similar allegations as the Complaint, and Documents sufficient to show any reports of Documents that were deleted or destroyed concerning the allegations in any Derivative Action after the commencement of any Derivative Action concerning substantially similar allegations as the Complaint." (*Id*. at 10.)

During the August 18 call, you acknowledged Defendants' objections to these Requests, including the discovery-on-discovery objection. You have not addressed our argument and explanation that these Requests seek improper discovery-on-discovery. Your January 11 Letter fails to cite any authority that contradicts Defendants' cited cases. (*Compare* January 11 Ltr. at 9-10, *with* Clover's R&Os at 30-31 *and* Individual Defendants' R&Os at 32-33.) Accordingly, Defendants stand on their objections as to Plaintiffs' Request Nos. 34 and 35, but we are willing to consider any case law that you may have to support your position.

### N. Plaintiffs' Request Nos. 36 and 37

Plaintiffs' Request No. 36 seeks "[a]ll Documents and Communications Concerning Defendants' efforts to preserve and collect Documents in the DOJ Investigation. This Request is not limited to the Relevant Time Period." Plaintiffs' Request No. 37 seeks "[a]ll Documents and Communications Concerning Defendants' efforts to preserve and collect Documents in the SEC Investigation. This Request is not limited to the Relevant Time Period."

You have failed to articulate any explanation as to the relevance for these Requests. (*See* January 11 Ltr. at 10.) Accordingly, Defendants stand on their objections, but we are willing to consider your position on the relevance of the information sought in these Requests.

## I. Defendants' First Requests for Production of Documents

Your January 11 Letter did not address the parties' meet-and-confer discussions concerning Plaintiffs' responses and objections to Defendants' First Requests for Production to Plaintiffs.

### A. Undisputed Requests

Based on the parties' discussions during the meet-and-confer sessions, Defendants understand that there are no current disputes with respect to the non-production of Documents in

response to Defendants' Request Nos. 6, 26, 27, 30, 31, and 32. Defendants likewise understand that there are no current disputes with respect to the production of Documents in response to Defendants' Request Nos. 9, 10, 11, 12, 13, 14, 19, 24, 25, 28, and 29. As previously stated, Defendants agree that all of Defendants' Requests are limited to Documents and Communications that are within Plaintiffs' possession, custody, or control. (*See* August 1 Ltr. at 2.) Defendants reserve their rights with respect to these undisputed Requests.

As to Defendants' Request Nos. 5, 12, 14, 19, 25, 30, 31, and 32, Defendants accept the following representations made by Plaintiffs during the August 16 and 18 calls:

- With respect to Defendants' Request No. 5, which seeks "[a]ll Communications with Hindenburg Research or anyone purporting to act on behalf of Hindenburg Research," Plaintiffs represented that there are no Documents or Communications by Plaintiffs or their counsel responsive to Defendants' Request No. 5. Plaintiffs further stated that their investigation into the Hindenburg Report did not involve any Communications with Hindenburg Research or anyone purporting to act on their behalf.

- With respect to Defendants' Request Nos. 12 and 14, Plaintiffs produced their respective retainer agreements with counsel, and represented that said agreements are the only non-privileged Documents or Communications concerning: (i) payment or other compensation that Plaintiffs, or any person acting on their behalf, collectively or individually, have received or expect to receive in connection with this Class Action; and (ii) the decision of Plaintiffs, and any person acting on their behalf, to, collectively or individually, sue any Defendant.

- With respect to Defendants' Request Nos. 19 and 25, Plaintiffs stated that their productions to date include all of the non-privileged responsive Documents.

- As to Defendants' Request Nos. 30, 31, and 32, Plaintiffs confirmed that they do not have responsive Documents or Communications in their possession, custody, and control, including transcripts of earnings calls, conference calls, or other similar events.

Please confirm that Defendants' understanding is correct.

**B. Defendants' Request Nos. 1, 2, 3, and 4**

With respect to Defendants' Request No. 1, which seeks "[c]omplete copies, including exhibits and attachments, of all Documents attached to the Complaint, or quoted, cited, referenced in, or relied upon in the Complaint," we addressed the relevance of this category, and asked Plaintiffs to confirm that they will produce all non-privileged Documents responsive to this

Request, as limited.[5] (*See* August 1 Ltr. at 2.) During the August 16 call, you stated that Plaintiffs relied on memoranda from conversations with Confidential Witnesses. You claimed those were privileged. We agreed to assess your claim of privilege once you provided us with a privilege log. Please provide the log.

When we asked you if Plaintiffs reviewed and relied on other information in response to Defendants' Request No. 1, such as the "analysts' reports and advisories about the Company, and information readily obtainable on the Internet" listed in the Complaint's introductory paragraph, you represented that Plaintiffs relied on public filings, Tweets, news articles, information on publicly available websites identified in the Complaint, and privileged information.

