# EXHIBIT 12

TIMOTHY BOND,

              Lead Plaintiff

and

JEAN-NICOLAS TREMBLAY,

              Named Plaintiff,

Individually and on Behalf of All Others Similarly Situated,

      v.

CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI, ANDREW TOY, JOE WAGNER, and CHAMATH PALIHAPITIYA,

              Defendants.

Case No. 3:21-cv-00096

Judge Aleta A. Trauger

## DEFENDANTS' FIRST REQUESTS
## FOR PRODUCTION TO PLAINTIFFS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants in the above-described action, by and through their undersigned attorneys, hereby request the production of all documents described below within thirty (30) days after service of these First Requests for Production to Plaintiffs for inspection and copying in accordance with the definitions and instructions set forth below at the offices of Milbank LLP, 55 Hudson Yards, New York, NY 10001.

## DEFINITIONS

The following definitions shall apply to these Requests:

1. "Business Combination" means the series of transactions consummated on January 7, 2021, and contemplated by the Agreement and Plan of Merger, dated October 5, 2020 (as amended), through which the private company, Clover Health Investments, Corp., merged with and into the special purpose acquisition company called Social Capital Hedosophia Holdings Corp. III (defined herein) to become the current public company, Clover (defined herein).

2. "Class" or "Class Member(s)" are all persons who are, have been, or may be members of the proposed plaintiff class as described in the Complaint, any and all of them, and all persons either acting or purporting to act on their behalf.

3. "Class Action" means *Bond, et al. v. Clover Health Investments, Corp., et al.*, No. 3:21-cv-00096 (M.D. Tenn.), and any action consolidated therewith.

4. "Class Period" means the time period from October 6, 2020 to February 3, 2021, both dates inclusive, as described in the Complaint.

5. "Clover" refers to Clover Health Investments, Corp. (formerly known as Social Capital Hedosophia Holdings Corp. III) and to any and all of its present or former subsidiaries, divisions, affiliates, predecessors, and successors.

6. "Clover Security" or "Clover Securities" mean any stock, share, bond, note, debenture, commercial paper, security-based swap agreement, evidence of indebtedness, call option, option contract, investment contract, interest in or under a profit-sharing or participating agreement or scheme, voting trust agreement, beneficial interest in a trust or pretended trust, and/or any interest in the capital, assets, property, or profits of Clover and any predecessors, successors, subsidiaries, divisions, partnerships, and limited partnerships.

2

7. "<u>Communication(s)</u>" means any transmission or exchange of information, opinion, or thoughts, whether orally, in writing or otherwise, including, but not limited to, conversations, meetings, letters, notes, and telegraphic, facsimile, telex, or computer-assisted electronic messages.

8. "<u>Complaint</u>" refers to the First Amended Complaint for Violations of the Federal Securities Laws (ECF No. 70) filed on June 28, 2021 in this Class Action.

9. "<u>Confidential Witness(es)</u>" means, collectively and individually, any person who is, has been, or may be identified or referred to as a "Confidential Witness" or "CW" in the Complaint.

10. "<u>Defendant(s)</u>" refers to the Defendants, any and all of the defendants in this Class Action, and to any and all of their respective subsidiaries, divisions, affiliates, predecessors, and successors.

11. "<u>Document(s)</u>" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). The term "Document" shall include any and all writings, drawings, graphs, charts, photographs, and electronically stored information.

12. "<u>Hindenburg Report</u>" means the report entitled "Clover Health: How the 'King of SPACs' Lured Retail Investors Into a Broken Business Facing an Active, Undisclosed DOJ Investigation" that was published by Hindenburg Research LLC (defined herein) on February 4, 2021, and its subsequent reply on February 5, 2021, to Clover's Hindenburg Response (defined herein).

13. "<u>Hindenburg Research LLC</u>" or "<u>Hindenburg Research</u>" refer to the research firm as described in the Complaint that published the Hindenburg Report.

3

14.     "Hindenburg Response" refers to Clover's response to the Hindenburg Report that was posted to Medium.com on February 5, 2021, and annexed as Exhibit 99.1 of Clover's Form 8-K filed on February 5, 2021, with the United States Securities and Exchange Commission ("SEC").

15.     "Litigation Funding Agreement" means any arrangement whereby any third party has agreed to advance some or all of the costs of litigating an action in return for a financial interest in the results of the litigation.

