# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

|  |  |
|---|---|
| TIMOTHY BOND, Individually and on behalf of all others similarly situated,<br><br>Lead Plaintiff,<br><br>and<br><br>JEAN-NICOLAS TREMBLAY<br><br>Named Plaintiff,<br><br>individually and on behalf of all others similarly situated,<br><br>      v.<br><br>CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI, ANDREW TOY, JOE WAGNER, AND CHAMATH PALIHAPITIYA, and JOE WAGNER,<br><br>Defendants. | Civil Action No. 3:21-cv-00096-AT-AN |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

**Page(s)**

I. PRELIMINARY STATEMENT ..................................................................... 1

II. NATURE OF THE ACTION ..................................................................... 3

    A. Procedural History of the Litigation ................................................. 3

        1. The Initial Complaint and the Lead Plaintiff Appointment Process........... 3

        2. Lead Counsel's Investigation and the Amended Complaint...................... 4

        3. Defendants' Motions to Dismiss the Amended Complaint ...................... 5

        4. Class Certification................................................................ 5

        5. Mediation ......................................................................... 5

        6. Discovery ......................................................................... 6

        7. Settlement ......................................................................... 6

    B. Summary of Key Terms of the Proposed Settlement............................. 7

        1. Relief to Settlement Class Members and Release of Claims..................... 7

        2. Class Notice and Settlement Administration ................................... 7

            a) Notice .................................................................... 7

            b) Settlement Administration .............................................. 8

        3. Papers in Support of the Settlement, Award of Attorneys' Fees and Expenses, and Plaintiffs' Compensatory Award ........................................ 8

        4. Objections ......................................................................... 9

        5. Opt-Outs........................................................................... 9

        6. Termination of the Settlement ................................................. 10

        7. No Admission of Liability ...................................................... 10

III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E) ................. 10

IV. ARGUMENT ............................................................................ 11

    A. The Proposed Settlement was the Result of Serious, Informed and Non-Collusive Negotiations ............................................................. 11

    B. The Settlement is Fair, Reasonable, and Adequate................................. 12

        1. Plaintiffs and Lead Counsel Adequately Represented the Class ............. 12

        2. The Settlement is the Result of Arm's Length Negotiations ................... 13

        3. The Settlement is an Excellent Result for the Class ............................. 14

            a) Complexity, Expense and Duration of Litigation ...................... 14

|  |  | b) | Establishing Liability and Damages ............................................ 15 |
|  |  | c) | Risks of Maintaining Class Action Status ................................... 17 |
|  |  | d) | Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation ................................. 17 |
|  | 4. | | Rule 23(e)(2)(C)(ii)-(iv)............................................................... 18 |
|  | 5. | | The Settlement Treats All Settlement Class Members Equitably Relative to Each Other ........................................................................... 20 |
|  | 6. | | The Sixth Circuit *UAW* Factors are Also Satisfied................................. 21 |
| C. | | | The Court Should Approve the Proposed Form and Method of Notice .............. 24 |
| V. | | | PROPOSED SCHEDULE OF EVENTS ......................................................... 26 |
| VI. | | | CONCLUSION.......................................................................................... 27 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Am. Greetings Corp.*,
2013 WL 12136593 (N.D. Ohio May 22, 2013)....................................................................20

*Barbee v. Navihealth, Inc.*,
No. 3:19-CV-00119, 2020 WL 6365515 (M.D. Tenn. Sept. 21, 2020)...................................19

*Bd. of Trustees of City of Birmingham Employees' Ret. Sys. v. Comerica Bank*,
2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) ....................................................................14

*Bernardez v. Firstsource Sols. USA, LLC*,
2022 WL 1156972 (W.D. Ky. Apr. 19, 2022) .........................................................................17

*Burges v. BancorpSouth, Inc.*,
No. 3:14-cv-01564, slip op. (M.D. Tenn. Apr. 3, 2018)..........................................................26

*Connectivity Sys. Inc. v. Nat'l City Bank*,
2011 WL 292008 (S.D. Ohio Jan 27, 2011) ............................................................................22

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ..................................................................................................24

*Dillworth v. Case Farms Processing, Inc.*,
2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ...........................................................................12

*Dougherty v. Esperion Therapeutics, Inc.*,
2020 WL 6793326 (E.D. Mich. Nov. 19, 2020) ......................................................................13

*Elliott v. LVNV Funding, LLC*,
2019 WL 4007219 (W.D. Ky. Aug. 23, 2019) .........................................................................10

*Francis v. Supreme Touch Home Health Servs. Corp.*,
2021 WL 4244179 (S.D. Ohio Apr. 13, 2021) .........................................................................21

*Grae v. Corr. Corp. of Am.*,
326 F.R.D. 482 (M.D. Tenn. 2018) ..........................................................................................16

*Granada Inv., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) .............................................................................................11, 23

*Hadix, et ai., v. Johnson*,
322 F.3d 895 (6th Cir. 2003) ....................................................................................................12

*Hawkins v. Middle Tennessee Pizza, Inc.*,
No. 3:21-CV-00266, 2022 WL 337197 (M.D. Tenn. Jan. 19, 2022) ....................................19

*In re "Agent Orange" Prods. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)................................17

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ...................................................................................13, 15

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ..................................................................................15, 23

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ........................................................................................16

*In re Direct Gen. Corp. Derivative Litig.*,
2008 WL 842466 (M.D. Tenn. Mar. 28, 2008) .....................................................................24

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990) ..........................................................................................23

*In re King Pharms., Inc. Sec. Litig.*,
2007 WL 1100669 (E.D. Tenn. Apr. 12, 2007) .....................................................................25

*In re Polyurethane Foam Antitrust Litig.*,
165 F. Supp. 3d 664 (N.D. Ohio 2015)....................................................................................9

*In re Polyurethane Foam Antitrust Litig.*,
168 F. Supp 3d 985 (S.D. Ohio Jan. 27, 2016) .....................................................................18

*In re Regions Morgan Keegan Sec.*,
2013 WL 12110279 (W.D. Tenn. Aug. 6, 2013).....................................................................24

