| | |
|---|---|
| TIMOTHY BOND, Individually and on behalf of all others similarly situated, | Civil Action No. 3:21-cv-00096-AT-AN |
| Lead Plaintiff, | |
| and | |
| JEAN-NICOLAS TREMBLAY | |
| Named Plaintiff, | |
| individually and on behalf of all others similarly situated, | |
| v. | |
| CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI, ANDREW TOY, JOE WAGNER, AND CHAMATH PALIHAPITIYA, and JOE WAGNER, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

Page(s)

I. PRELIMINARY STATEMENT ................................................................................. 1

II. SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................ 3

III. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ......................... 6

    A. THE APPLICABLE LEGAL FACTORS SUPPORT FINAL APPROVAL ......... 6

    B. THE PROPOSED SETTLEMENT SATISFIES RULE 23(E)(2) ......................... 7

        1. Plaintiffs and Lead Counsel Adequately Represented the Class ................ 7

        2. The Proposed Settlement Was Negotiated at Arm's-Length ...................... 8

        3. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Post Trial Appeal ............................................................ 9

        4. The Proposed Method of Distributing Relief is Effective ........................ 10

        5. Attorney's Fees and Expenses Are Reasonable ....................................... 11

        6. Additional Agreements ............................................................................. 12

        7. The Settlement Treats Class Members Equitably ..................................... 13

    C. THE PROPOSED SETTLEMENT SATISFIES THE UAW FACTORS ............ 13

        1. The Risk of Fraud or Collusion ............................................................... 13

        2. The Complexity, Expense and Likely Duration of Litigation .................. 13

        3. The Amount of Discovery Engaged in by the Parties ............................... 14

        4. The Likelihood of Success on the Merits ................................................. 15

        5. The Informed and Reasoned Opinions of Class Counsel and Plaintiffs ... 15

        6. The Reaction of Absent Class Members ................................................... 16

        7. The Public Interest ................................................................................... 17

IV. THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND REASONABLE AND SHOULD BE APPROVED ...................................................... 18

V. THE NOTICE OF SETTLEMENT SATISFIED RULE 23 ........................................ 20

VI. CONCLUSION ..................................................................................................... 22

Case 3:21-cv-00096   Document 138   Filed 08/28/23   Page 2 of 36 PageID #: 3431

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beach v. Healthways Inc.*,
No. 3:08-cv-00569, *slip op.* (M.D. Tenn. Sept. 27, 2010).......................................................11

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ....................................................................................16

*City of Providence v. Aéropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v.
Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) ......................................................................11, 19

*Cotton v. Hinton*,
559 F.2d 1326, 1330 (5th Cir. 1977) .......................................................................................18

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).................................................................................................................20

*Franks v. Kroger Co.*,
649 F.2d 1216 (6th Cir. 1981) ...................................................................................................6

*Garden City Emples. Ret. Sys. v. Psychiatric Sols., Inc.*,
2015 WL 13647397 (M.D. Tenn. Jan. 16, 2015).....................................................................11

*Gascho v. Global Fitness Holdings, LLC*,
2014 WL 1350509 (S.D. Ohio July 16, 2014)...........................................................................7

*Gascho v. Global Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) .....................................................................................................7

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..........................................................................18

*In re Advanced Battery Techs. Secs. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................................22

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................................................................9

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) .........................................................................12

2

*In re Chicken Antitrust Litig.*,
810 F.2d 1017 (11th Cir. 1987) ...........................................................................18

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ........................................................14

*In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .........................................................................13

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990)...........................................................................17

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)...........................................................11

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Penn. 2000)..........................................................................12

*In re IMAX Secs. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................18

*In re L.G. Philips LCD Co. Sec. Litig.*,
No. 1:07-cv-00909-RJS, *slip op.* (S.D.N.Y. Mar. 17, 2011) ....................................12

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ......................................................18

*In re Prandin Direct Purchaser Antitrust Litig.*,
2015 WL 1396473 (E.D. Mich. Jan. 20, 2015).......................................................13

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155379 (E.D. Tenn. May 17, 2013)..................................................14, 16

*In re: Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014)...................................................7, 22

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ..............................................................14, 16

*In re Zynga Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..........................................................11

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.
Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ...................................................................................7

*Koenig v. USA Hockey, Inc.*,
2012 WL 12926023 (S.D. Ohio Jan. 10, 2012) ......................................................15

3

*Kogan v. AIMCO Fox Chase, L.P.*,
193 F.R.D. 496 (E.D. Mich. 2000) ..................................................................7

*Macy v. GC Servs. Ltd. P'ship*,
2019 WL 6684522 (W.D. Ky. Dec. 6, 2019)....................................................6

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................12

*Manners v. Am. Gen. Life Ins. Co.*,
No. 3-98-0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999)...................22

*Motter v. O'Brien*,
2014 WL 12892732 (S.D. Ohio June 12, 2014) .............................................22

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d
508 (6th Cir. 2008)...............................................................................13, 20

*New York State Tchrs.' Ret. Sys. v. GMC*,
315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York
State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. 2017) .........................14

*Noto v. 22nd Century Grp., Inc.*,
2023 WL 4303462 (W.D.N.Y. June 15, 2023)..............................................22

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ......................................................................17

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. 2008) ................................................................14

*Peck v. Air Evac EMS, Inc.*,
2020 WL 354307 (E.D. Ky. Jan. 21, 2020) .................................................7, 8

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)........................................................................18

*Swigart v. Fifth Third Bank*,
2014 WL 3447947 (S.D. Ohio July 11, 2014)................................................8

*Taft v. Ackermans*,
2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .................................................12

*Thacker v. Chesapeake Appalachia, L.L.C.*,
695 F. Supp. 2d 521 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v.
Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011)...................16

