# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| TIMOTHY BOND, Individually and on behalf of all others similarly situated,<br><br>                Lead Plaintiff,<br><br>and<br><br>JEAN-NICOLAS TREMBLAY<br><br>                Named Plaintiff,<br><br>individually and on behalf of all others similarly situated,<br><br>     v.<br><br>CLOVER HEALTH INVESTMENTS, CORP. f/k/a SOCIAL CAPITAL HEDOSOPHIA HOLDINGS CORP. III, VIVEK GARIPALLI, ANDREW TOY, JOE WAGNER, AND CHAMATH PALIHAPITIYA, and JOE WAGNER,<br><br>                Defendants. | Civil Action No. 3:21-cv-00096-AT-AN |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSE REIMBURSEMENT, <u>AND COMPENSATORY AWARD FOR CLASS REPRESENTATIVES</u>**

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.     AWARD OF ATTORNEYS' FEES.............................................................................. 4

      A.      Class Counsel is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund Class Counsel Obtained .................................................................. 4

      B.      The Court Should Award Attorneys' Fees Using the Percentage Approach.......... 5

      C.      The Requested Fee in Relation to the Settlement is Fair, Reasonable, and Wholly Consistent with Case Law.................................................................................... 6

      D.      The Sixth Circuit Factors Support the Fee Request................................................ 8

            1.      Value of the Benefits Class Counsel Achieved ......................................... 8

            2.      A Lodestar Cross-Check Supports the Requested Fee ............................. 10

            3.      Public Interest in Rewarding Attorneys Who Enforce the Securities Laws ........................................................................................................ 12

            4.      The Contingent Nature of the Fee............................................................ 13

            5.      The Complexity of the Litigation ............................................................ 15

            6.      The Quality of the Representation ........................................................... 17

III.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE CLASS BENEFIT ........................ 19

IV.     THE REQUESTED CLASS REPRESENTATIVE AWARD IS REASONABLE ......... 21

CONCLUSION.................................................................................................................... 23

Case 3:21-cv-00096    Document 139    Filed 08/28/23    Page 2 of 39 PageID #: 3467

**Page(s)**

**Cases**

*Alaska Electrical Pension Fund v. Bank of America Corp.*,
2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)...........................................................................21

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)..................................................................................................................3

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ................................................................................................15

*Aponte* v. *Comprehensive Health Mgmt.*,
2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)...........................................................................18

*Bailey v. AK Steel Corp.*,
2008 WL 553764 (S.D. Ohio Feb. 28, 2008)..........................................................................12

*Barnes v. City of Cincinnati*,
401 F.3d 729 (6th Cir. 2005) .............................................................................................10, 11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)................................................................................................................12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)............................................................................................................4, 12

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ....................................8

*Blum v. Stenson*,
465 U.S. 886 (1984)..............................................................................................................5, 11

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..................................................................................................................4

*Brandenburg v. Cousin Vinny's Pizza, LLC*,
2019 WL 6310376 (S.D. Ohio Nov. 25, 2019)..................................................................10, 14

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ..................................................................................................6

*Dowling v. Litton Loan Servicing LP*,
320 F. App''x 442 (6th Cir. 2009) ...........................................................................................11

Case 3:21-cv-00096    Document 139    Filed 08/28/23    Page 3 of 39 PageID #: 3468

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................16

*Florin v. Nationsbank, N.A.*,
34 F.3d 560 (7th Cir. 1994) .........................................................................................6

*Fresno Cty. Emps. Ret. Ass'n v. Isaacson*,
925 F.3d 63 (2d Cir. 2019)..........................................................................................6

*Ganci v. MBF Inspection Serv., Inc.*,
2019 WL 6485159 (S.D. Ohio Dec. 3, 2019) ............................................................4

*Gascho v. Global Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) .............................................................................. *passim*

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015).......................................17

*Gokare, P.C. v. Fed. Express Corp.*,
2013 WL 12094887 (W.D. Tenn. Nov. 22, 2013).............................................1, 7, 10

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
332 F.3d 976 (6th Cir. 2003) .....................................................................................16

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) .......................................................................................6

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).............................................................................................8, 11

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ..............................................................................15, 17

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010)........................................................................14

*In re Apple Computer Sec. Litig.*,
No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)......................15

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006).........................................................................................6

*In re Bank of Am. Corp. Secs., Deriv. & Empl. Ret. Income (ERISA) Litig.*,
772 F.3d 125 (2d Cir. 2014)........................................................................................22

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013), *aff'd*, 772 F.3d 125 (2d Cir.
2014) ...........................................................................................................................21

Case 3:21-cv-00096   Document 139   Filed 08/28/23   Page 4 of 39 PageID #: 3469

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ...........................................................................17

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
909 F.Supp.2d (S.D.N.Y. 2012)...............................................................................................16

*In re Cardinal Health Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) .................................................................................6, 12

*In re Cendant Corp. Sec. Litig.*,
264 F.3d 201 (3d Cir. 2001)......................................................................................................16

*In re CMS Energy Sec. Litig.*,
2007 WL 9611274 (E.D. Mich. Sept. 6, 2007)........................................................................12

*In re Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...............................................................................................11, 13

*In re Delphi Corp. Sec.*,
248 F.R.D. 483 (E.D. Mich. 2008) ...............................................................................8, 19, 20

*In re Diet Drugs*,
582 F.3d 524 (3d Cir. 2009).....................................................................................................10

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................19, 20

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Penn. 2000)..............................................................................................7

*In re Marsh & McLennan Cos., Inc Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .........................................................................22

*In re Oracle Corp. Sec. Litig.*,
WL 1709050 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) ........................14

*In re Prison Realty Secs. Litig. v. Crants*,
2001 U.S. Dist. LEXIS 21943 (M.D. Tenn. Feb. 9, 2001) ......................................................22

*In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,
2014 WL 12808031 (W.D. Tenn. Dec. 24, 2014) ....................................................................10

*In re Southeastern Milk Antitrust Litig.*,
2013 WL 2155387 (E.D. Tenn. May 17, 2013)................................................................ *passim*

*In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995).........................................................................................................6