With respect to Defendants' Request No. 2, which seeks "Documents sufficient to identify each of the Confidential Witnesses," you acknowledged that Defendants are entitled to such Documents. But you stated that Plaintiffs will not produce responsive Documents until the entry of a Protective Order in this Action. Please confirm that Plaintiffs will produce all non-privileged Documents responsive to Defendants' Request No. 2 immediately after the parties submit the Protective Order to the Court.

With respect to Defendants' Request No. 3, which seeks "[a]ll Communications with any of the Confidential Witnesses, including, but not limited to, any Statements made or given by any Confidential Witness, and all Documents Regarding such Communications," Defendants further limited this Request in our August 1 Letter. This more limited Request only seeks Communications with any of the Confidential Witnesses, including, but not limited to, any Statements made or given by any Confidential Witness, and all Documents Regarding such Communications—in each case, to the extent that they concern the subject matter of this litigation, including the allegations in the Complaint.

During the August 16 call, Plaintiffs took the position that Communications with Confidential Witnesses are privileged based on the work-product doctrine. We agreed to assess your claim of privilege once you had provided us with a privilege log. Please provide the log.

Defendants' Request No. 4 seeks "[a]ll Documents and Communications Regarding Hindenburg Research, the Hindenburg Report, or the Hindenburg Response." As stated in our August 1 Letter, this Request was limited because Defendants agree that Plaintiffs need not produce Clover's or SCH's filings with the SEC, or Documents specifically identified in the Complaint as coming from Clover's website. During the August 16 call, Plaintiffs understood this Request to seek all Documents and Communications in connection with Plaintiffs' investigation into the statements in the Hindenburg Report. Plaintiffs took the position that such Documents

---

[5] Defendants agree that Plaintiffs need not produce SEC filings by Clover or SCH, or Documents specifically identified in the Complaint as coming from Clover's websites. (*See* August 1 Ltr. at 2.)

and Communications that are within Plaintiffs' possession, custody, and control that are not publicly available are privileged based on the work-product doctrine. We agreed to assess your claim of privilege once you had provided us with a privilege log. Please provide the log.

### C. Defendants' Request Nos. 7 and 8

Defendants' Request No. 7 seeks "[a]ll Documents concerning any Statements made or given by any Person Regarding the subject matter of the Class Action." Defendants' Request No. 8 seeks "[a]ll Documents that constitute, concern, refer, or relate to any Communications, interviews, or meetings between You and any other Person relating to the Class Action or any of the matters alleged in the Complaint."

During the August 16 call, Defendants made clear that these Requests exclude Statements made in publicly available news articles, Tweets, and the like. Plaintiffs indicated that they might withhold certain documents as privileged. We agreed to assess your claim of privilege once you had provided us with a privilege log. Please provide the log. Please also confirm that Plaintiffs have produced any responsive documents not subject to a claim of privilege.

Please also confirm that Plaintiffs' privilege log will include all of Named Plaintiff Jean-Nicolas Tremblay's deleted Communications to the extent they are in his counsel's possession, custody, or control. (*See* Tr. of Tremblay Dep. (Aug. 30, 2022) at 109:9-25, 110:1-3.)

### D. Defendants' Request Nos. 21, 22, and 23

Defendants' Request No. 21 seeks "Documents and Communications concerning or analyzing the performance of, or realized or unrealized gains or losses on, Your investment in any Clover Securities." Defendants' Request No. 22 seeks "[a]ll tax returns filed by You or on Your behalf reflecting income gains for losses from transactions in Clover Securities." Defendants' Request No. 23 seeks "[a]ll financial statements or profit and loss statements reflecting gains or losses from transactions in Clover Securities." Plaintiffs only agreed to produce an "expert report delineating damages" and unspecified "documents they rely on in support of certification of this action as a class action …." (Pls.' R&Os at 21-22.) As stated in our August 1 Letter, Plaintiffs' responses and objections to those Requests were insufficient.

During the August 16 call, Plaintiffs appeared to revisit their position, stating that they have provided all of the transactions in all Clover Securities by Plaintiffs during the Class Period, and up until and including the date of the Hindenburg Report. Plaintiffs further stated that they provided Defendants with all of the requested information regarding unrealized gains or losses that can be calculated from the face of the Documents themselves. Plaintiffs reserved their right to supplement their production to the extent Defendants request additional information in this respect.

As of the writing of this letter, Defendants' Request No. 22 remains outstanding because Plaintiffs have refused to produce their tax returns. When asked about the rationale for the

requested tax returns during the August 16 call, Defendants explained that they need to understand the tax basis Plaintiffs are claiming for sales of Clover Securities. Defendants stated that they seek information on whether there is a gain or loss, because a gain would be clearly relevant to the issue of whether Plaintiffs' tax returns are adequate. Defendants also explained that there will be an issue about the purchase price for the shares in this action; thus, Defendants have requested all tax returns to determine when Plaintiffs are reporting their purchase price to the Internal Revenue Service, the Canada Revenue Agency, or other tax agency, as applicable.

Please confirm that you will immediately produce the tax returns filed by Plaintiffs in response to Defendants' Request No. 22.