16.     "Person(s)" means, without limitation, corporations, partnerships, and associations, as well as natural persons.

17.     "Plaintiff(s)", "You", "Yourself", or "Your" refer, collectively and individually, to Firas Jabri, Jean-Nicolas Tremblay, and any person acting on their behalf.

18.     "Regarding" means discussing, reflecting, constituting, mentioning, pertaining to, assessing, embodying, recording, stating, concerning, describing, supporting, contravening, touching upon, or summarizing.

19.     "Social Capital Hedosophia Holdings Corp. III" or "SCH" refer to the special purpose acquisition company that (i) was incorporated as a Cayman Islands exempted company on October 18, 2019; (ii) completed its initial public offering on April 24, 2020; and (iii) became a Delaware corporation and the surviving entity in connection with the Business Combination, changing its name to Clover.

20.     "Statement(s)" refers to (i) a written statement signed or otherwise approved or adopted by the person making it; or (ii) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a verbatim or substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

4

## **INSTRUCTIONS**

1.     The Documents requested herein include all responsive Documents in Your possession, custody, or control.

2.     Each request herein seeks production of each Document in its entirety, without abbreviation or redaction, with all non-identical copies and drafts thereof, including any Document appended to, included with, incorporated by, or referred to in the Document.

3.     All Documents that in their original form were stapled, clipped, or otherwise attached to other Documents should be produced in such form.

4.     If any responsive Documents are maintained in a file, produce the file folder or container and all labels and notations thereon along with the Documents.

5.     If any Document cannot be produced in full, produce it to the extent possible, specifying the reasons for Your inability to produce the remainder and stating whatever information, knowledge, or belief You have concerning the unproduced portion.  Any purportedly privileged Document containing non-privileged matter shall be produced with the purportedly privileged portion redacted.  You shall identify the specific location on each page where any purportedly privileged matter has been redacted.

6.     All Documents should be produced as they are kept in the ordinary course of business, or shall be organized and labeled to correspond to the specific paragraph(s) to which they are responsive.  If producing the Documents requested as they are kept in the ordinary course of business, the integrity and internal sequence of the requested Documents within each file or folder shall not be disturbed nor shall the contents of any file or folder be commingled with the contents of another file or folder.  All Documents should be given a unique number, for example,  a "Bates"

5

label or similar identifying mark. Please include with each Document production a cover letter providing a description of the Documents being produced.

7. The requests herein are continuing. Any response hereto shall be supplemented promptly upon possession or discovery of other or additional information or Documents responsive to any request herein.

8. If any Documents, or any portion of a Document, responsive to this request is withheld by Plaintiffs under a claim of privilege, Plaintiffs shall, pursuant to Federal Rule of Civil Procedure 26(b)(5), identify the nature of the privilege (including work product) that is being claimed, and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the privilege rule being invoked. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted, and the remainder shall be produced.

9. If there are no Documents responsive to a particular request, Plaintiffs shall so state in writing.

10. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

11. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

12. The use of the singular form of any word includes the plural and vice versa.

13. Electronically stored information should be produced in accordance with the following specifications:

6

a. <u>Form of Production</u>.  Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata.  Name each tiff file with a unique name matching the Bates number (or similar identifying mark) labeled on the corresponding page.  Group every 1,000 tiffs into a new folder; do not create a separate folder for each Document.

b. <u>Image Load File</u>.  Provide an image load file (Opticon file) that contains Document boundaries and page counts.

c. <u>Document Text</u>.  For Documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate Document-level *.txt files named for the beginning Bates number of the associated Document.  Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.).  Group 1000 Document text files per incrementally named "TEXT" directories, separate from image directories.  For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate Document-level *.txt files named for the beginning Bates number of the associated Document.  Clearly label any redacted material to show the redactions on the tiff image.  Also provide a comma-delimited extracted text list file with each Document's beginning Bates number along with the path to the associated extracted text/OCR text file.