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2015 WL 1486709 (E.D. Tenn. Mar. 31, 2015) .....................................................................20

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) .............................................................................21, 23

*In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*,
2016 WL 5338012 (N.D. Ohio Sept. 23, 2016)........................................................................9

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ...................................................................................11, 12, 21

*Kritzer v. Safelite Solutions, LLC*,
2012 WL 1945144 (S.D. Ohio May 30, 2012) ..................................................................15, 23

iv

*Lake v. First Nationwide Bank*,
　900 F. Supp. 726 (E.D. Pa. 1995) ...................................................................12, 13

*Levell v. Monsanto Research Corp.*,
　191 F.R.D. 543 (S.D. Ohio 2000) .............................................................................15

*Macy v. GC Servs. Ltd. P'ship*,
　2019 WL 6684522 (W.D. Ky. Dec. 6, 2019) ....................................................10, 15

*Marro v. New York State Teachers' Ret. Sys.*,
　2017 WL 6398014 (6th Cir. Nov. 27, 2017) ...........................................................24

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
　339 U.S. 306 (1950) ...................................................................................................26

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
　315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State
　Teachers' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) .....................14, 21

*Officers for Justice v. Civil Serv. Comm'n*,
　688 F.2d 615 (9th Cir. 1982) ....................................................................................24

*Olden v. LaFarge Corp.*,
　472 F. Supp. 2d 922 (E.D. Mich. 2007)...................................................................17

*Pavlov v. Cont'l Cas. Co.*,
　2009 WL 10689011 (N.D. Ohio Oct. 7, 2009) ........................................................14

*Peck v. Air Evac EMS, Inc.*,
　2020 WL 354307 (E.D. Ky. Jan. 21, 2020) .............................................................14

*Phillips v. Petroleum Co. v. Shutts*,
　472 U.S. 797 (1985)...................................................................................................24

*Plagens v. Deckard*,
　2023 WL 2711263 (N.D. Ohio Mar. 30, 2023) .......................................................16

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
　No. 2016 WL 3977242 (N.D. Ohio July 19, 2016) .................................................21

*Reeves v. Patenaude & Felix, A.P.C.*,
　2021 WL 1186145 (E.D. Mich. Mar. 26, 2021) ......................................................22

*Schuh v. HCA Holdings, Inc.*,
　No. 3:11-cv-01033, slip op. (M.D. Tenn. Jan. 13, 2016)........................................26

*Thacker v. Chesapeake Appalachia, L.L.C.*,
 695 F. Supp. 2d 521 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v.
 Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011)................................23

*Timothy Bond v. Clover Health Investments, Corp., et al.*,
 Case No. 3:21-cv-00096 ...........................................................................................3

*Wess v. Storey*,
 2011 WL 1463609 (S.D. Ohio Apr. 14, 2011) ........................................................12

*Whitlock v. FSL Mgmt., LLC*,
 2015 WL 9413142 (W.D. Ky. Dec. 22, 2015), *aff'd*, 843 F.3d 1084 (6th Cir.
 2016) ......................................................................................................................17

*Williams v. Vukovich*,
 720 F.2d 909 (6th Cir. 1983) ...............................................................13, 15, 22

*Willis v. Big Lots*,
 slip op. (S.D. Ohio June 25, 2018)............................................................................26

**Statutes**

15 U.S.C.§78t(a) .............................................................................................................4

15 U.S.C. § 78u-4 ................................................................................16, 20, 24, 25, 26

28 U.S.C. § 1715 ...........................................................................................................8

**Rules**

Fed. R. Civ. P. 23.................................................10, 11, 12, 13, 14, 18, 19, 20, 21, 22, 24, 26

**Other Authorities**

17 C.F.R. §240.10b-5.....................................................................................................4

Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in
 Securities Class Action Litigation: 2022 Full-Year Review* ...................................18

Lead Plaintiff Firas Jabri and Named Plaintiff Jean-Nicolas Tremblay (together, "Plaintiffs"), individually and on behalf of all Settlement Class Members, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement presented in the Stipulation and Agreement of Settlement dated May 19, 2023 (the "Stipulation")[1]; (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; and (iv) a date for a Settlement Fairness Hearing (the "Settlement Hearing") and deadlines for the mailing and publication of notice to the Settlement Class, for Settlement Class Member objections and opt-out notices, for the filing of Plaintiffs' motion for Final Approval, and for the filing of Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses and a compensatory award to Plaintiffs.

## I.    PRELIMINARY STATEMENT

Plaintiffs have achieved an excellent resolution of this litigation. The proposed Settlement will resolve claims against Clover Health Investments, Corp. f/k/a Social Capital Hedosophia Holdings Corp. III ("Clover"), and Vivek Garipalli ("Garipalli"), Andrew Toy ("Toy"), Joe Wagner ("Wagner"), and Chamath Palihapitiya ("Palihapitiya" and, together with Garipalli, Toy, and Wagner, the "Individual Defendants," and together with Clover, "Defendants") in exchange for a sizable cash payment of $22,000,000 (the "Settlement Amount") for the benefit of the Settlement Class. This recovery represents approximately 13.2% of the likely recoverable damages in this case, which is well above the median recovery of 1.8% of estimated damages for all

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Brian Calandra ("Calandra Decl."), which is filed concurrently herewith. In addition, for ease of reading, internal quotations and citations are omitted in all case citations unless otherwise indicated.

securities class actions settled in 2022. This is powerful evidence that the Settlement is substantively fair to investors. In addition, Clover's share price has plummeted 92.4% during the pendency of this action, from $13.32 per share on June 1, 2021 to $1.01 per share on May 23, 2023,[2] and the Company disclosed that its stock is at risk of being delisted from the NASDAQ.[3]