4

*Timothy Bond v. Clover Health Investments, Corp., et al.*,
 Case No. 3:21-cv-00096 ...................................................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005)........................................................................................17, 20

*White v. NFL*,
 822 F. Supp. 1389 (D. Minn. 1993)..................................................................................18

*Whitford v. First Nationwide Bank*,
 147 F.R.D. 135 (W.D. Ky. 1992).......................................................................................7

*Willis v. Big Lots, Inc.*,
 2018 WL 7814725 (S.D. Ohio Nov. 9, 2018)...................................................................11

*Winslow v. BancorpSouth, Inc.*,
 No. 3:10-cv-00463, *slip op.* (M.D. Tenn. Oct. 31, 2012) ...............................................11

**Statutes**

15 U.S.C. §§ 78j(b) ...............................................................................................................3

15 U.S.C. §§ 78t(a) ................................................................................................................3

15 U.S.C. §78u-4 ................................................................................................................5, 20

Private Securities Litigation Reform Act of 1995 ........................................................5, 20, 22

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

**Other Authorities**

Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in
 Securities Class Action Litigation: 2022 Full-Year Review* (2023)............................................1

*Newberg on Class Actions (Fourth)* § 11.41 (2002)........................................................17

Paige Minemyer, *Clover Health's Stock Could Be Delisted From the NASDAQ,
 Company Says* (2023) ...................................................................................................9

Lead Plaintiff Firas Jabri ("Jabri") and Named Plaintiff Jean-Nicolas Tremblay ("Tremblay," and, together with Jabri, "Plaintiffs"), individually and on behalf of all Settlement Class Members, respectfully submit this memorandum of law in support of their unopposed motion, pursuant to Fed. R. Civ. P. Rule 23(e), for: (i) final approval of the proposed settlement of this securities class action; and (ii) approval of the proposed Plan of Allocation.[1]

## I.  PRELIMINARY STATEMENT

Plaintiffs and their counsel obtained a $22,000,000 cash settlement for the benefit of the Class in this action against Clover Health Investments, Corp. ("Clover") and certain of its executives in exchange for the dismissal and full release of Released Plaintiffs' Claims. This recovery represents approximately 13.2% of the likely recoverable damages in this case, well above the median recovery of 1.8% of estimated damages for all securities class actions settled in 2022. *See* Calandra Decl. Ex. 2 at 18 (Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA (Jan. 24, 2023) (Fig. 19)). Accordingly, there is no reason in the record to revisit the Court's conclusion, in granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (*see* ECF No. 132 ("Preliminary Approval Order")), that the Settlement is fair, reasonable, and adequate. As described more fully below and in contemporaneous filings, the Settlement is an excellent result that provides a significant and certain recovery for the Class that, weighed against the numerous risks presented by continued litigation, easily satisfies the standards for final judicial approval at this time.

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 19, 2023 (ECF. No. 130-1). Also, unless otherwise noted, all internal citations and quotation marks have been omitted and emphasis has been added.

Indeed, Plaintiffs' decision to enter the Settlement was well-informed by zealous and extensive litigation over two-and-a-half years. That litigation included defeating a motion to dismiss and obtaining class certification, as well as participating in a full-day mediation session and a half-day follow-up mediation session before Jed D. Melnick, Esq., an experienced JAMS mediator, and engaging in six-months of arm's length negotiations culminating in the proposed Settlement. While Plaintiffs believe that Released Plaintiffs' Claims are meritorious and that the Class would prevail at trial, Plaintiffs also recognize that had the Action continued, the Class faced substantial risks to obtaining a recovery for the Class, let alone a recovery greater than that afforded by the Settlement, and faced further material risks to collecting what Plaintiffs believe could be a full recovery if they hit the proverbial "home run" at trial. For example, Plaintiffs alleged that Defendants had made statements that were misleading because they omitted an investigation by the U.S. Department of Justice ("DOJ"). Defendants asserted that the investigation was not material to investors, and a jury may have agreed, given that the investigation had not resulted in any finding of wrongdoing by Defendants or penalties for the Company. Similarly, Plaintiffs asserted that Defendants failed to disclose certain related-party transactions with the Clover's head of sales, and a jury may have found that the head of sales was not an individual with whom transactions needed to be disclosed by the Company. Finally, Plaintiffs alleged that the truth regarding Defendants' misrepresentations had emerged when a short-seller report was published. The report contained a wide swath of information, a substantial amount of which did not relate to Defendants' alleged misrepresentations. Plaintiffs would have needed to demonstrate to the jury that the disclosures correcting alleged misrepresentations, and not other disclosures concerning potentially negative information about Clover caused the stock price declines.

2

In light of these considerations, Plaintiffs and Lead Counsel believe that the Settlement provides a very favorable result for the Class; is eminently fair, reasonable, adequate; and, easily satisfies the standards of approval under Rule 23 and governing Sixth Circuit caselaw. The reaction of the Class thus far also supports the Settlement. As discussed below, Settlement Class Members ("Class Members") were notified of the Settlement in accordance with the Preliminary Approval Order (ECF No. 132 ("Preliminary Approval Order")) and, to date, no Class Member has objected to and only two have opted out of the Settlement. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was explained in the Notice sent to Class Members after being prepared in consultation with Plaintiffs' damages expert. The Plan of Allocation ultimately governs how the Net Settlement Fund will be equitably distributed to Authorized Claimants. No objection has been filed to this straightforward and prorated method of allocation.