*In re UnumProvident Corp. Deriv. Litig.*,
  2010 WL 289179 (E.D. Tenn. Jan. 20, 2010)...........................................................................11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ............................................................................................6

*In re Worldcom, Inc. Sec. Litig.*,
  388 Supp. 2d 319 (S.D.N.Y. 2005)...................................................................................13

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001)...............................16

*Kane Cty., Utah v. United States*,
  145 Fed. Cl. 15 (2019) .....................................................................................................10

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
  487 F.2d 161 (3d Cir. 1973)..............................................................................................11

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................8

*Manners v. Am. Gen. Life Ins. Co.*,
  1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ..................................................................12

*Martin v. Trott Law, P.C.*,
  2018 WL 4679626 (E.D. Mich. Sept. 28, 2018)................................................................4, 7

*McHugh v. Olympia Entm't, Inc.*,
  37 F. App'x 730 (6th Cir. 2002) ........................................................................................11

*Monroe v. FTS USA, LLC*,
  2014 WL 4472720 (W.D. Tenn. July 28, 2014) ..................................................................11

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010).........................................................................................................15

*New England Health Care Empls. Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006).................................................................................19, 20

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
  318 F.R.D. 19 (S.D.N.Y. 2016) ........................................................................................21

*People First of Tennessee v. Clover Bottom Developmental Ctr.*,
  2015 WL 404077 (M.D. Tenn. Jan. 29, 2015)....................................................................15

*Petrovic v. AMOCO Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ............................................................................................6

*Ramey v. Cincinnati Enquirer, Inc.*
 508 F.2d 1188 (6th Cir. 1974) ..........................................................................................13

*Rawlings v. Prudential–Bache Properties, Inc.*,
 9 F.3d 513 (6th Cir. 1993) .............................................................................................5, 6, 8

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) .....................................................................................15, 17

*Rotondo v. JPMorgan Chase Bank, N.A.*,
 2019 WL 6167086 (S.D. Ohio. Nov. 20, 2019).................................................................4

*Swedish Hosp. Corp. v. Shalala*,
 1 F.3d 1261 (D.C. Cir. 1993) ............................................................................................6

*Taft v. Ackermans*,
 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ...................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 313 (2007)...........................................................................................................12

*Winslow v. BancorpSouth, Inc.*,
 No. 3:10-cv-00463, slip op. (M.D. Tenn. Oct. 31, 2012) ................................................6

**Statutes**

15 U.S.C. § 78u-4 .....................................................................................................................5, 21

Private Securities Litigation Reform Act of 1995 ............................................................5, 6, 7, 21

**Rules**

Fed. R. Civ. P. 23......................................................................................................................4

**Other Authorities**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
 and Procedure §1803 (3d ed. 2005) ...............................................................................4

Cornerstone Research, *Securities Class Action Filings: 2022 Year in Review*
 (2023).................................................................................................................................14

Cornerstone Research, *Securities Class Action Settlements: 2021 Review and
 Analysis* (2022) .................................................................................................................9

Eisenberg, Miller & Germano, *Attorneys Fees in Class Actions: 2009-2013*
 (2017)..................................................................................................................................7

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2022 Full Year Review* (2023) ...............................................................................................9, 18

Case 3:21-cv-00096    Document 139    Filed 08/28/23    Page 8 of 39 PageID #: 3473

## I.   PRELIMINARY STATEMENT

Class Representatives Firas Jabri ("Jabri") and Jean-Nicolas Tremblay ("Tremblay," and, together with Jabri, "Plaintiffs" or "Class Representatives"), on behalf of themselves and the Settlement Class in the above-captioned Action,[1] respectfully submits this memorandum of law in support of its motion for (i) an award of attorneys' fees of twenty-five percent (25%) of the Settlement Fund; (ii) reimbursement of necessary and reasonable litigation expenses of $365,656.44; and (iii) compensatory award of $80,000 in total to the Class Representatives. *See* Declaration of Brian Calandra ("Calandra Decl."), ¶¶10-13. The fee sought in this case is well within the range regularly approved by courts in this Circuit. *See, e.g.*, *Beach v. Healthways Inc.*, No. 3:08-cv-00569, slip op. (M.D. Tenn. Sept. 27, 2010) (awarding fees of 30% on $23.6 million recovery); *Winslow v. BancorpSouth, Inc.*, No. 3:10- cv-00463, slip op. (M.D. Tenn. Oct. 31, 2012) (awarding fees of 30% on $29.25 million recovery); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-0077, slip op. (M.D. Tenn. July 20, 2007) (awarding 30% of $14.94 million recovery); *Burges v. BancorpSouth, Inc.*, No. 3:14-cv-01564, slip op. (M.D. Tenn. Sept. 21, 2018) (awarding 33-1/3% of $13 million settlement). *See also In re Regions Morgan Keegan Secs., Derivative & ERISA Lit.*, No. 09-2009 SMH, (W.D. Tenn. Aug 5, 2013) (awarding 30% of $62 million recovery); *Gokare, P.C. v. Fed. Express Corp.,* 2013 WL 12094887, at \*4 (W.D. Tenn. Nov. 22, 2013) (30.9% of fund "is similar to or lower than percentage-of-the-fund awards … in this Circuit'). Moreover, the fee was negotiated and approved by Plaintiffs, who actively participated in the litigation.

The time and labor Class Counsel expended in litigating this Action over two years included: (i) conducting a comprehensive investigation into Defendants' allegedly wrongful acts;

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 19, 2023 (ECF. No. 130-1). Also, unless otherwise noted, all internal citations and quotation marks have been omitted and emphasis has been added.

(ii) drafting and filing a 147-page Amended Complaint based on their extensive investigation (ECF No. 70); (iii) opposing Defendants' motion to dismiss the Amended Complaint (ECF Nos. 75-76, 80, 83); (iv) drafting and exchanging multiple letters and attended multiple telephonic meet-and-confer sessions in an attempt to resolve numerous issues concerning the scope of discovery and document requests; (v) reviewing documents produced by Defendants in discovery; (vi) filing a 43-page discovery dispute statement with the Court seeking the Court's help in resolving multiple discovery issues at which the Parties were at an impasse (ECF No. 115); (viii) successfully litigating a motion for class certification, which included a 69-page expert report (ECF No. 101-03; 108-11); (ix) drafting and exchanging mediation statements; (x) participating in a full-day mediation session and a half-day follow-up mediation session before Jed D. Melnick, Esq., an experienced JAMS mediator; and (xi) engaging in six-months of arm's length negotiations that culminated in the proposed $22 million Settlement; and (xii) finalizing the terms of the Stipulation with Defendants.