## II. Custodians

We have reviewed Plaintiffs' proposed custodian list and we will agree to use the following custodians:

- Chamath Palihapitiya
- Vivek Garipalli
- Andrew Toy
- Joseph Wagner
- Hiram Bermudez
- Ethan Lipkind
- Zoe Farrell
- Livia Istrate
- Wendy Richey

Plaintiffs have not explained how their other proposed custodians are relevant and proportionate to the needs of this Action.

Once Plaintiffs identify the Confidential Witnesses, Defendants will consider using them as custodians.

## III. Search Terms

We have run Plaintiffs' proposed search across the custodians listed above to ascertain the burden associated with such a document review across Clover-hosted emails, Google Chat messages, Quip messages, Slack messages, and Yammer messages.[6] Plaintiffs' proposed searches (as modified to work with our review system) for eight (8) custodians yielded a total of 937,058 documents  The burden associated with reviewing that many documents vastly outweighs any potential benefit to Plaintiffs and is plainly disproportionate to the needs of this Action, particularly

---

[6] Our review system is not able to process "/s" and "/p" as proximity searches. We have translated these proposals using proximity limiters, such as "w/10" and "w/25".

in light of the fact that you only provided us with these search terms with fewer than three months left in fact discovery.

Clover proposes the following revised search terms:

| Request #s | Proposed Search Terms |
|---|---|
| 2 | Covered by proposed terms for Requests 3, 4, and 5. |
| 3, 4, 5 | (DOJ OR (Department w/2 Justice) OR demand*) AND (investigat* OR inquir*OR "CID" OR subpoena)<br><br>Viveca AND Parker<br><br>Eastern w/2 District w/2 Pennsylvania<br><br>("E.D. Pa." OR "EDPA" OR "E.D.Pa.")<br><br>Pennsylvania w/5 (prosecut* OR investigat* OR inquir* OR subpoena OR "CID") |
| 13 | Same as 14 *infra*, but specifically run on custodians Palihapitiya, Garipalli, Toy, and Wagner. |
| 14 | Covered in part by proposed terms for Requests 3, 4, and 5.<br><br>("Ambassador" w/ 5 (refer*) OR member*)) AND ("doctor" OR "physician" OR reception* OR "staff")<br><br>(gift W/2 card*) AND ((ethan OR Lipkind) AND (physician OR doctor OR (healthcare W/2 practitioner)) OR hcp) AND (FCA OR (false W/2 claims W/2 act) AND ((refer* W/2 patient) OR referral* OR recruit* OR (kick W/2 back) OR AKS)) |
| 17 | Hindenburg OR "short report" OR ((Nate OR Nathan) w/2 Anderson)[7] |

---

[7] For Plaintiffs' Request No. 17, the relevant date searched will be February 4, 2021.

| Request #s | Proposed Search Terms |
|---|---|
| 19 | ((ethan OR Lipkind) w/5 ((zoe OR farrell) AND (livia OR istrate))) AND (compliance OR complaint OR investigat* OR violat*)<br><br>((ethan AND Lipkind) w/5 ambassador) AND (reception*)<br><br>(((ethan AND Lipkind) AND (zoe OR farrell OR livia OR istrate)) AND "compliance") AND (((gift W/2 card*) OR prepaid) AND ("doctor" OR "physician" OR "hcp" OR (healthcare W/2 practitioner)))<br><br>((gift W/2 card*) OR prepaid) AND ((ethan OR lipkind) AND (physician OR doctor OR (healthcare W/2 practitioner) OR hcp)) AND ((FCA OR (false W/2 claims W/2 act) OR (refer* W/2 patient) OR referral* OR recruit* OR (kick W/2 back) OR AKS)) |
| 20 | (investigat* OR report) w/10 (Ethan OR Lipkind OR compliance OR zoe OR Farrell OR Istrate OR livia OR card* OR prepaid OR gift OR ambassador)<br><br>((gift W/2 card*) OR prepaid) AND ((ethan OR lipkind) AND (physician OR doctor OR (healthcare W/2 practitioner) OR hcp)) AND ((FCA OR (false W/2 claims W/2 act) OR (refer* W/2 patient) OR referral* OR recruit* OR (kick W/2 back) OR AKS)) |
| 27, 28 | Covered by 17. |

The negotiation and agreement of search terms and custodians is an iterative process and Defendants reserve their rights to modify and further limit search terms and custodians as the discovery process moves forward.

\* \* \*

Defendants remain willing to discuss any matters and will wait to hear from Plaintiffs concerning the remaining open issues.

Very truly yours,

Jed Schwartz

Jed Schwartz

cc:     Jeremy A. Lieberman, Esq. (by email)
        Paul Kent Bramlett, Esq. (by email)
        Patrick V. Dahlstrom, Esq. (by email)
        Brian Schall, Esq. (by email)
        Rina Restaino, Esq. (by email)
        Corey D. Holzer, Esq. (by email)
        Marshall P. Dees, Esq. (by email)
        Scott A. Edelman, Esq. (by email)
        Gary A. Crosby II, Esq. (by email)
        Britt K. Latham, Esq. (by email)
        Joseph B. Crace, Jr. (by email)