7

d. <u>Native Production for Certain File Types</u>. For files that reasonably require viewing in their native format for a full understanding of their content and meaning (including, but not limited to, Excel, or certain PowerPoint or other special presentation programs or database files), produce the files in native and tiff formats to the extent it is reasonably possible to do so. Name the produced native file with the Bates number on the first page of the corresponding tiff production of the file/Document or on the tiff placeholder Document. Group native files within incrementally named "NATIVE" directories; separate from images directories.

e. <u>Metadata</u>. Produce extracted metadata for each Document in the form of a Concordance load file (.dat), including the following fields (where applicable): Bates range begin, Bates range end, Bates family range begin, Bates family range end, email subject line, file name, email sent date, email sent time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source and/or source folder, MD5 hash value, and native file path location. Documents should be produced in such fashion as to identify the location of the Document and, where applicable, the natural person in whose possession it was found.

14. If, in responding to the requests, You encounter any ambiguities when construing a request or definition, Your response shall set forth the matter deemed ambiguous, and the construction used in responding.

15. Unless otherwise stated in a specific request, the requests herein seek Documents that were dated, prepared, generated, or received during the time period beginning April 24, 2020

8

and continuing up until the date of Your response to these requests, and every supplemental response (the "Period").

## DOCUMENT REQUESTS

1. Complete copies, including exhibits and attachments, of all Documents attached to the Complaint, or quoted, cited, referenced in, or relied upon in the Complaint.

2. Documents sufficient to identify each of the Confidential Witnesses.

3. All Communications with any of the Confidential Witnesses, including, but not limited to, any Statements made or given by any Confidential Witness, and all Documents Regarding such Communications.

4. All Documents and Communications Regarding Hindenburg Research, the Hindenburg Report, or the Hindenburg Response, including, but not limited to, all Documents Regarding any investigation that You made into the content of the Hindenburg Report.

5. All Communications with Hindenburg Research or anyone purporting to act on behalf of Hindenburg Research, including, but not limited to, Nathan Anderson, and all Documents Regarding such Communications.

6. Documents sufficient to show any interest held by any third party in the outcome of this Class Action, including any Documents or Communications concerning any Litigation Funding Agreement to which You are a party in connection with this Class Action.

7. All Documents concerning any Statements made or given by any Person Regarding the subject matter of the Class Action, including, but not limited to, Statements made or given by any of the Confidential Witnesses.

8. All Documents that constitute, concern, refer, or relate to any Communications, interviews, or meetings between You and any other Person relating to the Class Action or any of

the matters alleged in the Complaint (excluding meetings with Your counsel), including, but not limited to, any such Communications (i) between You and any of the Defendants; (ii) between You and any governmental or regulatory authority; (iii) between You and any current or former employee of Clover; or (iv) between You and Hindenburg Research.

9. All Documents concerning Your certifications pursuant to the Private Securities Litigation Reform Act of 1995, as set forth in (i) the "Certification Pursuant to Federal Securities Laws" and supporting materials (ECF Nos. 41-3 & 41-4) filed in this Class Action; and (ii) the "Certification Pursuant to Federal Securities Laws" and supporting materials (ECF Nos. 1-2 & 1-3) filed in *Tremblay v. Clover Health Investments, Corp. et al.*, No. 3:21-cv-00138 (M.D. Tenn.), which was consolidated under this Class Action.

10. All Documents and Communications that concern or relate in any way to any Defendant or the matters alleged in the Complaint.

11. All Documents and Communications regarding Your decision to serve as a lead plaintiff and named plaintiff in this Class Action.

12. All Documents and Communications concerning any payment or other compensation that You have received or expect to receive in connection with this Class Action.

13. A copy of any engagement letter or similar agreement with Your counsel in this Class Action.

14. All Documents and Communications regarding Your decision to sue any Defendant.

15. All Documents and Communications regarding Your vote, approval, disapproval, ratification, or rejection as a SCH or Clover shareholder at any meeting in connection with the Business Combination.

16. Documents sufficient to show all Persons responsible for, and all Persons involved in, Your decision to enter into any purchase, sale, or other transaction in Clover Securities.

17. All brokerage agreements or client account agreements entered into between You and any broker-dealer, prime broker, custodian, or any other security intermediary who provided services to Plaintiffs in connection with Your purchase or sale of any shares of Clover Securities.

18. All Documents concerning any actual, recommended, or contemplated purchase, sale, assignment, pledge, gift, transfer, option, or other acquisition or disposition of any Clover Securities by You or by any other Person on Your behalf, including Communications between or among You, any other Plaintiff, and any outside firm, advisor, analyst, consultant, broker, or brokerage firm relating to any actual, recommended, or contemplated transactions in such securities.