The Settlement is also procedurally fair. By the time the Settlement was reached, Plaintiffs and their counsel were well-informed about the strengths and weaknesses of the claims and defenses. Before reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts; (ii) drafted and filed a 147-page Amended Complaint based on their extensive investigation (ECF No. 70); (iii) opposed Defendants' motion to dismiss the Amended Complaint (ECF Nos. 75-76, 80, 83); (iv) drafted and exchanged multiple letters and attended multiple telephonic meet-and-confer sessions in an attempt to resolve numerous issues concerning the scope of discovery and document requests; (v) reviewed documents produced by Defendants in discovery; (vi) filed a 43-page discovery dispute statement with the Court seeking the Court's help in resolving multiple discovery issues at which the Parties were at an impasse (ECF No. 115); (viii) successfully litigated a motion for class certification, which included a 69-page expert report (ECF No. 101-03; 108-11); (ix) drafted and exchanged mediation statements; (x) participated in a full-day mediation session and a half-day follow-up mediation session before Jed D. Melnick, Esq., an experienced JAMS mediator; and (xi) engaged in six-months of arm's length negotiations that culminated in the proposed Settlement. The

---

[2] See Clover Health Investments, Corp., finance.yahoo.com, May 23, 2023, https://finance.yahoo.com/quote/CLOV?p=CLOV&.tsrc=fin-srch

[3] Paige Minemyer, *Clover Health's Stock Could Be Delisted From the NASDAQ, Company Says*, FiercePharma.com, April 24, 2023, https://www.fiercehealthcare.com/payers/clover-healths-stock-could-be-delisted-nasdaq-company-says

Settlement is, therefore, the result of *extensive* negotiations conducted by informed and experienced counsel, together with a well-respected mediator.

For these reasons, and those discussed further below, the proposed Settlement meets the standard for preliminary approval and is in the best interests of the Settlement Class.

## II.    NATURE OF THE ACTION

This is a securities class action brought by investors alleging that Defendants made false and/or misleading statements and/or failed to disclose that (i) the Company had committed legal or regulatory violations after January 1, 2018 and was under investigation by the DOJ; (ii) the Company's growth stemmed from illegal gifts and/or payments to healthcare practitioners or office staff and unreported related party transactions; (iii) only a fraction of the healthcare providers who had contracted with the Company were actually using its Clover Assistant software; (iv) Clover's financial statements did not comply with GAAP; and (v) the Company's SEC filings failed to comply with Items 303 and 503 of Regulation S-K between October 6, 2020 and February 3, 2021, both dates inclusive. Defendants denied all of the allegations, and moved to dismiss Plaintiffs' complaint. The Court denied Defendants' motion to dismiss in full.

### A.    Procedural History of the Litigation

#### 1.    The Initial Complaint and the Lead Plaintiff Appointment Process

On February 5, 2021, Timothy Bond commenced this Action in the United States District Court for the Middle District of Tennessee, styled *Timothy Bond v. Clover Health Investments, Corp., et al.*, Case No. 3:21-cv-00096. The original Complaint (ECF No. 1) named Clover, Palihapitiya, Garipalli, and Toy as defendants.

On April 23, 2021, the United States District Court for the Middle District of Tennessee appointed Firas Jabri as Lead Plaintiff and Pomerantz LLP ("Pomerantz") as Lead Counsel for the putative class. ECF No. 58.

### 2.  Lead Counsel's Investigation and the Amended Complaint

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Clover's regulatory filings, (b) public reports and announcements, research reports prepared by analysts, and news articles concerning Defendants, and (c) other publicly available material related to Defendants; and (2) conducting an extensive investigation with the aid of a private investigator that involved, *inter alia*, interviews of former Clover employees. Lead Counsel also consulted with damages and loss causation experts.

On June 28, 2021, Lead Plaintiff filed an Amended Complaint. ECF No. 70. The Amended Complaint asserted claims against Defendants under Section 10(b) of the Securities Exchange of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. The Amended Complaint alleged, among other things, that during the Settlement Class Period (from October 6, 2020 and February 3, 2021), Defendants made false and/or misleading statements and/or failed to disclose that (i) the Company had committed legal or regulatory violations after January 1, 2018 and was under investigation by the DOJ; (ii) the Company's growth stemmed from illegal gifts and/or payments to healthcare practitioners or office staff and unreported related party transactions; (iii) only a fraction of the healthcare providers who had contracted with the Company were actually using its Clover Assistant software; (iv) Clover's financial statements did not comply with GAAP; and (v) the Company's SEC filings failed to comply with Items 303 and 503 of Regulation S-K. The specific categories of misrepresentations alleged include, *inter alia*, statements in Clover's (i) Clover's SEC filings; (ii) press releases; and (iii) other public statements. The Amended Complaint also alleged that Clover's stock price was artificially inflated as a result of these allegedly false and misleading statements and/or omissions and that it declined when the truth was revealed.

4

### 3. Defendants' Motions to Dismiss the Amended Complaint

Defendants filed a motion to dismiss the Amended Complaint on August 27, 2021. ECF Nos. 74-76. Plaintiffs filed their opposition to Defendants' motion to dismiss on November 3, 2021. ECF No. 80. Defendants filed their reply in further support of their motion to dismiss on December 17, 2021. ECF Nos. 83-84. On February 28, 2022, the Court denied Defendants' motion to dismiss in full. ECF Nos. 87-88.

### 4. Class Certification

Plaintiff moved to certify the Settlement Class on July 1, 2022. ECF Nos. 101-03. Defendants filed an opposition to that motion on September 30, 2022. ECF Nos. 108-09. Plaintiffs filed their reply in further support of their motion to certify the Class on October 31, 2022. ECF Nos. 110-11. On February 14, 2023, the Court granted Plaintiffs' motion for class certification. ECF No. 114.

### 5. Mediation

On July 19, 2022, the Parties participated in a private all-day mediation with Jed D. Melnick, Esq., an experienced mediator at JAMS. In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, loss causation, and damages. The full-day mediation was conducted in person at JAMS's offices in New York, NY. During the session, the Parties agreed to hold a follow-up video teleconference with their respective damages experts and to submit supplemental mediation statements. The teleconference with the Parties' experts was held on July 22, 2022, the parties submitted supplemental mediation statements on July 28, 2022, and the Parties participated in a second virtual mediation via Zoom for half a day on Monday, August 1, 2022. The second mediation also ended without resolving the Action.