## II.      SUMMARY OF THE LITIGATION AND SETTLEMENT

This is a federal securities class action brought on behalf of all persons and entities other than Defendants that purchased or otherwise acquired Clover securities between October 6, 2020 and February 3, 2021, both dates inclusive (the "Class Period"). Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), by failing to disclose that (i) the Company had committed legal or regulatory violations after January 1, 2018 and was under investigation by the DOJ; (ii) the Company's growth stemmed from illegal gifts and/or payments to healthcare practitioners or office staff and unreported related party transactions; (iii) only a fraction of the healthcare providers who had contracted with the Company were actually using its Clover Assistant software; (iv) Clover's financial statements did not comply with GAAP; and (v) the Company's SEC filings failed to comply with Items 303 and 503 of

3

Regulation S-K. Plaintiffs allege upon disclosure of the truth, the Class was damaged. For their part, Defendants deny both liability and damages.

On February 5, 2021, Timothy Bond commenced this Action in the United States District Court for the Middle District of Tennessee, styled *Timothy Bond v. Clover Health Investments, Corp., et al.*, Case No. 3:21-cv-00096. The original Complaint (ECF No. 1) named Clover, Chamath Palihapitiya, Vivek Garipalli, and Andrew Toy as defendants.

On April 23, 2021, the United States District Court for the Middle District of Tennessee appointed Firas Jabri as Lead Plaintiff and Pomerantz LLP ("Pomerantz") as Lead Counsel for the putative class. ECF No. 58.

On June 28, 2021, Lead Plaintiff filed an Amended Complaint. ECF No. 70. Defendants filed a motion to dismiss the Amended Complaint on August 27, 2021. ECF Nos. 74-76. Plaintiffs filed their opposition to Defendants' motion to dismiss on November 3, 2021. ECF No. 80. Defendants filed their reply in further support of their motion to dismiss on December 17, 2021. ECF Nos. 83-84. On February 28, 2022, the Court denied Defendants' motion to dismiss in full. ECF Nos. 87-88.

Plaintiff moved to certify the Settlement Class on July 1, 2022. ECF Nos. 101-03. Defendants filed an opposition to that motion on September 30, 2022. ECF Nos. 108-09. Plaintiffs filed their reply in further support of their motion to certify the Class on October 31, 2022. ECF Nos. 110-11. On February 14, 2023, the Court granted Plaintiffs' motion for class certification. ECF No. 114.

On July 19, 2022, the Parties participated in a private all-day mediation with Jed D. Melnick, Esq., ("Jed Melnick") an experienced mediator at JAMS. In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed,

among other things, issues related to liability, loss causation, and damages. The full-day mediation was conducted in person at JAMS's offices in New York, NY. During the session, the Parties agreed to hold a follow-up video teleconference with their respective damages experts and to submit supplemental mediation statements. The teleconference with the Parties' experts was held on July 22, 2022, the parties submitted supplemental mediation statements on July 28, 2022, and the Parties participated in a second virtual mediation via Zoom for half a day on Monday, August 1, 2022. The second mediation also ended without resolving the Action.

With Jed Melnick's assistance, the Parties continued their efforts to resolve the Action for nearly nine months after the August 1, 2022 mediation session concluded without an agreement to settle the case. On April 21, 2023, the Parties reached an agreement in principle to settle and release all claims asserted against the Defendants in the Action in exchange for a payment of $22,000,000.00 for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers and Court approval.

On May 26, 2023, the Court issued the Preliminary Approval Order, concluding, among other things, that "the Settlement, as embodied in the Stipulation, as being fair, reasonable, and adequate to the Settlement Class, subject to further consideration at the Settlement Hearing" and that the proposed Notice "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules." *See* Prelim. Approval Order at 3-4, 6-7. In addition, the Preliminary Approval Order certified the Class for Settlement purposes. *Id.* at 2-3.

All conditions of the Preliminary Approval Order are met. Class Members have corresponded with the Claims Administrator by phone and email and visited the settlement

website. *See* Declaration of Luiggy Segura Regarding: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Exclusion Requests and Objections (the "JND Declaration") (the "JND Declaration"), attached as Exhibit 1 to the contemporaneous Declaration of Brian Calandra (the "Calandra Declaration") ¶¶11-12. None has objected to the Settlement and two requests for exclusion were received, without trading data. *Id.* ¶15 & Ex. 14.

### III. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A. THE APPLICABLE LEGAL FACTORS SUPPORT FINAL APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions such as this Action. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Class settlements are in the public interest "because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Macy v. GC Servs. Ltd. P'ship*, 2019 WL 6684522, at *7 (W.D. Ky. Dec. 6, 2019).

Rule 23(e)(2) sets forth the factors a court should consider in determining whether a class action settlement is fair, adequate, and reasonable, providing as follows (line breaks omitted):

> (2) ***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In addition, longstanding Sixth Circuit factors for evaluating fairness include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

6

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"); *see also Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 276 (6th Cir. 2016) (quoting *UAW*).

These factors are not applied in a "formalistic" fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). Given the significant overlap among relevant factors, courts routinely consider Rule 23(e)(2) and the *UAW* factors together. *See Peck v. Air Evac EMS, Inc.*, 2020 WL 354307, at *6 (E.D. Ky. Jan. 21, 2020) (quoting *In re Auto. Parts Antitrust Litig.*, 2018 WL 7108016, at *4 (E.D. Mich. Nov. 6, 2018)). In assessing a settlement, the court should not "decide whether one side is right or even whether one side has the better of these arguments . . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, at *16 (S.D. Ohio July 16, 2014). Where, as here, a settlement is endorsed as fair by experienced and sophisticated counsel after years of litigation and rigorous arm's-length negotiations, there is a strong initial presumption that the compromise is fair and reasonable. *In re: Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 11669877, at *3 (E.D. Tenn. Apr. 30, 2014); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501 (E.D. Mich. 2000).