JND Legal Administration ("JNDLA"), the Claims Administrator, provided individual notice of the Settlement via first-class mail to each member of the Class whose address was reasonably ascertainable and caused the Summary Notice to be published in *Investor's Business Daily* on July 24, 2023 and transmitted over *PR Newswire* on July 28, 2023. Calandra Decl., Exhibit 1, Declaration of Luiggy Segura Regarding: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Exclusion Requests and Objections (the "JND Declaration" or "JND Decl.") ¶¶ 2-11. The Notice amply describes the terms of the Settlement, including: (a) the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process to opt out of, or object to, the Settlement; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought

by Class Counsel; and, (g) the necessary information for any Class Member to examine the Court records should they desire to do so. *Id.*, Ex. B. The deadline for objections and requests for exclusion is September 11, 2023. Thus far ***no objections have been received by Class Counsel***. Calandra Decl. ¶ 9.

Class Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $365,656.44, plus accrued interest. *See* Calandra Decl. ¶¶ 10-11 & Exs. 2-5. This amount is below the potential $500,000 limit of litigation-expense reimbursement included in the Notice to the Settlement Class. These expenses were both reasonable and necessary to successfully prosecute and resolve the claims against Defendants.

The two Class Representatives in this Action deserve the requested awards of a total of $80,000 to compensate them for their time and expense incurred in service to the Settlement Class. They devoted time and effort to research the facts of the case; review filings, review hearing and deposition transcripts, produce documents, sit for depositions, confer with Class Counsel about litigation and settlement strategies, and provide authorization to Class Counsel for the range to be sought in the settlement negotiations.

"Congress, the Executive Branch, and the Supreme] Court [] have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions.'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 478 (2013). Class Representatives and Class Counsel's contributions here exemplify the value of this "essential" role. *See* 15 U.S.C. § 78u-4(a)(4) ("Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.").

3

## II.    AWARD OF ATTORNEYS' FEES

### A.    Class Counsel is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund Class Counsel Obtained

The U.S. Supreme Court recognizes that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[2] The Sixth Circuit has similarly repeatedly emphasized that "[w]hen awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as the results achieved." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). District courts in this Circuit uniformly follow this mandate in determining whether the requested award is reasonable. *See, e.g., Ganci v. MBF Inspection Serv., Inc.*, 2019 WL 6485159, at *6 (S.D. Ohio Dec. 3, 2019) (quoting *Rawlings*, 9 F.3d at 516); *Martin v. Trott Law, P.C.*, 2018 WL 4679626, at *7 (E.D. Mich. Sept. 28, 2018) (quoting *Gascho,* 822 F.3d at 279, and *Rawlings*, at 516); *Rotondo v. JPMorgan Chase Bank, N.A.*, 2019 WL 6167086, at *6 (S.D. Ohio. Nov. 20, 2019). "The court's authority to reimburse the representative parties ... stems from the fact that the class-action device is a creature of equity and the allowance of attorney related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1803, at 325 (3d ed. 2005).

Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*,

---

[2] Rule 23 authorizes courts in certified class actions to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h).

472 U.S. 299, 310 (1985) (*quoting J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). The Sixth

Circuit in *Gascho* embraced these principles, emphasizing that "class actions ... have value to

society more broadly, both as deterrents to unlawful behavior—particularly when the individual

injuries are too small to justify the time and expense of litigation—and as private law enforcement

regimes that free public sector resources." 822 F.3d at 287. The Court emphasized that "[i]f we

are to encourage these positive societal effects, class counsel must be adequately compensated—

even when significant compensation to class members is out of reach." *Id.* "Failing to fully

compensate class counsel for the excellent work done and the various substantial risks taken would

undermine society's interest in private litigation" to redress securities and antitrust violations. *In

re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013) (citing

*Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983)).

**B.      The Court Should Award Attorneys' Fees Using the Percentage Approach**

Courts generally favor awarding fees from a common fund based upon the percentage-of-

the-fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common

fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"). The

PSLRA also supports the use of the percentage-of-the-fund method. *See* 15 U.S.C. §78u-4(a)(6)

("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall

not exceed a reasonable percentage of the amount of any damages and prejudgment interest

actually paid to the class").

Although the Sixth Circuit has given district courts discretion to use the "lodestar" method

when awarding attorneys' fees, *Rawlings*, at 516, courts in this Circuit have recognized the clear

"trend in common fund cases has been toward use of the percentage method." *In re Skelaxin

(Metaxalone) Antitrust Litig.*, MDL No. 2343, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014)

(quotation omitted); *Southeastern Milk*, 2013 WL 2155387, at *2 ("The percentage-of-the-fund

method, however, clearly appears to have become the preferred method in common fund cases," citing Manual For Complex Litigation Fourth §14.121). The rationale for using the percentage of the fund method is straight-forward: it directly "aligns the interests of the class and its counsel and provides a powerful incentive" to maximize recovery as efficiently as possible. *Southeastern Milk,* 2013 WL 2155387, at *2 (quoting *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 121 (2d Cir. 2008)); *In re Cardinal Health Sec. Litig.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007). "[T]he percentage-of-the-fund approach more accurately reflects the result achieved[,]" *Skelaxin*, 2014 WL 2946459, at *2, whereas "the lodestar method is cumbersome" and difficult to administer. *See Gascho*, 822 F.3d at 280; *Rawlings*, at 516-17.[3]