19. Documents sufficient to identify: (i) the names of the accounts for whose benefit any Clover Security was purchased; (ii) the terms under which those accounts are or were maintained or those assets managed; (iii) the source of any funds used to purchase any Clover Security; and (iv) whether those accounts have authorized the maintenance of the Class Action.

20. All Documents and Communications relating to any individual securities or investment portfolio monitoring services that You receive or received.

21. Documents and Communications concerning or analyzing the performance of, or realized or unrealized gains or losses on, Your investment in any Clover Securities, including the methodology that You used (*e.g.*, LIFO, FIFO, average cost basis) to calculate any realized or unrealized gain or loss.

22. All tax returns filed by You or on Your behalf reflecting income gains for losses from transactions in Clover Securities.

11

23. All financial statements or profit and loss statements reflecting gains or losses from transactions in Clover Securities.

24. All Documents relating to Your allegation that the market for Clover Securities was efficient during the Class Period.

25. Documents sufficient to show Your ownership and the chain of title of Clover Securities issued in connection with the Business Combination.

26. All declarations, affidavits, affirmations, Statements, deposition transcripts, and transcripts of any court testimony, that You have given in any proceeding, lawsuit, action, or matter.

27. All Documents sufficient to identify any lawsuit in which You are or were a party, witness, or a putative class member that relates in any way to the purchase or sale of Clover Securities or any other type of investment during any time period.

28. All Documents and Communications Regarding Your claimed damages or relief that You seek in the Class Action, including calculations of the total amount of damages claimed, how such damages were calculated, Your efforts to mitigate Your damages, and amounts received Regarding such damages from any source to date.

29. All Documents that You intend to rely upon at any trial or hearing in the Class Action.

30. All analyst reports, SEC filings, and annual and quarterly reports concerning Clover or any Clover Securities.

31. All recordings or transcripts of conference calls held by Clover during the Period and any related analysis.

32. All Communications related to analyst coverage of Clover or any Clover Securities.

Dated: May 2, 2022

Respectfully submitted,

**MILBANK LLP**

 /s/ *Jed M. Schwartz*

Scott A. Edelman (admitted *pro hac vice*)
Jed M. Schwartz (admitted *pro hac vice*)
Gary A. Crosby II (admitted *pro hac vice*)
55 Hudson Yards
New York, New York 10001
Tel. (212) 530-5000
sedelman@milbank.com
jschwartz@milbank.com
gcrosby@milbank.com

**BASS, BERRY & SIMS PLC**

Britt K. Latham (BPR #23149)
Joseph B. Crace, Jr. (BPR # 27753)
150 Third Ave., South, Suite 2800
Nashville, TN 37201
Tel. (615) 742-7762
Facsimile: (615) 742-2847
blatham@bassberry.com
jcrace@bassberry.com

*Counsel for Defendants Clover Health Investments, Corp., Vivek Garipalli, Andrew Toy, Joseph Wagner, and Chamath Palihapitiya*

13

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 2, 2022, Defendants' First Requests for Production to

Plaintiffs were served by email on the following counsel for Plaintiffs:

**POMERANTZ LLP**

Jeremy A. Lieberman
Brian Calandra
600 Third Avenue, 20th Floor
New York, New York 10016
Tel. (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
                bcalandra@pomlaw.com

Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel. (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Lead Counsel and Attorneys for Plaintiffs*

**BRAMLETT LAW OFFICES**

Paul Ken Bramlett TN #7387/MS #4291
Robert Preston Bramlett TN #25895
40 Burton Hills Blvd., Suite 200
P. O. Box 150734
Nashville, TN 37215
Tel. 615.248.2828
Facsimile: 866.816.4116
PKNASHLAW@aol.com
Robert@BramlettLawOffices.com

*Liaison Counsel*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel. (424) 303-1964
Facsimile: (877) 590-0482
brian@schallfirm.com
rina@schallfirm.com

*Additional Counsel for Plaintiffs*

**HOLZER & HOLZER, LLC**
Corey D. Holzer
Marshall P. Dees
1200 Ashwood Parkway
Suite 410
Atlanta, Georgia 30338
Tel. (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com
mdees@holzerlaw.com

*Additional Counsel for Named Plaintiff Jean-Nicolas Tremblay*

/s/ *Jed M. Schwartz*

14