5

### 6. Discovery

Defendants served their First Requests for Production of Documents to Plaintiffs on May 2, 2022 ("Defendants' Requests"). Plaintiffs served their First Requests for Production of Documents to Defendants on May 9, 2022 ("Plaintiffs' Requests"). Plaintiffs served responses and objections to Defendants' Requests on June 7, 2022, and Clover and the Individual Defendants each served their respective responses and objections to Plaintiffs' Requests on June 22, 2022. Defendants began to produce documents in May and September 2022 in response to Plaintiffs' Requests. Apart of these productions, the Parties exchanged multiple letters and attended multiple telephonic meet-and-confer sessions in an attempt to resolve numerous issues concerning the scope of discovery and document requests. On March 7, 2023, the Parties filed a discovery dispute statement with the Court seeking the Court's help in resolving the discovery issues at which the Parties were at an impasse.

### 7. Settlement

With Melnick's assistance, the Parties continued their efforts to resolve the Action for nearly nine months after the August 1, 2022 mediation session concluded without an agreement to settle the case. On April 21, 2023, the Parties reached an agreement in principle to settle and release all claims asserted against the Defendants in the Action in exchange for a payment of $22,000,000.00 for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers and Court approval.

On April 24, 2023, Plaintiffs and Defendants informed the Court that they had reached an agreement in principle to settle the case. ECF No. 125. On April 25, the Court ordered that "a stipulation of dismissal or other settlement document shall be filed within thirty (30) days of the entry of this Order." ECF No. 127.

**B.** **Summary of Key Terms of the Proposed Settlement**

       **1.** **Relief to Settlement Class Members and Release of Claims**

Defendants have agreed to settle the Action for $22 million. The funds will be deposited in an escrow account and will be held in instruments or accounts backed by the Full Faith & Credit of the U.S. Government. If the Settlement is approved, none of the funds will revert to Defendants or their insurance carriers. If the Settlement is not approved, or otherwise does not become effective, the funds other than notice and administrative expenses already incurred will revert.

The Settlement Class is limited to investors that purchased or otherwise acquired Clover's securities (*i.e.*, Clover's common stock and warrants) between October 6, 2020 and February 3, 2021, both dates inclusive.[4] Stipulation ¶ 1(oo). The Notice and Claim Form explains that potential Settlement Class Members may show that they engaged in transactions in Clover securities by demonstrating that they transacted in Clover securities that traded under the ticker symbols "CLOV," "CLOVW," "IPOC," "IPOC.WS," or "IPOC.U." *See* Calandra Decl. Ex. A-1 to Ex. 1 ¶¶ 18 n.2, 53-58; Calandra Decl. Ex. A-2 to Ex 1.

       **2.** **Class Notice and Settlement Administration**

       **a)** **Notice**

Within 21 days of Preliminary Approval, a Postcard Notice substantially in the form set forth in Exhibit A-4 to the Stipulation will be mailed to each Settlement Class Member identified by records maintained by Clover's transfer agent, as well as institutional investors, and a list of banks and brokerage firms that usually maintain custodial accounts. Stipulation ¶ 22. The Postcard Notice will direct Settlement Class Members to the website maintained by the Claims Administrator, JND Legal Administration ("JNDLA"), where they can find the Stipulation and its

---

[4] Defendants, certain individuals and entities related to Defendants, and investors that properly exclude themselves are excluded from the Settlement Class. Stipulation ¶ 1(oo).

exhibits, the Preliminary Approval Order, and the Notice and Proof of Claim and Release form containing directions on how to complete and submit Proof of Claim forms electronically, as well as directions on how to request that a Proof of Claim and other documents, including the Long Form Notice ("Notice"), are mailed to them. Calandra Decl. Ex. A-4 to Ex. 1. In addition, a Summary Notice will be published through the internet since that medium is most frequently accessed by investors and is cost-effective. Calandra Decl. Ex. A to Ex. 1, ¶ 7(d).

The Postcard Notice also describes key terms of the Settlement in plain English (including the Settlement Amount, the release of claims, and the maximum attorneys' fees award and expense reimbursement) and provides the date of the Settlement Hearing, as well as the deadline for filing claims and objecting to, or opting out of, the Settlement.[5]

<h3>b) Settlement Administration</h3>

After a competitive bidding process, Lead Counsel selected JNDLA as the Claims Administrator, to administer the notice program and process claims for the Settlement. JNDLA is well known and experienced in the administration of securities fraud class action settlements.

<h3>3. Papers in Support of the Settlement, Award of Attorneys' Fees and Expenses, and Plaintiffs' Compensatory Award</h3>

No later than 35 days before the Settlement Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorneys' fees, expenses, and Plaintiffs' compensatory awards. Calandra Decl. Ex. A to Ex. 1, ¶ 27. Those papers will explain why the Settlement should be approved and Lead Counsel's efforts on behalf

---

[5] It is respectfully requested that the Settlement Hearing be held no earlier than 100 days after entry of the Preliminary Approval Order. This will allow mailing of the Postcard Notice to be commenced within 21 days; Settlement Class Members to have ample time to consider their options and, if they choose, to file objections or opt out of the Settlement Class; time for the Parties to respond to such objections; and service of notices under the Class Action Fairness Act, 28 U.S.C. § 1715.

of the Class (including the time and rates of each attorney and paralegal who contributed to the outcome).

No less than 7 days before the Settlement Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of the Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses, and request for a compensatory awards to Plaintiffs.

### 4. Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so by 21 days before the Settlement Hearing and must send copies of such objections to the Court as well as designated counsel for the Settlement Class and Defendants. Calandra Decl. Ex. A to Ex. 1, ¶ 17. Any Settlement Class Member who does not file a timely written objection to the Settlement shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

To ensure the legitimacy of any such objections, the Settlement Class Members must file documents evidencing transactions in Clover common stock, as well as submit to this Court's jurisdiction for a possible deposition. *See In re Polyurethane Foam Antitrust Litig.,* 165 F. Supp. 3d 664, 667 (N.D. Ohio 2015); *see also In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *14 (N.D. Ohio Sept. 23, 2016) (finding that "claim documentation requirements are not only reasonable but necessary.").