### B.     THE PROPOSED SETTLEMENT SATISFIES RULE 23(E)(2)

#### 1.     Plaintiffs and Lead Counsel Adequately Represented the Class

Plaintiffs and Lead Counsel vigorously litigated this Action for over two years, defeated Defendants' motion to dismiss, and were granted class certification. Plaintiffs and Lead Counsel's efforts are also evidenced by the excellent recovery for investors of $22 million, or approximately 13.2% of the likely recoverable damages. As a result, the Court has already found, for purposes of the proposed Settlement, that "Plaintiffs and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class." Prelim. Approval Order at ¶2.d.

7

### 2. The Proposed Settlement Was Negotiated at Arm's-Length

This Court has observed the Parties battling over every aspect of this case, with Defendants represented by highly-capable, experienced lawyers from Millbank LLP and Bass Berry & Sims PLC, who have zealously represented Defendants throughout. Defendants dispute that Plaintiffs' claims are meritorious and that damages could approach $167 million even if liability could be established.[2]

The Parties' disputes are informed by voluminous discovery and have well-developed understandings of the strengths and weaknesses of all claims and defenses. Indeed, Plaintiffs and their experienced counsel carefully considered and evaluated all relevant factors, including legal authorities and evidence, the likelihood of prevailing on their claims, the risk, expense and duration of litigation (including collectability), and delays that an inevitable appeal would cause.

Given these obstacles, the consensual resolution of this Action required not only using an experienced mediator, but two mediation sessions, supplemental mediation briefing, and a negotiation process that took several months. This process is further compelling evidence that the proposed Settlement is an arm's-length transaction. *See Peck v. Air Evac EMS, Inc.*, 2020 WL 354307, at *5 (E.D. Ky. Jan. 21, 2020) (emphasizing "negotiations with the assistance of an experienced mediator"); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *2 (S.D. Ohio July 11, 2014) ("It is beyond dispute that the settlement was the result of arm's-length negotiations, free of

---

[2] Plaintiffs engaged a consultant to estimate the potentially recoverable damages assuming they could prove all aspects of liability, and recover the full amount of the alleged inflation for all Class Members. Plaintiffs' consultant calculated potentially recoverable damages using The Institutional Trading Model ("ITM"), which estimates aggregate damages from the reported quarterly holdings of institutions, which filed an SEC Form 13-F during the Class Period, under the assumption that increases in institutional holdings represent share purchases and that decreases represent share sales. Non-institutional damages are estimated by analyzing the quarterly changes in shares held by non-institutions (*i.e.*, shares outstanding + short interest - insider holdings - institutional holdings) during the Class Period.

8

collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator.").

### 3. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Post Trial Appeal

In assessing the proposed Settlement, the Court should balance the benefits of an immediate, certain recovery against the significant cost, risk, and delay of proceeding with this Action. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This case is a prime example of the fact that securities class actions present numerous hurdles to proving liability that are difficult for plaintiffs to meet. Absent settlement, each element of each claim would continue to be contested by Defendants through trial and appeal. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting "[t]he difficulty of establishing liability is a common risk of securities litigation"). Even assuming Plaintiffs prevailed at trial, an appeal would doubtlessly follow, likely taking years to complete regardless of the outcome. Accordingly, this factor weighs strongly in favor of approving the Settlement.

Further, the performance of Clover's securities has been in precipitous decline for nearly two years, which raises questions about the Company's ability years from now to fulfill a jury award after trial. For example, Clover's share price has plummeted 91.8% during the pendency of this action, from $13.32 per share on June 1, 2021 to $1.09 per share on May 23, 2023. *See* Clover Health Investments, Corp., finance.yahoo.com, August 17, 2023, https://finance.yahoo.com/quote/CLOV?p=CLOV&.tsrc=fin-srch. This past spring, the Company also disclosed that its stock was at risk of being delisted from the NASDAQ. Paige Minemyer, *Clover Health's Stock Could Be Delisted From the NASDAQ, Company Says*, FiercePharma.com, April 24, 2023, https://www.fiercehealthcare.com/payers/clover-healths-stock-could-be-delisted-nasdaq-company-says.

9

Defendants also asserted an affirmative defense that they relied in good faith on information provided by professional advisors (ECF No. 142, Eleventh Defense), and it appeared that Plaintiffs would have had to move to compel discovery that would otherwise be privileged to challenge that affirmative defense. Absent piercing all applicable privileges, which was an uncertain proposition at best, Plaintiffs could have had a very difficult time proving the Defendants did not act in good faith, which could have been fatal to the Class's claims.

Further, Plaintiffs alleged that investors learned about Defendants' misrepresentations when a short-seller report revealed the truth. The report purported to disclose a wide-ranging number of problems with Clover's performance and investment thesis, a substantial amount of which did not relate to Defendants' alleged misrepresentations, including the use of a website to recruit new customers. Plaintiffs would have needed to demonstrate to the jury that the information in the short report correcting Defendants' alleged misrepresentations, and not the unrelated information contained in the report caused the stock price declines. There is no guarantee that a jury would accept Plaintiffs' evidence identifying the disclosures that caused Plaintiffs' losses.

Although Plaintiffs and Lead Counsel believe that the claims asserted against the Defendants are meritorious, the Defendants' defenses posed material risks, making recovery uncertain in fact and amount. From the outset, Lead Counsel and Plaintiffs appreciated the unique and significant risks, as well as delays inherent in this Action. Thus, the certainty of a $22,000,000 recovery now weighs heavily in favor of approval of the Settlement.

### 4. The Proposed Method of Distributing Relief is Effective

The Court has already reviewed and approved the form and contents of the Notice and Claim Form. Prelim. Approval Order at 5-10. By requiring` Class Members to provide and certify their transaction data, which will be used to compute and apportion recognized losses objectively, the Settlement will distribute the same prorated amount of losses to all Class Members without

10

unduly burdening any Class Member. Importantly, all Class Members are treated reasonably and equitably based upon their purchasing Clover Securities before corrective disclosures revealing the truth about Defendants' misstatements and holding those same Clover Securities through a corrective disclosure.