### C. The Requested Fee in Relation to the Settlement is Fair, Reasonable, and Wholly Consistent with Case Law

Class Counsel's fee request of 25% of the Settlement Fund is fair and reasonable for a litigation of this kind and even well below the range of fees awarded in the Sixth Circuit for securities class action settlements of comparable size. *See, e.g.*, *Beach v. Healthways Inc.*, No. 3:08-cv-00569, slip op. (M.D. Tenn. Sept. 27, 2010) (awarding fees of 30% on $23.6 million recovery); *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463, slip op. (M.D. Tenn. Oct. 31, 2012) (awarding fees of 30% on $29.25 million recovery); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-0077, slip op. (M.D. Tenn. July 20, 2007) (awarding 30% of $14.94 million recovery); *Burges v. BancorpSouth, Inc.*, No. 3:14-cv-01564, slip op. (M.D. Tenn. Sept. 21, 2018) (awarding one-third

---

[3] Other Circuit courts apply the percentage fee approach to common fund cases. *See Fresno Cty. Emps. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 72 (2d Cir. 2019) (PSLRA case); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

6

of $13 million settlement); *In re Regions Morgan Keegan Secs., Derivative & ERISA Lit.*, No. 09-2009 SMH, (W.D. Tenn. Aug 5, 2013), ECF No. 364 (awarding 30% of $62 million recovery); *Gokare, P.C. v. Fed. Express Corp.*, 2013 WL 12094887, at *4 (W.D. Tenn. Nov. 22, 2013) (30.9% of fund "is similar to or lower than percentage-of-the-fund awards … in this Circuit'); *Martin v. Trott Law, P.C.*, 2018 WL 4679626, at *7 (E.D. Mich. Sept. 28, 2018) (approving one-third fee award); *Skelaxin*, 2014 WL 2946459, at *1 ("The Court finds that the requested counsel fee of one-third is fair and reasonable and … is within the range of fees ordinarily awarded.").

Additionally, empirical research shows that the fee request of 25% is well below the fees awarded in other class actions. In an empirical study that looked at every class action settlement approved by a federal court between 2006 and 2007, the most common fee awards using the percentage method were 25%, 30% and 33%.[4] Another empirical study of the 438 class action settlements between 2009 and 2013 found that the median fee percentage awarded was 29%.[5] In the Sixth Circuit overall, the median fee awarded was 30%.[6]

Courts regularly award much higher fees even where a settlement was reached much earlier in the litigation, such as where a settlement was reached before a decision on the motion to dismiss was issued, and where no discovery had been obtained as a result of the PSLRA discovery stay. *See In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011) (awarding 30% of $18 million settlement, where settlement was reached while motion to dismiss was pending); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 171-72, 197

---

[4] See An Empirical Study of Class Action Settlements and their Fee Awards, Brian T. Fitzpatrick, 7 J. EMPIRICAL L. STUD. 811, 833 (2010).

[5] *See* Theodore Eisenberg Geoffrey P. Miller, and Roy Germano *Attorneys' Fees in Class Actions, 2009-2013*, 92 N.Y.U. L. Rev. 937, 950 Table 2 (2017).

[6] *Id*. at 951, Table 3.

(E.D. Penn. 2000) (awarding 30% of $111 million settlement where settlement was reached before motion to dismiss was filed); *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *4, 28-30 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million settlement, prior to ruling on motion to dismiss); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (awarding 33.3% of $11.5 million settlement, where settlement was reached while motions to dismiss were pending). Here, settlement was only reached after almost two years of litigation and after considerable discovery.

### D.    The Sixth Circuit Factors Support the Fee Request

In determining the reasonableness of attorneys' fees, the Sixth Circuit has identified six relevant factors for district courts to consider: 1) the value of the benefit rendered to the plaintiff class; 2) the value of services on an hourly basis [the lodestar cross-check]; 3) whether the services were undertaken on a contingent fee basis, 4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; 5) the complexity of the litigation; and 6) the professional skill and standing of counsel involved on both sides. *See Gascho*, 822 F.3d at 280 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings*, 9 F.3d at 516)). These factors strongly support the reasonableness of the fee and expense request.

### 1.    Value of the Benefits Class Counsel Achieved

Class Counsel has secured a settlement that provides for a substantial and immediate cash payment of $22 million. Courts have consistently recognized that the result achieved is the primary factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained").[7]

---

[7] *See also Rawlings*, 9 F.3d at 516 (a percentage of the fund will compensate counsel for the result achieved); *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case

Given the complexities of this Action and the substantial risks of continued litigation, including trial and inevitable appeals, Class Counsel submits the Settlement represents an outstanding result that eliminates the risk of no recovery were the Action to proceed to conclusion.

Plaintiffs engaged a consultant to estimate the potentially recoverable damages assuming they could prove all aspects of liability, and recover the full amount of the alleged inflation for all Settlement Class Members. Plaintiffs' consultant estimates recoverable damages to be approximately $167 million,[8] assuming Plaintiffs win on all disputed points. In comparison to this best-case scenario, the Settlement represents 13.2% of the potential recovery.

Despite these hurdles, the percentage of recovery far outstrips historical averages, yielding an excellent result for Class members. *See, e.g.*, *See* Cornerstone Research, *Securities Class Action Settlements: 2021 Review and Analysis* at 6 (2022)[9] (from 2010 to 2018 the median settlement as a percentage of "simplified tiered damages" was 7.4% and 4.9% for cases with between $75 million and $149 million and between $150 million and $250 million, respectively); NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2022 Full Year Review*

---

that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

[8] Plaintiffs' consultant calculated potentially recoverable damages using The Institutional Trading Model ("ITM"), which estimates aggregate damages from the reported quarterly holdings of institutions, which filed an SEC Form 13-F during the Class Period, under the assumption that increases in institutional holdings represent share purchases and that decreases represent share sales. Non-institutional damages are estimated by analyzing the quarterly changes in shares held by non-institutions (*i.e.*, shares outstanding + short interest - insider holdings - institutional holdings) during the Class Period.

[9] *Available at* https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.

9

at 35 (2023)[10] (the median of settlement value for cases filed and settled from December 2011 to December 2022 alleging losses of $100 million to $199 million was 2.9% of "NERA-Defined Investor Losses by Level of Investor Losses"). Accordingly, this Court should conclude that the Settlement Amount weighs in favor of granting approval.