### 5. Opt-Outs

Any Settlement Class Member who wishes to be excluded from the Settlement must do so by written request including documentation of their transactions, postmarked or submitted online no later than 21 days before the Settlement Hearing. Calandra Decl. Ex. A to Ex. 1, ¶ 13. The opt-out request must be sent to Lead Counsel, Defendants' Counsel, and the Claims Administrator (but not the Court).

### 6. Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated amount of Clover securities elect to opt out. The threshold amount is set forth in a separate agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal or as otherwise directed by the Court. In the event the Settlement is not approved, or does not become final due to appeals or Defendants' withdrawal, the Parties will return to their positions before the Settlement and the litigation will proceed apace.

### 7. No Admission of Liability

By entering into the Stipulation, the Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

Rule 23(e)(2), as recently amended, effectively incorporates many of the factors long considered by the Sixth Circuit in approving the reasonableness of a proposed settlement. Since the Sixth Circuit has not yet examined the new version of Rule 23(e)(2), the district courts routinely consider both sets of factors together. *See, e.g.*, *Macy v. GC Servs. Ltd. P'ship*, 2019 WL 6684522, at *2 (W.D. Ky. Dec. 6, 2019); *Elliott v. LVNV Funding, LLC*, 2019 WL 4007219, at *7 (W.D. Ky. Aug. 23, 2019); *see also* Advisory Committee Notes on 2018 Amendments to Fed. R. Civ. P. 23(e) (The Rule 23(e) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Rule 23(e)(2) provides:

(2) ***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     is the relief provided for the class adequate, taking into account:

      i.     the costs, risks, and delay of trial and appeal;

      ii.     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      iii.     the terms of any proposed award of attorneys' fees, including timing of payment; and

      iv.     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

The longstanding Sixth Circuit factors include:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007) ("UAW"); *Granada Inv., Inc. v. DWG Corp*., 962 F.2d 1203, 1205 (6th Cir. 1992).

    As discussed below, the proposed $22,000,000 Settlement easily satisfies the relevant factors under Rule 23(e)(2) and Sixth Circuit caselaw and warrants sending notice to the Class.

## IV.     ARGUMENT

### A.     The Proposed Settlement was the Result of Serious, Informed and Non-Collusive Negotiations

    As set forth above, the proposed Settlement was the result of informed and arms'-length negotiations after mediation sessions that involved a nationally recognized mediator, full class certification briefing, including depositions of each of Lead Plaintiff and Named Plaintiff and their expert, extensive discovery negotiations, and a review of documentary discovery. A settlement is

11

reached in good faith where, as here, it is "negotiated in an adversarial manner after several rounds of" motions, depositions of plaintiffs, and discovery practice, and settlement negotiations. *See Wess v. Storey*, 2011 WL 1463609, at *6 (S.D. Ohio Apr. 14, 2011) ("So long as a settlement agreement reached through arms-length negotiation is fair, reasonable, and adequate, the Court may properly approve the agreement"). The course of the settlement negotiations supports the Court's threshold for preliminary approval.

The Settlement "has no obvious deficiencies." Manual for Complex Litigation, 4th, § 30.41. The terms are fair, reasonable, and adequately resolve the original dispute by providing a cash payment to Class Members. The Settlement does not "improperly grant preferential treatment to Named Plaintiffs or segments of the class." MCL, supra, § 30.41. However, the Sixth Circuit has acknowledged that circumstances may make incentive awards to compensate class representatives appropriate. *Hadix, et ai., v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003). In connection with final approval, Plaintiffs will request case contribution awards in an aggregate amount not to exceed $100,000.

**B.     The Settlement is Fair, Reasonable, and Adequate**

### 1.   Plaintiffs and Lead Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the representatives have any interests antagonistic to the interests of other class members and whether the representatives have an interest in vigorously pursuing the claims of the class." *Gen. Motors Corp.*, 497 F.3d at 626 (citing cases).

Plaintiffs and Lead Counsel satisfy these criteria. *First*, Plaintiffs suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible recovery is aligned with the other Settlement Class Members. *See Dillworth v. Case*

*Farms Processing, Inc.,* 2010 WL 776933, at *4 (N.D. Ohio Mar. 8, 2010) (finding adequacy where plaintiffs "share with the putative class members the desire to recover payment for the disputed time at issue."). Plaintiffs also diligently oversaw the litigation, assisted in the investigation of the claims, and communicated with Lead Counsel to discuss case developments, including settlement. *See Dougherty v. Esperion Therapeutics, Inc.,* 2020 WL 6793326, at *8 (E.D. Mich. Nov. 19, 2020) (finding the adequacy requirement satisfied given the plaintiffs' active involvement in reviewing case documents, communicating with class counsel, and participating in discovery).

*Second*, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests, as explained by this Court when it granted class certification. *See* supra §II.A.4; ECF No. 114.

*Third*, Plaintiffs retained counsel that are highly experienced in securities litigation and who have a long and successful track record of representing investors in such cases. *See* Calandra Decl. Ex. 3. Lead Counsel vigorously prosecuted the Settlement Class's claims and were acutely aware of the strengths and weaknesses of the case before settling. *See* Sections II and IV.A *supra* and IV.B.3 *infra*; *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *accord Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995).

## 2.  The Settlement is the Result of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." It is well settled that, in approving a class action settlement, the court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams*, 720 F.2d at 922.; *see also In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 375 (S.D. Ohio 2006) (Counsel for both sides urging final approval based upon their experience, their

13

knowledge of the strengths and weaknesses of the case, their analysis of the discovery reviewed to date, the likely recovery at trial and on appeal makes the settlement procedurally fair); *Pavlov v. Cont'l Cas. Co*., 2009 WL 10689011, at *10 (N.D. Ohio Oct. 7, 2009) (negotiations led by experienced neutral third-party mediator makes the settlement procedurally fair); *Peck v. Air Evac EMS, Inc*., 2020 WL 354307, at *5 (E.D. Ky. Jan. 21, 2020) (emphasizing "negotiations with the assistance of an experienced mediator"). Here, as explained above, the Parties engaged in mediation with Jed D. Melnick, Esq. *See* Section II.A.5 *supra*. The arm's-length nature of the negotiations, and the involvement of a mediator with substantial experience in complex securities class actions, support finding the Settlement fair and free of collusion. *See Bd. of Trustees of City of Birmingham Employees' Ret. Sys. v. Comerica Bank*, 2013 WL 12239522, at *5 (E.D. Mich. Dec. 27, 2013).