The Plan of Allocation does not grant preferential treatment to any Class Member. Rule 23(e)(2)(D). As described in the Notice (ECF No. 130-1 at 75-82) it has a rational basis and was formulated by Class Counsel and its damages consultant to reflect Plaintiffs' theory of liability ensuring its fairness and reliability. *See In re Zynga Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015). Under the proposed Plan of Allocation, each Authorized Claimant will receive its pro rata share of their Recognized Loss depending on its transactions and objective criteria set out in the Plan of Allocation. This neutral Plan of Allocation is similar to other plans that have been approved in other securities class actions. *See, e.g., id.* (collecting cases).

### 5. Attorney's Fees and Expenses Are Reasonable

Rule 23(e)(2)(C)(iii) addresses the attorneys' fee award Lead Counsel intends to seek and the timing of payment. As stated in the Notice, Lead Counsel intended to request fees not to exceed 25% of the Settlement Fund to be paid at the time the Court makes its award. The request of 25% is well below fees awarded in the Sixth Circuit for analogous settlements.[3] Indeed, courts have regularly awarded fees of 25% or more where a settlement was reached much earlier in the

---

[3] *See, e.g., Beach v. Healthways Inc.*, No. 3:08-cv-00569, *slip op.* (M.D. Tenn. Sept. 27, 2010) (awarding 30% on $23.6 million); *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463, *slip op.* (M.D. Tenn. Oct. 31, 2012) (awarding 30% of $29.25 million); *Garden City Emples. Ret. Sys. v. Psychiatric Sols., Inc.*, 2015 WL 13647397, at *1 (M.D. Tenn. Jan. 16, 2015) (awarding 29% of $65 million); *Willis v. Big Lots, Inc.*, 2018 WL 7814725, at *1 (S.D. Ohio Nov. 9, 2018) (awarding 28% of $38 million); *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) (awarding 33% of $15 million); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *9-12 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million).

litigation, such as where a settlement was reached before a decision on the motion to dismiss was issued, and where no discovery was taken as a result of the PSLRA's discovery stay.[4]

Class Counsel also notified Class Members that it would seek reimbursement of litigation expenses, charges, and costs, plus interest thereon estimated not to exceed $500,000, and would demonstrate that those expenses were reasonable and necessary in prosecuting this case. Class Counsel is seeking expenses of $365,656.44. Those expenses were reasonable and necessary in prosecuting this case, and are fair and reasonable.

Class Counsel will also request a total of $80,000 for the Plaintiffs for prosecuting the litigation, including producing documents, answering interrogatories, and being deposed.

### 6. Additional Agreements

With respect to Rule 23(e)(2)(C)(iv), a confidential rider to the Stipulation establishes that Defendants may terminate or modify the Settlement if Class Members who collectively purchased a specific number of shares during the Class Period opt out of the Settlement. *See* Stipulation ¶ 44. This type of agreement is standard in securities class action settlements and does not make the Settlement unfair. *See, e.g., In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement). To date, however, only two class members

---

[4] *See In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, *slip op.* at 1 (S.D.N.Y. Mar. 17, 2011) (awarding 30% of $18 million settlement, where settlement was reached while motion to dismiss was pending); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 171-72, 197 (E.D. Penn. 2000) (awarding 30% of $111 million settlement where settlement was reached before motion to dismiss was filed); *Taft v. Ackermans*, 2007 WL 414493, at *9-11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million settlement reached prior to ruling on motion to dismiss); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (awarding 33.3% of a $11.5 million settlement reached prior to ruling on motion to dismiss).

have opted out of the settlement, and neither opt-out is valid given that neither is supported by any transaction information.

### 7. The Settlement Treats Class Members Equitably

As described in Section III.B., *supra*, and Section IV, *infra*, the Settlement treats Class Members equitably relative to each other, considering only the timing of their purchase or acquisition of Clover securities during the Class Period and any subsequent sales of those shares, by providing that each Authorized Claimant shall receive their pro rata share of the Net Settlement Fund based on the amount of their Recognized Losses.

### C. THE PROPOSED SETTLEMENT SATISFIES THE UAW FACTORS

### 1. The Risk of Fraud or Collusion

Three is no risk of fraud or collusion because the Settlement was negotiated at arms'-length.

### 2. The Complexity, Expense and Likely Duration of Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). Most class actions are "inherently complex" and "[s]ettlement avoids the costs, delays, and multitude of other problems associated with them." *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *2 (E.D. Mich. Jan. 20, 2015). Indeed, courts have consistently recognized that "[s]ecurities class actions are often difficult and ... uncertain." *See, e.g., New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

This Action indisputably involves complex issues relating to falsity, scienter, causation, and damages. Each of those issues required the consideration of complex issues and voluminous

evidence, often entailing the opinions of experts who would have provided conflicting reports and deposition testimony. The complexity of these issues made victory at summary judgment or trial far from assured. This Settlement thus avoids the risks of unfavorable rulings at summary judgment or with respect to experts, a lengthy and uncertain trial, and the certain appeal by the non-prevailing party.[5] "As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement." *See New York State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. 2017).