### 2. A Lodestar Cross-Check Supports the Requested Fee

When applying the percentage-of-the-fund method, courts in this Circuit will also look at the counsel time charges or "lodestar" as an independent cross-check. *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 2014 WL 12808031, at *5 (W.D. Tenn. Dec. 24, 2014); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, at *6 (S.D. Ohio Nov. 25, 2019); *Gokare*, 2013 WL 12094887, at *3. A "lodestar cross-check," compares the percentage fee 'against the fee that lead counsel would have been awarded on a lodestar basis to ensure that the award is neither too low, nor too high." *Kane Cty., Utah v. United States*, 145 Fed. Cl. 15, 19–20 (2019) (citations omitted); *see In re Diet Drugs*, 582 F.3d 524, 545 (3d Cir. 2009) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305-06 (3d Cir. 2005)). This inquiry does not require a detailed analysis of time records and "the hours documented by counsel need not that be exhaustively scrutinized by the court." *Regions*, 2014 WL 12808031, at *7.

Counsel's lodestar is determined by multiplying "the number of hours reasonably expended on the case by a reasonable hourly rate." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). In this complex litigation, where the counsel litigating the case are primarily New York-based, reasonable hourly rates may be determined with reference "to national markets, an area of specialization, or any other market [the court believes] is appropriate to fully compensate attorneys

---

[10] *Available at* https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf.

in individual cases." *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002), citing *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983); *see also In re UnumProvident Corp. Deriv. Litig.*, 2010 WL 289179, at *6 (E.D. Tenn. Jan. 20, 2010) (in complex case, approving rates charged by plaintiff's out-of-town counsel where, as here, defendants were also represented by large out-of-town firms); *Monroe v. FTS USA, LLC*, 2014 WL 4472720, at *12-13 (W.D. Tenn. July 28, 2014) (same).[11]

Here, a considerable amount of effort by Class Counsel was required to obtain this outstanding settlement. Class Counsel expended 1809.28 hours over two-and-a-half years, with a total value of $1,559,035.00. *See* Calandra Decl. ¶ 10 & Exs. 2-5.[12]

Class Counsel's request for 25% of the Settlement Fund, or $5,500,000, amounts to a lodestar multiplier of 3.53, which is within the range of multipliers commonly awarded in securities class actions and other complex litigation. Courts in this Circuit and other jurisdictions typically approve multipliers of 3- or 4-times counsel's time charges to compensate them for the

---

[11] In computing the lodestar, the hourly billing rate to be applied is the "market rate"—the hourly rate that is normally charged in the community where counsel practices. *See, e.g.*, *Blum*, 465 U.S. at 895; *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) ("market standards should prevail"); *In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market…," holding that district court committed legal error in placing "a ceiling of $175 on the hourly rates of all lawyers for the class, including lawyers whose regular billing rates were almost twice as high"); *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) ("value of an attorney's time generally is reflected in his normal billing rate").

[12] The Sixth Circuit has approved the use of current rates to compensate counsel for the delay in payment. *See e.g., Barnes*, 401 F.3d at 745 ("The district court used the 'current' market rate in calculating plaintiff's attorneys' reasonable hourly rate because the litigation had been ongoing for nearly six years.") (citing *Missouri v. Jenkins*, 491 U.S. 274 (1989)); *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009) ("the court was within its discretion in awarding fees at 2008 rates for work performed prior to 2008 to compensate for the delay in payment").

11

contingency risk and delay in payment. *See, e.g., Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at \*31 (M.D. Tenn. Aug. 11, 1999) (3.8 multiplier); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (approving six multiplier, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Bailey v. AK Steel Corp.*, 2008 WL 553764, at \*2 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.08, and identifying "normal range of between two and five"); *In re CMS Energy Sec. Litig.*, 2007 WL 9611274, at \*4 (E.D. Mich. Sept. 6, 2007) (2.61 multiplier). This demonstrates that if the Court awards Class Counsel's fee request Class Counsel will be receiving the type of premium on their fees normally associated with similar settlements. By any measure, the requested fee is eminently reasonable.

### 3. Public Interest in Rewarding Attorneys Who Enforce the Securities Laws

As discussed above, the federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988); *Bateman*, 472 U.S. at 310 (citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 313 (2007). Accordingly, the Sixth Circuit has adopted the policy in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest. *Gascho*, 822 F.3d at 279.

The percentage-of-the-fund method is prevalent in common fund cases because plaintiffs' counsel in complex securities class action litigation are invariably retained on a contingent basis, largely due to the huge commitment of time and expense required. Without adequate compensation it would be difficult to retain the caliber of lawyers necessary, willing, and able to properly prosecute to a favorable conclusion complex, risky, and expensive class actions such as this one. Thus, an important factor is "society's stake in rewarding attorneys who produce such benefits in

order to maintain an incentive to others." *Ramey v. Cincinnati Enquirer, Inc.* 508 F.2d 1188, 1196 (6th Cir. 1974).

Without the willingness of Class Counsel to assume that task, members of the Settlement Class would not have recovered anything, let alone the millions of dollars obtained here for their benefit. As actionable securities fraud exists and society benefits from strong advocacy on behalf of investors, public policy favors the granting of the fee and expense application. *See also Southeastern Milk*, 2013 WL 2155387, at *5 ("Awards of substantial attorneys' fees in cases like this are necessary to incentivize attorneys to shoulder the risk of nonpayment to expose violations of the law and to achieve compensation for injured parties."); *In re Worldcom, Inc. Sec. Litig.*, 388 Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

### 4. The Contingent Nature of the Fee

Class Counsel undertook this litigation on a contingent fee basis, assuming a significant risk that the Action would yield no recovery and leave them uncompensated. This risk encompasses not just the risk of nonpayment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel). Here, Class Counsel pursued the Settlement Class's claims against Defendants in this complex litigation with no guarantee of ever being compensated for the investment of time and money that the case would require. In undertaking this responsibility, Class Counsel dedicated substantial attorney and professional resources to the prosecution of the litigation.

Class Counsel also advanced almost $365,656.44 in out-of-pocket expenses with no guaranty that those expenses would ever be reimbursed. Not only do contingent litigation firms

have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See Southeastern Milk*, 2013 WL 2155387, at *5 ("This Court finds that the fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee."); *Brandenburg*, 2019 WL 6310376, at *6.