### 3. The Settlement is an Excellent Result for the Class

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Each factor supports preliminary approval.

### a) Complexity, Expense and Duration of Litigation

This case involves alleged violations of the federal securities laws, and Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They acknowledge, however, the expense and length of continued proceedings necessary to pursue their claims through trial and appeals, as well as the very substantial risks they would face in establishing liability, loss causation, and damages. Assuming Plaintiffs' claims survived summary judgment, litigating the action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor. *See New York State Teachers' Ret. Sys. v. Gen. Motors Co*., 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys*., 2017 WL

6398014 (6th Cir. Nov. 27, 2017) (settlement providing immediate, certain, and significant relief to class members favors approval where appeal by the losing party would be likely regardless of the outcome of any dispositive motions or verdict if the case proceeded to trial); *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (settlement fair and adequate where "Plaintiffs likelihood of success is far from certain" and a "costly and lengthy" litigation lay ahead); *Broadwing,* 252 F.R.D. at 373-74 ("the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement."). Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *See Macy*, 2019 WL 6684522, at *7 (W.D. Ky. Dec. 6, 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). (explaining that class action settlements are in the public interest "because they are notoriously difficult and unpredictable and settlement conserves judicial resources."). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b) Establishing Liability and Damages

In considering these factors, the Court may balance the immediacy and certainty of a substantial recovery against the "complexity, expense, and likely duration of the litigation." *Williams*, 720 F.2d at 922-24; *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000). While Lead Counsel believes Plaintiffs' claims have merit, they also recognize that they faced substantial obstacles to proving liability, loss causation, and damages. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

15

**Establishing Liability:** The fact that Plaintiffs overcame Defendants' motion to dismiss is not a guarantee of ultimate success. Plaintiffs face ongoing risks associated with Defendants' forthcoming summary judgment motions, motions *in limine*, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery or no recovery at all. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008) (risk that Defendants could prevail with respect to certain legal or factual issues, which could result in the reduction or elimination of Plaintiffs' potential recoveries "even more acute" in the law under the PSLRA). For example, while Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants will contest at summary judgment and trial whether their statements and omissions are inactionable because they were literally true, not material to a reasonable investor, or not required to be disclosed.

In addition, Defendants would contest whether any alleged false and misleading statements were made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. While Plaintiffs strongly disagree with this assertion, had the litigation continued there is simply no guarantee that the finder of fact would ultimately adopt Plaintiffs' view of the case. Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 488 (M.D. Tenn. 2018) ("Scienter can be difficult to establish in any setting—even after discovery or at trial"); *see also Plagens v. Deckard*, 2023 WL 2711263, at *26 (N.D. Ohio Mar. 30, 2023) ("scienter remains difficult to plead and hard to prove").

**Loss Causation and Damages:** Plaintiffs would have also faced the risk that Defendants could argue that Plaintiffs' losses were not causally connected to the alleged false and misleading

statements. Plaintiffs allege that the truth about Clover's misstatements regarding the existence of the DOJ investigation, problems plaguing the Clover Assistant, and the questionable drivers of Clover's growth were revealed to the market through the Hindenburg Report on February 4, 2021. Although the Court rejected such an argument at the motion to dismiss stage, Defendants will likely reassert that the Hindenburg Report's disclosure was not a corrective disclosure because it disclosed other alleged weaknesses in Clover's business, which may have caused the decline in share price, the allegations in the report were either publicly known or not material, or the contents of the report were inaccurate.

If Defendants prevailed on any of these arguments, the amount of recoverable damages could be greatly diminished. Even if Plaintiffs prevailed at trial, that victory would not guarantee the Class a larger recovery than the Settlement Amount.

### c) Risks of Maintaining Class Action Status

While the Court certified the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings. *See Bernardez v. Firstsource Sols. USA, LLC,* 2022 WL 1156972, at *5 (W.D. Ky. Apr. 19, 2022); *Whitlock v. FSL Mgmt., LLC*, 2015 WL 9413142, at *6 (W.D. Ky. Dec. 22, 2015), *aff'd*, 843 F.3d 1084 (6th Cir. 2016) (risk of decertification of the class weighs in favor of the settlement).

### d) Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Olden v. LaFarge Corp*., 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) (*quoting In re "Agent Orange" Prods. Liab. Litig*., 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The possibility "that the settlement could have been better . . .

does not mean the settlement presented was not fair, reasonable or adequate," because "[s]ettlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp 3d 985, 1001 (S.D. Ohio Jan. 27, 2016). The proposed Settlement provides an all-cash payment of $22,000,000 for the benefit of the Settlement Class. This is an excellent result in light of the risks of continued litigation. Plaintiffs' damages expert estimates that if Plaintiffs prevailed at summary judgment and trial, and the Court and jury accepted Plaintiffs' damages theory, the most reasonable estimate of potential damages would be approximately $166.2 million[6] Thus, the $22 million Settlement represents a recovery of approximately 13.2%, well above the median recovery of 1.8% of estimated damages in securities class actions settled in 2022. *See* Calandra Decl. Ex. 2 at 18 (Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA (Jan. 24, 2023) (Fig. 19)). Further, the performance of Clover's securities has been in decline for nearly two years, which raises questions about the Company's ability years from now to fulfill a jury award after trial. For example, Clover's share price has plummeted 92.4% during the pendency of this action, from $13.32 per share on June 1, 2021 to $1.01 per share on May 23, 2023. *See supra* n.2. The Company also recently disclosed that its stock is at risk of being delisted from the NASDAQ. *See supra* n.3.