### 3. The Amount of Discovery Engaged in by the Parties

This factor ensures "that the Parties have been able to perform a realistic assessment of the factual and legal strengths and weaknesses of the claims and defenses arising from this case." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001). Here, the parties engaged in discovery concerning class certification, including productions of documents Plaintiffs, an expert report, and depositions of Plaintiffs and Plaintiffs' expert. In addition, Plaintiffs served document requests on Defendants, reviewed documents produced by Defendants in response to those requests, drafted and exchanged multiple letters and attended multiple telephonic meet-and-confer sessions in an attempt to resolve numerous issues concerning the scope of discovery and

---

[5] *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (affirming settlement and noting that, among other factors in favor of settlement, "[f]ollowing the trial, there would most likely have been an appeal that would have required an additional investment of substantial resources and time"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013) ("[T]he likelihood of an appeal was great . . . [and] [t]he Court agrees with plaintiffs that the immediate recovery of substantial monetary and structural relief provided by the settlement far outweighs the risk and commitment of time inherent in further litigation of this complex matter, especially in view of the risks, expenses and delays noted above."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010) ("Even if litigation is successful for the plaintiff class, appeals are likely to delay any sort of meaningful relief. In contrast, the settlement provides recovery without delay.").

document requests, and filed a 43-page discovery dispute statement with the Court seeking the Court's help in resolving multiple discovery issues at which the Parties were at an impasse (ECF No. 115). In addition, the Parties participated in two mediation sessions with Jed Melnick where the strengths and weaknesses of the claims asserted were vetted in detail. Accordingly, the Parties had a well-developed understanding of all factual and legal strengths and weaknesses of the claims and defenses presented.

### 4. The Likelihood of Success on the Merits

Plaintiffs' discussion showing that the Settlement was adequate under Rule 23(e)(2) satisfies this factor. *See* Section III.B.3, *supra*. Moreover, at trial, many determinative issues would be subject to conflicting expert testimony, with each side retaining highly qualified and well-credentialed experts creating uncertainty as to which expert's testimony the finder of fact would accept. *See Koenig v. USA Hockey, Inc.*, 2012 WL 12926023, at *2 (S.D. Ohio Jan. 10, 2012) (explaining how "[a]cceptance of expert testimony is always far from certain" and settlement "avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against Named Plaintiffs and the Settlement Class"). Indeed, in a recent securities fraud trial, after plaintiff was granted summary judgment on falsity and scienter, the jury found for Elon Musk after deliberating for only two hours.[6]

### 5. The Informed and Reasoned Opinions of Class Counsel and Plaintiffs

Although Plaintiffs and Lead Counsel believe that Released Plaintiffs' Claims are meritorious, Defendants' liability and damages arguments made the fact and amount of recovery uncertain. From the outset, Class Counsel and Plaintiffs appreciated the unique and significant

---

[6] *See* https://www.wsj.com/articles/elon-musk-found-not-liable-in-trial-over-tweets-proposing-to-take-tesla-private-11675464951.

risks as well as delays inherent in this Action. Thus, the certainty of a $22,000,000.00 recovery now weighs heavily in favor of approval of the proposed Settlement.

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). "The Court heeds the recommendation of such experienced, professional, and competent Counsel." *Telectronics*, 137 F. Supp. 2d at 1015. Here, the Settlement is endorsed by informed Plaintiffs' and their experienced and informed counsel, as shown by the contemporaneously filed declarations of Plaintiffs and Co-Lead Counsel.

### 6. The Reaction of Absent Class Members

To further support approval of a settlement, courts also look to the reaction of the class to the settlement. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155379, at \*6 (E.D. Tenn. May 17, 2013). This is unusual because "'[a] certain number of ... objections are to be expected in a class action.'" *Thacker*, 695 F. Supp. 2d at 533.

In this case, as explained in the JND Declaration (at ¶ 10), 255,346 Postcard Notices have been disseminated to potential Settlement Class Members and their nominees by USPS First-Class mail" and the Summary Notice was published in *Investor's Business Daily* and over the *PR Newswire*. In addition, the Notice, Proof of Claim and Release form, the Stipulation, and the Preliminary Approval Order were posted on a case specific website established by the Claims Administrator. While the deadline for filing objections – September 11, 2023 – is less than two

weeks away, to date no Class Member has objected to the Settlement or the Plan of Allocation, and two Class Member have opted out of the Settlement.[7] Neither opt-out is valid, however, as they are not supported by transaction information.

### 7. The Public Interest

The law favors settlement, particularly in class actions. *Newberg on Class Actions (Fourth)* § 11.41 (2002); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (recognizing "the strong judicial policy in favor of settlements, particularly in the class action context encouraged by the courts and favored by public policy."). The proposed Settlement serves the public interest by "compensat[ing] Class Members for their contested damages now, rather than prolonging implementation until after a trial and appeal." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990).

While there is always a chance of a greater recovery unless a claim is tried to verdict, there was also potential for the Class to recover nothing, less, or receive an uncollectible judgment after further expenses are incurred. Here, that chance was real. The Defendants were prepared to challenge every element of the Class's claims, including by demonstrating that they had relied in good faith on the advice of professional advisors on whether to, among other things, disclose a DOJ investigation into the Company and report payments to insurance brokerages partially owned by the Company's head of sales. What a finder of fact would have determined is unknown, and compromise necessarily involves concessions on the part of all Parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). As the noted in

---

[7] Plaintiffs and Lead Counsel will respond to any objection to the Settlement at least one week before the Settlement Fairness Hearing. *See* Prelim. Approval Order ¶ 27.

*Cotton v. Hinton*, "[t]he trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained.'" 559 F.2d 1326, 1330 (5th Cir. 1977). Public policy is served by the Settlement. *See also* Section III.A.

## IV.     THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND REASONABLE AND SHOULD BE APPROVED

The Notice contains the Plan of Allocation of settlement proceeds, detailing how the settlement proceeds will be divided among claiming Class Members. A trial court has broad discretion in approving a plan of allocation. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011); *In re Chicken Antitrust Litig.*, 810 F.2d 1017, 1019 (11th Cir. 1987). The applicable test is simply whether the proposed plan, like the settlement itself, is fair, reasonable, and adequate. *See, e.g., In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *10 (E.D. Mich. Dec. 13, 2011); *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) ("To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate. When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis. Such a reasonable plan may consider the relative strength and values of different categories of claims.").

Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable. *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *10. Thus, pro-rata distributions have "frequently been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) (collecting cases).

In evaluating plans of allocation, courts also look to the opinion of counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating that "[t]he court ... affords considerable weight

to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds); *Aéropostale, Inc.*, 2014 WL 1883494, at \*10 ("A plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'"). The proposed Plan of Allocation, developed by Class Counsel in consultation with Plaintiffs' damages consultant, provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members who submit valid Claim Forms. A recognized-loss amount will be calculated for each purchase or acquisition of Clover Securities during the Settlement Class Period (the "Class Period") listed on the Claim Form and for which adequate documentation is provided. The calculation of recognized-loss amounts is based on the difference between the amount of estimated alleged artificial inflation in Clover Securities on the purchase date and the amount of estimated alleged artificial inflation on the sale date. The sum of the recognized-loss amounts for all of a claimant's purchases of Clover Securities is the Claimant's recognized claim ("Recognized Claim"), and the Net Settlement Fund will be allocated to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims, as described in the Notice.

Plaintiffs and Class Counsel submit that the Plan of Allocation fairly and rationally allocates the Net Settlement Fund based upon the losses Class Members suffered on losses through transactions in Clover Securities when the price of those securities was inflated as a result of Defendants' misrepresentations. Moreover, the Plan of Allocation is set forth in the Notice and no objection to the Plan has been received from any Class Members as of this date.[8] Accordingly, the

---

[8] Plaintiffs and Co-Lead Counsel will respond to any objection to the Plan of Allocation at least one week before the Settlement Fairness Hearing. Prelim. Approval Order ¶ 27.

Plan of Allocation should be granted final approval for the purpose of administering the Settlement.

## V.     THE NOTICE OF SETTLEMENT SATISFIED RULE 23

Under Rule 23(e)(1), a district court, when approving a class action settlement, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Fidel*, 534 F.3d at 513. Generally, "[f]or any class certified under Rule 23(b)(3) … the court must direct that class members be given the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Notice of the proposed Settlement to the Class Members satisfied Rules 23(c)(2) and 23(e), as well as requirements under the PSLRA and the Due Process Clause of the Constitution. Due Process and Rule 23(c)(2) direct that the notice be "the best notice that is practicable under the circumstances." Rule 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). Rule 23(e) directs "notice in a reasonable manner." Rule 23(e)(1); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 114 (under Rule 23(e), notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings").

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §78u-4(a)(7), including the following: (i) an explanation of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) the fees and expenses to be sought by Class Counsel, administrative costs, and awards to Plaintiffs; (vii) the rights of Class Members, including the right to accept, opt out, or object to the Settlement, Plan of

Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) the necessary information for any Class Member to examine the Court records should they desire to do so; (x) instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name, and (xi) the binding effect of a judgment on Class Members. *See* Prelim. Approval Order.

The Notice program was carried out by Court-approved Claims Administrator JND Legal Administration ("JNDLA"), a third-party claims administrator nationally recognized for notice and claims administration, under the supervision of Class Counsel. In accordance with the Preliminary Approval Order, JNDLA disseminated 255,346 copies of the Postcard Notice beginning on June 28, 2023. *See* JND Declaration at ¶¶2-10. The names and addresses of Class Members were obtained from listings provided to JNDLA by Clover and JNDLA's proprietary database of names of the most common banks, brokerage firms, nominees, and known third-party filers. *Id.* Additional Postcard Notices were mailed after JDNLA received notice of potential Class Members from nominees and brokers. *Id.* JNDLA also arranged for the Summary Notice to be printed in *Investor's Business Daily* and published electronically on *PR Newswire* on July 28, 2023. *Id.* at ¶ 11. In addition, JNDLA established and continues to maintain a toll-free telephone number for Class Members to call and obtain information, as well as a website, www.CloverHealthsecuritieslitigation.com, providing, among other things, copies of the Stipulation and related documents, and the date for the Court's Settlement Fairness Hearing. *Id.* at ¶¶ 12-13.

Postcard Notices to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and posted on the internet, is often approved as "the best notice … practicable under

the circumstances." Rule 23(c)(2)(B); *see In re Advanced Battery Techs. Secs. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014); *Noto v. 22nd Century Grp., Inc.*, 2023 WL 4303462, at *3 (W.D.N.Y. June 15, 2023), report and recommendation adopted, 2023 WL 4303739 (W.D.N.Y. June 30, 2023); *Manners v. Am. Gen. Life Ins. Co.,* No. 3-98-0266, 1999 WL 33581944, at *13 (M.D. Tenn. Aug. 11, 1999) (finding individual notice mailed to class members combined with summary publication constituted "'the best practicable notice'"); *In re Skelaxin*, 2014 WL 11669877, at *3 (same); *Motter v. O'Brien*, 2014 WL 12892732, at *3 (S.D. Ohio June 12, 2014) (similar notice plan "is the best notice [plan] practicable . . . and fully complies with applicable law").

There is no reason for the Court to revisit its conclusion that this "is the best notice practicable under the circumstances" and "constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of" their rights. Preliminary Approval Order at ¶ 7. Accordingly, the notice program constitutes the best notice practicable under the circumstances and satisfies Rule 23 and the PSLRA.