The risk of no recovery in complex cases of this type is very real. The high rate of dismissals in securities class actions demonstrates the risks involved as compared to the prospects for success. Of securities class actions filed in 2020, for example, 50% have been dismissed.[13] There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, WL 1709050 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (summary judgment granted to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses, and worked over 100,000 hours, generating a $48 million lodestar). Class Counsel is aware of many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiff's bar produced no fee for counsel. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 47-73 (S.D.N.Y. 2010) (after completion of extensive foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of

---

[13] Cornerstone Research, "Securities Class Action Filings, 2022 Year in Review," at p.22 figure 21 (of the cases filed in 2019 33% were settled, and 17% are continuing).

40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)). Even plaintiffs who succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. The Eleventh Circuit in *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), affirmed a lower court's decision rejecting a jury verdict because plaintiff did not present sufficient evidence to prove loss causation. This is not an infrequent risk.[14] The contingent nature of counsel's representation strongly favors approval of the requested fee.

### 5. The Complexity of the Litigation

The complexity of the issues is a significant factor to be considered in making a fee award. Courts have long recognized that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and a multitude of other problems associated with them." *People First of Tennessee v. Clover Bottom Developmental Ctr.*, 2015 WL 404077, at *3 (M.D. Tenn. Jan. 29, 2015) (quoting *Southeastern Milk*, 2013 WL 2155379, at *4).

While Class Counsel believe that Plaintiffs' claims would be borne out by the evidence, it also recognizes that it faces hurdles to proving liability. Defendants have articulated defenses to Plaintiffs' allegations that the jury may accept at trial. As discussed in Plaintiffs' accompanying Final Approval Motion, to prevail in the Action, Plaintiffs would face complex legal and factual issues, vehemently disputed by Defendants, including expert testimony, as can be seen in the motions to dismiss and motion for class certification briefing. This was a complex case and

---

[14] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict).

Plaintiffs would have to establish that the alleged misstatements and omissions were materially false and misleading as well as Defendants' scienter.

Here, Defendants would have continued to argue that even if Plaintiffs could establish a material misstatement or omission, there was no evidence upon which the requisite mental state of scienter—*i.e.*, that Defendants misled investors intentionally or with extreme recklessness—could be proven. The scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001). The Defendants also asserted an affirmative defense that they acted in good faith (ECF No. 148, Seventh Defense), and it appeared that Plaintiffs would have had to move to compel discovery that would otherwise be privileged to challenge that affirmative defense. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). Absent piercing all applicable privileges, which was an uncertain proposition at best, Plaintiffs could have had a very difficult time proving the Defendants did not act in good faith, which would have been fatal to the Class's claims.

The accounting and damage assessments of the parties' trial experts would be sure to vary substantially, and trial would become a "'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe." *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001). The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F.Supp.2d, 267-68 (S.D.N.Y. 2012) (noting that in a battle of the experts "victory is by no means

assured" and the "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses"). Thus, even if Plaintiffs prevailed as to liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.

Finally, even if Plaintiffs overcame all of these significant risks and prevailed at trial and appeal, such a victory would not have guaranteed the Settlement Class an ultimate recovery larger than the $22,000,000 Settlement. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (reversing jury verdict awarding investors $2.46 billion and remanding for a new trial); *Robbins*, 116 F.3d at 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

Despite the substantial risks inherent in this litigation, Class Counsel was able to achieve a $22 million Settlement. This is an extremely favorable result for the Settlement Class in light of the aforementioned risks and, as such, militates heavily in favor of the requested fee.

### 6. The Quality of the Representation

Class Counsel's diligent efforts and its skill and reputation led to a highly favorable result under difficult and challenging circumstances. Such quality, efficiency, and dedication support the requested fee. *See Southeastern Milk*, 2013 WL 2155387, at *4.

Class Counsel has expended a substantial amount of time and effort pursuing this litigation on behalf of the Class. Since its inception over two years ago, Class Counsel and their professionals have devoted more than 1,800 hours to this litigation. *See* Calandra Decl. ¶ 10 & Exs. 2-5.

Class Counsel's work and victories that allowed for the excellent recovery to the Class included: (a) conducting a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, earnings conference calls, analysts presentations and other publicly available information; (b) consulting with an investigator; (c) drafting the Complaint; (d) consulting with a damages expert to evaluate recoverable losses; (e) successfully defending against Defendants' motion to dismiss the Complaint ; (f) successfully moving for class certification, which included expert reports, depositions and defending Plaintiffs' depositions; (g) participating in mediation; (h) successfully negotiating a $22 million settlement; and (i) finalizing the terms of the Stipulation with Defendants.

Indeed, the relative time and labor Class Counsel expended is demonstrated by the advanced stage this case reached compared to securities class actions overall. For example, of cases filed and resolved between January 2013 and December 2022, 83% were settled or dismissed before a motion for class certification was filed.[15] Here, by contrast, Class Counsel devoted time and labor sufficient to see the case all the way through class certification briefing. Moreover, the legal work on this litigation will not end with the Court's approval of the Settlement. Class Counsel will expend additional hours and resources to assist Settlement Class Members with their Proofs of Claim, shepherding the claims process, and responding to Settlement Class Members' inquiries. *See Aponte* v. *Comprehensive Health Mgmt.*, 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013).

At all times during the pendency of the litigation, Class Counsel's efforts were driven by and focused on advancing the litigation to bring about the most successful outcome for the

---

[15] NERA Economic Consulting, Janeen McIntosh, Svetlana Starykh, and Edward Flores, "Recent Trends in Securities Class Action Litigation: 2022 Full Year Review," January 24, 2023 Recent Trends at 11.

18

Settlement Class, whether through settlement or trial, by the most efficient means possible. Accordingly, the time and effort devoted to this case by Class Counsel to obtain the $22 million recovery confirms that the request for 25% of the Settlement Fund is reasonable.

The quality of opposing counsel is also important when the court evaluates the services rendered by plaintiffs' counsel. *See, e.g.*, *Delphi*, 248 F.R.D. at 504 ("The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("Securities Lead Counsel obtained the Settlement in the face of vigorous opposition by defendants who were represented by some of the nation's leading law firms.").