### 4. Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class,

---

[6] This damages estimate is based on the statistically significant corrective disclosure dates in the proposed Plan of Allocation that was created with the assistance of Lead Plaintiffs' damages expert. *See* Calandra Decl., Ex. A-1 to Ex. 1, ¶¶ 46-72.

including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors either supports approval of the Settlement or is neutral and does not suggest any basis for insufficiency of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims includes well-established and effective procedures. JNDLA, the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request that the Court review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process.[7]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 25% to compensate them for the services they have rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 25% of the Settlement Fund (which includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases.[8] More importantly, approval of the attorneys' fees

---

[7] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶ 16.

[8] *See Hawkins v. Middle Tennessee Pizza, Inc*., No. 3:21-CV-00266, 2022 WL 337197, at *1 (M.D. Tenn. Jan. 19, 2022) (approving percentage of the fund attorneys' fees request for of one-third as reasonable); *Barbee v. Navihealth, Inc*., No. 3:19-CV-00119, 2020 WL 6365515, at *1

19

that will be requested is separate from approval of the Settlement, which may not be terminated based on a ruling with respect to attorneys' fees. *See* Stipulation ¶ 19. Plaintiffs will also seek an award of no more than $100,000 to reimburse Plaintiffs for their time and expense in representing the Settlement Class, as provided in 15 U.S.C. § 78u-4(a)(4).

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of the Company's common stock eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. See *Baker v. Am. Greetings Corp.,* 2013 WL 12136593, at *4 (N.D. Ohio May 22, 2013); *see also In re Skelaxin (Metaxalone) Antitrust Litig.,* 2015 WL 1486709, at *2 (E.D. Tenn. Mar. 31, 2015) (an agreement allowing the defendant to withdraw from the settlement if opt-outs exceed a certain percentage should be maintained confidential because "[p]otential opt-outs may exploit this type of provision by demanding undue compensation for not scuttling the settlement."). The Parties will produce this supplemental agreement for the Court's review, if requested.

### 5. The Settlement Treats All Settlement Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, detailed on paragraphs 46-72 of the proposed Notice (Ex. A-1 to Ex. 1 of the Calandra Decl.), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net

---

(M.D. Tenn. Sept. 21, 2020) (granting attorneys' fees equal to one-third (33.33%) of the settlement).

Settlement Fund. As explained above, the Plan of Allocation includes the statistically significant corrective disclosure date in the AC. *See supra* p. 16-17. An Authorized Claimant's *pro rata* share shall be the Authorized Claimant's recognized claim divided by the total of recognized claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See Gen. Motors Co.*, 315 F.R.D. at 234; *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, No. 2016 WL 3977242, at *9 (N.D. Ohio July 19, 2016).

### 6. The Sixth Circuit *UAW* Factors are Also Satisfied

The *UAW* factors considered by the courts in the Sixth Circuit also weigh in favor of preliminary approval. UAW's first two factors – the potential for collusion and the risk and complexity of litigation – are addressed in our discussions of Rule 23(e)(2). *See* Sections IV.A. and IV.B.3.(a), *supra*.

**The Amount of Discovery Engaged in by the Parties:** "The advanced stage of the proceedings and the substantial amount of concluded discovery in this case, means that the Parties have been able to perform a realistic assessment of the factual and legal strengths and weaknesses of the claims and defenses arising from this case." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001); *Francis v. Supreme Touch Home Health Servs. Corp.*, 2021 WL 4244179, at *3 (S.D. Ohio Apr. 13, 2021) (same). Here, the Parties have both exchanged requests for production along with their responses and objections. The Parties exchanged multiple letters and attended multiple telephonic meet-and-confer sessions in an attempt to resolve numerous issues concerning the scope of discovery and document requests. The Parties also filed a discovery dispute statement with the Court seeking the Court's help in resolving the discovery issues at which the Parties were at an impasse.

In addition, the Parties participated in mediation sessions where the strengths and weaknesses of the claims asserted were fully vetted. *See* § IV.B.2 *supra*. Accordingly, Class

Counsel has settled the Action on terms highly favorable to the Class without the substantial expense, risk, and uncertainty and delay of continued litigation, including trial and any appeals that might follow. *See, Reeves v. Patenaude & Felix, A.P.C.*, 2021 WL 1186145, at *2 (E.D. Mich. Mar. 26, 2021) ("settlement provides immediate cash compensation to Class Members while avoiding the complexity, expense, and risk of further litigation.").

**The Likelihood of Success on the Merits:** Another factor that courts consider in reviewing a class action settlement is the likelihood of success on the merits balanced against the amount of the proposed recovery. *See Williams*, 720 F.2d at 922. Plaintiffs' discussion showing that the Settlement was adequate under Rule 23(e)(2) satisfies this important factor. *See* Section IV.B., *supra*. Moreover, at trial, many of the determinative issues would be subject to expert testimony. Each side would retain highly qualified experts, and there is no telling which expert's testimony the Court or jury would accept. *See Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *2 (S.D. Ohio Jan 27, 2011) ("Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a battle of the experts. The Settlement Agreement reached by the parties avoids the risks attendant to this battle of the experts, which could result in a ruling against Named Plaintiffs and the Settlement Class."). Indeed, in a recent securities fraud trial, after plaintiff was granted summary judgment on falsity and scienter, the jury quickly found for Elon Musk after deliberating for two hours.[9]

**The Informed and Reasoned Opinions of Class Counsel and Plaintiffs:** "In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are

---

[9] *See* https://www.wsj.com/articles/elon-musk-found-not-liable-in-trial-over-tweets-proposing-to-take-tesla-private-11675464951.

entitled to great deference." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). "The Court heeds the recommendation of such experienced, professional, and competent Counsel." *Telectronics*, 137 F. Supp. 2d at 1015.

The Settlement was reached through arm's-length negotiation, which included an all-day mediation session. In negotiating the Settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. In Class Counsel's view, the Settlement provides substantial benefits to the Class.