## VI.     CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Dated: August 28, 2023

**POMERANTZ LLP**

By:___*Brian Calandra*_____
Jeremy A. Lieberman
Brian Calandra
600 Third Avenue, 20th Floor
New York, NY 10016
P: (212) 661-1100
Email: jalieberman@pomlaw.com
        bcalandra@pomlaw.com

**POMERANTZ LLP**

Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505

22

Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Lead Counsel for Plaintiffs and the Settlement Class*

**BRAMLETT LAW OFFICES**
Paul Kent Bramlett TN #7387/MS #4291
Robert Preston Bramlett TN #25895
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
Telephone: (615) 248-2828
Facsimile: (866) 816-4116
Email: PKNASHLAW@aol.com
        Robert@BramlettLawOffices.com

*Liaison Counsel*

**THE SCHALL LAW FIRM**

Brian Schall (pro hac vice)
Rina Restaino (pro hac vice)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
Facsimile: (877) 590-0482
Email: brian@schallfirm.com
        rina@schallfirm.com

*Additional Counsel for Plaintiff Firas Jabri*

**HOLZER & HOLZER, LLC**

Corey D. Holzer
Marshall P. Dees
21100 Perimeter CenterParkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com
        mdees@holzerlaw.com

23

*Additional Counsel for Named Plaintiff Jean-Nicolas Tremblay*

24

## CERTIFICATE OF SERVICE

This is to certify that I have filed the above and foregoing plaintiffs' memorandum of law in support of unopposed motion for final approval of class action settlement and approval of plan of allocation on the Court's CM/ECF filing system, which will serve all counsel of record as follows:

Benjamin A. Gastel
Stranch, Jennings & Gastel, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801
Fax: (615) 255-5419
Email: beng@bsjfirm.com

Jacob A. Walker
Block & Leviton LLP
260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
Fax: (617) 507-6020
Email: jake@blockleviton.com

James Gerard Stranch , IV
Stranch, Jennings & Gastel, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801
Fax: (615) 255-5419
Email: gerards@bsjfirm.com

Jeffrey C. Block
Block & Leviton LLP
260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
Fax: (617) 507-6020
Email: jeff@blockleviton.com

Stephen J. Teti
Block & Leviton LLP
260 Franklin Street
Suite 1860

Boston, MA 02110
(617) 398-5600
Fax: (617) 507-6020
Email: steti@blockleviton.com

Larry Russell Belk , Jr.
Sutherland & Belk, PLC
2505 21st Avenue South
Suite 400
Nashville, TN 37212
(615) 846-6200
Fax: (615) 208-2255
Email: russell@sbinjurylaw.com

James A. Holifield , Jr.
Holifield Janich Rachal & Associates, PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
(865) 566-0115
Fax: (865) 566-0119
Email: aholifield@holifieldlaw.com

Brian Peter Calandra
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
(646) 581-9958
Email: bcalandra@pomlaw.com

Brian Schall
Schall Law Firm
2049 Century Park East
Suite 2460
Los Angeles, CA 90067
(310) 301-3335
Email: brian@schallfirm.com

Paul Kent Bramlett
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828

2

Fax: (866) 816-4116
Email: pknashlaw@aol.com

Laurence M. Rosen
The Rosen Law Firm, P.A.
275 Madison Avenue
34th Floor
New York, NY 10016
(212) 686-1060
Email: lrosen@rosenlegal.com

Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue
34th Floor
New York, NY 10016
(212) 686-1060
Email: pkim@rosenlegal.com

Robert P. Bramlett
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
Fax: (866) 816-4116
Email: robert@bramlettlawoffices.com

Christopher M. Wood
Robbins Geller Rudman & Dowd LLP (Nashville Office)
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2203
Fax: (615) 252-3798
Email: cwood@rgrdlaw.com

Jerry E. Martin
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2202
Fax: (615) 252-3798

3

Email: jmartin@barrettjohnston.com

Mark S. Reich
Robbins Geller Rudman & Dowd LLP (New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
Fax: (631) 367-1173
Email: mreich@rgrdlaw.com

Mary K. Blasy
Robbins Geller Rudman & Dowd LLP (New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
Fax: (631) 367-1173
Email: mblasy@rgrdlaw.com

Samuel H. Rudman
Robbins Geller Rudman & Dowd LLP (New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
Fax: (631) 367-1173
Email: srudman@rgrdlaw.com

Corey D. Holzer
Holzer & Holzer, LLC
211 Perimeter CenterParkway
Suite 1010
Atlanta, GA 30346
(770) 392-0090
Fax: (770) 392-0029
Email: cholzer@holzerlaw.com

J. Alexander Hood , II
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
(212) 661-1100
Fax: (212) 661-8665
Email: ahood@pomlaw.com

4

Jeremy A. Lieberman
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
(212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com

Patrick V. Dahlstrom
Pomerantz LLP (Chicago Office)
10 S LaSalle Street
Suite 3505
Chicago, IL 60603
(312) 377-1181
Fax: (312) 377-1184
Email: pdahlstrom@pomlaw.com

Britt K. Latham
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
(615) 742-6200
Email: blatham@bassberry.com

Jed M. Schwartz
Milbank LLP
53 Hudson Yards
New York, NY 10001
(212) 530-5000
Email: jschwartz@milbank.com

Scott A. Edelman
Milbank LLP
53 Hudson Yards
New York, NY 10001
(212) 530-5000
Email: sedelman@milbank.com

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
(615) 983-8900

5

Fax: (615) 682-8533
Email: john@spragenslaw.com

Saul C. Belz
Glankler Brown, PLLC
6000 Poplar Avenue
Suite 400
Memphis, TN 38119
(901) 576-1741
Fax: (901) 576-2389
Email: sbelz@glankler.com

Tara L. Swafford
The Swafford Law Firm, PLLC
207 Third Avenue North
Franklin, TN 37064
(615) 599-8406
Fax: (615) 807-2355
Email: tara@swaffordlawfirm.com

Charles F. Barrett
Neal & Harwell, PLC
1201 Demonbreun Street
Suite 1000
Nashville, TN 37203
(615) 244-1713
Fax: (615) 726-0573
Email: cbarrett@nealharwell.com

SO CERTIFIED this 28th day of August 2023

/s/ *Brian Calandra*
Brian Calandra