Here, Class Counsel was opposed by very skilled and highly respected counsel from Millbank LLP and Bass Berry & Sims PLC, firms with a well-deserved reputation for vigorous advocacy in the defense of complex civil actions. The ability of Class Counsel to obtain a favorable result for the Settlement Class in the face of such formidable opposition further evidences the quality of their work. Thus, there can be no dispute that all of the factors discussed above warrant a substantial fee award.

III.    **CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE CLASS BENEFIT**

Class Counsel also requests reimbursement of the expenses it incurred in connection with the prosecution of this Action in the amount of $365,656.44. *See* Calandra Decl.¶¶10-11 & Exs. 2-5. "Under the common fund doctrine, 'class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses.'" *New England Health Care Empls.*

*Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634-35 (W.D. Ky. 2006) (quotation omitted); *see Southeastern Milk*, 2013 WL 2155387, at *8 ("expense awards are customary" in common fund cases).

In determining which expenses are reasonable and compensable, the question is whether such costs are of the variety typically billed by attorneys to paying clients in similar litigation. *See New England Health*, 234 F.R.D. at 634-35. Here, the vast bulk of the expenses were incurred for professional services rendered by Plaintiffs' experts, Plaintiffs' investigators, document productions, court reporters and mediation services, and the remaining expenses are attributable to the costs of copying documents, computer research and other expenses incurred in the course of the litigation. *See* Calandra Decl. Exs. 2-5. These expenses were critical to Plaintiffs' success in achieving the Settlement, and they are of the type typically billed by attorneys to paying clients in similar litigation. *See Delphi*, 248 F.R.D. at 504-05 (approving reimbursement of $1.3 million in costs and expenses for "such items as accounting and damages expert and consultant fees, management and photocopying of documents, on-line research, messenger service, postage, express mail and overnight delivery, long distance and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this action."); *In re Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review-are the type for which 'the paying, arms' length market' reimburses attorneys."). They are, therefore, properly chargeable to the Settlement Fund.

Moreover, not a single objection to the expense request has been received, and the amount requested is below the $500,000 limit disclosed in the Notice. *See* JND Decl. Ex. B at 8. Accordingly, Class Counsel respectfully request payment for these expenses.

**IV.    THE REQUESTED CLASS REPRESENTATIVE AWARD IS REASONABLE**

Class Representatives Timothy Bond, Firas Jabri and Jean-Nicolas Tremblay request approval of awards in the amounts of $60,000 and $20,000, respectively, pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their representation of the Settlement Class.

The PSLRA expressly permits Class Representative to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]." 15 U.S.C. §78u-4(a)(4). In accordance with the PSLRA and the inherent powers of the Court, courts routinely award substantial sums to lead plaintiffs and class representatives. *Alaska Electrical Pension Fund v. Bank of America Corp.*, 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (awarding $50,000 to six named plaintiffs and $100,000 to two of them, in addition to out-of-pocket expenses for three of them finding that "the considerable effort expended by the named Plaintiffs to assist in the litigation renders the inventive awards requested by lead counsel appropriate" and that "in the aggregate they amount to a miniscule portion of the settlement fund."); *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013) (awarding $259,610 to one plaintiff and $125,688 to a second plaintiff), *aff'd*, 772 F.3d 125 (2d Cir. 2014); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (awarding $130,323 to sole lead plaintiff).

Here, Class Representatives dedicated a significant amount of time to the successful prosecution of this Action across the span of over two years by, among other things: (i) regularly communicating with Class Counsel concerning strategic and other aspects of this litigation (ii) requesting and receiving regular updates on material events, such as appointment as Lead Plaintiffs, preparation of the amended complaint, Defendants' motion to dismiss, discovery developments, class certification matters, and discussions concerning the potential resolution of this matter; (iii) reviewing and discussing with counsel the preparation of various court papers,

21

including the various complaints, motion for appointment as Lead Plaintiffs, oppositions to Defendants' motion to dismiss, responses to discovery requests, and the class certification motion; (iv) gathering documents that were responsive to document requests, and working through production issues with Class Counsel concerning the scope and manner of production; (v) extensively preparing for and sitting for each of their depositions; (vi) discussing with Class Counsel the potential damages reasonably achievable in this action; and (vi) discussing, evaluating and approving the proposed Settlement for $22,000,000 in cash. Calandra Decl. Ex. 6, (Declaration of Firas Jabri); Ex. 7 (Declaration of Jean-Nicolas Tremblay).

Courts routinely grant much larger awards for cases that settle earlier and/or without such an excellent result. *See, e.g.*, *Dep't of the Treas. Of the State of N.J. v. Class Natural Res., Inc.,* 14-cv-1031*,* (N.D. Ohio June 30, 2016), Dkt. No. 110 (awarding lead plaintiff $50,697.45); *In re Prison Realty Secs. Litig. v. Crants*, 2001 U.S. Dist. LEXIS 21943, at *5 (M.D. Tenn. Feb. 9, 2001) (awarding total of $65,065). *See also In re Marsh & McLennan Cos., Inc Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $214,657 to New Jersey and Ohio plaintiffs "who had been actively involved in the action for five years "to compensate them for their reasonable costs and expenses incurred in managing this litigation and representing the Class"); *In re Bank of Am. Corp. Secs., Deriv. & Empl. Ret. Income (ERISA) Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award totaling $453,003 to class representatives); *In Satyam Comput. Servs. Ltd. Sec. Litig.*, No. 09-MD-2027, slip. op. at 3-4 (S.D.N.Y. Sept. 13, 2011) (awarding $193,111 for "costs and expenses directly relating to [their] services in representing the class").

Plaintiffs respectfully request the awards be approved.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Class Counsel's application for an award of attorneys' fees, reimbursement of reasonable litigation expenses, and award to Class Representatives.