**The Reaction of Absent Class Members is Not Yet Available**: Plaintiffs have participated throughout the prosecution of the case and was actively involved in the decision to enter into settlement negotiations and the proposed Settlement. Notice regarding the proposed Settlement has not yet been mailed or otherwise distributed to potential Class Members. Information related to the reaction of absent Class Members will be available at the Settlement Fairness Hearing.

**The Public Interest Weighs in Favor of Approval of the Proposed Settlement:** "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*., 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1206; *Kritzer*, 2012 WL 1945144, at *8). The proposed Settlement serves the public interest by "compensat[ing] Class Members for their contested damages now, rather than prolonging implementation until after a trial and appeal." *In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366, 372 (S.D. Ohio 1990)

While there is always a chance of a greater recovery down the road, Defendants produced evidence in discovery that challenges every element of Plaintiffs' securities fraud claim. Any compromise involves concessions on the part of all Parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). As the Fifth Circuit noted in *Cotton v. Hinton*, "[t]he trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained." 559 F.2d 1326, 1330 (5th Cir. 1977).

Based on the relevant factors discussed above, the Court should permit notice of the terms of a favorable Settlement to be sent to the Class and to schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members regarding the fairness of the Settlement, the Plan of Allocation, and Class Counsel's request for an award of fees and expenses.

## C.     The Court Should Approve the Proposed Form and Method of Notice

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *See, e.g., In re Direct Gen. Corp. Derivative Litig.*, 2008 WL 842466, at *2 (M.D. Tenn. Mar. 28, 2008); *Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests," including the opportunity to opt out of or object to the settlement. *In re Regions Morgan Keegan Sec.*, 2013 WL 12110279, at *4 (W.D. Tenn. Aug. 6, 2013); *see also Marro v. New York State Teachers' Ret. Sys.*, 2017 WL 6398014, at *2 (6th Cir. Nov. 27, 2017) (affirming judgment approving a settlement

where objector "obviously received notice and had the opportunity to object."). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *In re King Pharms., Inc. Sec. Litig.*, 2007 WL 1100669, at *1 (E.D. Tenn. Apr. 12, 2007).

Here, the proposed Notice provides detailed information concerning: (1) the proposed Settlement; (2) the rights of Settlement Class Members, including the manner in which objections can be lodged; (3) the nature, history, and progress of the litigation; (4) how to file a Claim Form; (5) a description of the Plan of Allocation; (6) the fees and litigation expenses to be sought by Lead Counsel; and (7) the necessary information to examine Court records. *See* Calandra Decl. Ex. A-1 to Ex. 1.

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment. *Id.* Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for the Claims Administrator and Lead Counsel to answer questions from Settlement Class Members.[10] *Id.*; 15 U.S.C. § 78u-4(a)(7).

---

[10] Plaintiffs request that JND Legal Administration ("JNDLA") be appointed the Claims Administrator. Lead Counsel sought proposals from multiple claims administration companies for administration of the Settlement. After reviewing responses, Lead Counsel decided to retain JNDLA due to its substantial experience and its proposal's costs.

The proposed Preliminary Approval Order, Exhibit A to the Stipulation, mandates that Lead Counsel provide Settlement Class Members notice of the Settlement by mailing the Postcard Notice by first-class mail to Settlement Class Members who can be identified with reasonable effort. Calandra Decl., Ex. A to Ex. 1 ¶ 7(b). The Postcard Notice describes key information about the Settlement and directs Settlement Class Members to the website maintained by the Claims Administrator, where they can find the full Notice, the Stipulation and its exhibits, the Preliminary Approval Order, and the Proof of Claim and Release form, as well as a description of other ways that Settlement Class Members can obtain Settlement documents. Calandra Decl. Ex. A-4 to Ex. 1. Additionally, the Summary Notice will be disseminated electronically once on *PRNewswire* and once in *Investor's Business Daily*. Calandra Decl. Ex. A to Ex. 1, ¶ 7(d).

This proposed program for dissemination of notice to potential Settlement Class Members is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The specific steps employed here, is the best notice practicable under the circumstances, and is typical of the notice given in other class actions, and satisfies the requirements of Rule 23 and due process. *See, e.g., Burges v. BancorpSouth, Inc.*, No. 3:14-cv-01564, slip op. (M.D. Tenn. Apr. 3, 2018) (approving a similar notice program); *Willis v. Big Lots*, slip op. (S.D. Ohio June 25, 2018) (same); *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, slip op. (M.D. Tenn. Jan. 13, 2016) (same); *Psychiatric Solutions*, slip op. (M.D. Tenn. Oct. 21, 2014) (same). The form and manner of notice to Settlement Class Members are therefore the best practicable under the circumstances and satisfy due process, Rule 23, and the PSLRA.

## V.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events in connection with the Settlement Hearing, as set forth in the proposed Preliminary Approval Order filed herewith:

26

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing | No earlier than one hundred (100) days after the Court preliminarily approves the Settlement. (Preliminary Approval Order ¶ 5) |
| Mailing of Postcard Notice | No later than 21 calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 7(b)) (the "Notice Date") |
| Publication of Summary Notice | No later than 21 calendar days after the Notice Date (Preliminary Approval Order ¶ 7(d)) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | No later than 35 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 27) |
| Filing deadline for requests for exclusion | No later than 21 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 13) |
| Filing deadline for objections | No later than 21 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 16) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | Seven (7) calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 27) |
| Date for Claims to be Filed | Postmarked or submitted online no later than 7 calendar days after the Settlement Hearing. (Preliminary Approval Order ¶ 10) |

## VI.     CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

Dated: May 25, 2023

**POMERANTZ LLP**

By: _Brian Calandra_
Jeremy A. Lieberman
Brian Calandra
600 Third Avenue, 20th Floor
New York, NY 10016
P: (212) 661-1100
jalieberman@pomlaw.com
bcalandra@pomlaw.com

*Lead Counsel for Plaintiffs and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this May 25, 2023, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

SO CERTIFIED this 25th day of MAY 2023.

*/s/      Brian Calandra*
Brian Calandra