Dated: August 28, 2023

**POMERANTZ LLP**

By:   *Brian Calandra*
Jeremy A. Lieberman
Brian Calandra
600 Third Avenue, 20th Floor
New York, NY 10016
P: (212) 661-1100
Email: jalieberman@pomlaw.com
       bcalandra@pomlaw.com

**POMERANTZ LLP**

Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Lead Counsel for Plaintiffs and the Settlement Class*

**BRAMLETT LAW OFFICES**
Paul Kent Bramlett TN #7387/MS #4291
Robert Preston Bramlett TN #25895
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
Telephone: (615) 248-2828
Facsimile: (866) 816-4116
Email: PKNASHLAW@aol.com
       Robert@BramlettLawOffices.com

*Liaison Counsel*

**THE SCHALL LAW FIRM**

Brian Schall (pro hac vice)

23

Rina Restaino (pro hac vice)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
Facsimile: (877) 590-0482
Email: brian@schallfirm.com
　　　 rina@schallfirm.com

*Additional Counsel for Plaintiff Firas Jabri*

**HOLZER & HOLZER, LLC**

Corey D. Holzer
Marshall P. Dees
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com
　　　 mdees@holzerlaw.com

*Additional Counsel for Named Plaintiff*
*Jean-Nicolas Tremblay*

24

**CERTIFICATE OF SERVICE**

This is to certify that I have filed the above and foregoing memorandum of law in support of Class Counsel's unopposed motion for an award of attorneys' fees, expense reimbursement, and compensatory award for class representatives on the Court's CM/ECF filing system, which will serve all counsel of record as follows:

Benjamin A. Gastel
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801
Fax: (615) 255-5419
Email: beng@bsjfirm.com

Jacob A. Walker
Block & Leviton LLP
260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
Fax: (617) 507-6020
Email: jake@blockleviton.com

James Gerard Stranch , IV
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801
Fax: (615) 255-5419
Email: gerards@bsjfirm.com

Jeffrey C. Block
Block & Leviton LLP
260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
Fax: (617) 507-6020
Email: jeff@blockleviton.com

Stephen J. Teti
Block & Leviton LLP

260 Franklin Street
Suite 1860
Boston, MA 02110
(617) 398-5600
Fax: (617) 507-6020
Email: steti@blockleviton.com

Larry Russell Belk , Jr.
Sutherland & Belk, PLC
2505 21st Avenue South
Suite 400
Nashville, TN 37212
(615) 846-6200
Fax: (615) 208-2255
Email: russell@sbinjurylaw.com

James A. Holifield , Jr.
Holifield Janich Rachal & Associates, PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
(865) 566-0115
Fax: (865) 566-0119
Email: aholifield@holifieldlaw.com

Brian Peter Calandra
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
(646) 581-9958
Email: bcalandra@pomlaw.com

Brian Schall
Schall Law Firm
2049 Century Park East
Suite 2460
Los Angeles, CA 90067
(310) 301-3335
Email: brian@schallfirm.com

Paul Kent Bramlett
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734

Nashville, TN 37215
(615) 248-2828
Fax: (615) 254-4116
Email: pknashlaw@aol.com

Laurence M. Rosen
The Rosen Law Firm, P.A.
275 Madison Avenue
34th Floor
New York, NY 10016
(212) 686-1060
Email: lrosen@rosenlegal.com

Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue
34th Floor
New York, NY 10016
(212) 686-1060
Email: pkim@rosenlegal.com

Robert P. Bramlett
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
Fax: (615) 254-4116
Email: robert@bramlettlawoffices.com

Christopher M. Wood
Robbins Geller Rudman & Dowd LLP (Nashville Office)
414 Union Street
Suite 900
Nashville, TN 37219
(615) 244-2203
Fax: (615) 252-3798
Email: cwood@rgrdlaw.com

Jerry E. Martin
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street
Suite 900
Nashville, TN 37219

(615) 244-2202
Fax: (615) 252-3798
Email: jmartin@barrettjohnston.com

Mark S. Reich
Robbins Geller Rudman & Dowd LLP (New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
Fax: (631) 367-1173
Email: mreich@rgrdlaw.com

Mary K. Blasy
Robbins Geller Rudman & Dowd LLP (New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
Fax: (631) 367-1173
Email: mblasy@rgrdlaw.com

Samuel H. Rudman
Robbins Geller Rudman & Dowd LLP (New York Office)
58 S Service Road
Suite 200
Melville, NY 11747
(631) 367-7100
Fax: (631) 367-1173
Email: srudman@rgrdlaw.com

Corey D. Holzer
Holzer & Holzer, LLC
211 Perimeter Center Parkway
Suite 1010
Atlanta, GA 30346
(770) 392-0090
Fax: (770) 392-0029
Email: cholzer@holzerlaw.com

J. Alexander Hood , II
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
(212) 661-1100

28

Fax: (212) 661-8665
Email: ahood@pomlaw.com

Jeremy A. Lieberman
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
(212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com

Patrick V. Dahlstrom
Pomerantz LLP (Chicago Office)
10 S LaSalle Street
Suite 3505
Chicago, IL 60603
(312) 377-1181
Fax: (312) 377-1184
Email: pdahlstrom@pomlaw.com

Britt K. Latham
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
(615) 742-6200
Email: blatham@bassberry.com

Jed M. Schwartz
Milbank LLP
53 Hudson Yards
New York, NY 10001
(212) 530-5000
Email: jschwartz@milbank.com

Scott A. Edelman
Milbank LLP
53 Hudson Yards
New York, NY 10001
(212) 530-5000
Email: sedelman@milbank.com

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N.

Case 3:21-cv-00096    Document 139    Filed 08/28/23    Page 37 of 39 PageID #: 3502

Nashville, TN 37203
(615) 983-8900
Fax: (615) 682-8533
Email: john@spragenslaw.com

Saul C. Belz
Glankler Brown, PLLC
6000 Poplar Avenue
Suite 400
Memphis, TN 38119
(901) 576-1741
Fax: (901) 576-2389
Email: sbelz@glankler.com

Tara L. Swafford
The Swafford Law Firm, PLLC
207 Third Avenue North
Franklin, TN 37064
(615) 599-8406
Fax: (615) 807-2355
Email: tara@swaffordlawfirm.com

Charles F. Barrett
Neal & Harwell, PLC
1201 Demonbreun Street
Suite 1000
Nashville, TN 37203
(615) 244-1713
Fax: (615) 726-0573
Email: cbarrett@nealharwell.com

SO CERTIFIED this 28th day of August 2023

/s/ *Brian Calandra*
Brian Calandra

30

31